IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INACOM CORP., et al.,<br><br>       Debtors. | Chapter 11<br><br>Bankruptcy Case No. 00-2426 (PJW) |
| INACOM CORP., on behalf of all affiliated debtors,<br><br>       Plaintiff,<br><br>    vs.<br><br>LEXMARK INTERNATIONAL, INC.,<br><br>       Defendant and Third-Party Plaintiff,<br><br>    vs.<br><br>COMPAQ COMPUTER CORP., ITY CORP., and CUSTOM EDGE, INC.,<br><br>       Third-Party Defendants. | Civil Action No. 04-CV-583 (GMS) |

## HEWLETT-PACKARD COMPANY'S PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Dated:  August 15, 2005
       Wilmington, Delaware

           MORRIS, NICHOLS, ARSHT & TUNNELL
           William H. Sudell, Jr. (No. 463)
           Derek C. Abbott (No. 3376)
           1201 N. Market Street
           Wilmington, DE  19899-1347
           (302) 658-9200

           - and -

FRIEDMAN DUMAS & SPRINGWATER LLP
Ellen A. Friedman
Cecily A. Dumas
Gail S. Greenwood
Brandon C. Chaves
One Maritime Plaza, Suite 2475
San Francisco, CA 94111
(415) 834-3800

Attorneys for Third-Party Defendant
Hewlett-Packard Company

<u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction                                                                                      4

I.       Findings of Fact                                                                       5

II.      Lexmark's Claims for Breach of Contract Based on the Asset Purchase        10
         Agreement – Conclusions of Law

III.     Lexmark's Claims for Breach of Contract Based on the Francis Letter        11
         Dated February 16, 2000 – Conclusions of Law

IV.      Lexmark's Claims for Indemnity Based on the Asset Purchase                 12
         Agreement, the Francis Letter Dated February 16, 2000, and the
         Custom Edge Guarantee Dated February 5, 2001 – Conclusions of Law

V.       Lexmark's Claims for Promissory Estoppel – Conclusions of Law             13

VI.      Other – Conclusions of Law                                                         13

Third-party defendant Hewlett-Packard Company ("HP"), as successor in interest to Compaq Computer Corporation ("Compaq") and ITY Corporation, submits the following proposed findings of fact and conclusions of law in accordance with the Court's Scheduling Order entered October 4, 2004.

## INTRODUCTION

On June 16, 2000, Inacom Corp. ("Inacom") and its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On or about May 15, 2002, Inacom filed numerous complaints to recover preferences, including a complaint against Lexmark International, Inc. ("Lexmark"). On December 12, 2002, Lexmark filed a third-party complaint against Compaq and its subsidiary seeking reimbursement if it is found liable for any preferential transfers.

Lexmark cross-complained against Compaq on the theory that it is a third-party beneficiary to an Asset Purchase Agreement between Inacom and Compaq, pursuant to which Compaq purchased certain assets and assumed certain liabilities related to Inacom's hardware distribution business. Lexmark contends that Compaq breached the Asset Purchase Agreement by failing to pay the liabilities that were paid by Inacom that are now the subject of a preference action. Alternatively, Lexmark contends that Compaq breached a letter agreement in which Compaq allegedly promised to assume or guarantee all of Inacom's outstanding debt. Lexmark asserts claims of breach of contract, indemnity and promissory estoppel against Compaq.

HP disputes the right of Lexmark to enforce the terms of the Asset Purchase Agreement because the agreement specifically states that there are no third-party beneficiaries. HP also disputes that there was ever an agreement between Compaq, Inacom, or Lexmark to assume or guarantee the amounts at issue.

Based on the testimony presented at trial and other evidence submitted by the parties, the Court makes the following findings of fact and conclusions of law.

I.      **Findings of Fact**

1.      InaCom Corp. ("Inacom"), Compaq Computer Corp. ("Compaq") and ITY Corp. entered into an asset purchase agreement (the "Asset Purchase Agreement") that closed on February 16, 2000 whereby ITY Corp. acquired assets related to InaCom's distribution business for approximately $369,500,000.

2.      At the time of the closing of the Asset Purchase Agreement, ITY Corp. was a wholly owned subsidiary of Compaq.  ITY Corp. changed its name to Custom Edge, Inc. and was then merged into Compaq, which was then acquired by and merged into HP.  HP has assumed all liabilities of ITY Corp., Custom Edge, Inc. and Compaq.

3.      The Asset Purchase Agreement is solely between Inacom and its affiliates, and Compaq and its subsidiary.

4.      Section 13.05 of the Asset Purchase Agreement provides that the agreement shall be construed according to New York law without regard to the conflicts of law rules.

