UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

INACOM CORP., et al.

     Plaintiffs

v.

LEXMARK INTERNATIONAL, INC.

     Defendant and Third-Party Plaintiff

v.

COMPAQ COMPUTER CORPORATION

     Third-Party Defendant

Civil Action No. 04-CV-583 (GMS)

JOINT PROPOSED FINAL PRETRIAL ORDER
REGARDING LEXMARK'S THIRD-PARTY COMPLAINT
AGAINST HEWLETT-PACKARD COMPANY

This matter having come before the Court at a pretrial conference held pursuant to Fed.

R. Civ. P. ("Rule") 16, and Culver V. Halliday, Stoll, Keenon & Park, LLP, 2650 AEGON

Center, 400 West Market Street, Louisville, Kentucky 40202-3377, (502) 568-5707, and Thomas

G. Whalen, Stevens & Lee, P.C., 1105 North Market Street, 7th Floor, Wilmington, Delaware

19801, (302) 425-3304, having appeared as counsel for Third-Party Plaintiff Lexmark

International, Inc. ("Lexmark"), and Cecily Dumas, Friedman Dumas & Springwater, LLP, One

Maritime Plaza, Suite 2475, San Francisco, California 94111, (415) 834-3800, and Derek C.

Abbott, Morris, Nichols, Arsht & Tunnell, 1201 North Market Street, Wilmington, Delaware 19899-1347, (302) 658-9200, having appeared as counsel for Third-Party Defendant Hewlett-Packard Company ("HP"), the parties submitted the following:

### I. Statement of Nature of Action

1.     On May 16, 2002 InaCom Corp. ("InaCom" or "Debtor") filed an adversary proceeding against Lexmark in the United States Bankruptcy Court for the District of Delaware, seeking to avoid allegedly preferential transfers made to Lexmark by InaCom during the 90 day period preceding the filing of its voluntary bankruptcy petition.

2.     Lexmark sought and obtained leave to file its Third-Party Complaint against HP alleging that HP is liable to Lexmark for any amount it may be adjudged liable to InaCom. Lexmark bases its claim of liability on several theories, including breach of contract, indemnity, and promissory estoppel against HP.  An amount in excess of $75,000 is involved.

3.     Also pending before this Court in a related proceeding is a similar Third-Party action against HP that was commenced by Tech Data Corporation ("Tech Data") against HP.

### II. Jurisdiction and Venue

4.     The parties agree that the Court has subject matter jurisdiction over this proceeding.

5.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III. Stipulation of Facts

6.     Attached at Tab 1 is a statement of uncontested facts which will become a part of this order.

## IV. Contested Issues of Fact and Law

7.      Attached at Tab 2 and Tab 3 are statements by each party of the contested issues of fact.

## V.    Itemized Statement of Special Damages

8.      The amount of principal damages for which HP will be liable to Lexmark will be equal to the amount of the damages for which Lexmark may be found liable to InaCom, together with pre-judgment interest, attorney's fees and costs.  HP has filed a motion for the Court to hold a separate trial of the Third-Party Complaints filed against it by Tech Data and Lexmark after the trial of InaCom's complaints against Tech Data and Lexmark.  At the conclusion of the first trial, Tech Data, Lexmark and HP will know the amounts for which HP may be liable to Tech Data and Lexmark.

## VI. Schedule of Exhibits

9.      The exhibits for the trial of Lexmark's third-party complaint against HP are all joint exhibits.  Lexmark's exhibits, including the objections to each exhibit and the response to each objection, are included at Tab 4.

10.     HP's exhibits, including the objections to each exhibit and the response to each objection, are included at Tab 5.

## VII. Witnesses

11.     The potential witness to be called by Lexmark to testify are included at Tab 6.

12.     The potential witness to be called by HP to testify are included at Tab 7.

## VIII. Expert Witnesses

13.     Neither Lexmark nor HP will call an expert witness to testify at the trial of Lexmark's third-party complaint against HP.

### IX. Deposition Designations

14.     The depositions or portions thereof that may be read into evidence by Lexmark if the witness will not or cannot testify in person are included at Tab 8.

15.     The depositions or portions thereof that may be read into evidence by HP if the witness will not or cannot testify in person are included at Tab 9.

### X. Waiver of Claims and Defenses

16.     Lexmark does not waive any claims.

17.     HP does not waive any of its affirmative defenses.

### XI. Findings of Fact and Conclusions of Law/Jury Instructions and Questions

18.     Lexmark has filed a motion for a jury trial and therefore tenders a trial brief, jury instructions and questions for the jury.

19.     Because its motion for a jury trial may be denied, Lexmark will also submit proposed findings of fact and conclusions of law.  HP will also submit proposed findings of fact and conclusions of law.

### XII. Settlement Negotiations

20.     A mediation conference was held on July 12 and 13, 2005.  Representatives of InaCom, Lexmark, Tech Data and Ingram Entertainment Inc. participated.

21.     On or about August 9, 2005 Lexmark International, Inc. filed a Motion for a settlement conference before a Magistrate Judge.  Tech Data has filed a Joinder with this Motion.

### XIII. Completion of Discovery

22.     Lexmark and HP have completed discovery relating to Lexmark's Third-Party Complaint against HP.

### XIV. Motions In Limine

23.    HP is making three motions in limine which are listed at Tab 10.

### XV. Type and Length of Trial

24.    Trial of this case is expected to take one day.  The Court has previously allotted five days, from October 17 through 22, 2005, for the trial of the actions brought by InaCom against Lexmark, Tech Data, Dell and Ingram, including the Third-Party Complaints filed by Lexmark and Tech Data against HP.

25.    The trial of the matter is currently non-jury.  However, Lexmark and Tech Data have filed motions or joined in the requests for the Court to order a jury trial of the Third-Party Complaints.

