EXHIBIT D

# ORIGINAL

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

In re:  INACOM CORP., et al.,
------------------------------------x
INACOM CORP., on behalf of all
affiliated Debtors,

                Plaintiff,

      -against-

TECH DATA CORP.,

            Defendant.
------------------------------------x

Civ Act No.
04-148 GMS
Adversary No.
02-03496 PJW

INACOM CORP., on behalf of all
affiliated Debtors,

                Plaintiff,

      -against-

DELL COMPUTER CORPORATION,

            Defendant.
------------------------------------x

Civ Act No.
04-582 GMS
Adversary No.
02-03499 PJW

INACOM CORP., on behalf of all
affiliated Debtors,

                Plaintiff,

      -against-

LEXMARK INTERNATIONAL, INC.,

            Defendant.
------------------------------------x

Civ Act No.
04-583 GMS
Adversary No.
02-03500 PJW

INACOM CORP., on behalf of all
affiliated Debtors,

                Plaintiff,

      -against-

INGRAM ENTERTAINMENT, INC.,
successor in interest to
NASHVILLE COMPUTER LIQUIDATORS,

            Defendant.
------------------------------------x

Civ Act No.
04-593 GMS
Adversary No.
02-03960 PJW

July 28, 2005

5:19 p.m.

Deposition of RICHARD A. WHALEN

**Computer Reporting Incorporated** CRI

501 Fifth Avenue  New York, NY 10017
(212) 986-1344  Fax (212) 983-9149  www.crinyc.com

2

July 28, 2005

5:19 p.m.


        Deposition of RICHARD A. WHALEN, held

at the offices of Pachulski Stang Ziehl

Young Jones & Weintraub, 780 Third Avenue,

New York, New York, pursuant to Agreement,

before John Ianno, Jr., a Notary Public of

the State of New York.

3

A P P E A R A N C E S:


PACHULSKI STANG ZIEHL YOUNG

JONES & WEINTRAUB

Attorneys for Plaintiff

      10100 Santa Monica Blvd.

      Los Angeles, California 90067-4100

BY:   ANDREW W. CAINE, ESQ.,

          of Counsel


ADORNO & YOSS, LLP

Attorneys for Tech Data Corp.

      350 East Las Olas Boulevard

      Ft. Lauderdale, Florida 33301

BY:   STEPHEN HUNT, ESQ.,    (By Telephone)

          of Counsel

A P P E A R A N C E S: (Cont'd):


HUGHES LUCE LLP

Attorneys for Dell Computer Corp.

    111 Congress Avenue   Suite 900

    Austin, Texas 78701

BY:   H. ROBERT POWELL, ESQ.,

       of Counsel



STOLL KEENON & PARK LLP

Attorneys for Lexmark International

    400 West Market Street

    Louisville, Kentucky 40202-3377

BY:   CULVER V. HALLIDAY, ESQ.,

       of Counsel

A P P E A R A N C E S: (Cont'd):


SHEPPARD MULLIN RICHTER & HAMPTON LLP

Attorneys for Ingram Entertainment

     650 Town Center Drive  4th Floor

     Costa Mesa, California 92626-1993

BY:   JONATHAN P. HERSEY, ESQ.,

         of Counsel


BLANK ROME LLP

Attorneys for Executive Sounding Board

     One Logan Square

     Philadelphia, Pennsylvania 19103-6998

BY:   EARL M. FORTE, ESQ.,

         of Counsel


ALSO PRESENT:

     DEAN VOMERO

     JASON FENSTERSTOCK


*COMPUTER REPORTING INC.*
*(212) 986-1344*

1

2      **R I C H A R D   A.   W H A L E N,**

3          called as a witness, having been first duly

4          sworn by the Notary Public (John Ianno, Jr.),

5          was examined and testified as follows:

6      **EXAMINATION BY**

7      **MR. CAINE:**

8          Q.    Could you please state your name.

9          A.    Richard Whalen.

17:18:59 10          Q.    Have you ever had your deposition

11      taken before?

12          A.    Yes.

13          Q.    On how many occasions?

14          A.    I believe twice.

17:19:06 15          Q.    When was the last time you had your

16      deposition taken?

17          A.    Last one was November of 2004.

18          Q.    What was the subject matter of that

19      deposition?

