Inacom vs. Tech Data                     3/2/2005                     WILLIAM FRANCIS

Page 1



```
 1              UNITED STATES DISTRICT COURT
                   DISTRICT OF DELAWARE
 2

 3

 4  IN RE:  INACOM CORP., ET AL.,

                                    CHAPTER 11
 5                 DEBTORS           BANKRUPTCY CASE
                                    NO. 00-2426 (PJW)
 6  _____

 7  INACOM CORP., ET AL.,

 8         PLAINTIFFS

 9     -VS-                         CIVIL ACTION
                                    NO. 04-CV-148 (GMS)
10  TECH DATA CORPORATION,

11         DEFENDANT

12  _____

    INACOM CORP., ET AL.,
13
           PLAINTIFFS
14
       -VS-                         CIVIL ACTION
15                                  NO. 04-CV-582 (GMS)
    DELL COMPUTER CORP.
16
           DEFENDANT
17  _____

18  INACOM CORP., ET AL.,

19         PLAINTIFFS

20     -VS-                         CIVIL ACTION
                                    NO. 04-CV-583 (GMS)
21  LEXMARK INTERNATIONAL, INC.

22         DEFENDANT

23  _____

24

25
```

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 2

1

2    INACOM CORP., ET AL.,

3              PLAINTIFFS

4         -VS-                              CIVIL ACTION
                                           NO. 04-CV-584 (GMS)
5    RESILIEN, INC.,

6              DEFENDANT

7    ---------------------------------

     INACOM CORP., ET AL.,
8
               PLAINTIFFS
9
          -VS-                              CIVIL ACTION
10                                         NO. 04-CV-593 (GMS)

11   INGRAM ENTERTAINMENT, INC.,

12             DEFENDANT

13   --------------------------------------------------

14

15                                    MARCH 2, 2005
                                      10:00 A.M.
16

17        THE DEPOSITION OF WILLIAM FRANCIS, TAKEN

18   PURSUANT TO NOTICE ON BEHALF OF THE DEFENDANT

19   AND THIRD-PARTY PLAINTIFF LEXMARK, AT THE

20   OFFICES OF DOWNTOWN REPORTING, 37 NORTH ORANGE

21   AVENUE, SUITE 500, ORLANDO, FLORIDA, BEFORE

22   CHRISTINE E. LE RETTE, REGISTERED PROFESSIONAL

23   REPORTER AND NOTARY PUBLIC, IN AND FOR THE

24   STATE OF FLORIDA AT LARGE.

25

Inacom vs. Tech Data                     3/2/2005                          WILLIAM FRANCIS

Page 3

```
 1   APPEARANCES:

 2

 3           ANDREW W. CAINE, ESQUIRE
             PACHULSKI, STANG, ZIEHL, YOUNG,
 4               JONES & WEINTRAUB
             10100 SANTA MONICA BOULEVARD
 5           11TH FLOOR
             LOS ANGELES, CALIFORNIA  90067-4100
 6           310-277-6910

 7                   REPRESENTING THE PLAINTIFF INACOM
                         CORP.
 8

 9           CULVER V. HALLIDAY, ESQUIRE
             STOLL, KEENON & PARK, LLP
10           2650 AEGON CENTER
             400 WEST MARKET STREET
11           LOUISVILLE, KENTUCKY  40202-3377
             502-568-9100
12
                     REPRESENTING THE DEFENDANT AND
13                       THIRD-PARTY PLAINTIFF LEXMARK.

14
             STEPHEN C. HUNT, ESQUIRE
15           ADORNO & YOSS, P.A.
             350 EAST LAS OLAS BOULEVARD, 17TH FLOOR
16           FORT LAUDERDALE, FLORIDA  33301
             954-766-7834
17
                     REPRESENTING THE DEFENDANT TECH DATA.
18

19           CECILY A. DUMAS, ESQUIRE
             FRIEDMAN, DUMAS & SPRINGWATER, LLP
20           ONE MARITIME PLAZA, SUITE 2475
             SAN FRANCISCO, CALIFORNIA  94111
21           415-834-3800

22                   REPRESENTING THE THIRD-PARTY DEFENDANT
                         COMPAQ COMPUTER/HEWLETT PACKARD
23

24

25
```

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

```
 1   APPEARANCES (CONT'D.):

 2

 3          PATRICK COLLINS, ESQUIRE   (VIA TELEPHONE)
            FARRELL FRITZ, P.C.
 4          EAB PLAZA
            UNIONDALE, NEW YORK  11556-0120
 5          516-227-0700

 6                REPRESENTING THE DEFENDANT
                      RESILIEN, INC.
 7

 8          JAMES LANDON, ESQUIRE  (VIA TELEPHONE)
            HUGHES & LUCA, LLP
 9          111 CONGRESS AVENUE, SUITE 900
            AUSTIN, TEXAS  78701
10
                  REPRESENTING THE DEFENDANT DELL
11                    COMPUTER CORPORATION.

12

13          EARL M. FORTE, ESQUIRE  (VIA TELEPHONE)
            BLANK ROME, LLP
            ONE LOGAN SQUARE
14          18TH & CHERRY STREETS
            PHILADELPHIA, PENNSYLVANIA  19103-6998
15
                  COUNSEL FOR STATUTORY COMMITTEE OF
16                    UNSECURED CREDITORS OF INACOM CORP.

17

18

19

20

21

22

23

24

25
```

