```
 1        Q.   Did the persons who were responsible for the
 2   third -- the first-tier vendors also report to
 3   Mr. Kerkman?
 4        A.   Yes.
 5        Q.   Sir, if I could ask you to refer or to look
 6   at the February 16, 2000, letter from Mr. Francis to
 7   Lexmark, which has been marked as Exhibit 5.  I have
 8   just a question or two about that letter.
 9             In the third paragraph, sir, it says,
10   "Inquiries to Custom Edge Inc. regarding your account
11   should be directed to John Frasca."  And it gives a
12   telephone number, which is 402-758-3822.  Do you see
13   where I was reading, sir?
14        A.   Yes, sir.
15        Q.   Do you recall that telephone number?
16        A.   Yes, sir.
17        Q.   Is that the telephone number you had while
18   you were an employee of Custom Edge Inc.?
19        A.   Correct.
20        Q.   And did you have that same number while you
21   were also an employee of Inacom Corporation?
22        A.   Correct.
23        Q.   Was that your personal extension?
24        A.   Yes.
25        Q.   I believe, sir, that you've testified that
```

1  this was a -- that this letter was based on a form; is
2  that correct?
3      A.  Correct.
4      Q.  Where it says your name on Exhibit 5, should
11:26 5  it have said Mr. Cullen instead?
6          MS. DUMAS:  Objection.  Calls for
7  speculation.
8          MR. FORTE:  Objection to form.  Earl
9  Forte.
11:26 10         THE WITNESS:  It would make sense that
11 the person responsible for that particular vendor would
12 have their name associated with it.
13     Q.  (By Mr. Halliday)  As you sit here today --
14 and I know this is many years past the event -- is it
11:26 15 your recollection that the form was to be used to be
16 sent to vendors, correct?
17     A.  Correct.
18     Q.  And is it also your recollection as you sit
19 here today that, in the third paragraph of the form,
11:27 20 the employee responsible for the particular vendor or
21 specific vendor to whom the letter was sent was to be
22 identified?
23         MS. DUMAS:  Objection.  Assumes facts
24 not in evidence.  Lack of foundation.
11:27 25         THE WITNESS:  Can you restate your

1  question, please?
2     Q.    (By Mr. Halliday)  Yes.  If this form -- I
3  will restate it a different way.
4           If the form was sent to a Tier 2 vendor,
5  should it have had Mr. Frasca's name in the third
6  paragraph?
7           MS. DUMAS:  Same objections.
8           THE WITNESS:  No.
9     Q.    (By Mr. Halliday)  Should it have had
10 Mr. Cullen's name?
11          MS. DUMAS:  Same objections.
12          THE WITNESS:  I would assume so.
13    Q.    (By Mr. Halliday)  Do you recall, sir, ever
14 having any conversation, in person or by telephone,
15 with anyone at Lexmark International Inc. concerning
16 the matters which are addressed in Exhibit 5?
17    A.    No.
18    Q.    Did you ever have a conversation while you
19 were an employee of Inacom Corporation and Custom Edge
20 Inc. with anyone who was an employee of Lexmark
21 International Inc. --
22    A.    I don't recall.
23    Q.    -- about anything?  You don't recall any such
24 conversation?
25    A.    I don't remember any.

```
 1        Q.   Do you recall sending any communication by
 2   any means to anyone at Lexmark International Inc.
 3   regarding the matters raised or concerned in Exhibit 5?
 4        A.   No, I don't recall.
 5             MR. HALLIDAY:  Those are all the
 6   questions I have.  I thank you for your time this
 7   morning.
 8             THE WITNESS:  You're welcome.
 9                         EXAMINATION
10   BY MR. LANDON:
11        Q.   I introduced myself briefly a few minutes
12   ago.  I'm James Landon from the law firm of Hughes and
13   Luce in Austin representing Dell Inc., and I just have
14   a few short questions for you.
15             Do you recall having seen a letter in the
16   form of either Exhibits 4, 5, or 6 directed to Dell?
17        A.   No.
18        Q.   And in your role as -- I believe it was vice
19   president of supply chain management for Inacom, do you
20   recall any conversations with any employee or
21   representative of Dell?
22        A.   No.
23        Q.   Following the asset sale to HP or Compaq in
24   February 2000, do you recall having any conversations
25   with an employee or representative of Dell?
```

```
 1        A.   No.
 2        Q.   You used the term, "squeaky-wheel vendors."
 3   I'll just continue to use that just for sake of
 4   reference.  Do you recall whether Dell was a
 5   squeaky-wheel vendor?
 6        A.   No.
 7        Q.   You don't recall, or no, they were not?
 8        A.   No, they were not.
 9             MR. LANDON:  I pass the witness.  That's
10   all the questions I have.  Thank you.
11             THE WITNESS:  Thank you.
12             MR. HUNT:  On the phone.  Mr. Hersey?
13             MR. HERSEY:  Thanks.
14                         EXAMINATION
15   BY MR. HERSEY:
16        Q.   Mr. Frasca, my name is John Hersey.  I'm an
17   attorney who represents Ingram Entertainment, which is
18   a successor to Nashville Computer Liquidators.  I have
19   a few follow-up questions for you also.
20             Do you remember at any time seeing a
21   letter in the form of Exhibit 4, 5, or 6 that was
22   addressed to Nashville Computer liquidators?
23        A.   No, sir.
24        Q.   While you were employed by Inacom, did you
25   ever have any communication directly with anyone at
```

