```
 1                UNITED STATES DISTRICT COURT
                     DISTRICT OF DELAWARE
 2
     In re INACOM CORP., et al.,  ) Chapter 11
 3                                 ) Bankruptcy Case No.
                    Debtors,       ) 00-2426  (PJW)
 4   _____ )
                                   )
 5   INACOM CORP., et al.,         )
                                   )
 6                  Plaintiffs,    )
                                   )
 7        vs.                      ) Civil Action No.
                                   ) 04-CV-148  (GMS)
 8   TECH DATA CORPORATION,        )
                                   )
 9                  Defendant,     )
     _____ )
10                                 )
     INACOM CORP., et al.,         )
11                                 )
                    Plaintiffs,    )
12                                 )
          vs.                      ) Civil Action No.
13                                 ) 04-CV-582  (GMS)
     DELL COMPUTER CORP.,          )
14                                 )
                    Defendant,     )
15   _____ )
                       Cont'd
16
           DEPOSITION TAKEN IN BEHALF OF
17
      DEFENDANTS AND THIRD-PARTY PLAINTIFF
18
                  *   *   *   *   *
19        DEPOSITION OF NONDAS L. VITOLS, taken before
20   me, Gary A. Barnes, Court Reporter and General
21   Notary Public within and for the State of
22   Nebraska, commencing at the hour of 2:30 p.m., on
23   the 23rd day of March, 2005, at the HILTON HOTEL
24   OMAHA, Prague Room, 1001 Cass Street, Omaha,
25   Nebraska.
```

**BARNES REPORTING SERVICE, INC.**
COURT REPORTERS

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

```
1    Cont'd

2    _____
                            )
3    INACOM CORP., et al.,  )
                            )
4         Plaintiffs,       )
                            )
5       vs.                 )  Civil Action No.
                            )  04-CV-583  (GMS)
6    LEXMARK INTERNATIONAL, INC.,)
                            )
7         Defendant,        )
                            )
8    _____)
     INACOM CORP., et al.,  )
9                           )
          Plaintiffs,       )
10                          )
        vs.                 )  Civil Action No.
11                          )  04-CV-584  (GMS)
     RESILIEN, INC.,        )
12                          )
          Defendant,        )
13                          )
     _____)
14   INACOM CORP., et al.,  )
                            )
15        Plaintiffs,       )
                            )
16      vs.                 )  Civil Action No.
                            )  04-CV-593  (GMS)
17   INGRAM ENTERTAINMENT, INC.,)
                            )
18        Defendant.        )
     _____)
19

20

21

22

23

24

25
```

**BARNES REPORTING SERVICE, INC.**
**COURT REPORTERS**

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

1   APPEARANCES:

2

3   Mr. Jeffrey P. Nolan
    Attorney at Law
    PACHULSKI, STANG, ZIEHL,
4   YOUNG, JONES & WEINTRAUB, P.C.
    10100 Santa Monica Boulevard
5   11th Floor
    Los Angeles, CA  90067          for Plaintiff,
6                                    InaCom Corp.

7

8   Mr. Earl M. Forte
    Attorney at Law
9   BLANK, ROME, L.L.P.
    One Logan Square
10  18th & Cherry Streets
    Philadelphia, PA  19103-6998    Counsel to
11                                   Executive Sounding
                                     Board Associates,
12                                   Inc., Liquidating
                                     Agent of InaCom
13                                   Corp. Committee of
                                     Unsecured Creditors
14

15
    Mr. Culver V. Halliday
16  Attorney at Law
    STOLL, KEENON & PARK, L.L.P.
17  2650 Aegon Center
    400 West Market Street
18  Louisville, KY  40202-3377      for Defendant,
                                     Lexmark
19                                   International

20

21  Mr. G. James Landon
    Attorney at Law
22  HUGHES, LUCE, L.L.P.
    111 Congress Avenue
23  Suite 900
    Austin, TX  78701               for Defendant,
24                                   Dell, Inc.