5.      Section 13.08 of the Asset Purchase Agreement provides that no other party is an intended beneficiary of the agreement.

6.      As part of the Asset Purchase Agreement, ITY Corp. (now known as HP) agreed to assume responsibility for payment of certain accounts payable of InaCom, including responsibility for certain accounts payable of Inacom owed to Lexmark.

7.      The terms of the Asset Purchase Agreement do not require Compaq to guarantee payments made by Inacom to Lexmark, and do not otherwise obligate Compaq to indemnify Lexmark for any recovery obtained by Inacom for preferential payments.

8.      On Friday, February 11, 2000, Inacom closed the books on its account payable records in anticipation of closing the asset purchase transaction the following Monday.  On or

about the same date, Inacom emailed to ITY Corp./Compaq an Accounts Payable Aging Report ("AP Report") that describes the Inacom accounts payable assumed by ITY Corp. pursuant to the Asset Purchase Agreement, including account payable #117403 relating to Lexmark.

9.     Compaq paid all of the Lexmark accounts payable listed on the AP Report.

10.    Prior to the close of the asset sale, Inacom wrote several checks in payment of outstanding Lexmark invoices. These checks were not immediately mailed to Lexmark, and were held in the office of Inacom's treasurer, Richard Oshlo (the "Held Checks"). The alleged preference payments sought to be recovered by Inacom include the Held Checks.

11.    The Held Checks include three checks made payable to Lexmark in the aggregate amount of $2,911,585.40 as follows: check no. 707395 in the amount of $1,625,925.73 payable from Inacom to Lexmark was issued on February 1, 2000 and cleared on March 21, 2000; check no. 709257 in the amount of $1,011,613.63 payable from Inacom to Lexmark was issued on February 8, 2000 and cleared on March 29, 2000; and check no. 710288 in the amount of $274,046.14 payable from Inacom to Lexmark was issued on February 10, 2000 and cleared on March 27, 2000.

12.    The AP Report does not reflect invoices paid by Held Checks because, consistent with Inacom's accounting systems, once Inacom wrote a check the invoice was no longer shown on Inacom's account payable report.

13.    Inacom and Compaq did not intend that Compaq would assume liability for Held Check amounts under the Asset Purchase Agreement.

14.    At the time of the Asset Purchase Agreement, Compaq was unaware that Inacom had written checks in payment of Lexmark invoices, which were held in the office of Inacom's treasurer.

15.    Lexmark was aware that Inacom was holding checks that would be paid after the closing of the Asset Purchase Agreement.  On February 3, 2000, Todd Pinkston of Lexmark sent an internal email to Bob Kendrick of Lexmark advising that Inacom's treasury department "is holding the checks" and that he received assurances that "the checks would be released and that the A/R situation would improve after the Compaq/Inacom deal closes..."

16.    On or about February 4, 2000, Todd Pinkston made notes in his daily calendar regarding Inacom, including "Can't release prior to close" and "Compaq assumes open payables."

17.    On February 15, 2000, William Schuette of Lexmark wrote to Inacom's treasurer confirming his understanding that invoices that had checks written against them by Inacom would be held until the completion of the asset sale between Inacom and Compaq and then released over a period of 1-10 weeks; and Compaq would assume the liability of invoices that had not had checks written against them.

18.    Lexmark was aware, and did not dispute, that Held Checks would be paid by Inacom after the closing of the Asset Purchase Agreement.  Lexmark was also aware that Compaq only assumed open payables in connection with the Asset Purchase Agreement.

19.    On February 16, 2000, Bill Francis of Compaq wrote a letter to Lexmark ("Francis Letter") at the request of Inacom following the close of the Asset Purchase Agreement. The Francis Letter states that as part of the asset purchase transaction between Compaq and Inacom, Compaq "assumed the obligation to pay all of the outstanding amount on the referenced account, subject to the terms and conditions of such account."  The referenced account is "Account Payable #117403 of InaCom Corporation."

20.    The Francis Letter does not state that Compaq will guarantee payments made by Inacom to Lexmark, and does not otherwise obligate Compaq to indemnify Lexmark for any recovery obtained by Inacom for preferential payments.

21.    The Francis Letter was sent in connection with the closing of the Asset Purchase Agreement and arises from the terms of the agreement.

22.    Consistent with the Bill Francis Letter, Compaq paid all of the Lexmark invoices submitted to Inacom that were reflected on the AP Report as Account Payable #117403.

23.    On March 21, 2000, March 27, 2000, and March 29, 2000, Lexmark negotiated each of the Held Checks that it received from Inacom in the aggregate amount of $2,911,585.40. Lexmark did not question or dispute its receipt of the Inacom Held Checks.