26.    Lexmark recommends that six jurors plus an alternate be selected at the beginning of the trial.

27.    HP has filed a motion to bifurcate the Third Party Complaint from trial with the InaCom preference cases.  HP filed a similar motion to bifurcate the trial of Lexmark's Third Party Complaint from the trial of the InaCom preference cases.

28.    While not expressly consenting to the motion, Tech Data filed a certificate of no opposition.  Similarly, Lexmark has not filed opposition to the bifurcation motion.

### XVI. Controlling Effect of Pretrial Order

29.    This order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

## XVII. Consideration of Settlement

30.     Possibility of settlement of this case has been considered by the parties.


Dated:_____


_____
Honorable Gregory M. Sleet
United States District Judge

Dated: 8/15/05

_____
Culver V. Halliday
Emily L. Pagorski
Stoll, Keenon & Park, LLP
2650 AEGON Center
400 West Market Street
Louisville, Kentucky 40202-3377
Tel: (502) 568-9100
Fax: (502) 568-5700

Thomas G. Whalen Jr. (No. 4034)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
Tel: (302) 425-3304
Fax: (302) 654-5181

Attorneys for Third Party Plaintiff,
Lexmark International, Inc.

Dated: 8/15/05

_____/s/_____
William H. Sudell, Jr. (DE Bar No. 463)
Derek C. Abbott (DE Bar No. 3376)
1201 N. Market Street
Wilmington, Delaware 19899-1347
Tel: (302) 658-9200
Fax: (302) 658-3989

Friedman Dumas & Springwater LLP
Cecily A. Dumas
Ellen A. Friedman
Brandon Chaves
One Maritime Plaza, Suite 2475
San Francisco, California 94111
Tel: (415) 834-3811
Fax: (415) 834-1044

Attorneys for Third Party Defendant,
Hewlett-Packard Company

{00205448.DOC v 2}7

## CERTIFICATE OF SERVICE

     Thomas G. Whalen, Jr. hereby certifies that on August 15, 2005 a true and correct copy of the foregoing document was served upon the following counsel of record, each via regular United States first class mail:

William H. Sudell, Jr. Esq.
Derek C. Abbott, Esq.
Morris, Nichols Arsht & Tunnell
1201 North Market Street
Wilmington, Delaware 19899-1347

and

Cecily Dumas, Esq.
Friedman Dumas & Springwater, LLP
One Maritime Plaza, Suite 2475
San Francisco, California 94111

*Counsel for Third-Party Defendant*
*Compaq Computer Corporation*

Laura Davis Jones, Esq.
Sandra McLamb, Esq.
Pachulski, Stang, Ziehl, Young,
   Jones & Weintraub, P.C.
919 North Market St., 16th Floor
Wilmington, Delaware 19899

and

Andrew W. Caine, Esq.
Jeffrey P. Nolan, Esq.
Pachulski, Stang, Ziehl, Young,
   Jones & Weintraub, P.C.
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067

*Counsel for Plaintiff*
*InaCom Corp.*


_____
Thomas G. Whalen, Jr.

# TAB 1

## STIPULATION OF FACTS

1.     InaCom, Compaq Computer Corporation ("Compaq"), and ITY Corp. ("ITY") entered into an asset purchase agreement that closed on February 16, 2000, whereby ITY acquired InaCom's distribution business for approximately $369,500,000 (the "Asset Purchase Agreement").

2.     The Asset Purchase Agreement selected New York law as the applicable law for the Asset Purchase Agreement.

3.     At the time of the closing of the Asset Purchase Agreement, ITY was a wholly-owned subsidiary of Compaq.  ITY changed its name to Custom Edge, Inc. and was then merged into Compaq, which was then acquired by and merged into HP.  HP has assumed all liabilities of ITY, Custom Edge, Inc. ("Custom Edge") and Compaq.

4.     As a part of the Asset Purchase Agreement, ITY (now known as HP) in addition to the cash consideration agreed to assume responsibility for payment of certain accounts payable of InaCom.

5.     Regarding the sale of assets from InaCom to Compaq, certain representations of fact were reportedly made to Tech Data by InaCom and Compaq as to the treatment of pre-closing accounts payable due by InaCom to Tech Data.

6.     On January 7, 2000 InaCom filed its Form 8-K with the Securities and Exchange Commission which addressed, in pertinent part, the proposed sale of assets to Compaq.

7.     On February 3, 2000, John Frasca, then an employee of InaCom, directed electronic mail to Mike Ward, of Tech Data, attaching InaCom's Form 8-K.

8.      On February 3, 2000, Todd Pinkston of Lexmark sent an internal email to Bob Kendrick of Lexmark regarding InaCom's treasury department.

9.      On or about February 4, 2000, Todd Pinkston made notes in his daily calendar regarding InaCom.

10.     On February 15, 2000, William Schuette of Lexmark wrote to InaCom's treasurer confirming his understanding that invoices that had checks written against them by InaCom would be held until the completion of the asset sale between InaCom and Compaq and then released over a period of 1-10 weeks; and Compaq would assume the liability of invoices that had not had checks written against them.

11.     On February 16, 2000, William Francis, Director of Corporate Finance of Compaq faxed a letter to Misty Atchinson of Lexmark, regarding "Account Payable # 117403 of InaCom Corporation" (the "Francis Letter"). The Francis letter stated, in part, that certain assets of InaCom had been purchased by Compaq and the business associated with those assets would be operated as Custom Edge, with accounts payable to be funded by Compaq. The letter also stated, in part, that Custom Edge "also assumed the obligation to pay all of the outstanding amount on the referenced account, subject to the terms and conditions of the account." A letter similar to the Francis letter was also directed to Tech Data Corporation and Logicare, Inc.

12.     On various dates, Lexmark negotiated checks that it received from InaCom.

13.     On June 16, 2000, InaCom filed a petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. InaCom subsequently filed an adversary proceeding with this Court seeking to avoid certain payments to Lexmark as allegedly preferential.