17:19:13 20          A.    It was a -- as an expert, it was a

21      valuation case, valuation of an internet-based

22      bank.

23          Q.    Was that in the context of litigation?

24          A.    Yes.

17:19:28 25          Q.    Where was the litigation based?

34

**R. Whalen**

1

2    Merger Stat did not hand us Entex as a

3    possibility.

4              Could be something else.  Could be the

17:57:16  5    fact there wasn't enough information to make the

6    database, but it did hand us a bunch of other

7    transactions that we whittled down to the 14 best,

8    and that's what depicted in our transactions.

9         Q.    The third area of the opinion that you

17:57:42  10   mention with respect to the Bridge May 27 report

11   is with respect to general valuation methodologies

12   and commonly accepted practices, and I think you

13   mentioned in that area whether you use post

14   valuation date data -- did I state that correctly?

17:58:00  15        A.    I think that's -- yes, I think that's

16   accurate.

17        Q.    What you are your opinions in this

18   area?

19        A.    It is not my opinion, but what I

17:58:11  20   have -- let me just say that popular opinion or

21   valuation theory says that when you are standing

22   there on a certain valuation date, you must use

23   information reasonably available as of that date.

24   The definition of fair market value is a willing

17:58:27  25   buyer, willing seller, reasonable knowledge and no

1                         **R. Whalen**

2      compulsion to buy or to sell.

3                 Reasonable knowledge means I could

4      have reasonably known this fact on this date.  You

17:58:39  5    can use that -- in this example, financial

6      statements at times, if you are doing a valuation

7      as of December 31st, you know the final audit

8      didn't come out until March, financials weren't

9      really assembled in that manner on December 31st,

17:58:54  10   you weren't sitting there nice and pretty.

11     However, the numbers existed, and I suppose if the

12     auditors worked hard enough, the financials could

13     have existed on that date.

14                So I guess there are -- that's one of

17:59:07  15   the examples I can offer you, where something

16     that -- where that is stretched, I suppose, but

17     the reason I bring that up is in reading this for

18     the first time, there were a lot of things in here

19     that occurred after the valuation date, that I

17:59:25  20   didn't -- I wouldn't have checked or looked into,

21     or thought about really, would have dismissed them

22     because they aren't -- against the rules to

23     include them.

24                Q.   Is whether something reasonably could

17:59:46  25   have been known on or before the valuation date a

1                          *R. Whalen*

2        matter of judgment?

3                A.      The answer with many, many things, I

4        suppose -- well, financial statements and some of

17:59:59  5        these things are quite quantitative, if a

6        financial event occurs, or I can give you example

7        of other kinds of events that effect the

8        marketplace.

9                Price of soybeans for Cargill, that

18:00:13  10       comes out on March 13, the price of their division

11       is different on March 11 versus March 15, because

12       that price changed.  Could they have reasonably

13       known that was going to occur on March 11?  If

14       they did, then they should have take that into

18:00:29  15       account, and if they knew the report was going to

16       come out from the government with a different

17       price -- trying to think of an example for you.

18               Q.      Let me ask the question in this way:

19       Is it the province of the person performing the

18:00:46  20       valuation to exercise their judgment as to whether

21       to consider certain information because it may or

22       may not have been reasonably foreseeable or could

23       have been known prior to the valuation day?

24               A.      Like many other things, I suppose

18:01:07  25       sometimes it can fall into the judgment of the

37

**R. Whalen**

1
2    appraiser, but some things are very, very
3    clear-cut.
4        Q.    If you are valuing a company at a date
18:01:17  5    in the past, and much like the information that
6    might be contained in a financial statement as of
7    a certain date, that's prepared sometime
8    thereafter, is it inappropriate to use information
9    reported after the valuation date, regarding facts
18:01:39 10    that occurred before the valuation date?
11        A.    You have to decide whether or not
12    those facts were known.  Reasonable knowledge,
13    that's part of the definition of the fair market
14    value, reasonable knowledge.  That means a
18:01:53 15    reasonable investor, willing buyer in this case,
16    would the willing buyer have known this.
17            If a corporate insider has knowledge
18    in their head three days before a corporate event,
19    and doesn't tell anybody, you can't use that
18:02:06 20    information, even if two weeks later they say I
21    was really thinking that at that barbecue on
22    Sunday, should have told somebody.
23            You can't use that data.
24        Q.    A willing buyer is going to want as
18:02:21 25    complete information as possible?