Inacom vs. Tech Data                  3/2/2005                    WILLIAM FRANCIS

Page 5

```
 1                    TABLE OF CONTENTS
 2
 3   DEPOSITION OF WILLIAM FRANCIS
     MARCH 2, 2005
 4
```

```
 5   APPEARANCES                                    3,4
 6   STIPULATIONS                                    6
 7
     TESTIMONY OF WILLIAM FRANCIS
 8
         DIRECT EXAMINATION BY MR. HALLIDAY          7
 9       CROSS EXAMINATION BY MR. HUNT              36
         CROSS EXAMINATION BY MR. COLLINS           49
10       CROSS EXAMINATION BY MR. LANDON            60
         CROSS EXAMINATION BY MR. FORTE             62
11       CROSS EXAMINATION BY MS. DUMAS             64
         RECROSS EXAMINATION BY MR. COLLINS         68
12       CROSS EXAMINATION BY MR. CAINE             69
         RECROSS EXAMINATION BY MR. HUNT            70
13
14   CERTIFICATE OF REPORTER                        73
15   SUBSCRIPTION OF DEPONENT                       74
16              E X H I B I T S
17   FRANCIS EXHIBITS
     FOR IDENTIFICATION:
18
     NO. 1  2/16/00 LETTER, FRANCIS TO LEXMARK      17
19   NO. 2  2/17/00 LETTER, FRANCIS TO LOGICARE     27
     NO. 3  3/27/00 LETTER, VITOLS TO LOGICARE      28
20   NO. 4  2/16/00 LETTER, FRANCIS TO TECH DATA    39
```
```
21
22
23
24
25
```

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 6

```
 1

 2

 3

 4

 5                S T I P U L A T I O N S

 6

 7          IT IS HEREBY STIPULATED AND AGREED BY AND

 8     BETWEEN COUNSEL PRESENT FOR THE RESPECTIVE

 9     PARTIES AND THE DEPONENT THAT THE READING AND

10     SIGNING OF THE DEPOSITION BE EXPRESSLY RESERVED.

11

12                    *      *      *

13

14     KEY TO PUNCTUATION:

15

16

17     -- AT THE END OF QUESTION OR ANSWER DENOTES AN
          INTERRUPTION.
18
       ... DENOTES A TRAILOFF BY WITNESS AND NOT AN
19        INTERRUPTION.

20     UH-HUH.  DENOTES AN AFFIRMATIVE SOUND.
       HUH-UH.  DENOTES A NEGATIVE SOUND.
21

22

23

24

25
```

Inacom vs. Tech Data                     3/2/2005                        WILLIAM FRANCIS

Page 7

```
 1              P R O C E E D I N G S
 2         MR. HUNT:  I'LL JUST SAY FOR EVERYONE
 3    AGAIN THAT WE'RE HERE WITH MR. FRANCIS, THE
 4    DEPONENT.  ALSO PRESENT BESIDES THE REPORTER
 5    ARE CULVER HALLIDAY, MYSELF, STEVE HUNT, CECILY
 6    DUMAS AND ANDY CAINE.
 7         CAN EVERYONE HEAR US OKAY?
 8         UNIDENTIFIED SPEAKERS ON TELEPHONE:  YEAH.
 9         MR. HUNT:  OKAY.
10              WILLIAM FRANCIS,
11    HAVING FIRST BEEN DULY SWORN BY THE REPORTER,
12    THEREUPON, TESTIFIED AS FOLLOWS:
13              DIRECT EXAMINATION
14  BY MR. HALLIDAY:
15       Q.   COULD YOU PLEASE STATE YOUR NAME, SIR.
16       A.   WILLIAM J. FRANCIS.
17       Q.   MR. FRANCIS, GOOD MORNING.  MY NAME IS
18  CULVER HALLIDAY AND I AM AN ATTORNEY REPRESENTING
19  LEXMARK INTERNATIONAL, INC., WHICH IS A PARTY TO THE
20  LAWSUIT IN WHICH YOU ARE BEING DEPOSED.
21         HAVE YOU EVER BEEN DEPOSED BEFORE, SIR?
22       A.   NO, I HAVE NOT.
23       Q.   IF AT ANY TIME YOU WANT TO TAKE A BREAK
24  FOR ANY REASON, PLEASE LET US KNOW.
25       A.   OKAY.
```