1   Nashville Computer Liquidators?

2       A.   Yes.

3       Q.   Can you tell me anything about the substance

4   of that conversation or communication?

11:32  5       A.   Nashville Computer Liquidator often tried to

6   sell us product that was in question to whether it was

7   an original manufactured product.

8            At that particular time, there was an

9   awful lot of counterfeiting going on.  And NCL, as well

11:33 10  as a couple other companies, were able to obtain very

11  difficult-to-get component product that raised a lot of

12  questions on where they could have gotten the very

13  hard-to-get product.

14           So we had a lot of conversations for a

11:33 15  period of time centered around the risk of Inacom and

16  then Compaq purchasing product from NCL.

17      Q.   Did you ever have any communication with

18  anyone at NCL about payments or invoices between Inacom

19  and NCL?

11:34 20      A.   Not personally, no.

21      Q.   Do you know if anyone in your department or

22  who reported to you while you were at Inacom had any

23  conversations with NCL about payments or invoices

24  between the two companies?

11:34 25      A.   I'm not aware of any specific conversations

```
 1  that took place, but any and all conversations would
 2  have taken place with the person that was assigned to
 3  that account, which I believe at that time was Noni
 4  Vitols.
 5      Q.   Who were your communications with at NCL
 6  about the OEM products you just described?
 7      A.   I'm trying to remember their names.  My
 8  apologies.  I do not recall their names at this time.
 9  It was the gentleman that headed up NCL in Nashville,
10  Tennessee.  I just don't recall his name.
11      Q.   Do you remember having any communications
12  with anyone at NCL about invoices or payments while you
13  were with Custom Edge?
14      A.   No, sir.
15      Q.   What about while you were with Compaq or HP?
16      A.   No, sir.
17      Q.   Can you remember any instances of
18  conversations about invoices or payments between NCL
19  and anyone who reported to you while you were at Custom
20  Edge, Compaq, or HP?
21      A.   No, sir.
22      Q.   Did your conversations with NCL about the OEM
23  product have any effect on the payment terms of
24  invoices between Inacom and NCL?
25      A.   No, sir.
```