25

```
 1    Cont'd

 2    APPEARANCES:

 3

 4    Mr. Brandon C. Chaves
      Attorney at Law
 5    FRIEDMAN, DUMAS & SPRINGWATER, L.L.P.
      One Maritime Plaza
 6    Suite 3475
      San Francisco, CA  94111      for Defendant,
 7                                    Hewlett-Packard
                                      a/k/a Compaq
 8                                    Computer

 9

10

11

12    VIA TELEPHONE:

13

14    Mr. Stephen C. Hunt
      Attorney at Law
15    ADORNO & YOSS, P.A.
      350 East Las Olas Boulevard
16    Suite 1700
      Fort Lauderdale, FL  33301      for Defendant,
17                                      Tech Data
                                        Corporation

18

19

20

21

22

23

24

25
```

DIRECT   ....ide.

1                    I N D E X

2

WITNESS:                              EXAMINATION

3

4                                      TYPE      PAGE

NONDAS L. VITOLS

5                                     Direct      6
                                     (Halliway)

6
                                     Direct     19
7                                    (Landon)

8

9

10

11
EXHIBITS:                         MARK    IDENTIFY
12

13      1    Letter, February 17, 2000     7        8

14
        2    Letter, February 17, 2000    17       17
15

16

17

18

19

20

21

22

23

24

25

**BARNES REPORTING SERVICE, INC.**
COURT REPORTERS

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

VITOLS - DIRECT (Halliday)

1               NONDAS L. VITOLS,
            Of lawful age, being first duly
2          cautioned and solemnly sworn as
          hereinafter certified, was
3          examined and testified as follows:

4          THE WITNESS:  I do.

5           DIRECT EXAMINATION

6  BY MR. HALLIDAY:

7      Q.  Ms. Vitols, good afternoon.  My name is

8  Culver Halliday.  I'm an attorney and I'm

9  representing Lexmark International, Inc. in a

10  matter brought against it by InaCom Corporation

11  and the reason why you've been asked to appear

12  here today is to answer some questions.

13      Can you please state your full name

14  for the record, ma'am?

15      A.  Nondas L. Vitols.

16      Q.  Vitols.  And it's my understanding,

17  ma'am, that you are represented today by counsel

18  and that counsel is Mr. Brandon Chaves?

19      MR. CHAVES:  (Counsel indicating by

20  moving head up and down.)

21      THE WITNESS:  Yes.

22  BY MR. HALLIDAY:

23      Q.  Ma'am, I do not believe that this

24  deposition, at least my part of it, will take

25  very long at all.  If for any reason you, however,

VITOLS - DIRECT (Halliday)

1    would like to take a break, please let us know and

2    we'll do so.

3              If I ask a question in which I'm not

4    loud enough or it is confusing or if there's

5    anything else wrong, as far as you're concerned

6    with that question, which makes it difficult to

7    reasonably to answer it, please let me know and I

8    will try again.

9        A.   Okay.

10             (Whereupon, Exhibit Number 1 was

11             marked for identification.)

12   BY MR. HALLIDAY:

13       Q.   Ma'am, I'm going to hand you what's

14   been marked as Exhibit 1 to your deposition and

15   ask you to take just -- well, take whatever time

16   you need to familiarize yourself with it.

17             I'm sorry, let me show it to

18   Mr. Nolan real quickly.

19             Ms. Vitols -- Vitols, Vitols --

20       A.   Doesn't matter.

21       Q.   Well, once you learn it wrong it's so

22   hard to start saying it correctly.

23       A.   It doesn't really matter.

24       Q.   Ms. Vitols, can I ask you if you can

25   identify Exhibit 1?

**BARNES REPORTING SERVICE, INC.**
COURT REPORTERS

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

VITOLS - DIRECT (Halliday)

1    A.  Yes.

2    Q.  Is that a -- well, would you please

3  identify it, ma'am?  Could you describe that for

4  us, please.

5    A.  It was a letter that was given to us in

6  a template by John Frasca to send out to our

7  vendors.

8    Q.  What is the date on that letter, ma'am?

9    A.  February 17th, 2000.

10   Q.  Ma'am, on that date were you an

11 employee of Custom Edge, Inc.?