24.    Bill Francis did not intend, and was not authorized, to commit Compaq to any obligations that were not contained in the Asset Purchase Agreement.

25.    On February 16, 2000, Account Payable #117403 of Inacom Corporation did not include the invoices of Lexmark which were paid by the Held Checks.

26.    There was no mutual assent or meeting of the minds between Compaq and Lexmark with respect to the terms of the Francis Letter, including the meaning of the "outstanding amount" on the referenced account, Account Payable #117403 of Inacom Corporation.

27.    Neither Lexmark nor Compaq intended that Compaq would assume the obligation for Held Check amounts, or that the "outstanding amount" referenced in the Francis Letter included Held Check amounts.

28.    At the time Lexmark received the Francis Letter, Lexmark was aware that Compaq did not intend to assume the Held Check amounts.  Lexmark was also aware that

Compaq did not intend the term "outstanding amount" referenced in the Francis Letter to include the Held Check amounts.

29.     Lexmark and Compaq never discussed, and Lexmark never considered, what might happen in the event that Inacom filed a petition for bankruptcy.

30.     Compaq should not reasonably have expected that the Francis Letter would cause Lexmark to delay its collection efforts against Inacom with respect to Held Checks.

31.     Lexmark did not reasonably rely on the Francis Letter by delaying collection efforts against Inacom with respect to Held Checks.

32.     Lexmark did not change its actions in any manner in reliance on the Francis Letter by, for example, refusing payment from Inacom or delaying collection efforts with respect to Held Checks.

33.     Lexmark was fully compensated for products that were delivered to Compaq and its subsidiary after February 16, 2000.  Therefore, to the extent that Lexmark continued to do business with Compaq and its subsidiary after the Francis Letter and Custom Edge Guarantee, there was no detrimental reliance.

34.     On February 5, 2001, Ben Wells of Compaq transmitted a letter to Bill Schuette of Lexmark whereby Compaq guaranteed payment of "any and all indebtedness from time to time outstanding under or in respect to transactions between Custom Edge, Inc. (CEI) and Lexmark" (the "Custom Edge Guarantee").

35.     The Custom Edge Guarantee does not address transactions between Inacom and Lexmark.  Nor does the Custom Edge Guarantee address the Asset Purchase Agreement, or obligations of Compaq and its subsidiary under the Asset Purchase Agreement.

36.    The terms of the Custom Edge Guarantee do not require Compaq to guarantee transactions between Inacom and Lexmark, and do not otherwise obligate Compaq to indemnify Lexmark for any recovery obtained by Inacom for preferential payments.

37.    On June 16, 2000, Inacom filed a petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code.  Inacom subsequently filed an adversary proceeding with this Court seeking to avoid certain payments to Lexmark as allegedly preferential, including three Held Checks from Inacom in the aggregate amount of $2,911,585.40, which were issued and held by Inacom prior to the close of the Asset Purchase Agreement.

38.    On December 12, 2002, Lexmark filed a third-party against Compaq and its subsidiary for damages in the amount of any award granted to Inacom on the preference claims.

39.    Lexmark never sought payment of the Held Check amounts, or other amounts paid by Inacom, from Compaq prior to filing its third-party complaint against Compaq/HP.

## II.    Lexmark's Claims For Breach of Contract Based on the Asset Purchase Agreement– Conclusions of Law

1.    Under New York law, where a contract's language expressly bars contractual liability to a third party, no third party right to enforce the contract may be found.  *Nepco Forged Products, Inc. v. Consolidated Edison*, 470 N.Y.S.2d 680, 681 (App. Div. 1984) (holding that the clause "Nothing in this Agreement, express or implied, is intended to confer on any other person any rights or remedies, in or by reason of this Agreement" prevented a third party from bringing a breach of contract claim).

2.    Lexmark lacks standing to bring claims against either Compaq or its subsidiary as a third-party beneficiary of the Asset Purchase Agreement because Section 13.08 of the agreement expressly negates the intent of Inacom and Compaq to confer any rights or remedies upon third parties.

3.      Assuming that Lexmark has standing to bring claims under the Asset Purchase Agreement, Compaq fully performed its obligations under the agreement. In particular, the Court finds that Compaq assumed and paid open accounts payable of Inacom under the Asset Purchase Agreement, as identified in the AP Report exchanged between Compaq and Inacom, which excluded obligations represented by Held Checks that were subsequently released by Inacom and paid to Lexmark. Accordingly, judgment is granted in HP's favor on the First and Third Claims for Relief.