14.     Lexmark filed its answer on June 21, 2002, denying certain material allegations, asserting various affirmative defenses, and contesting liability. On December 12, 2002 Lexmark

filed its Third Party Complaint against Compaq Computer Corp. and Custom Edge, Inc., now known as Hewlett Packard ("HP") for recovery of any damages resulting from InaCom's Complaint.

15.    The bankruptcy court confirmed the Debtors' Chapter 11 Plan on May 24, 2003.

16.    On March 23, 2004 Third-Party Plaintiff Tech Data filed its Motion to Withdraw the Reference and Motion to Determine Core/Non-Core Status, to which InaCom filed Opposition on March 8, 2004.

17.    On June 25, 2004 the Court entered an Order withdrawing the reference of the adversary proceeding to the United States District Court for the District of Delaware.

# TAB 2

### Third-Party Plaintiff Lexmark's Statement of Contested Issues of Fact and Law

1.     Lexmark was a direct, intended third party beneficiary of the Asset Purchase Agreement.

2.     If Lexmark was not an intended third party beneficiary of the Asset Purchase Agreement, it was an implied third party beneficiary of the Asset Purchase Agreement.

3.     The Asset Purchase Agreement was a contract for the sale of goods, within the meaning of Article 2 of the Uniform Commercial Code.

4.     The Asset Purchase Agreement satisfies the requirements of the statute of frauds under applicable law, including New York law.

5.     The Asset Purchase Agreement satisfies the requirements of the parol evidence rule under applicable law, including New York law, to bar the use of external evidence in interpretation of the Asset Purchase Agreement.

6.     The Francis Letter confirms that HP had assumed InaCom's accounts payable obligations to Lexmark.

7.     The Francis Letter also constitutes a separate and independent contract by and between Compaq and Lexmark regarding the assumption of InaCom's account payable obligations to Lexmark.

8.    To the extent that the Francis Letter and APA are not found to have created an assumption of InaCom's accounts payable obligations to Tech Data, they alternately serve as a guaranty of that indebtedness.

# TAB 3

### Third-Party Defendant Hewlett-Packard Company's
### Statement of Contested Issues of Fact and Law

I.     **Lexmark's Claims For Breach of Contract and Indemnity Under the Asset Purchase Agreement**

1.     As a matter of law under the express terms of the Asset Purchase Agreement, Lexmark does not have standing to assert claims as a third-party beneficiary to the agreement.

2.     Compaq assumed specific open accounts payable of InaCom under the Asset Purchase Agreement, excluding obligations represented by checks that were held by InaCom at the time of the closing of the Asset Purchase Agreement and subsequently released and paid to Lexmark.

In addition to the above, HP contends and Lexmark disputes the following additional facts:

3.     On February 3, 2000, Todd Pinkston of Lexmark sent an internal email to Bob Kendrick of Lexmark advising that Inacom's treasury department "is holding the checks" and that he received assurances that "the checks would be released and that the A/R situation would improve after the Compaq/Inacom deal closes…"

4.     On or about February 4, 2000, Todd Pinkston made notes in his daily calendar regarding Inacom, including "Can't release prior to close" and "Compaq assumes open payables."

5.     On Friday, February 11, 2000, Inacom closed the books on its account payable records in anticipation of closing the asset purchase transaction the following Monday. On or about the same date, Inacom emailed to ITY Corp./Compaq an Accounts Payable Aging Report ("AP Report") that describes the Inacom accounts payable assumed by ITY Corp. pursuant to the Asset Purchase Agreement, including account payable #117403 relating to Lexmark.

6.     After the February 16, 2000 closing, Inacom remitted payments totaling $2,928,090.91 to Lexmark. These checks were written by InaCom prior to the close of the asset sale. These checks were not immediately mailed to Lexmark, and were held in the office of InaCom's treasurer, Richard Oshlo,

(the "Held Checks"). The alleged preference payments sought to be recovered by InaCom include the Held Checks.

7.    The Held Checks include three checks made payable to Lexmark in the aggregate amount of $2,911,585.40 as follows: check no. 707395 in the amount of $1,625,925.73 payable from Inacom to Lexmark was issued on February 1, 2000 and cleared on March 21, 2000; check no. 709257 in the amount of $1,011,613.63 payable from Inacom to Lexmark was issued on February 8, 2000 and cleared on March 29, 2000; and check no. 710288 in the amount of $274,046.14 payable from Inacom to Lexmark was issued on February 10, 2000 and cleared on March 27, 2000.

8.    Consistent with the Bill Francis Letter, Compaq paid all of the Lexmark invoices submitted to Inacom that were reflected on the AP Report as Account Payable #117403.

9.    On March 21, 2000, March 27, 2000, and March 29, 2000, Lexmark negotiated each of the Held Checks that it received from Inacom in the aggregate amount of $2,911,585.40. Lexmark did not question or dispute its receipt of the Inacom Held Checks.

10.    On June 16, 2000, Inacom filed a petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. Inacom subsequently filed an adversary proceeding with this Court seeking to avoid certain payments to Lexmark as allegedly preferential, including three Held Checks from Inacom in the aggregate amount of $2,911,585.40, which were issued and held by Inacom prior to the close of the Asset Purchase Agreement.

11.    The Asset Purchase Agreement is solely between Inacom and its affiliates, and Compaq and its subsidiary.

12.    As a part of the Asset Purchase Agreement, ITY (now known as HP) in addition to the cash consideration agreed to assume responsibility for payment of certain accounts payable of Inacom, including responsibility for certain Inacom accounts payable to Lexmark and Third-Party Plaintiff Tech Data.

13.    Section 13.08 of the Asset Purchase Agreement provides that no other party is an intended beneficiary of the agreement.

14. The terms of the Asset Purchase Agreement do not require Compaq to guarantee payments made by Inacom to Lexmark, and do not otherwise obligate Compaq to indemnify Lexmark for any recovery obtained by Inacom for preferential payments.