1                         **R. Whalen**

2          A.      Of course.

3          Q.      And depending upon the nature of the

4    asset, likely to do extensive due diligence?

18:02:30  5          A.      As best they can, yes.

6          Q.      Let me give you an example in this

7    case.  The Blackstone Group did projections in May

8    of 2000.  Have you seen those?

9          A.      I don't think so.

18:02:48 10          Q.      Just assume the following:  They did

11   projections for Inacom Service Systems in May of

12   2000 that included data, actual data prior to

13   April 22.  Is that --

14          A.      Historical data.

18:03:07 15          Q.      Yes, is that something that should be

16   considered for a valuation done as of April 22nd?

17          A.      You mean should another -- Blackstone

18   should have considered that data?

19          Q.      Sorry, I didn't ask the question

18:03:22 20   clearly enough.

21          A.      You are saying --

22          Q.      A Blackstone report that includes

23   projections for Inacom based on historical data

24   for the time period prior to April 22nd, should

18:03:36 25   that be used by someone trying to value Inacom as

1                         **R. Whalen**

2      of April 22nd?

3           A.    No, and I'll tell you why.

4      Blackstone's opinion and their thinking and all of

18:03:48  5  the judgment that went into it, you just told me

6      occurred in May of 2000.

7           Q.    Yes.

8           A.    The mosaic of facts that they used to

9      do whatever it was they did, and I apologize if I

18:04:02 10  should recall what they did, or if I have seen it,

11      I don't think I reviewed it in this process, that

12      the mosaic of opinions that they would have put

13      out there, or thinking that they would have used

14      to perform whatever tasks they performed, was

18:04:18 15  based on facts in evidence in May, not April 17 or

16      April 22nd.

17           Q.    In an order to prepare their

18      projection, if the only data they used was data

19      that was available as of April 22nd, would you

18:04:43 20  still have the same opinion?

21           A.    Yes, because they are doing their work

22      in May.  What you are saying is -- they started

23      and stopped their work on a day in May and didn't

24      think about anything --

18:04:59 25           Q.    No -- I understand your answer, let me

40

1                    **R. Whalen**

2        ask a different way, or a different question.

3        Should the analyst trying to value Inacom as of

4        April 22 use the historical data contained in a

18:05:14   5    Blackstone report done in May, if it is historical

6        data for prior to April 22?

7            A.    The analyst should use every piece of

8        data they can get their hands on.  When you say

9        use, that means consider.

18:05:28  10        Q.    Yes.

11            A.    Try and acquire and think about, if

12        they think that some of the data is tainted by

13        post valuation data, they might consider it and

14        throw it out.

18:05:43  15        Q.    So the analyst should look at

16        available information, even if it came out after

17        the valuation date --

18            A.    What I'm assuming --

19            Q.    Let me finish the question.  If it

18:06:00  20    includes information that reasonably could have

21        been known prior to the valuation date?

22            A.    Let me qualify what I just said.  You

23        wouldn't consider something that came out in May,

24        that's after the valuation date.  I thought what

18:06:11  25    you were describing is something that came out in

**R. Whalen**

2      May and used some data that was around in March,

3      that you knew about, you could have gotten from

4      some other source.

18:06:23    5           It was sitting there, and you found

6      it, so whether the data found its way into your

7      hand, because you did due diligence and you found

8      this data in March, or some other report that was

9      done later on pointed you towards it, I'm not sure

18:06:39   10     that matters to me, because they are pointing at

11     data that was around in March.

12          Q.     The Inacom April 22, 2000 balance

13     sheet was something that you used in preparing

14     your report; correct?

18:06:54   15          A.     Right, yes.

16          Q.     Was that prepared after April 22nd?

17          A.     I believe so.

18          Q.     Do you know when it was prepared?

19          A.     I don't know, I don't recall.

18:07:08   20          Q.     It was prepared sometime after April

21     22?