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 8

```
 1        Q.    IF I ASK A QUESTION THAT IS DIFFICULT TO
 2   UNDERSTAND OR COMPREHEND, PLEASE FEEL FREE TO TELL ME
 3   SO AND I WILL TRY AND PUT IT TO YOU BETTER.
 4        A.    OKAY.
 5        Q.    ARE YOU REPRESENTED TODAY BY COUNSEL, SIR?
 6        A.    YES.
 7        Q.    AND WOULD THAT BE MS. DUMAS?
 8        A.    THAT'S CORRECT.
 9        Q.    WHERE DO YOU RESIDE, SIR?
10        A.    CLERMONT, FLORIDA.
11        Q.    DO YOU HAVE A COLLEGE DEGREE, SIR?
12        A.    NO.
13        Q.    DID YOU GRADUATE FROM HIGH SCHOOL, SIR?
14        A.    YES.
15        Q.    WHICH HIGH SCHOOL, SIR?
16        A.    WINDSOR LOCKS, CONNECTICUT.
17        Q.    I'M SORRY?
18        A.    WINDSOR LOCKS, CONNECTICUT.
19        Q.    WHEN DID YOU GRADUATE, SIR?
20        A.    1956.
21        MR. CAINE:  CAN WE GO OFF THE RECORD FOR A
22   SECOND?
23     (A DISCUSSION WAS HELD OFF THE RECORD.)
24   BY MR. HALLIDAY:
25        Q.    SIR, AFTER YOU GRADUATED FROM HIGH SCHOOL
```