|       |    |                                                                 |
|-------|----|-----------------------------------------------------------------|
|       | 1  | Q.   Do you know what the payment terms were on                 |
|       | 2  | the invoices between NCL and Inacom?                            |
|       | 3  | A.   I don't recall.                                            |
|       | 4  | MR. HERSEY:  Mr. Frasca, those are the                          |
| 11:37 | 5  | only questions I have.  I appreciate your time.                 |
|       | 6  | THE WITNESS:  Thank you.                                        |
|       | 7  | MR. FORTE:  This is Earl Forte.  I have                         |
|       | 8  | one or two questions for the witness.                           |
|       | 9  | **EXAMINATION**                                                 |
| 11:37 | 10 | **BY MR. FORTE:**                                               |
|       | 11 | Q.   Mr. Frasca, my name is Earl Forte.  I'm with               |
|       | 12 | the law firm of Blank Rome.  We represent the                   |
|       | 13 | liquidating agent of the Inacom estate.                         |
|       | 14 | With respect to Dell, you testified                             |
| 11:37 | 15 | earlier today that you would not have described Dell as         |
|       | 16 | a squeaky-wheel vendor, correct?                                |
|       | 17 | A.   Correct.                                                   |
|       | 18 | Q.   All right.  Do you know -- do you have any                 |
|       | 19 | knowledge as to whether Dell was making calls to                |
| 11:38 | 20 | Inacom's treasurer, Dick Oshlo, seeking payment?                |
|       | 21 | A.   No, sir.                                                   |
|       | 22 | Q.   Just to clarify.  You simply don't know?                   |
|       | 23 | A.   I do not know.                                             |
|       | 24 | MR. FORTE:  All right.  Thank you.                              |
| 11:38 | 25 | Those are my only questions.                                    |

```
 1                MR. HUNT:  Mr. Caine?
 2                MR. CAINE:  No questions.
 3                    FURTHER EXAMINATION
 4   BY MR. HUNT:
 5        Q.   I have a couple of follow-up questions very
 6   briefly, Mr. Frasca.
 7                Do you recall having any conversations
 8   with Mr. Mike Ward from Tech Data in February of 2000
 9   regarding the status of payment to Tech Data?
10        A.   I don't recall.
11        Q.   During that same time period, do you recall
12   having any conversations with Donna Platt from Tech
13   Data regarding payments to Tech Data?
14        A.   No specific conversations.
15        Q.   Same questions after March 1st of 2000.  Do
16   you recall having conversations with Ward or Platt
17   regarding payments to Tech Data by Inacom or Compaq?
18        A.   No.
19        Q.   After you joined Custom Edge, did it maintain
20   the same electronic mail system that you used at
21   Inacom?
22        A.   Yes.
23        Q.   When you switched over to Compaq, did you
24   switch over to a different electronic mail system?
25        A.   I don't believe so.
```

```
 1        Q.   Would you have the ability to search archives
 2   to find electronic mail from January of 2000, for
 3   example?
 4        A.   No.
 5        Q.   Why do you think that's the case?
 6        A.   Because the -- all the records, e-mail
 7   records all the way back to 1998 were subpoenaed for my
 8   custody case, and the IT department at Compaq indicated
 9   that those were not available.  Those were subpoenaed
10   records.
11        Q.   And treading upon the representation I
12   wouldn't ask any questions about your custody case --
13        A.   That's okay.
14        Q.   -- let me ask you when that representation
15   was made by Compaq's IT department.
16        A.   January of last year, of 2004.
17        Q.   And did it seek records for, in addition to
18   1998, 1999?
19        A.   Yes.  It was from 1999 to present day, any
20   and all e-mail transaction to and from my name.
21        Q.   That's a fairly ambitious request.
22        A.   That was fairly ambitious, especially seeing
23   it was, you know, @InaCom.com, @CustomEdge.com,
24   @Compaq.com, and @HP.com.
25        Q.   Were any records available to be produced in
```

1  response to that request?
2       A.   There was no records at all.
3       Q.   And just to clarify that, that date preceding
4  which none were available, what was that date again?
11:41  5       A.   It was dating back to January of 19 -- it was
6  January of 1999 to present, all the way to January of
7  2004.
8       Q.   Okay.  Thank you.
9       A.   You're welcome.
11:41 10       Q.   Did the other gentlemen who served as your
11 procurement peers at Inacom also transition to Custom
12 Edge or Compaq?
13      A.   100 percent of them did.
14      Q.   And are any of those personnel still with
11:41 15 Hewlett-Packard?
16      A.   John Cullen is.  Jim Stapleton is.  Leon
17 Kerkman is.  Kevin Rose, Noni Vitols.  Mike Bjornstad
18 is not.  Those were the names that we had mentioned
19 during this deposition.
11:42 20      Q.   Yes, sir.  They are.  And may I ask you, to
21 whom did Mr. Kerkman report when he was at Inacom
22 during those final three months?
23      A.   He reported to Mike Steffan.
24      Q.   And do you recall what Mr. Steffan's title
11:42 25 would have been?

```
11:43

11:43

11:43
```