12   A.  Yes.

13   Q.  Immediately prior to your being an

14 employee of Custom Edge, Inc., by whom were you

15 employed?

16   A.  InaCom.

17   Q.  You went directly from InaCom

18 Corporation to Custom Edge, Inc.?

19   A.  Yes.

20   Q.  And did you begin your employment with

21 Custom Edge, Inc. in February of 2000, ma'am?

22   A.  Yes.

23   Q.  Can you please identify for me, ma'am,

24 John Frasca?

25   A.  John Frasca was my direct supervisor.

**BARNES REPORTING SERVICE, INC.**
COURT REPORTERS

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

VITOLS - DIRECT (Halliday)

1       Q.  What was the last position you had with

2  InaCom Corporation?

3       A.  As a buyer.

4       Q.  A buyer?

5       A.  A buyer.

6       Q.  In what area or department of the

7  company, ma'am?

8       A.  Purchasing.

9       Q.  Was Mr. Frasca in purchasing with

10  InaCom Corporation?

11       A.  Yes.

12       Q.  Did he go to Custom Edge, Inc., at or

13  about the same time that you did?

14       A.  Yes.

15       Q.  Do you know that Mr. Frasca is the

16  author or the draftsman of the template that has

17  been marked as Exhibit 1?

18       A.  No, I don't.

19       Q.  But he's the gentleman who sent this to

20  you, ma'am?

21       A.  Yes.

22       Q.  Who is that addressed to, ma'am?

23       A.  This one is to Logicare.

24       Q.  Do you recall, ma'am, if you sent such

25  a letter to Logicare?

**BARNES REPORTING SERVICE, INC.**
**COURT REPORTERS**

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

VITOLS - DIRECT (Halliday)

1      A.   Well, it looks like I did.

2      Q.   I ask, ma'am, simply 'cause it hadn't

3   been signed and I just wondered if you recalled.

4      A.   They were sent to me e-mail, so there

5   were no signatures on e-mail.

6      Q.   Would you have sent it to Logicare, if

7   it was sent?

8      A.   Yes.

9      Q.   Do you recall, ma'am, sending it to

10  others?

11     A.   Yes.

12     Q.   Was Logicare a vendor of Custom Edge,

13  Inc.?

14     A.   Yes.

15     Q.   Had it been a vendor to InaCom

16  Corporation?

17     A.   Yes.

18     Q.   Do you know if anyone else besides you

19  at Custom Edge, Inc. sent letters based on the

20  same template that was used for Exhibit 1?

21     A.   It was given to all of the buyers to

22  send out to their vendors.

23     Q.   And these were vendors that the buyers

24  had had when they were at InaCom Corporation?

25     A.   Yes.

VITOLS - DIRECT (Halliday)

1    Q.  And had each of those vendors come at

2  about the same time that you did from InaCom

3  Corporation to Custom Edge?

4    A.  Yes.

5    Q.  Ma'am, as best you can recall, besides

6  yourself who else was a buyer who came from InaCom

7  Corporation to Custom Edge at about the same time

8  you did?

9    A.  There were probably 40 or 50.

10    Q.  Oh, dear.

11        Was Mr. Frasca a buyer?

12    A.  No.

13    Q.  Was he the head of the buyers while you

14  were at InaCom Corporation?

15    A.  He was the head of our division.

16    Q.  And there were buyers in your division?

17    A.  Yes.

18    Q.  How many buyers were in your division?

19    A.  Probably close to ten.

20    Q.  Okay.  Do you recall, ma'am, if all the

21  buyers in your division came from InaCom

22  Corporation to Custom Edge, Inc., at about the

23  same time you did?

24        MR. NOLAN:  Object because it assumes

25  facts not in evidence.

**BARNES REPORTING SERVICE, INC.**
**COURT REPORTERS**

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

VITOLS - DIRECT (Halliday)

1           THE WITNESS: Yes.

2   BY MR. HALLIDAY:

3      Q.   Can you tell me, ma'am, all the names

4   you can recall of the buyers who were in your

5   division who came from InaCom Corp. to Custom Edge

6   at about the same time you did?