## III.     Lexmark's Claims For Breach of Contract Based on the Francis Letter Dated February 16, 2000– Conclusions of Law

1.      There is no manifestation of mutual assent if the parties to an exchange attach materially different meanings to their manifestations and neither party knows or has reason to know the meaning attached by the other. *See generally* Restatement (Second) of Contract § 20 (effect of misunderstanding). *See also Gupta v. University of Rochester,* 395 N.Y.S.2d 566, 567 (App. Div. 1977) ("Where the offeror, using ambiguous language, reasonably means one thing and the offeree reasonably understands differently, there is no contract.").

2.      A party has a right to rescind a contract for a unilateral mistake if the mistake was known to the other party at the time of the negotiating of the contract and was not corrected by it. *Sheridan Drive-In, Inc. v. State,* 228 N.Y.S.2d 576, 582 (App. Div. 1962).

3.      The Francis Letter does not constitute an enforceable agreement between Compaq and Lexmark because there was no mutual assent between the parties to the letter regarding the alleged payment obligations at issue.

4.      Assuming that the Francis Letter constitutes an enforceable contract, Compaq complied with the explicit terms of the Francis Letter and otherwise fulfilled its obligations by paying the outstanding amount on the referenced Account Payable #117403 of Inacom.

5.    The Court concludes that there was no contract between Compaq and Lexmark, and no breach of contract by Compaq, based on the Francis Letter. Accordingly, judgment is granted in HP's favor on the Second and Fourth Claims for Relief.

6.    For an agreement to be enforceable there must also be some consideration in exchange for the promise. *See, e.g., In re Johnson's Estate,* 346 N.Y.S.2d 283, 286-87 (Sur. Ct. 1973) (bank promise to serve as trustee in the future at reduced rate if it were selected did not bind either party; contract unenforceable because it lacked mutuality of obligation).

7.    A guaranty that is not part of the original exchange for which the oblige bargained must be supported by separate consideration. Restatement (Third) of Suretyship and Guaranty § 9(2)(a), pp. 9-10 (ALI 1996); *United States v. Meadows,* 753 F.2d 590, 597 (7th Cir. 1985).

8.    The Francis Letter was not supported by consideration.

**IV.    Lexmark's Claims For Indemnity Based on the Asset Purchase Agreement, the Francis Letter Dated February 16, 2000, and the Custom Edge Guarantee Dated February 5, 2001 – Conclusions of Law**

1.    For reasons set forth above, Lexmark lacks standing to bring claims against either Compaq or its subsidiary as a third-party beneficiary of the Asset Purchase Agreement.

2.    For reasons set forth above, the Francis Letter is not an enforceable contract.

3.    For reasons set forth above, the Court finds that Compaq fully performed its obligations under the Asset Purchase Agreement (and any potential obligations under the Francis Letter). Compaq did not assume the obligation to indemnify Lexmark for Held Check amounts paid by Inacom under the Asset Purchase Agreement, the Francis Letter, or by virtue of the Custom Edge Guarantee. Accordingly, judgment is granted in HP's favor on the Fifth and Sixth Claims for Relief.

**V.    Lexmark's Claims For Promissory Estoppel – Conclusions of Law**

1.    In order to establish a viable cause of action for promissory estoppel, the following elements must be established: (1) a promise that is sufficiently clear and unambiguous, (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance.  *See, e.g., New York City Health and Hospitals Corp. v. St. Barnabas Hospital*, 782 N.Y.S. 2d 12, 14 (Sup. Ct. 2004) (breach of contract and promissory estoppel claims for reimbursement of medical resident salaries denied).  *See generally* Restatement (Second) of Contracts § 90.

2.    The party claiming promissory estoppel must establish that its alleged acts of reliance were attributable to the promise.  *Ripples of Clearview, inc. v. Le Havre Assoc.*, 452 N.Y.S. 2d 447, 449 (Sup. Ct. 1982).

3.    Lexmark cannot establish a claim for promissory estoppel to require that Compaq pay Lexmark for amounts that are the subject of Inacom's preference claims against Lexmark. Accordingly, judgment is entered in HP's favor on the Seventh and Eighth Claims for Relief.

**VI.    Other – Conclusions of Law**

1.    Waiver constitutes the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right.  BLACK'S LAW DICTIONARY (5th ed. 1979).

Dated:  August 15, 2005          MORRIS, NICHOLS, ARSHT & TUNNELL

William H. Sudell, Jr. (No. 463)
Derek C. Abbott (No. 3376)
1201 N. Market Street
Wilmington, DE  19899-1347
(302) 658-9200

- and -

FRIEDMAN DUMAS & SPRINGWATER LLP
Ellen A. Friedman
Cecily A. Dumas
Gail S. Greenwood
Brandon C. Chaves
One Maritime Plaza, Suite 2475
San Francisco, CA 94111
(415) 834-3800

Attorneys for Third-Party Defendant
Hewlett-Packard Company