15. Compaq paid all of the Lexmark accounts payable listed on the AP Report.

16. The AP Report does not reflect invoices paid by Held Checks because, consistent with Inacom's accounting systems, once Inacom wrote a check the invoice was no longer shown on Inacom's account payable report.

17. Inacom and Compaq did not intend that Compaq would assume liability for Held Check amounts under the Asset Purchase Agreement.

18. At the time of the Asset Purchase Agreement, Compaq was unaware that Inacom had written checks in payment of Lexmark invoices, which were held in the office of Inacom's treasurer.

19. Lexmark was aware that Inacom was holding checks that would be paid after the closing of the Asset Purchase Agreement.

20. Lexmark was aware, and did not dispute, that Held Checks would be paid by Inacom after the closing of the Asset Purchase Agreement. Lexmark was also aware that Compaq only assumed open payables in connection with the Asset Purchase Agreement.

21. On February 16, 2000, Bill Francis of Compaq wrote a letter to Lexmark ("Francis Letter") at the request of Inacom following the close of the Asset Purchase Agreement. The Francis Letter states that as part of the asset purchase transaction between Compaq and Inacom, Compaq "assumed the obligation to pay all of the outstanding amount on the referenced account, subject to the terms and conditions of such account." The referenced account is "Account Payable #117403 of InaCom Corporation."

22. The Francis Letter does not state that Compaq will guarantee payments made by Inacom to Lexmark, and does not otherwise obligate Compaq to indemnify Lexmark for any recovery obtained by Inacom for preferential payments.

23. The Francis Letter was sent in connection with the closing of the Asset Purchase Agreement and arises from the terms of the agreement.

24.    Bill Francis did not intend, and was not authorized, to commit Compaq to any obligations that were not contained in the Asset Purchase Agreement.

25.    On February 16, 2000, Account Payable #117403 of Inacom Corporation did not include the invoices of Lexmark which were paid by the Held Checks.

26.    There was no mutual assent or meeting of the minds between Compaq and Lexmark with respect to the terms of the Francis Letter, including the meaning of the "outstanding amount" on the referenced account, Account Payable #117403 of Inacom Corporation.

27.    Neither Lexmark nor Compaq intended that Compaq would assume the obligation for Held Check amounts, or that the "outstanding amount" referenced in the Francis Letter included Held Check amounts.

28.    At the time Lexmark received the Francis Letter, Lexmark was aware that Compaq did not intend to assume the Held Check amounts.  Lexmark was also aware that Compaq did not intend the term "outstanding amount" referenced in the Francis Letter to include the Held Check amounts.

29.    Lexmark did not reasonably rely on the Francis Letter by delaying collection efforts against Inacom with respect to Held Checks.

30.    Lexmark did not change its actions in any manner in reliance on the Francis Letter by, for example, refusing payment from Inacom or delaying collection efforts with respect to Held Checks.

31.    Lexmark was fully compensated for products that were delivered to Compaq and its subsidiary after February 16, 2000.  Therefore, to the extent that Lexmark continued to do business with Compaq and its subsidiary after the Francis Letter and Custom Edge Guarantee, there was no detrimental reliance.

32.    The Custom Edge Guarantee does not address transactions between Inacom and Lexmark.  Nor does the Custom Edge Guarantee address the Asset Purchase Agreement, or obligations of Compaq and its subsidiary under the Asset Purchase Agreement.

33.    The terms of the Custom Edge Guarantee do not require Compaq to guarantee transactions between Inacom and Lexmark, and do not otherwise obligate Compaq to indemnify Lexmark for any recovery obtained by Inacom for preferential payments.

34.     Lexmark never sought payment of the Held Check amounts, or other amounts paid by Inacom, from Compaq prior to filing its third-party complaint against Compaq/HP.

## II.     Lexmark's Claims For Breach of Contract and Indemnity Under the Francis Letter dated February 16, 2000

1.     The February 16, 2000 letter from Bill Francis to Lexmark ("Francis Letter") does not constitute a legally enforceable contract in the absence of mutual assent between Compaq and Lexmark and consideration for the alleged promise.

2.     By the terms of the Francis Letter, Compaq did not agree to guarantee or otherwise assume liability for amounts that were paid by InaCom to Lexmark, which are now the subject of InaCom's preference action.

3.     The Francis Letter is not supported by consideration.

## III.     Lexmark's Claims For Indemnity Under the Custom Edge Guarantee

1.     By the terms of the Custom Edge Guarantee, Compaq did not agree to guarantee or otherwise assume liability for amounts that were paid by InaCom to Lexmark, which are now the subject of InaCom's preference action.

## IV.     Lexmark's Claims For Promissory Estoppel

1.     Lexmark did not reasonably rely on any alleged promise in the Francis Letter or the Custom Edge Guarantee by supplying products to Compaq.

2.     Lexmark was fully compensated for all amounts on InaCom's account payable #117403 as of February 16, 2000, and such amounts are not the subject of InaCom's preference action or this cross-complaint.

3.     Lexmark did not reasonably rely on any alleged promise in the Francis Letter or the Custom Edge Guarantee by delaying collection efforts against InaCom with respect to amounts that are the subject of InaCom's preference action and this cross-complaint.

4.      The Francis Letter was simply an informational letter to advise Lexmark that certain accounts payable of InaCom had been assumed by Compaq in connection with the Asset Purchase Agreement, and was not a guarantee of InaCom's payment obligations.

5.      The Custom Edge Guarantee only addresses transactions between Custom Edge, Inc. and Lexmark, and was not a guarantee of InaCom's payment obligations.

## V.    Defenses Applicable to All Claims

1.      Lexmark waived the right to seek reimbursement from Compaq/HP of the transfer amounts at issue because it accepted payments from InaCom and failed to assert any right to payment from Compaq upon receipt of the payments.