22          A.     I think so, yes.

23          Q.     It is okay to use that why?

24          A.     Because the data was there on April

18:07:18   25     22nd, and I do know that we did not have many,

*COMPUTER REPORTING INC.*
*(212) 986-1344*

1          **R. Whalen**

2      many choices.  There was what, a March 25 balance

3      sheet and an April 22 balance sheet, and we were

4      trying to get a value as of April 17, so we chose

18:07:32   5      the 22nd because it was closer.

6          Q.    I'm not quibbling with your choice of

7      which balance sheet to use.

8          A.    There is a difference, though, between

9      a valuation firm coming in, in May, and giving an

18:07:46  10      opinion on financials, and a balance sheet data

11      sitting on a piece of paper.  Balance sheets are

12      not supposed to be opinions of this and that, in

13      fact they are not even opinions sometimes of the

14      fair value of things, because there is historical

18:08:01  15      cost reporting for assets, and it is an opinion of

16      what the cash is in the checking account and all

17      that.  I suppose that's an opinion, but it is

18      backed up by fact.

19          Q.    Let's assume for the moment that the

18:08:16  20      Inacom April 22 balance sheet was completed the

21      same day as Blackstone's report came out, sometime

22      in May.

23          A.    Okay.

24          Q.    The data that was used to prepare the

18:08:27  25      April 22 balance sheet was also used in the

43

**R. Whalen**

2  Blackstone report.  Would it be appropriate to

3  consider the information in the Blackstone report?

4       A.    You don't need it, you already have

18:08:42  5  it.  You mean that particular balance sheet and

6  those balances, current assets, $10, fixed assets,

7  $12.

8       Q.    There may be additional data

9  underlying the balance sheet that's contained in

18:08:53 10  the Blackstone report that you don't see in the

11  balance?

12       A.    I suppose if it is factual data that

13  was around on the valuation date, then I'm

14  thinking no matter where it comes from, you should

18:09:06 15  consider it.  There is a difference between

16  creating a report with all the judgment that goes

17  into it, and the thinking cap on in May of 2000,

18  which is different than perhaps a thinking cap in

19  April, or March, or February.  The difference

18:09:26 20  between assertions made in a report and financial

21  statement data on a page.  Maybe that's where we

22  are diverging here.

23       Q.    We are not, I'm just trying to

24  understand your opinion.

18:09:42 25       A.    I think in general wherever you can

1                    *R. Whalen*

2    get information that was reasonable knowledge by a

3    willing buyer as of the valuation date, and you

4    should endeavor to get as much information as they

18:09:53  5    can, but things that are put out there, published,

6    become public or become available after the

7    valuation date, you can't use, you can't consider

8    them, unless you pick a new valuation date.

9         Q.    Let's say hypothetically you have a

18:10:25  10   valuation date of June 30?

11        A.    Okay.

12        Q.    And the most recent projection you

13   have in order to perform your analysis, have been

14   completed on January 1st, and those projections

18:10:40  15   relied on actual data prior to January 1st?

16        A.    And the thinking on January 1st.

17        Q.    Right.

18             **MR. POWELL:**  Which January 1st?

19             **MR. CAINE:**  Of the same year.

18:10:52  20             **THE WITNESS:**  Before.

21        Q.    You would use those January 1st

22   projections in preparing your valuation as of June

23   30?

24        A.    Yes, or what I would try and do is

18:11:03  25   update those projections, make sure they are

45

**R. Whalen**

2  either still valid, trying to get the interim

3  financial statements from January to June,

4  internal whatever they had, to try and say this

18:11:16  5  was your opinion in January, I need your opinion

6  on June 30, what did you learn during those six

7  months, what happened to the business during those

8  six months, and would your opinion of these

9  projections which will go out a few years into the

18:11:28  10  future, has it changed.

11       Q.   Let's assume the next set of

12  projections that come from the company are put out

13  on July 1st, the date after your valuation date,

14  projecting for the same time period that's got

18:11:44  15  maybe another six months out, and relying on

16  actual data between January 1 and June 30, you

17  wouldn't use those?

18       A.   Can't, it is not allowed.  Now,

19  remember what I said though, what I said was I'm

18:11:59  20  going to try and get -- figure out what everyone

21  was thinking on June 30, update the January

22  projections.  So I would imagine if I did a good

23  job updating the January projections to June, I

24  would have been thinking most of the things they

18:12:14  25  were thinking -- see what your example, and let's

*R. Whalen*

say it was only a one day period, but it was

September 10 and September 11 of the year 2001 and

it is only two days apart, and on September 10 I'm

18:12:29  5  using some projections from six months ago, trying

to update them to 9/10, and there is a certain

picture of the world, and that's the picture I

have to use.  It is a very different picture of

the world two days later, but I can't use it, it

18:12:45  10  is not allowed.