Inacom vs. Tech Data                3/2/2005                WILLIAM FRANCIS

Page 9

1    DID YOU ATTEND ANY COLLEGE, TAKE ANY COLLEGE CREDITS

2    OR CLASSES?

3         **A.    UNIVERSITY OF HARTFORD ONE SEMESTER.**

4         Q.    WAS THAT THE END OF YOUR FORMAL EDUCATION?

5         **A.    YES.**

6         Q.    ARE YOU PRESENTLY EMPLOYED, SIR?

7         **A.    YES.**

8         Q.    WHO ARE YOU EMPLOYED BY, SIR?

9         **A.    MANHEIM AUTO AUCTIONS.**

10        Q.    WHEN DID YOU BEGIN YOUR EMPLOYMENT WITH

11   MANHEIM AUTO AUCTIONS?

12        **A.    JULY 2004, I THINK.**

13        Q.    WHAT IS YOUR POSITION?

14        **A.    I WORK ON SALE DAYS WITH BUYERS AS THEY**

15   **ENTER THE AUCTION TO GET THEM PREPARED TO BUY, GIVE**

16   **THEM THE APPROPRIATE PAPERWORK AND THEN WHEN THEY**

17   **HAVE COMPLETED THEIR WORK FOR THE DAY, CLOSE THEM**

18   **OUT, HANDLE THE PAPERWORK ON THE VEHICLES THEY**

19   **PURCHASED, TAKE THEIR MONEY.**

20        Q.    IS THAT WHAT YOU HAVE DONE THE WHOLE TIME

21   OF YOUR EMPLOYMENT WITH MANHEIM AUTO?

22        **A.    NO.    THE FIRST SIX MONTHS I WAS THERE I**

23   **ACTUALLY DROVE CARS FOR THEM.**

24        Q.    WHERE WERE YOU EMPLOYED BEFORE MANHEIM

25   AUTO AUCTIONS?

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 10

1       A.    COMPAQ COMPUTER IN HOUSTON, TEXAS.

2       Q.    WHEN DID THAT EMPLOYMENT BEGIN, SIR?

3       A.    I BELIEVE IT WAS MARCH 1999.

4       Q.    WHEN DID IT END?

5       A.    I BELIEVE IT WAS APRIL 2001, I BELIEVE.

6       Q.    BETWEEN APRIL 2001 AND JULY OF 2004 YOU

7  HAD NO OTHER EMPLOYMENT, SIR?

8       A.    NO.

9       Q.    WHERE DID YOU WORK IMMEDIATELY PRECEDING

10 YOUR EMPLOYMENT BY COMPAQ?

11      A.    I WORKED FOR AT & T AT DISNEYLAND FOR FIVE

12 YEARS -- DISNEY WORLD, EXCUSE ME.

13      Q.    WHAT DID YOU DO AT AT & T?

14      A.    I WORKED IN THE SPACESHIP EARTH AND EPCOT

15 LOCATIONS, INTERACTING WITH GUESTS, DEVELOPING

16 TRAINING AIDS FOR THE OTHER FOLKS WORKING THERE

17 REGARDING AT & T SERVICES AND PROVIDED INSTRUCTION ON

18 INTERNET CAPABILITY.

19      Q.    PRIOR TO AT & T WHERE WERE YOU EMPLOYED,

20 SIR?

21      A.    ACTUALLY WITH AT & T.  I STARTED WITH THEM

22 IN 1956 AND HAD AN EARLY RETIREMENT IN '94 AND THEN

23 WENT ON TO WORK AT DISNEY WORLD FOR THEM.

24      Q.    SO FROM THE TIME YOU GRADUATED FROM HIGH

25 SCHOOL APPROXIMATELY THROUGH 1994 YOU WERE EMPLOYED

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 11

```
 1   BY AT & T?
 2        A.    THAT'S CORRECT.
 3        Q.    AND THEN AFTER THAT YOU WERE EMPLOYED BY
 4   AT & T AT DISNEY WORLD ANOTHER --
 5        A.    FIVE YEARS.
 6        Q.    -- APPROXIMATELY FIVE YEARS?
 7        A.    CORRECT.
 8        Q.    AND THEN YOU WERE EMPLOYED BY COMPAQ --
 9        A.    UH-HUH.
10        Q.    -- FOR AN APPROXIMATE TWO YEARS, I GUESS?
11        A.    SOMETHING OVER TWO YEARS.
12        Q.    AND THEN MANHEIM AUTO AUCTIONS --
13        A.    RIGHT.
14        Q.    -- PRESENTLY.  WHAT POSITION DID YOU START
15   AT WITH COMPAQ?
16        A.    DIRECTOR OF CORPORATE FINANCE.
17        Q.    DID YOU ACQUIRE EXPERIENCE IN THAT AREA
18   WHILE AN EMPLOYEE OF AT & T?
19        A.    YES.
20        Q.    WHAT WAS YOUR LAST POSITION WITH AT & T
21   BEFORE YOU WENT TO AT & T DISNEY WORLD?
22        A.    I WAS A DISTRICT MANAGER RESPONSIBLE FOR
23   MANAGING THE ORLANDO ACCOUNTS PAYABLE OPERATION.
24        Q.    DID YOUR POSITION AT COMPAQ CHANGE DURING
25   THE TIME YOU WERE EMPLOYED BY IT?
```

Inacom vs. Tech Data                3/2/2005                WILLIAM FRANCIS

Page 12

1    A.    YES, IT DID.

2    Q.    AFTER DIRECTOR OF CORPORATE FINANCE WHAT

3  POSITION DID YOU HAVE?

4    A.    WELL, I STAYED AS A DIRECTOR OF CORPORATE

5  FINANCE.  MY RESPONSIBILITIES CHANGED.

6    Q.    WHAT WERE YOUR RESPONSIBILITIES AS

7  DIRECTOR OF CORPORATE FINANCE?

8    A.    INITIALLY IT WAS NORTH AMERICAN ACCOUNTS

9  PAYABLE OPERATIONS, WORLDWIDE TRAVEL AND AMERICAN

10  EXPRESS IMPLEMENTATION AND PAYROLL FOR NORTH AMERICA.

11    MS. DUMAS:  OFF THE RECORD FOR A MINUTE.

12  (A DISCUSSION WAS HELD OFF THE RECORD.)

13    MR. COLLINS:  HI, THIS IS PAT COLLINS.  I

14  CAN HEAR CULVER'S QUESTIONS PRETTY WELL BUT I

15  CAN'T HEAR THE ANSWERS.  IS IT POSSIBLE TO MOVE

16  THE MICROPHONE CLOSER TO MR. FRANCIS?

17    MS. DUMAS:  YOU BET.  WE'VE GOT IT RIGHT

18  IN FRONT OF HIM, PAT.

19    MR. COLLINS:  THANK YOU.

20    MS. DUMAS:  YOU'RE WELCOME.

21  BY MR. HALLIDAY:

22    Q.    MR. FRANCIS, DURING THE PERIOD YOU WERE

23  EMPLOYED BY COMPAQ WERE YOU ALWAYS DIRECTOR OF

24  CORPORATE FINANCE?

25    A.    YES.

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 13

```
 1        Q.    AND IF I UNDERSTAND YOU CORRECTLY, SIR,
 2   ORIGINALLY YOUR RESPONSIBILITIES INCLUDED NORTH
 3   AMERICAN ACCOUNTS PAYABLE, WORLDWIDE TRAVEL AND
 4   AMERICAN EXPRESS PROGRAM?
 5        A.    THAT'S CORRECT.
 6        Q.    AND THOSE --
 7        A.    AND PAYROLL.
 8        Q.    EXCUSE ME.  AND PAYROLL.  AND DID THE
 9   RESPONSIBILITIES YOU HAVE CHANGE THEN OVER TIME?
10        A.    YES, I ACTUALLY BROUGHT IN ANOTHER
11   INDIVIDUAL TO TAKE OVER THE PAYROLL PART OF MY JOB.
12        Q.    MR. FRANCIS, DID YOU MEET WITH ANYONE TO
13   PREPARE FOR YOUR DEPOSITION TODAY?
14        A.    YES.
15        Q.    WHO DID YOU MEET WITH?
16        A.    MISS DUMAS.
17        Q.    HAVE YOU MET WITH ANYONE ELSE, SIR, TO
18   PREPARE FOR IT?
19        A.    NO.
20        Q.    BESIDES MS. DUMAS HAVE YOU DISCUSSED THIS
21   DEPOSITION TODAY WITH ANYONE ELSE?
22        A.    ONLY HER STAFF IN MAKING THE ARRANGEMENTS
23   FOR THIS DEPOSITION.
24        Q.    HAVE YOU SPOKEN WITH ANYONE AT HEWLETT
25   PACKARD REGARDING THE DEPOSITION?
```