 1      A.    Premerger Compaq, I believe it was president.
 2 And he reported to Bill Fairfield, who was CEO.
 3      Q.    And after the asset sale?
 4      A.    I don't recall.
 5      Q.    After the letters that were marked in
 6 Exhibit 4, 5, and 6 were prepared, do you recall
 7 whether you had any additional conversations with
 8 Mr. Francis regarding the payments to the vendors that
 9 were within your responsibility?
10      A.    I don't recall.
11            MR. HUNT:  Okay.  Thank you, Mr. Frasca.
12            THE WITNESS:  You're welcome.
13            MR. HUNT:  Anyone else?
14            (No response)
15            MR. HUNT:  Thank you, sir.
16            (Off the record at 11:43 a.m.)

```
                       CHANGES AND SIGNATURE

   PAGE      LINE      CHANGE                                    REASON

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____

   _____     _____     _____            _____
```

```
 1                    CHANGES AND SIGNATURE

 2   PAGE    LINE    CHANGE                              REASON

 3   ____    ____    _____  _____

 4   ____    ____    _____  _____

 5   ____    ____    _____  _____

 6   ____    ____    _____  _____

 7   ____    ____    _____  _____

 8   ____    ____    _____  _____

 9   ____    ____    _____  _____

10          I, JOHN T. FRASCA, have read the foregoing
     deposition and hereby affix my signature that same is
11   true and correct, except as noted above.

12

13          _____
            JOHN T. FRASCA
14
     THE STATE OF_____:
15   COUNTY OF_____:

16       BEFORE ME, _____, on this day
     personally appeared JOHN T. FRASCA, known to me (or
17   proved to me under oath or through _____)
     (description of identity card or other document) to be
18   the person whose name is subscribed to the foregoing
     instrument and acknowledged to me that they executed
19   the same for purposes and consideration therein
     expressed.
20
         Given under my hand and seal of office this _____
21   day of _____, 2005.

22

23          _____
            Notary Public in and for the
            State of _____
24          My commission expires: _____

25
```

```
 1  THE STATE OF TEXAS :
 2  COUNTY  OF  HARRIS  :
 3      I, Debbie Leonard, a Certified Shorthand Reporter
 4  in and for the State of Texas, do hereby certify that
 5  the matters set forth in the caption to the foregoing
 6  deposition are true and correct; that the witness
 7  appeared before me at the time and place set forth;
 8  that said witness was first duly sworn to tell the
 9  truth, and thereupon proceeded to testify in said
10  cause; that the questions of counsel and the answers of
11  the said witness were taken down in shorthand by me and
12  thereater reduced to typewriting under my direction;
13  and that the foregoing pages comprise a true, correct,
14  and complete transcript of the testimony given and the
15  proceedings had during the taking of said deposition.
16      I further certify that I am not counsel, attorney
17  or relative of either party, or otherwise interested in
18  the event of this suit.
19      GIVEN UNDER MY HAND AND SEAL OF OFFICE on this 7th
20  day of April, 2005.
21
22  _____
    Debbie Leonard, CSR, RMR, CRR
23  Houston Reporting Service
    Firm Registration No. 306
24  1010 Lamar, Suite 1400
    Houston, Texas 77002
25  Phone:  (713) 739-1400
```

EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re INACOM CORP., et al.<br><br>Debtors | Chapter 11<br><br>Bankruptcy Case No. 00-2426 (PJW) |
| INACOM CORP., et al.<br><br>    Plaintiffs<br>v.<br><br>TECH DATA CORPORATION<br><br>    Defendant | Civil Action No. 04-CV-148 (GMS) |
| INACOM CORP., et al.<br><br>    Plaintiffs<br>v.<br><br>DELL COMPUTER CORP.<br><br>    Defendant | Civil Action No. 04-CV-582 (GMS) |
| INACOM CORP., et al.<br><br>    Plaintiffs<br>v.<br><br>LEXMARK INTERNATIONAL, INC.<br><br>    Defendant | Civil Action No. 04-CV-583 (GMS) |