7      A.   Let's see, there was Ben Ryan, Kelly

8   Briganti.

9      Q.   Can you spell that, ma'am?

10      A.   B-R-I-G-A-N-T-I.

11      Q.   Okay.

12      A.   Those are the ones that sat right close

13   to me.  I believe there was a Suzie Sine.  That's

14   spelled S-I-N-E.  Margi Yarges.

15         I'm trying to figure out where they

16   sat and where we were.

17      Q.   And just do the best you can, ma'am,

18   this isn't meant to be a memory test.

19      A.   That's about all I can remember.

20      Q.   Okay, that's fine.

21         Ma'am, what were your

22   responsibilities as a buyer at InaCom Corporation

23   just prior to your leaving Custom Edge, Inc.?

24   What did you do in that position?

25      A.   Bought product.

VITOLS - DIRECT (Halliday)

1      Q.   And bought product from vendors of

2   InaCom Corporation?

3      A.   Yes.

4      Q.   Was this template used by the buyers to

5   send a letter produced from that template to each

6   of the vendors that each buyer dealt with?

7      A.   As far as I know.

8      Q.   Do you recall, ma'am, how many buyers

9   you would have dealt with?

10     A.   That I would have dealt with?

11          MR. HALLIDAY:  Yes, ma'am.

12          MR. NOLAN:  Object to the form of the

13   question.

14          THE WITNESS:  Probably 10 or 12.

15   BY MR. HALLIDAY:

16     Q.   Was that about the same number while

17   you were at InaCom Corp., just before you went to

18   Custom Edge, Inc.?

19     A.   Yes.

20     Q.   And when you got to Custom Edge, Inc.?

21     A.   Yes.

22     Q.   And was it the same vendors?

23     A.   Yes.

24     Q.   Ma'am, if you recall, did you send a

25   letter produced from the template, which is

VITOLS - DIRECT (Halliday)

1    Exhibit 1, to each of your vendors?

2         A.   The vendors that I had at that time,

3    yes.

4         Q.   How many -- you've already told me, I

5    think, 10 to 12 vendors?

6         A.   Yes.

7         Q.   Do you recall if Lexmark International

8    Inc. was one of your vendors?

9         A.   No, it was not.

10        Q.   Was Dell Computer Corporation?

11        A.   No.

12        Q.   Was Tech Data Corporation?

13        A.   No.

14        Q.   Was Nashville Computer?

15        A.   I don't believe I ever bought anything

16   from them.

17        Q.   What about Logicare?

18        A.   Yes.

19        Q.   Ma'am, do you know whether Mr. Frasca

20   himself sent any letters, based on the template,

21   to any vendors?

22        A.   I doubt it.

23        Q.   Ma'am, when you were sent the template

24   for the letter, did you receive any instructions

25   at the same time regarding the sending of letters

VITOLS - DIRECT (Halliday)

1   based on the template?

2       A.  We were just told to send them out to

3   our vendors.

4       Q.  Were you told that at a meeting?

5       A.  No, I don't think so.

6       Q.  Do you recall if that instruction was

7   communicated to you, ma'am, by e-mail?

8       A.  If it was sent by e-mail, he also told

9   us to send them.  I mean, it was also verbal.

10      Q.  Okay.  But it wouldn't have been

11  necessarily at a meeting, a formal meeting?

12      A.  Right.

13      Q.  Is it possible or, if you recall,

14  ma'am, that he told you individually?

15      A.  That's possible, but I don't really

16  recall.

17      Q.  Do you have any recollection today,

18  ma'am, as to any reasons or explanation given as

19  to why the letter should be sent?

20      A.  No.

21      Q.  And, ma'am, I apologize if I already

22  asked you this:  Do you recall whether you sent

23  the letter to each of the vendors that you dealt

24  with?

25      A.  At that time, yes.

**BARNES REPORTING SERVICE, INC.**
**COURT REPORTERS**

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

VITOLS - DIRECT (Halliday)

1      Q.   You recall that you did do so?

2      A.   Yes.

3      Q.   Ma'am, was purchasing at InaCom

4  Corporation, I want to make sure I have my

5  terminology right, what I call a department?