2.      Lexmark is barred by the doctrine of laches from seeking reimbursement from Compaq/HP of the transfer amounts at issue because it accepted payment from InaCom and unreasonably delayed asserting any right to payment from Compaq.

# TAB 4

## LEXMARK'S EXHIBITS

1.    The Francis Letter;

2.    Asset Purchase Agreement;

3.    8K – January & February 2000;

4.    The Frasca E-mail;

5.    Confirming Letter dated 2/9/00;

6.    The February 17, 2000 letter from Bill Francis to Logicare, Inc.;

7.    The February 15, 2000 letter from William Schuette to Dick Oshlo.

# TAB 5

## HP'S EXHIBITS

| Exhibit No. | Date | Description | Objection | Admit |
|---|---|---|---|---|
| | 5/16/02 | Complaint for Avoidance and Recovery of Preferential Transfers filed by InaCom | | |
| | 12/12/02 | Third Party Complaint filed by Lexmark | | |
| | 1/8/03 | Answer of Compaq Computer Corporation and Custom Edge, Inc. to Third Party Complaint | | |
| | 1/4/00 | Asset Purchase Agreement Between Compaq Computer Corp. and InaCom Corp. and related schedules | | |
| | 1/31/00 | Email from Misty Atchison to Todd Pinkston | | |
| | 2/1/00 | Email from Misty Atchison to Todd Pinkston | | |
| | 2/3/00 | Email from Todd Pinkston to Bob Kendrick (Kendrick Depo. Exh. 1) | | |
| | 2/4/00 | Daily Record of Events of Todd Pinkston with handwritten notes (Pinkston Depo. Exh. 1) | | |
| | 2/11/00 | Accounts Payable Aging Report of InaCom | | |
| | 2/11/00 | Purchase Order Accrual Report of InaCom | | |
| | 2/15/00 | Letter to Dick Oslo [sic] from William Schuette (Kendrick Depo Exh. 2) | | |
| | 2/16/00 | Letter to Misty Atchison from Bill Francis (Kendrick Depo. Exh. 3) | | |

| | 3/12/03 | InaCom Payment History to Lexmark for the period from January 1, 1998 through December 31, 2000 | | |
|---|---|---|---|---|
| | Undated | Request For Check Copies and InaCom Checks Payable to Lexmark between 2/1/00 and 4/5/00 (INA/LEX 0670-80) | | |
| | 2/1/00 | Check no. 707395 in the amount of $1,625,925.73 from InaCom payable to Lexmark | | |
| | 2/8/00 | Check no. 709257 in the amount of $1,011,613.63 from InaCom payable to Lexmark | | |
| | 2/8/00 | Check no. 710288 in the amount of $274,046.14 from InaCom payable to Lexmark | | |
| | 5/10/00 | List of Treasury Released Checks By Date (Oshlo Depo Exh. 10) | | |
| | Undated | List of Compaq Checks paid to Lexmark between 2/22/00 and 3/30/00 (CQ 00734-748) | | |
| | 2/5/01 | Letter to Lexmark/Bill Schuette from Ben Wells (Exh. C to Third-Party Complaint) | | |
| | 2/25/03 | InaCom's Response to Lexmark's First Requests For Admissions | | |
| | 2/25/03 | InaCom's Response to Lexmark's First Set of Interrogatories | | |
| | 9/26/03 | Lexmark's Response to Compaq's First Set of Interrogatories | | |
| | 9/26/03 | Lexmark's Response to Compaq's First Request for Production of Documents | | |
| | 6//10/05 | HP's Supplemental Disclosures Pursuant to Rule 26(e) | | |

# TAB 6

## LEXMARK'S WITNESSES

1.  Kevin Sarkisian (Will Call)
    [c/o Stoll, Keenon & Park, L.L.P.]

2.  Mike Zava (May Call)

3.  Mike Ward (May Call)

4.  Ben Wells (May Call)

5.  John Frasca (May Call)

6.  Noni Vitols (May Call)

7.  William Francis (May Call)

8.  William Schuette (May Call)
    [c/o Stoll, Keenon & Park, L.L.P.]

9.  Lexmark reserves the right to call any witness identified by HP on their
    Witness Designations.

# TAB 7

# HP'S WITNESSES

1.   Ben Wells / Will be called
     Tomball, Texas [c/o Friedman Dumas & Springwater, LLP]

2.   Chris Anderson / Will be called
     Miami, Florida [c/o Friedman Dumas & Springwater, LLP]

3.   Jay Samuelson / Will be called
     Gretna, Nebraska [c/o Friedman Dumas & Springwater, LLP]

4.   Bill Francis / May be called
     Clermont, Florida [c/o Friedman Dumas & Springwater, LLP]

# TAB 8

# LEXMARK'S DEPOSITION DESIGNATIONS

Lexmark makes the following deposition transcript designations. Lexmark reserves the right to make additional designations for witnesses identified by Plaintiff as "Will Call" who do not appear for live testimony at trial. Lexmark reserves the right to make counter-designations to Third-Party Defendant's designations, and also reserves the right to use any transcript for rebuttal, impeachment or other purposes permitted by the Federal Rules of Civil Procedure.