Q.    Under no circumstances is it allowed?

A.    Not allowed.

Q.    Even if you had no good data between

January 1 and June 30, with which to try and

18:13:10  15  update your projections?

A.    I would probably say can I pick July

2nd as my valuation date, because my analysis

would be a lot better, and if the purposes of the

deal allowed you to do that, you'd pick July 2nd

18:13:23  20  and then everybody is happy.

**MR. CAINE:**  Give me a minute.

(Discussion off the record.)

(Recess taken.)

**MR. CAINE:**  We are done, I have

18:18:20  25  nothing further.

1                        *R. Whalen*

2      **EXAMINATION BY**

3      **MR. POWELL:**

4            Q.      Mr. Whalen, I just have a couple of

18:20:09  5    questions for clarification, just so we make sure

6      that we have gotten your position correctly on the

7      record.

8                   Do you agree with the Bridge report

9      that the companies used in the Duff & Phelps/Sasco

18:20:28  10   Hill Advisors Inacom Corp. valuation analysis,

11     Exhibit 1, are not comparable to Inacom?

12           A.      Absolutely not, I don't agree with the

13     Bridge report saying they are not comparable.

14           Q.      Are you confident of your conclusion

18:20:49  15   that the companies set forth in your report, which

16     is Exhibit 1, are indeed comparable to Inacom for

17     the purposes for which you used them?

18           A.      Yes, they are.

19           Q.      I heard a question and answer that I'm

18:21:05  20   also wanting to clarify.  The question was

21     something like -- your answer was something to the

22     effect that it was not your opinion that the use

23     of post valuation data was permissible, and I

24     wanted to clarify, are you saying that in your

18:21:28  25   opinion, it is permissible to use post valuation

1                         *R. Whalen*

2      data, or it is inappropriate to use post valuation

3      date data?

4            A.    It is inappropriate to use post

18:21:42  5      valuation date data.  I may have been unclear

6      because I didn't want it to sound like that was

7      just my opinion, I think that's valuation rules.

8            **MR. POWELL:**  We reserve further

9            questions.

18:21:55 10      **FURTHER EXAMINATION**

11      **BY MR. CAINE:**

12            Q.    The valuation rules to which you

13      refer, where are they from?

14            A.    They are in most textbooks, Shannon

18:22:17 15      Pratt, third edition, if one does a Google search,

16      they can find it in many different places.

17      Shannon Pratt has a book called Valuing a

18      Business, it is one of the things you give the new

19      hires and say here, read this, kind of a

18:22:40 20      dictionary of business valuation, and there is a

21      section in there which stresses the importance of

22      using valuation data right at the valuation date.

23            I'm not sure which edition of Pratt

24      says don't go past your -- you know, it is one

18:22:58 25      thing to say don't use valuation data far afield

49

1                          *R. Whalen*

2      from your date, it is another thing to say you are

3      not allowed to use anything after the valuation

4      date; but there are many valuation texts.

18:23:52  5              **MR. CAINE:**  Read back the last answer.

6              (Record read.)

7         Q.    Are you saying at times it is

8      permissible to use data not far afield from the

9      valuation indicate?

18:23:59  10             (Continued on next page.)

11                          o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **R. Whalen**

2          A.      No, I'm saying there are two different

3    assertions in the valuation text, the more general

4    assertion is stick to your date, use data right

18:24:08  5    around your date, the more specific one and

6    valuation rule we have been talking about is you

7    can look at history, but you have to use all

8    reasonable knowledge as of the valuation date.

9             **MR. CAINE:**  Okay.  I have nothing

18:24:23  10        further.

11             **MR. POWELL:**  We reserve further

12        questions.

13             (Time Noted:  6:24 p.m.)

14

15             _____

16             RICHARD A. WHALEN

17

18    Subscribed and sworn to before me

19    this _____day of _____, 2005.

20

21    _____      _____

22    (Notary Public)          My Commission Expires:

23

24

25