Inacom vs. Tech Data                3/2/2005                WILLIAM FRANCIS

Page 14

1       A.    NO.

2       Q.    WHO DID YOU REPLACE WHEN YOU JOINED COMPAQ

3  IN MARCH '99 AS DIRECTOR OF FINANCE?

4       A.    I CAN'T REMEMBER HIS NAME.   HE WAS GONE

5  WHEN I GOT THERE BUT I GUESS THE NAME ESCAPES ME.

6       Q.    ARE YOU AWARE OF AN ASSET PURCHASE

7  AGREEMENT THAT WAS ENTERED INTO BY COMPAQ AND INACOM

8  CORPORATION IN FEBRUARY OF 2000?

9       A.    YES.

10       Q.    DID YOU HAVE ANY INVOLVEMENT, SIR, WITH

11  THE NEGOTIATION OF THAT AGREEMENT?

12       A.    NO.

13       Q.    WHO DO YOU RECALL AS HAVING BEEN THE

14  PERSON WITH THE MOST RESPONSIBILITY FOR THE

15  NEGOTIATION OF THE AGREEMENT AT COMPAQ?

16       A.    I, I REALLY DON'T KNOW.   THERE WERE QUITE

17  A FEW PEOPLE INVOLVED.   I KNOW MY DIRECT BOSS, MIKE

18  BAKER, WHO'S CONTROLLER, WAS INVOLVED; I KNOW THE

19  C.F.O., WHO'S BEN WELLS, WAS INVOLVED; AND BEYOND

20  THAT, I REALLY DON'T KNOW THE REMAINDER OF THE TEAM

21  WHO ACTUALLY DID THE NEGOTIATIONS.

22       Q.    WHILE YOU WERE NOT INVOLVED WITH THE

23  NEGOTIATIONS FOR THE AGREEMENT WERE YOU INVOLVED IN

24  ASSISTING THOSE WHO WERE?

25       A.    I WOULD SAY NO.

Inacom vs. Tech Data                    3/2/2005.                    WILLIAM FRANCIS

Page 15

1      Q.   AT THE TIME IT WAS ENTERED INTO DID YOU

2  HAVE ANY UNDERSTANDING OF WHAT THE AGREEMENT WAS

3  ABOUT?

4      **A.   WOULD YOU REPEAT THAT QUESTION AGAIN,**

5  **PLEASE?**

6      Q.   I'LL TRY.  AT THE TIME THE AGREEMENT WAS

7  ENTERED INTO, ABOUT FEBRUARY 2000, DID YOU HAVE ANY

8  UNDERSTANDING AS TO WHAT IT WAS ABOUT?

9      **A.   YES.**

10     Q.   WHAT WAS THAT UNDERSTANDING, SIR?

11     **A.   MY UNDERSTANDING IS THAT COMPAQ PURCHASED**

12  **A PORTION OF INACOM, PRIMARILY THE PACKAGING AND**

13  **DISTRIBUTION PORTION OF THEIR BUSINESS.**

14     Q.   WAS IT YOUR UNDERSTANDING AT THAT TIME

15  THAT COMPAQ WAS ALSO ACQUIRING LIABILITIES OF INACOM?

16     **A.   SOME LIABILITIES, YES.**

17     Q.   DID YOU UNDERSTAND AT THAT TIME WHAT THOSE

18  LIABILITIES IT WAS ACQUIRING WERE?

19     **A.   NOT IN ANY GREAT DETAIL.**

20     Q.   DID YOU HAVE ANY UNDERSTANDING AT THAT

21  TIME WHEN THE AGREEMENT WAS ENTERED INTO AS TO

22  WHETHER COMPAQ WAS ACQUIRING LIABILITY FOR ACCOUNTS

23  PAYABLE FROM ANY OF INACOM'S CUSTOMERS?

24     **A.   BASICALLY ON -- MY UNDERSTANDING WAS --**

25          MR. COLLINS:  COULD THE WITNESS BE LOUDER,

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 16

1        PLEASE?

2        A.    BASICALLY MY UNDERSTANDING WAS THAT WE

3    PURCHASED SOME ASSETS AND FOR SOME CUSTOMERS IT

4    BECAME MORE SPECIFIC AS TO THE ASSETS; BUT IT WAS,

5    I'LL HAVE TO SAY, ON A GOING-FORWARD BASIS FROM THE

6    DATE OF OUR AGREEMENT.

7        Q.    AND WAS THAT YOUR UNDERSTANDING AT THAT

8    TIME IN FEBRUARY OF 2000?

9        A.    YES.

10       Q.    WITH RESPONSIBILITY FOR ACCOUNTS PAYABLE

11   WHILE YOU WERE AT COMPAQ DID YOU COMMUNICATE WITH

12   SOME OF COMPAQ'S VENDORS AND CUSTOMERS?

13       A.    ALL THE TIME.

14       Q.    AND AT THE TIME OF THE ASSET PURCHASE

15   AGREEMENT WERE YOU HAVING ANY COMMUNICATION WITH

16   CUSTOMERS OF INACOM?

17       A.    NOT AT THE TIME OF THE AGREEMENT, NO.

18       Q.    LET ME ASK YOU TO LOOK AT --

19           MR. HALLIDAY:   SHOULD I CALL THIS FRANCIS

20       NO. 1?   IS THAT WHAT WE DECIDED TO DO LAST

21       TIME?

22           MS. DUMAS:   I THINK SO.   WE'RE JUST

23       STARTING OVER WITH 1, 2, 3, WITH EACH WITNESS.

24   BY MR. HALLIDAY:

25       Q.    -- WHAT I'LL ASK THE COURT REPORTER TO

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 17

1   MARK AS FRANCIS NO. 1.

2       (FRANCIS EXHIBIT NO. 1 WAS MARKED BY THE

3   REPORTER.)

4       (A DISCUSSION WAS HELD OFF THE RECORD.)