EXHIBIT
Frasca-1
DL    3/30/05

| | |
|---|---|
| INACOM CORP., et al.<br><br>      Plaintiffs<br>v.<br><br>RESILIEN, INC.<br><br>      Defendant | **Civil Action No. 04-CV-584 (GMS)** |
| INACOM CORP., et al.<br><br>      Plaintiffs<br>v.<br><br>INGRAM ENTERTAINMENT INC.<br><br>      Defendant | **Civil Action No. 04-CV-593 (GMS)** |

**DEFENDANTS' FIRST NOTICE OF DEPOSITION OF JOHN FRASCA**

Defendant and Third-Party Plaintiff Lexmark International, Inc. ("Lexmark"), for itself and Defendants Tech Data Corporation, Dell Computer Corp., Resilien, Inc. and Ingram Entertainment Inc., gives notice, pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), that they will take the testimony by deposition of John Frasca, upon oral examination pursuant to Fed. R. Civ. P. 30(a)(1), at Hewlett-Packard, 20555 State Highway 249, Houston, Texas 77070 in Conference Room 6801 of Building CCA6, on March 30, 2005 at 9:00 A.M. CST. Pursuant to Fed. R. Civ. P. 30(b)(2), Lexmark states that the testimony at the deposition will be recorded by stenographic means before an officer authorized to administer oaths.

2

The deponent, Mr. Frasca, is requested to bring with him to the deposition all documents in his possession, custody or control discussing, concerning, regarding or relating to (1) the solvency of Plaintiff InaCom Corp. ("InaCom") during the 90 day period immediately preceding its filing of a voluntary bankruptcy petition on June 16, 2000, (2) the February 16, 2000 asset purchase agreement between InaCom and Compaq Computer Corporation ("Compaq") and (3) the agreed upon and actual use of the monies paid pursuant to February 16, 2000 asset purchase agreement between InaCom and Compaq.

    Joseph Grey (No. 2358)
    Thomas G. Whalen Jr. (No. 4034)
    Stevens & Lee, P.C.
    1105 North Market Street, 7th Floor
    Wilmington, Delaware 19801
    Tel:   (302) 425-3307
    Fax:  (302) 654-5181

and

*/s/ Culver V. Halliday*
Culver V. Halliday
Adam T. Goebel
Stoll, Keenon & Park, LLP
2650 AEGON Center
400 West Market Street
Louisville, Kentucky 40202-3377
Tel:   (502) 568-9100
Fax:  (502) 568-5700

As Counsel for Defendant and Third-Party Plaintiff Lexmark International, Inc., and for Defendants Tech Data Corporation, Dell Computer Corp., Resilien, Inc. and Ingram Entertainment Inc.

March 23, 2005

## CERTIFICATE OF SERVICE

I certify that the Defendants' First Notice Of Deposition Of John Frasca was served, on March 23, 2005, by e-mailing and mailing copies by United States mail, first class postage prepaid, addressed for delivery to the following:

Sandra McLamb
Pachulski, Stang, Ziehl, Young,
   Jones & Weintraub P.C.
919 North Market Street, 16th Floor
Wilmington, Delaware 19899

and

Andrew W. Caine
Jeffrey P. Nolan
Pachulski, Stang, Ziehl, Young,
   Jones & Weintraub P.C.
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California 90067

Counsel for Plaintiff
InaCom Corp.

William J. Burnett
Blank Rome LLP
1201 North Market Street, Suite 800
Wilmington, Delaware 19801-4226

and

Earl M. Forte
Blank Rome LLP
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania 19103-6998

Counsel for Statutory Committee
of Unsecured Creditors of
InaCom Corp.


James F. Harker
Herlihy, Harker & Kavanaugh
1400 North Market Street, Suite 200
P.O. Box 1597
Wilmington, Delaware 19899

and

Charles M. Tatelbaum
Stephen C. Hunt
Adorno & Yoss, P.A.
350 East Las Olas Blvd., 17th Floor
Fort Lauderdale, Florida 33301

Counsel for Defendant
Tech Data Corporation

Patricia P. McGonigle
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, Delaware 19899

and

Sabrina L. Streusand
Texas State Bar No. 11701700
Hughes & Luce, L.L.P.
111 Congress Avenue, Suite 900
Austin, Texas 78701

Counsel for Defendant
Dell Computer Corporation