6      A.   Yes.

7      Q.   Was it a part of accounts payable?

8      A.   No.

9      Q.   If you know, ma'am, was accounts

10  payable a department?  Was that the right term?

11      A.   They were within the finance

12  department.

13      Q.   Okay.  So it was separate and distinct,

14  in the corporate organization, from the purchasing

15  department?

16      A.   Yes.

17      Q.   Is the purchasing department part of

18  the finance department?

19      A.   No.

20      Q.   Do you know what part of the

21  corporation the purchasing department was

22  considered to have been in when you were employed

23  at InaCom Corporation?

24      A.   I don't recall for sure, but I think it

25  would have been operations.

VITOLS - DIRECT (Halliday)

1       MR. HALLIDAY:  Okay.  Ma'am, I'm

2    going to hand you a letter that I'm going to mark

3    as Exhibit Number 2 to the deposition.

4            (Whereupon, Exhibit Number 2 was

5            marked for identification.)

6    BY MR. HALLIDAY:

7       Q.   Ma'am, have you had an opportunity to

8    look at Number 2?

9       A.   I've seen it before.

10      Q.   Will you identify that, ma'am?

11      A.   It's a letter that was sent out by

12   Francis from Compaq in Houston.

13      Q.   And what's the date on that, ma'am?

14      A.   February 17th.

15      Q.   Do you recall receiving that letter?

16      A.   No.

17      Q.   Okay.

18      A.   I --

19      Q.   I'm sorry.

20      A.   We didn't.  We had nothing to do with

21   this letter.

22      Q.   Okay.  And just to make sure I'm clear,

23   do you recall seeing a similar letter from

24   Mr. Francis, but regarding perhaps a different

25   vendor?

VITOLS - DIRECT (Landon)

1        A.   No.

2        Q.   Have you ever spoken with Mr. Francis?

3        A.   No.

4        Q.   And you don't recall receiving anything

5   like this from Mr. Francis?

6        A.   No.

7        Q.   Okay.  Ma'am, where are you employed

8   now?

9        A.   At HP Direct.

10        Q.   Did you go from Custom Edge, Inc.'s

11   employment to Compaq's employment?

12        A.   Yes.

13        Q.   And then, from Compaq's employment to

14   Hewlett-Packard's employment?

15        A.   Yes.

16        MR. HALLIDAY:  Ma'am, I'm going to,

17   with your indulgence, take five minutes and just

18   looking at my notes, and hopefully we'll be done

19   in just a couple of minutes.

20        THE WITNESS:  Okay, thank you.

21        (Whereupon, a short recess was had.)

22        MR. HALLIDAY:  Ma'am, I am through

23   with my questions and I thank you again for coming

24   in today.

25        Mr. Landon?  I'm now passing the

**BARNES REPORTING SERVICE, INC.**
COURT REPORTERS

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

VITOLS - DIRECT (Landon)

1    witness, we call it.

2                    DIRECT EXAMINATION

3    BY MR. LANDON:

4          Q.    Good afternoon, Ms. Vitols, my name is

5    James Landon.  I'm an attorney for Dell, Inc.,

6    another defendant in these adversary proceedings

7    and I promise you I just have a couple very quick

8    questions for you.

9          A.    Okay.

10         Q.    Do you recall sending a letter, you may

11   have answered this, in the form of Exhibit 1 to

12   Dell?

13         A.    No, I did not.

14         Q.    And when I say, "Dell," I also include,

15   you know, any affiliate of Dell; Dell

16   Marketing, Dell Receivables, any Dell entity.

17               Do you recall sending a letter in

18   that form to Dell?

19         A.    No.  Dell was not my vendor.

20         Q.    Do you know whose vendor Dell was?

21         A.    I'm not sure.

22         Q.    Did all of the buyers in your

23   department receive instructions to send similar

24   letters as the form, either the form of Exhibit 1

25   that you have in front of you, or some letter

VITOLS - DIRECT (Landon)

1  similar to that?