## JOHN ALAN DUGAN:

| Page:Line | Page:Line |
|---|---|
| 6:7 – 10 | 76:18 – 76:19 |
| 11:22 – 12:10 | 76:22 |
| 17:21 – 21:10 | 76:24 – 78:16 |
| 22:19 – 25 | 79:5 – 8 |
| 25:22 – 26:10 | 79:10 – 11 |
| 28:14 – 29:24 | 79:13 – 16 |
| 35:16 – 36:11 | 80:15 – 22 |
| 36:23 – 24 | 81:6 – 8 |
| 37:3 – 6 | 83:2 – 84:14 |
| 38:5 – 13 | 87:11 – 20 |
| 39:2 – 40:2 | 88:5 |
| 46:20 – 48:7 | 91:22 – 25 |
| 48:11 – 18 | 92:2 – 93:9 |
| 48:24 – 49:6 | 95:9 – 96:24 |
| 57:7 – 58:1 | 105:17 – 107.16 |
| 72:3 – 20 | 115:12 – 16 |
| 73:4 – 74:21 | 118:15 – 19 |
| 75:4 – 75:13 | 118:24 – 119:20 |
| 75:16 | |

## LEON KERKMAN:

| Page:Line | Page:Line |
|---|---|
| 6:8 – 9 | 56:5 – 19 |
| 11:7 – 18 | 57:11 – 58:8 |
| 12:6 – 13:21 | 60:24 – 61:3 |
| 14:16 – 16:8 | 63:25 – 64.4 |

| | |
|---|---|
| 30:25 – 31:16 | 64:5 – 13 |
| 48:24 – 49:9 | |

**JOHN T. FRASCA:**

| **Page:Line** | **Page:Line** |
|---|---|
| 8:9 – 11 | 48:15 – 16 |
| 8:19 – 9:17 | 49:14 – 17 |
| 11:15 – 12:21 | 49:19 – 50:1 |
| 14:12 – 14 | 50:5 – 22 |
| 15:2 – 12 | 53:2 – 53:14 |
| 16:1 – 21 | 53:20 – 54:22 |
| 26:25 – 27:4 | 55:23 – 56:2 |
| 29:18 – 30:2 | 57:3 – 7 |
| 31:21 – 32:1 | 57:9 – 58:16 |
| 32:25 – 33:11 | 59:5 – 20 |
| 33:17 – 21 | 59:23 – 60:13 |
| 35:9 – 11 | 66:20 – 68:17 |
| 39:5 – 40:4 | 69:5 – 70:22 |
| 41:15 – 42:3 | 70:10 – 22 |
| 42:10 – 21 | 71:2 – 6 |
| 43:22 – 44:5 | 71:9 – 10 |
| 46:9 – 14 | 71:12 – 72:4 |
| 47:2 – 48:12 | 72:23 – 73:8 |

**NANCY PEARSON:**

| **Page:Line** | **Page:Line** |
|---|---|
| 6:8 – 10 | 25:14 – 17 |
| 7:12 – 8:10 | 25:20 – 22 |
| 10:10 – 11:1 | 26:20 – 27:17 |
| 11:5 – 19 | 27:23 – 28:19 |
| 12:8 – 22 | 30:3 – 11 |
| 13:1 – 24 | 32:17 – 21 |
| 16:16 – 19:1 | 34:10 – 25 |
| 19:7 – 24 | 40:12 – 20 |
| 20:3 – 21:1 | 47:1 – 6 |
| 21:9 – 18 | 49:15 – 52:7 |
| 24:15 – 20 | 54:19 – 55:3 |
| 25:1 – 3 | |

**KAREN WALLINGFORD:**

| **Page:Line** | **Page:Line** |
|---|---|
| 6:17 – 19 | 21:24 |
| 14:2 – 15:18 | 24:23 – 25:4 |

16:3 – 9
21:1 – 5
21:15 – 16
21:18 – 20

25:7 – 11
25:21 – 26:6
48:14 – 23

## JAY SAMUELSON:

**Page:Line**
7:8 – 10
15:5 – 12
15:24 – 16:10
17:23 – 18:24
19:7 – 13
20:1 – 6
20:14 – 21
22:3 – 24:21
25:3
25:5 – 6
25:11 – 15
26:11 – 27:4
29:8 – 11
29:15
29:17 – 21
30:4 – 21
32:9 – 33:11
33:14 – 34:5
34:12 – 24
35:9 – 36:3
36:7 – 17
36:20 – 38:23
39:1 – 40:4
41:12 – 42:11
43:1 – 44:22
44:9 – 45:3
45:15 – 23
45:25 – 46:7

**Page:Line**
54:9 – 13
58:19 – 25
59:3 – 19
59:21 – 24
60:24 – 61:5
61:23 – 62:14
63:16 – 64:5
65:22 – 67:7
74:12 – 16
77:13 – 78:1
78:5
78:7 – 9
78:12 – 13
78:18 – 22
79:9 – 18
79:23 – 80:18
80:21 – 81:8
81:11 – 83:11
83:18 – 21
84:1 – 2
96:12 – 14
96:22 – 97:3
98:5 – 24
99:4 – 100:3
100:18 – 103:5
104:20 – 105:2
113:2 – 15

## BEN K. WELLS:

**Page:Line**
8:3 – 6
11:3 – 7
11:11 – 13
11:18 – 13:6
14:2 – 15
49:18 – 25

**Page:Line**
61:6 – 8
61:14 – 22
63:4 – 13
61:14 – 22
63:4 – 13
66:13 – 67:1

50:6 – 51:5
51:11 – 52:8
52:12 – 17
53:1 – 25
54:1 – 2
54:21 – 55:20
59:11 – 12
59:15 – 60:8
61:6 – 8

67:8 – 69:10
72:20 – 73:9
73:10 – 25
74:8 – 12
74:15 – 25
75:9 – 15
76:1 – 9
76:15 – 77:3

**SUSAN WILLETTS:**

**Page:Line**
8:21 – 24
13:19 – 14:18
16:22 – 22:1
22:10 – 25:1
26:1 – 20
27:3 – 11
27:18 – 28:2
29:18 – 31:14
31:18 – 32:5
32:13 – 33:12
34:7 – 11
36:7 – 38:8
38:20 – 39:5
40:2 – 7
40:9 – 11
40:15
40:17 – 41:4
41:8 – 42:4
42:8 – 43:23
44:6 – 45:4