5   BY MR. HALLIDAY:

6       Q.   SIR, TAKE YOUR TIME TO LOOK AT THAT LETTER

7   AND LET ME KNOW WHEN YOU'VE HAD A CHANCE TO.

8       A.   YEAH, I HAVE.

9       Q.   CAN YOU IDENTIFY THIS DOCUMENT, SIR?

10      A.   SURE.  IT'S A LETTER THAT I SIGNED THAT IN

11  THIS CASE WENT TO LEXMARK INTERNATIONAL TALKING

12  ABOUT -- IT'S WHAT WE CALL A COMFORT LETTER THAT WAS

13  SENT TO A SELECTED NUMBER OF SUPPLIERS.

14      Q.   YOU SAY IT'S WHAT YOU REFER TO AS A

15  COMFORT LETTER?

16      A.   THAT IS CORRECT.

17      Q.   WHAT DOES THAT MEAN?

18      A.   INACOM WAS HAVING SOME TROUBLE WITH THEIR

19  SUPPLIERS WHO WERE RELUCTANT TO SHIP MATERIAL OR

20  GOODS TO INACOM BECAUSE OF PAST ISSUES THEY HAD WITH

21  INACOM SO THEY KEPT ASKING ABOUT -- THEY WANTED SOME

22  MORE ASSURANCE, SO THIS LETTER WAS DEVELOPED TO GIVE

23  THEM SOME ASSURANCE THAT COMPAQ WAS BEHIND THE CUSTOM

24  EDGE PORTION OF INACOM AND THEY COULD BE ASSURED THAT

25  THEY WOULD BE PAID FOR THE GOODS AND SERVICES THAT

Inacom vs. Tech Data                        3/2/2005                        WILLIAM FRANCIS

Page 18

```
 1   THEY SUPPLIED.
 2        Q.    DID YOU SEND THIS COMFORT LETTER IN
 3   CONNECTION WITH THE ASSET PURCHASE AGREEMENT?
 4        A.    NO.
 5        Q.    IT WASN'T PART OF THAT TRANSACTION?
 6        A.    NO.
 7        Q.    WERE COMFORT LETTERS SOMETHING THAT WERE
 8   SENT ROUTINELY WHILE YOU WERE AN EMPLOYEE OF COMPAQ?
 9        A.    NO.
10        Q.    DO YOU RECALL SENDING A LETTER LIKE THIS,
11   A COMFORT LETTER IN CONNECTION WITH ANY OTHER
12   TRANSACTION OR EVENT?
13        A.    NO.
14        Q.    DID YOU SEND MORE THAN ONE COMFORT LETTER
15   AT OR ABOUT THE TIME YOU SENT THIS COMFORT LETTER TO
16   LEXMARK?
17        A.    YES.
18        Q.    DO YOU RECALL WHO ELSE WOULD HAVE RECEIVED
19   ONE?
20        A.    NO, I DON'T HAVE ANY RECOLLECTION NOW OF
21   THAT.
22        Q.    DO YOU RECALL IF TECH DATA RECEIVED ONE?
23        A.    THEY MAY HAVE.  I CAN'T RECALL EXACTLY
24   EACH ONE I SIGNED FIVE YEARS AGO.
25        Q.    I UNDERSTAND, SIR.  BUT YOU DO RECALL
```