2      A.  The actual template was sent to all the

3  buyers.

4      Q.  And, to your knowledge, did all the

5  buyers send a letter to their respective vendors?

6          MR. FORTE:  Objection to form; form

7  and speculation.

8          THE WITNESS:  I don't know if they

9  all did or not.

10 BY MR. LANDON:

11     Q.  Do you recall anybody, any buyer

12 mentioning that they had sent a letter to Dell?

13     A.  No.

14     Q.  Do you recall anybody else at InaCom,

15 or I guess it's going to be Custom Edge at that

16 time, referencing that they had sent a letter in

17 the form of Exhibit 1, or some form similar to

18 that, to Dell?

19     A.  No.

20     Q.  Do you ever recall any discussions

21 among the buyers concerning Dell?

22     A.  No.

23     Q.  Were all the letters that were sent,

24 such as the form of Exhibit 1, were they

25 maintained by Custom Edge after they were sent?

**BARNES REPORTING SERVICE, INC.**
**COURT REPORTERS**

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

1              That's a poor question.

2              What happened to the letters after

3    they were e-mailed?

4         A.  I kept copies of mine, but I don't know

5    what anyone else did.

6         Q.  Do you know if there's a list somewhere

7    that identified all of the recipients of the

8    letters in the form of Exhibit Number 1?

9         A.  No.

10        Q.  No, you do not know?

11        A.  I do not know.

12             MR. LANDON:  Ma'am, that is all the

13   questions I have.  I appreciate your time.  And I

14   guess we can turn it over to Mr. Hersey, Jon?

15             MR. HALLIDAY:  Steve Hunt?

16             MR. HUNT:  No questions for the

17   witness, thank you.

18             MR. NOLAN:  No questions.

19             MR. FORTE:  No questions.

20             MR. LANDON:  Ms. Vitols, it looks

21   like you are finished.  Thank you so much.

22             MR. CHAVES:  Let me just explain real

23   quick what's going to happen here.

24             The court reporter is going to type

25   up your testimony here today, as we have done

1  before.

2              It's going to come to my office and

3  we'll send it to you for you to be read through

4  it.  If you see anything that was, you know,

5  that's incorrect, you can make changes.

6              Just so you understand, if you do

7  make any changes, any of the attorneys here can

8  use that to comment on your credibility at a

9  future hearing at trial.

10             So, when you get that, read through

11  it, if there's any changes, you can make that at

12  the end, but you'll sign it, swearing that you

13  swear it's the truth and send it back.  That's it.

14             THE WITNESS:  Okay.

15         (Whereupon, this deposition was

16           concluded at the hour of 2:57 p.m.)

17                      -o0o-

18

19

20

21

22

23

24

25

1                SIGNATURE PAGE

2

3

4

5                    _____
                            NONDAS  L.  VITOLS
6

7
     STATE OF NEBRASKA  )
8                       )  ss.
     COUNTY OF          )
9

10

11
         Subscribed and sworn to before me this _____
12   day of _____, 2005.

13

14
                     _____
15                       GENERAL NOTARY PUBLIC

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T E

3

4

5     STATE OF NEBRASKA )
                       ) ss.
6     COUNTY OF DOUGLAS )

7          I, Gary A. Barnes, Court Reporter and General
      Notary Public in and for the State of Nebraska, do
8     hereby certify that NONDAS L. VITOLS was by me
      duly sworn to testify the truth, the whole truth,
9     and nothing but the truth, and that the deposition
      by her as above set forth was reduced to print
10    under my direction by means of computer-assisted
      transcription.

11         That the within and foregoing deposition was
      taken by me at the time and place herein specified
12    and in accordance with the within stipulations;
      the reading and signing of the witness to her
13    deposition having not been waived.

14         That I am not counsel, attorney, or relative
      of any of the parties involved, or otherwise
15    interested in the event of this suit.