**Page:Line**
46:12 – 19
47:3 – 48:1
48:10 – 49:4
49:13 – 50:21
51:12 – 52:2
52:13 – 24
53:1 – 8
53:15 – 24
54:14 – 55:3
55:20 – 56:13
57:18 – 60:8
60:11
60:13 – 63:3
63:17 – 64:3
65:16 – 66:1
66:17 – 67:10
68:2 – 5
68:17 – 69:5
74:15 – 77:5

**ROBERT M. WOOD:**

**Page:Line**
7:2 – 5
11:12 – 25
12:2 – 9
12:20 – 25
13:2 – 12
13:24 – 25
14:3 – 17
14:23 – 25
15:2 – 14

**Page:Line**
78:25 – 79.14
80:21 – 23
80:25
81:2 – 3
81:6 – 11
81:24 – 25
82:2 – 15
82:19 – 22
82:24 – 25

15:16 – 25
16:2 – 4
16:7 – 25
17:2 – 5
20:16 – 24
21:2
21:19 – 25
22:2 – 6
22:9 – 10
23:2 – 4
23:7 – 14
24:24 – 25
25:2 – 12
25:21 – 25
26:2 – 6
29:7 – 10
29:14 – 25
30:2 – 4
32:2 – 25
33:5 – 15
33:18 – 24
34:2 – 17
35:7 – 19
45:20 – 25
46:2 – 12
46:23 – 24
47:2 – 13
47:22 – 25
48:2 – 6
48:10 – 13
48:17 – 23
50:8 – 10
50:17 – 25
51:3 – 12
54:12 – 25
55:2 – 3
58:7 – 18
59:5 – 6
59:8 – 9
59:15 – 22
60:2 – 25
61:2 – 4
61:18 – 20
61:23 – 25
62:2 – 3
62:11 – 25

83:2 – 6
83:11 – 25
84:2 – 6
84:11 – 22
84:24 – 25
85:2 – 3
85:5 – 25
86:2 – 7
86:9 – 14
86:16 – 23
86:25
87:2 – 11
87:13 – 88:6
89:19 – 25
90:2 – 10
90:14 – 25
91:2 – 23
96:8 – 25
97:2 – 8
97:10 – 15
97:17 – 18
98:18 – 23
98:25
107:22 – 25
108:2 – 8
108:21 – 25
109:3
109:18 – 20
109:24 – 25
110:2 – 9
110:12 – 25
111:2 – 5
111:21 – 25
112:2 – 14
112:16 – 21
112:23 – 25
113:2 – 4
113:6
129:4 – 20
129:22 – 25
130:2 – 6
130:8 – 23
130:25
131:2 – 9
131:11
137:14 – 20

| | |
|---|---|
| 63:2 | 137:22 – 25 |
| 63:18 – 25 | 138:2 – 5 |
| 64:2 – 25 | 138:20 – 25 |
| 65:2 – 4 | 139:2 – 7 |
| 65:15 – 22 | 139:9 – 21 |
| 72:23 – 25 | 139:23 – 25 |
| 73:2 – 4 | 140:2 – 14 |
| 73:6 – 10 | 140:16 – 21 |
| 73:21 – 24 | 140:24 |
| 74:2 – 10 | 141:17 – 25 |
| 75:17 – 20 | 142:2 – 3 |
| 76:23 – 25 | 142:5 – 25 |
| 77:2 – 24 | 143:2 – 4 |
| 78:2 – 17 | 143:6 – 11 |

**SCOTT SIMMELINK:**

| **Page:Line** | **Page:Line** |
|---|---|
| 6:8 – 10 | 23:11 – 16 |
| 18:13 – 20 | 35:11 – 20 |
| 19:2 – 4 | 35:23 – 24 |
| 20:22 – 21:8 | |

**NONDAS (NONI) L. VITOLS:**

| **Page:Line** | **Page:Line** |
|---|---|
| 6:13 – 15 | 9:15 – 10:25 |
| 7:24 – 8:7 | 12:21 – 13:7 |
| 9:1 – 11 | 13:24 – 14:3 |

**LAZARUS KRIKORIAN:**

| **Page:Line** | **Page:Line** |
|---|---|
| 80:5 – 16 | |

**RICHARD C. OSHLO, JR.:**

| **Page:Line** | **Page:Line** |
|---|---|
| 6:15 – 17 | 78:22 – 80:8 |
| 17:13 – 17 | 80:18 – 21 |
| 17:21 – 18:7 | 81:2 – 25 |
| 18:12 – 19:7 | 82:7 – 11 |
| 20:7 – 18 | 82:15 – 17 |
| 20:22 – 23 | 83:21 – 84.4 |
| 23:4 – 5 | 90:23 – 91:22 |
| 23:8 – 24:16 | 91:1 – 92:9 |

24:25 – 25:13
27:17 – 23
35:3 – 4
35:7
35:9 – 12
35:15
35:25 – 36:3
40:22 – 42:8
42:11 – 43:23
44:1
44:8 – 11
47:21 – 48:15
48:25 – 49:6
49:9 – 25
50:2 – 11
50:18 – 23
51:1
51:8 – 52:16
52:19 – 53:1
53:12 – 16
53:20 – 54:4
54:17 – 55:1
55:18 – 56:12
56:18 – 24
57:2 – 13
57:21 – 58:1
58:11 – 59:9
67:10 – 69:4
69:7 – 24
70:3 – 71:24
74:2 – 10

92:15 – 92:19
93:2 – 4
93:9
93:25 – 94:11
95:5 – 13
96:9 – 22
96:24 – 97:11
97:15 – 21
98:13 – 99:10
99:19 – 100:2
102:7 – 19
103:3 – 12
110:24 – 111:25
112:6 – 23
114:5 – 13
114:17 – 20
114:24
115:2 – 6
115:11
128:21 – 129:21
139:5 – 140:20
141:12 – 15
141:18
151:19 – 153:4
153:9
193:20 – 194:22
237:15 – 19
238:4 – 8
245:25 – 246:5
246:10 – 11
248:13 – 16