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 19

1  SIGNING AND SENDING THIS LETTER TO A MS. ATCHINSON AT

2  LEXMARK?

3      A.   I CAN'T SAY I RECALL IT.  I CAN IDENTIFY

4  THE LETTER.  I MEAN, IT'S MY SIGNATURE SO I KNOW I

5  SIGNED IT, I KNOW I SENT IT.

6      Q.   DO YOU RECALL WHY THIS LETTER IN SPECIFIC

7  WAS SENT?

8      A.   NO.  WHAT HAPPENED IS THAT JOHN FRASCA,

9  WHOSE NAME IS ON THE LETTER, GAVE US -- OR GAVE ME A

10 LIST OF THE CUSTOMERS -- THEIR CUSTOMERS OR

11 SUPPLIERS, I SHOULD SAY, WHO HE FELT NEEDED A COMFORT

12 LETTER.  THAT WAS THE BASIS FOR WHICH SUPPLIERS

13 RECEIVED ONE OF THESE LETTERS.

14     Q.   SO THIS LETTER WOULD HAVE GONE OR BEEN

15 SENT BY YOU AT THE REQUEST OF JOHN FRASCA?

16     A.   THAT'S CORRECT.

17     Q.   WHAT WAS MR. FRASCA'S POSITION AT THAT

18 TIME, IF YOU RECALL, SIR?

19     A.   I DON'T RECALL SPECIFICALLY.  I WANT TO

20 SAY HE WAS ON THE MARKETING SIDE OF THE HOUSE WITH

21 INACOM, SLASH, CUSTOM EDGE BUT I, I DON'T REMEMBER

22 EXACTLY.

23     Q.   HOW WOULD HE HAVE COMMUNICATED TO YOU A

24 REQUEST THAT THIS COMFORT LETTER BE SENT TO LEXMARK?

25     A.   PROBABLY VIA EITHER A PHONE CALL OR

Inacom vs. Tech Data                3/2/2005                WILLIAM FRANCIS

Page 20

1  E-MAIL.

2       Q.    DO YOU RECALL WHICH IT WAS ON THIS

3  OCCASION?

4       A.    NO.

5       Q.    DID MR. FRASCA TELL YOU WHAT TO SAY IN THE

6  LETTER?

7       A.    **HE DRAFTED THE LETTER, AS FAR AS I KNOW.**

8       Q.    DRAFTED IT FOR YOUR SIGNATURE AND FOR YOU

9  TO SEND?

10      A.    **THAT'S CORRECT.**

11      Q.    THAT BEING THE CASE DO YOU RECALL NOW

12 WHETHER THIS LETTER MIGHT NOT HAVE BEEN SENT TO YOU

13 IN DRAFT FORM BY MR. FRASCA BY E-MAIL?

14      A.    **I'M SURE HE DID SEND IT TO ME IN DRAFT**

15 **FORM BY E-MAIL.**

16      Q.    WAS THIS PREPARING A LETTER FOR YOU TO

17 SIGN AND SEND SOMETHING THAT MR. FRASCA HAD DONE

18 BEFORE?

19      A.    **NOT THAT I KNOW OF, NOT TO ME.**

20      Q.    SO JUST SO I'M SURE THAT I UNDERSTAND,

21 SIR, WHILE THIS LETTER -- SIGNED BY YOU, CORRECT?

22      A.    **UH-HUH, THAT'S CORRECT.**

23      Q.    -- AND IS SENT BY YOU -- WAS SENT BY

24 YOU -- PARDON ME -- HOWEVER, THE TEXT OF THE LETTER

25 WAS PREPARED BY MR. FRASCA.

Inacom vs. Tech Data                3/2/2005                WILLIAM FRANCIS

Page 21

1     A.     THAT'S CORRECT.

2     Q.     BEFORE YOU SENT THE LETTER DID YOU NEED TO

3  OBTAIN APPROVAL OR HAVE THE LETTER REVIEWED BY ANYONE

4  ELSE AT COMPAQ?

5     A.     I DID HAVE IT REVIEWED AND OBTAIN

6  APPROVAL.   WHETHER OR NOT I NEEDED TO, BY POLICY, I

7  DON'T -- I DON'T KNOW, BUT I WOULD NOT HAVE SENT IT

8  OUT ON MY OWN.

9          I WOULD HAVE -- ALTHOUGH I CAN'T REMEMBER

10  SPECIFICALLY -- CERTAINLY WOULD HAVE REVIEWED IT WITH

11  OUR ATTORNEYS WHO WERE INVOLVED WITH THE TRANSACTION

12  AND WITH MY OWN MANAGEMENT.

13     Q.     AND AS BEST YOU RECALL TODAY, SIR, YOU DID

14  DO THAT.

15     A.     ABSOLUTELY.

16     Q.     DO YOU RECALL THE NAME OR NAMES OF ANY

17  ATTORNEYS WHO MIGHT HAVE BEEN THE ONES WHO REVIEWED

18  IT?

19     A.     I WOULD SAY GREG PHILLIPS.   I CAN'T TELL

20  YOU AT THIS MOMENT WHEN AND WHERE BUT HE WAS, AS I

21  RECALL, A MEMBER OF THE TRANSITION TEAM AND ONE I

22  WOULD HAVE WORKED WITH ON THIS PARTICULAR ISSUE.

23     Q.     I'M SORRY.   WAS HE AN IN-HOUSE ATTORNEY --

24     A.     HE WAS AN IN-HOUSE COMPAQ ATTORNEY.

25     Q.     AND THE TRANSITION THAT YOU'RE REFERRING

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 22

1  TO WAS?

2      A.    THERE WAS -- AFTER THE, I'LL SAY,