16         IN TESTIMONY WHEREOF, I have placed my hand
      and notarial seal this 27th day of April, 2005.

17

18

19

20                    GARY A. BARNES
                      COURT REPORTER AND
21                    GENERAL NOTARY PUBLIC

22

23

24

25

**BARNES REPORTING SERVICE, INC.**
**COURT REPORTERS**

POST OFFICE BOX 144                              402-330-7796
BOYSTOWN, NEBRASKA 68010                    FAX 402-330-3227

```
 1                                   April 29, 2005

 2

 3

 4

 5     Ms. Nondas L. Vitols
       % Mr. Brandon C. Chaves
 6     Attorney at Law
       FRIEDMAN, DUMAS & SPRINGWATER, L.L.P.
 7     One Maritime Plaza
       Suite 3475
 8     San Francisoco, CA  94111

 9     Dear Ms. Vitols:

10          As you will recall, your deposition was taken
       on March 23, 2005, at the Hilton Hotel Omaha,
11     Prague Room, 1001 Cass Street, Omaha, Nebraska.
       You reserved your right to read and sign your
12     deposition.

13          Please read your enclosed deposition.  If you
       have any corrections, please list them on the
14     enclosed errata sheet.  Note the page, the line
       number, the correction, and the reason for the
15     correction.

16          DO NOT WRITE ON THE TRANSCRIPT.

17          Please sign the Signature Page (Page 23)
       before a Notary Public and return these to me in
18     the enclosed, self-addressed, stamped envelope
       within 30 days of its receipt.

19
                                    Sincerely,
20

21

22                                  Gary A. Barnes
                                    Court Reporter

23     Enclosures

24

25
```

**CUSTOM**
**EDGE**
*THERE ARE NO LIMITS TO WHAT*
*WE CAN DO TOGETHER*

February 17, 2000

Logicare, Inc
85A Marcus Blvd
Melville NY 11747

Dear Chris and Bill,

On February 16, 2000, Compaq Computer Corporation completed the purchase of key
assets of Inacom Corporation.  With this purchase, we are proud to announce the
formation of a new, wholly owned, and separately managed Compaq subsidiary named
Custom Edge Incorporated.

In preparation for the go-forward business model, please note the following:

- Compaq Corp will be sending a letter notifying you that Compaq will be behind and
  fund the purchases by Custom Edge Inc.
- The account payable process will continue to operate in Omaha, Nebraska.  Please
  continue to use your established Account Payable contacts.  For any immediate
  issues please free to contact me at 402-758-3169.  Kindly do not contact Mr. Bill
  Francis, Accounting Manager at Compaq, as he will have no information available.
- Compaq is assuming the open accounts payable but NOT the "Held Checks".
- All "Held Checks" are the responsibility of Inacom Corp not Compaq or Custom Edge.
  Any and all inquiries on the "Held Checks" should be presented to Mr. Richard Oshlo
  at 402-758-4380.

On behalf of Custom Edge Inc, we look forward to our partnership in the year 2000 and
beyond.

Sincerely,

Noni Vitols
Product Manager



EXHIBIT

VITOLS 9

2-23-05

Received at 3:16PM, 2/8/2002

Feb-08-02  15:05  Resilien                    631 420 1980            P.02

February 17, 2000

Logicare, Inc
85A Marcus Drive
Melville NY 11747

RE:    Account Payable # 018647 of Inacom Corporation

Dear Chris and Bill,

This letter is to inform you that, effective February 16, 2000, a wholly-owned subsidiary of
Compaq Computer Corporation purchased certain assets of Inacom Corporation. The Compaq
subsidiary will operate under the name of Custom Edge, Inc., and its' A/P accounts will be funded
by Compaq.

In connection with such purchase, Custom Edge, Inc. also assumed the obligation to pay all of
the outstanding amount on the referenced account, subject to the terms and conditions of such
account.

Inquiries to Custom Edge, Inc., regarding your account should be directed to Noni Vitols at
402.758.3678.

Thank you for your consideration in this matter.

Sincerely,

Bill Francis
Director, Corporate Finance
Telephone: 281.514.1223
Email:  bill.francis@compaq.com

EXHIBIT
VITO 2
2/23/05