## WILLIAM FRANCIS:

**Page:Line**
7:15 – 16
9:24 – 10:5
10:9 – 11:11
11:14 – 16
11:24 – 12:10
12:22 – 13:11
14:6 – 12
15:6 – 16
15:20 – 23
16:2 – 13
17:1

**Page:Line**
27:4 – 28:12
29:23 – 30:4
30:5 – 11
30:16 – 19
34:25 – 35:21
39:21 – 40:13
40:17 – 41:23
44:5 – 22
47:23 – 48:9
51:5 – 14
52:24 – 53:3

17:6 – 21:15
23:11 – 24:24
25:14 – 23
26:3 – 22

54:21 – 25
55:5 – 8
56:2 – 5
56:8 – 23

## GERALD A. GAGLIARDI:

**Page:Line**
9:7 – 11:11
13:8 – 20
15:22 – 24
16:7 – 10
16:12 – 17:3
17:20 – 18:19
18:24 – 19:21
21:14 – 25:4
26:8 – 29:4
29:6 – 30:12
30:14 – 31:24
32:9 – 23
33:18 – 35:5
35:12 – 39:5
40:1 – 16
40:18 – 24
41:6 – 15
43:21 – 45:6
47:17 – 48:3
48:5 – 50:3
52:6 – 54:10
54:12 – 19
54:21 – 55:11
55:14 – 57:9
57:20 – 58:19
58:21
60:10 – 61:7
62:1 – 11
62:13 – 64:1
64:3 – 65:4
67:4 – 71:9
71:11 – 73:4

**Page:Line**
73:11 – 74:17
74:23 – 76:4
76:6 – 78:19
79:2 – 81:24
83:8 – 87:17
87:19 – 88:4
89:13 – 90:22
91:3 – 102:20
102:23 – 108:4
108:17 – 112:9
112:11 – 113:14
116:20 – 21
116:23 – 129:23
130:1 – 131:7
131:18 – 135:20
135:22 – 136:16
137:13 – 139:6
139:13 – 140:21
141:8 – 142:20
143:3 – 147:11
148:19 – 155:17
156:13 – 161:14
161:24 – 162:10
181:5 – 184:12
185:6 – 188:6
189:13 – 190:4
190:23 – 191:7
195:14 – 196:16
196:18 – 197:4
207:20 – 209:4
210:8 – 16

## ROBERT KENDRICK:

**Page:Line**
70:1 – 6

**Page:Line**
89:19 – 23

### DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DESIGNATIONS

1.     Lexmark objects to HP's designation of any deposition transcript for any witness that Plaintiff has designated as "Will Call," and which Plaintiff has therefore represented will be available to provide live testimony during trial.  *See* Fed. R. Civ. P. 32 (a).

2.     Lexmark reasserts any and all objections raised by counsel for Ingram Entertainment, Lexmark International, Tech Data Corporation, Dell, Inc., or any other defendant, on the record and in response to a question asked by opposing counsel.

3.     Lexmark retains the right to require HP to offer into evidence any part of any transcript designated by HP which ought in fairness be considered by the trier of fact.  Lexmark further retains the right to offer any other part of any transcript designated by HP.  Fed. R. Civ. P. 32(a)(4).

4.     Lexmark reserves the right to object at the trial or hearing to the receipt in evidence of any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying.  Fed. R. Civ. P. 32(b).

# TAB 9

## HP'S DEPOSITION DESIGNATION

1. William Schuette (February 15, 2005)

6:25 – 7:4
12:9 – 13:17
14:16 – 18
16:16 – 25
17:15 – 18:8
30:11 – 34:18
39:20 – 54:2
56:3 – 10
58:23 – 59:8
60:8 – 17
67:7 – 72:9
75:16 – 78.5
79:22 – 80:25
88:1 – 90:20
95:1 – 97:8

2. Robert Kendrick (February 15, 2005)

7:16 – 9:7
13:19 – 14:21
27:22 – 29:6
32:12 – 33:8
40:13 – 41:22
53:17 – 56:21
59:8 – 60:7
70:6 – 71:15
77:3 – 25
83:17 – 85:12
95:25 – 96:19
96:20 – 98:16
100:1 – 102:19
103:21 – 104:14
108:5 – 9
111:2 – 20

3. Todd Pinkston (February 15, 2005)

5:6 – 20
7:13 – 20
9:13 – 24
12:1 – 6
16:25 – 17:5
20:19 – 22:7

|   | 24:8 – 26:11 |
|---|---|
|   | 31:15 – 23 |
|   | 32:19 – 33-6 |
|   | 33:22 – 34:13 |
|   | 40:10 – 41:5 |

4.  Richard Oshlo (March 20, 2005)

14:15 – 15:15
17:21 – 20:23
74:1 – 76:20
78:20 – 80:21
133:20 – 134:21
139:5 – 21
146:24 – 148:20
161:2 – 164:19
177:24 – 183:23
189:15 – 191:9
191:15 – 192:9

HP reserves the right to designate portions of the deposition transcripts of Kevin Sarkisian, John Frasca, Noni Vitols, and Bill Francis to be read at trial in rebuttal to such page-and-line designations as may be made by Lexmark.

# TAB 10

## MOTIONS *IN LIMINE*

A. Lexmark

    1. Lexmark's Motion in Limine to Exclude Testimony of Chris Anderson

B. HP

    1. Hewlett-Packard Company's In Limine to Exclude Evidence of Alleged Guaranty Based on Francis Letter

    2. Hewlett-Packard Company's In Limine to Exclude Testimony of Kevin Sarkisian Regarding Compaq's Alleged Assumption of Liabilities or Guaranty

    3. Hewlett-Packard Company's In Limine to Exclude Evidence Related to Lexmark International, Inc.'s Claims as a Third-Party Beneficiary

X:\Bankruptcy\Lexmark - 4155\InaCom - 111997\ELP\HP Pretrial Order Revised2.DOC