3  CONCLUSION OF THE AGREEMENT OR PERHAPS EVEN PRIOR TO

4  THAT A TRANSITION TEAM WAS ESTABLISHED TO INTEGRATE

5  TO THE EXTENT REQUIRED THE INACOM/CUSTOM EDGE WITH

6  COMPAQ.  I WAS ONE MEMBER OF THAT TEAM.

7          GREG, AS I RECALL, WAS A -- THE ATTORNEY

8  AND THERE WERE A NUMBER OF OTHER PEOPLE REPRESENTING

9  OTHER DISCIPLINES IN THE COMPANY.

10     Q.    AND CAN YOU RECALL ANYONE TODAY, SIR,

11  BESIDES MR. PHILLIPS WHO MIGHT HAVE REVIEWED THE

12  LETTER FOR YOU BEFORE IT WAS SENT, WHETHER AN

13  IN-HOUSE ATTORNEY OR MANAGEMENT?

14     A.    WELL, IT WOULD HAVE BEEN -- AGAIN,

15  ALTHOUGH I CAN'T -- I DON'T SPECIFICALLY REMEMBER

16  REVIEWING IT, IT WOULD HAVE BEEN EITHER MY DIRECT

17  MANAGER, MIKE BAKER, WHO WAS CONTROLLER, OR BEN

18  WELLS, WHO WAS THE C.F.O. AT THE TIME.

19          MR. HUNT:  JUST FOR THE RECORD'S CLARITY

20      WAS THAT MIKE BICKER OR BAKER?

21          THE WITNESS:  MIKE BAKER, B A K E R.

22  BY MR. HALLIDAY:

23     Q.    AND WHILE YOU DON'T SPECIFICALLY RECALL

24  IT, IT'S YOUR BELIEF THAT YOU MORE THAN LIKELY WOULD

25  HAVE HAD A LETTER LIKE THIS REVIEWED BEFORE YOU SENT

Inacom vs. Tech Data                    3/2/2005                        WILLIAM FRANCIS

Page 23

1  IT.

2       A.    OH, YES.

3       Q.    DO YOU KNOW WHETHER THIS LETTER WAS COPIED

4  TO ANYONE WITHIN COMPAQ AFTER IT WAS SENT BY YOU TO

5  MS. ATCHINSON?

6       A.    I DON'T KNOW.

7       Q.    DO YOU RECALL TALKING TO ANYONE AT ANY

8  TIME WHO WAS AN EMPLOYEE OF LEXMARK ABOUT THIS

9  LETTER?

10      A.    NO.

11      Q.    WHAT WAS YOUR UNDERSTANDING AS TO WHAT

12 YOUR RESPONSIBILITIES WERE GOING TO BE AFTER THE

13 TRANSITION WAS COMPLETED?

14      A.    WELL, LET ME BACK UP A MINUTE.  THE

15 TRANSITION TEAM WAS ESTABLISHED WITH -- AS I

16 MENTIONED, WITH THE INTENT TO INTEGRATE TO THE EXTENT

17 APPROPRIATE INACOM, SLASH, CUSTOM EDGE WITH COMPAQ.

18           AS IT TURNED OUT, THE DECISION WAS MADE

19 THAT THEY WOULD USE THEIR OWN ACCOUNTS PAYABLE

20 SYSTEMS, FOLLOW THEIR OWN PROCEDURES AND WHATNOT; SO

21 MY ROLE AT THAT POINT BECAME ONE OF SUPPORTING THEM

22 IF THEY HAD ANY POLICY, CORPORATE POLICY QUESTIONS,

23 ISSUES OF THAT NATURE.  SO I DIDN'T -- SO I HAD NO

24 DIRECT DAY-TO-DAY INVOLVEMENT IN THEIR OPERATIONS.

25           THEY CAME TO ME BECAUSE THEY HAD CONCERNS

Inacom vs. Tech Data                    3/2/2005                    WILLIAM FRANCIS

Page 24

1   **WITH SOME OF THEIR SUPPLIERS, AS I SAID EARLIER, WHO**

2   **WERE RELUCTANT TO SHIP GOODS BECAUSE THEY WERE**

3   **CONCERNED ABOUT GETTING PAID, AND THAT'S WHAT**

4   **DEVELOPED INTO THIS COMFORT LETTER.**

5        Q.   WHEN YOU SENT THIS LETTER TO MS. ATCHINSON

6   DID YOU HAVE AN UNDERSTANDING WHAT DISPUTE -- DISPUTE

7   MAY BE TOO STRONG OF A WORD -- WHAT CONVERSATIONS OR

8   DISCUSSIONS WERE GOING ON BETWEEN INACOM AND LEXMARK

9   THAT MIGHT REQUIRE THE LETTER?

10       **A.   NO.**

11       Q.   SO THE REASON THAT MAY HAVE EXISTED FOR A

12  COMFORT LETTER NEEDING TO BE SENT TO LEXMARK IS NOT

13  SOMETHING THAT YOU KNOW ABOUT.

14       **A.   NO, NO.**

15       Q.   BUT IT IS YOUR RECOLLECTION THAT JOHN

16  FRASCA PREPARED OR DRAFTED AND ASKED YOU TO SEND THIS

17  LETTER TO LEXMARK, CORRECT?

18       **A.   THAT IS CORRECT.**

19       Q.   AND, AS I THINK YOU SAID, YOU BELIEVE YOU

20  MAY HAVE SENT OTHERS.

21       **A.   THAT'S CORRECT.**

22       Q.   WHEN YOU SENT THIS LETTER, SIR, IN

23  FEBRUARY OF 2000, DID YOU REVIEW IT AND HAVE AN

24  UNDERSTANDING AS TO ITS IMPORT?

25            MS. DUMAS:   OBJECTION, VAGUE.