8K Mar 00

offerings. Compaq will make commercially reasonable attempts to sell such services to its customer base and to new customers. Compaq will provide its Sales representatives with appropriate training, documentation and support materials, contingent upon Inacom's providing such training, documentation and support materials to Compaq.

o    Inacom shall maintain throughout the term of this Agreement all necessary capabilities to deliver and support the Inacom branded services sold by Compaq. Inacom shall make available to Compaq the same level of training, sales support, literature and information that Inacom makes available to its own sales force and resellers.

o    The parties shall enter into an appropriate service agreement for this category of services substantially in the form of the Master Agreement for Professional Services or Master Subcontract Agreement, as appropriate.

         (c) Performance Criteria. Inacom shall maintain throughout the term of this Agreement a level of service performance that meets or exceeds the level of satisfaction generally considered by end-users to be acceptable within the industry. It is agreed that Compaq shall have the sole right using reasonable and prudent judgment to determine if Inacom is providing such level of performance.

         (d) Fee Schedule. Subject to the fee schedule in the applicable service agreement.

         2.5      Professional Services.
                  ----------------------

         (a)      Definition of Work.

o    Offsite Client and server staging and deployment to customer site

o    Onsite client and server installation of hardware and identified Operating Systems, desktop applications

o    Project based work such as, installation, migration & system deployment services

         (b) Service Capabilities. Inacom shall maintain throughout the term of this Agreement all service capabilities, and associated training, certifications, communications and other capabilities as described in a definitive Master Agreement for Professional Services to be entered into by the parties subsequent to the execution of this Agreement, substantially in the form and content of the Compaq Master Agreement for Professional Services attached hereto as Exhibit 3.

         (c) Performance Criteria. Inacom shall maintain throughout the term of this Agreement a level of service performance that meets or exceeds the level of satisfaction generally considered by end-users to be acceptable within the industry. It is agreed that Compaq shall have the sole right using reasonable and prudent judgment to determine if Inacom is providing such level of performance.

         (d) Fee Schedule. Subject to the labor rates specified in the Master Agreement for Professional Services.

         (e) Premier Service Partner. Compaq shall designate InaCom as a "Premier Service Provider for Distributed Desktop Infrastructure Services."

SECTION 3  RULES OF ENGAGEMENT.
           ---------------------
                            Page 21

00153

8K Mar 00

### 3.1    Management Operating Model

o    Services Executive Coordinators. Compaq and Inacom will each assign a mutually agreed to "Services Executive Coordinator" to provide management oversight to this Agreement relationship. These Services Executive Coordinators will be responsible for:

   o ensuring compliance with the terms and conditions set forth in this Agreement
   o addressing any issues that may arise over the course of the term of this Agreement
   o escalating any unresolved issues using the escalation process outlined in the following subsection
   o conducting quarterly business reviews
   o applying the appropriate resources from their respective companies to achieve the stated objectives of this Agreement
   o providing any coordination activity internal to their respective companies required to support this Agreement

### 3.2    Management Escalation Process.

o    If in the course of the performance of this Agreement the two Services Executive Coordinators are unable to mutually resolve an issue, the issue will be brought to the Compaq Vice President and General Manager, Customer Services and Inacom Senior Vice President, Solutions Delivery for management resolution. Should these two individuals fail to achieve mutually acceptable management resolution, the issue will be raised to the Chief Executive Officer of the respective companies for management resolution. Thereafter, if an issue is not mutually resolved, the parties shall resolve such issue in accordance with Section 5.8 hereof.

### 3.3    Business Review Process.

o    A business review will be held once each calendar quarter over the term of this Agreement. These business reviews will review performance to date against this Agreement, review out-quarter business opportunities, and address any open issues related to this Agreement and its performance. The attendees, timing, location and specific agenda for each of these business reviews will be decided upon by the two Services Executive Coordinators.

o    An executive review will be conducted on or before August 1, 2000 by the Compaq Vice President and General Manager, Customer Services and the Inacom Senior Vice President, Solutions Delivery, to review the year to date performance under this Agreement and to consider the need for any changes to this Agreement, to be mutually agreed upon by the parties.

### 3.4    Bid/Win Situations

o    Inacom and Compaq will agree upon a schedule of packaged solutions, including their rate structures, that Compaq will use as the basis for responding to customer solicitations, without the need for Inacom to review or approve any engagement that meets the criteria for such packaged solutions.

o    For customer opportunities that are eligible for custom solutions and/or pricing, Inacom will respond in a timely and commercially reasonable manner to Compaq's four Customer Services Bid/Win Teams or not more than ten designated Professional Services Acquisition Consultants requests

00154

8K Mar 00

for information, bid resources and acceptance/refusal to bid
opportunities; and in any event in sufficient time for Compaq to respond
to a documented customer response request.

o    Any revenue recognized by Inacom as a result of a services sales lead
     brought to Inacom by Compaq, provided Inacom was not already engaged in
     the bid process with the customer, will be applied to the annual revenue
     target. Compaq and Inacom agree that the maximum sales lead revenue
     applied to an annual revenue target will not exceed 30% of the total
     annual revenue target for that year.

o    Should Compaq and Inacom find themselves in a competitive bid situation
     and Compaq wins the bid, any service business made available to Inacom
     by Compaq, will be applied to the annual revenue target.

o    Should Inacom refuse to accept any service business presented to them by
     Compaq that meets the criteria of any of the Services Categories, the
     applicable services agreement and agreed to rate schedules, the revenue
     associated with such business will be applied to the annual revenue
     target.

     3.5       On-going Deal Management Situations
               -----------------------------------

o    Revenue from renewals of Compaq service contract business awarded to
     Inacom in previous years will be applied to the applicable annual
     revenue target.

     3.6       New Service Offers
               ------------------

o    Compaq and Inacom shall commence within thirty days of the closing of
     the Asset Purchase Agreement a joint effort to develop new service
     offers with the express intent of tailoring such offers for delivery by
     Inacom. Once established, these service offers from time to time may be
     amended, replaced, added to or eliminated by mutual agreement of the
     parties.

SECTION 4.  OVERALL REVENUE ALLOCATION AND PERFORMANCE CRITERIA.
            -------------------------------------------------------

     4.1 Revenue Application Criteria. The purpose of this section is to set
forth or reiterate certain criteria that will be used to identify revenue to be
applied to Compaq's annual revenue targets.

o    All business opportunities presented to Inacom for services anywhere in
     the United States that fall within the five Services Categories will be
     counted toward the annual revenue target, including:

o    If Inacom does not have local service capability in the required
     locations.

o    If, with respect to any individual customer engagement, Inacom's service
     quality is not maintained at the levels specified in Section 2 and the
     applicable service agreement, Compaq at its sole discretion may
     terminate Inacom with respect to that engagement in accordance with the
     applicable service agreement in the area of non-performance, provided
     that Inacom has not cured such service quality deficiency within 15 days
     after written notice thereof (or such shorter period as required by the
     applicable customer). All revenues Inacom would have received but for
     such termination will be counted toward the annual revenue targets.

o    The value Inacom derives from utilizing Compaq's infrastructure to

Page 23

00155

8K Mar 00

support the sale through delivery of service will be quantified (as mutually agreed upon in good faith by Inacom and Compaq) and applied to the annual revenue targets. Examples of such Compaq infrastructure support include:

o       Leveraging Compaq's purchase agreements
o       Utilizing Compaq's on-site and off-site delivery capability
o       Training that is not already included as a benefit of GSP or other applicable service agreements.

SECTION 5          GENERAL.
                   --------

5.1 Most Favored Customer. Inacom agrees that Inacom will offer Compaq its most favored customer fees (i.e. the lowest fees which it charges any of its customers for comparable services under similar service environments) for the services described in this Agreement, except in the instance where lower pricing is offered to "meet competition" in response to a documented lower bid, as such term is commonly used in the relevant industry.

5.2 Notices. All notices, requests and other communications to any party hereunder shall be in writing (including facsimile transmission) and shall be given.

                    If to Inacom, to:

                              Inacom Corp.
                              Attention: Contracts Department
                              10810 Farnam Drive
                              Omaha, NE 68154

                    With a copy to:

                              Inacom Corp.
                              Attention: Bob Lewis
                              2001 Westside Parkway
                              Suite 220
                              Alpharetta, GA  30004

                    If to Compaq, to:

                              Compaq Computer Corporation
                              Attention:  John Kelley
                              MS530112
                              24500 Highway 290
                              Cypress, TX  77429-2318

                    With a copy to:

                              Compaq Computer Corporation
                              Attention: Law Department
                              40 Old Bolton Road
                              Stow, MA 01775

All such notices, requests and other communications shall be deemed received on the date of receipt by the recipient thereof if received prior to 5 p.m. in the place of receipt and such day is a business day in the place of receipt. Otherwise, any such notice, request or communication shall be deemed not to have been received until the next succeeding business day in the place of receipt.

5.3 Amendments and Waivers. (a) Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed, in the case of an amendment, by each party to this Agreement, or in the

Page 24

00156

8K Mar 00

case of a waiver, by the party against whom the waiver is to be effective.

(b) No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

5.4  Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns; provided that no party may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the consent of each other party hereto.

5.5  Governing Law. This Agreement shall be governed by and construed in accordance with the law of the State of New York without regard to the conflicts of law rules of such state.

5.6  Counterparts; Third Party Beneficiaries. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. This Agreement shall become effective when each party hereto shall have received a counterpart hereof signed by the other party hereto. No provision of this Agreement is intended to confer upon any person other than the parties hereto any rights or remedies hereunder.

5.7    Term and Termination.

(a) This Agreement shall terminate at the end of the year 2000 period, except to the extent extended pursuant to Section 1.1, subject to Sections 5.7(b), (c) and (d).

(b) This Agreement shall terminate upon a Fundamental Change of Inacom (unless otherwise agreed by Compaq) or upon a Fundamental Change of Compaq (unless otherwise agreed by InaCom). "Fundamental Change" means, with respect to either party to this Agreement, (i) the acquisition by any person, entity or group of beneficial ownership of voting securities representing more than 50% of the total voting power of all voting securities of such party then outstanding, (ii) the merger or consolidation of such party with any other person or entity and (iii) the conveyance, transfer or leasing of all or substantially all of the assets of such party.

(c) This Agreement shall terminate with respect to any Service Category (unless otherwise agreed by Compaq) if Inacom is in material breach of its service capability requirements or performance criteria with respect to such Service Category hereunder or under the applicable service agreement, if any; provided that Inacom has not cured such breach within 30 days after written notice thereof. To the extent this Agreement is so terminated with respect to any Service Category, Compaq's aggregate revenue target for each remaining year or portion thereof will be reduced by the remaining revenue target forecast specified in Exhibit 1, as amended from time to time, relating to such Service Category.

(d) This Agreement shall terminate with respect to any Service Category within 120 days after Inacom delivers a written notice to Compaq that Inacom intends to terminate its capabilities in such Service Category. To the extent this Agreement is so terminated with respect to any Service Category, Compaq's aggregate revenue target for each remaining year or portion thereof will be reduced by the remaining revenue target forecast specified in Exhibit 1, as amended from time to time, relating to such Service Category.

5.8 Dispute Resolution. The parties wish to use reasonable measures to

00157

8K Mar 00

avoid the litigation of any dispute under this Agreement. Therefore, any dispute arising out of or relating to this Agreement or the breach, termination or validity thereof shall be settled in accordance with one of the following procedures. The parties shall use the procedures in the following order of priority. Unless otherwise agreed, the parties shall each bear all of their expenses incurred during the procedures. All negotiations pursuant to this Subsection 5.8 shall be negotiated in good faith and are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

(a) Negotiation. At the request of either party to initiate this dispute resolution process, the parties shall negotiate for a resolution of the dispute in a meeting or series of meetings held at the site of the non-requesting party. The meeting shall be attended by appropriate executives of both parties who are at a higher level of management than the persons with direct responsibility for the administration of this Agreement.

(b) Mediation. In the event that the dispute is not resolved by negotiation within sixty (60) days of the original request to initiate this dispute resolution process, the parties shall negotiate for a non-binding mediation process which is appropriate for the dispute at issue in a meeting or series of meetings held at the site of the original non-requesting party.

(c) Binding Arbitration. In the event that the parties are unable to agree on a mediation process within ninety (90) days of the original request to initiate this dispute resolution process, or the mediation process does not settle the dispute within one hundred twenty (120) days of the original request to initiate this dispute resolution process, the parties shall consider settlement of the dispute by binding arbitration. If the parties mutually agree to binding arbitration, the dispute shall be settled by arbitration in accordance with the then current CPR Institute For Dispute Resolution Non-Administered Arbitration Rules by three independent and impartial arbitrators, of whom each party shall appoint one and the third to be appointed by the two appointed by Compaq and Inacom . The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C., Sections 1-16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The place of arbitration shall be in the city of the original non-requesting party. The arbitrators are not empowered to award damages in excess of compensatory damages up to any limit specified in this Agreement and each party hereby irrevocably waives any right to recover such damages with respect to any dispute resolved by arbitration. The statute of limitations of the State of New York applicable to the commencement of a lawsuit shall apply to the commencement of an arbitration hereunder, except that no defenses shall be available based upon the passage of time during any negotiation or mediation called for by Subsections 5.8 (a) through (c).

5.9 Reports and Audit Rights. Inacom shall maintain records and ensure proper accounting of revenue applied toward Compaq revenue targets by Service Category. Inacom shall provide a quarterly report to Compaq of revenue applied against each Service Category. In the event of any disagreement with Compaq regarding the content of any reports, Inacom agrees to permit Compaq upon reasonable request and during normal business hours, to review Inacom's records relating to Inacom's Compaq-related services business. Such records shall include all records pertaining to the provision of services at Compaq customer locations and revenue generated from Compaq-related services.

5.10 Confidentiality. This Agreement shall be considered a confidential document of both parties. Except as required by law, neither party shall disclose the contents or existence of this Agreement without the prior written permission of the other party.

5.11 Subcontracting. Should Inacom wish to use resources other than Inacom employees to deliver services via a subcontracting, franchise or other

Page 26

8K Mar 00

form of business arrangement, except as specified in the applicable services agreement, Compaq will have the right to refuse or accept such an arrangement; provided that such acceptance by Compaq shall not be withheld unreasonably. If Compaq does accept such an arrangement, Inacom shall be responsible for ensuring the subcontractor, franchisee or other entity complies with all requirements of this Agreement and any other applicable service agreement. Such subcontractor, franchisee or other entity shall be deemed Inacom's agent for purposes of this Agreement.

        5.12    CONSEQUENTIAL DAMAGES

IN NO EVENT WILL EITHER PARTY HERETO BE LIABLE FOR DAMAGES CAUSED BY THE OTHER PARTY'S NEGLIGENCE, OR FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL, INDIRECT OR PUNITIVE DAMAGES, LOST PROFITS, LOST USE OF EQUIPMENT, LOSS OF STORED MEMORY, COST OF SUBSTITUTE EQUIPMENT OR OTHER DOWNTIME COSTS, REGARDLESS OF WHETHER SUCH LIABILITY IS BASED ON BREACH OF CONTRACT, TORT, STRICT LIABILITY, BREACH OF WARRANTIES, FAILURE OF ESSENTIAL PURPOSE OR OTHERWISE AND EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM AGAINST THE OTHER BY ANY OTHER PARTY.

        5.13 Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, both oral and written, between the parties with respect to the subject matter of this Agreement.

        5.14 Single Agreement. This Agreement and the agreements identified on Exhibit 4 of the Services, Supply and Sales Agreement (the Services, Supply and Sales Agreement and such other agreements, collectively, the "Operating Agreements") were entered into pursuant to the Asset Purchase Agreement. The undertakings of each party hereunder and thereunder constitute consideration for the undertakings of the other parties under all of the Operating Agreements, and all of the Operating Agreements shall constitute a single agreement. The material performance of the obligations of each party under each Operating Agreement shall be a condition to the performance of the obligations of each other party under each Operating Agreement. The rightful rejection of any Operating Agreement (which shall not include an expiration or termination thereof) requires the rejection of all Operating Agreements.

        5.15 No Offset. Neither party shall be permitted to offset any payments to be made or credits to be applied under this Agreement with any payments to be made or credits to be applied under the Asset Purchase Agreement or the credit agreement contemplated by the Revolving Credit Facility Commitment Letter dated as of February 15, 2000 from Compaq to Inacom.


<PAGE>


IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

                        Inacom Corp.

                        By: /s/ Gerald A. Gagliardi
                            -------------------------
                        Name: Gerald A. Gagliardi

                        Title:  President and Chief Executive Officer

                        Date:   February 16, 2000


                        Page 27

00159

```
                          8K Mar 00
                          Compaq Computer Corporation

                          By: /s/ Peter A. Mercury
                              -----------------------
                          Name: Peter A. Mercury

                          Title: Vice President and General Manager
                          Customer Services Division

                          Date: February 16, 2000
```

<PAGE>

EXHIBIT 1

FORECASTS OF ESTIMATED REVENUE BY SERVICES CATEGORIES

<TABLE>
<S>                                           <C>            <C>            <C>

| Services Categories | 2000 | 2001 | 2002 |
|---|---|---|---|
| 1. On-Site/Off-Site Warranty Service | $10 million | $20 million | $25 million |
| 2. Non-Warranty Maintenance Services | $50 million | $75 million | $100 million |
| 3. Call Handling Services | $5 million | $10 million | $20 million |
| 4. Asset Management Services | $15 million | $25 million | $35 million |
| 5. Professional Services | $5 million | $10 million | $15 million |

00160

8K Mar 00

- ------------------------------------------ -------------------- ------------------
------------------
Aggregate Revenue                           $85 million          $140 million      $195 million
- ------------------------------------------ -------------------- ------------------
------------------
</TABLE>

<PAGE>

EXHIBIT 2

CALL HANDLING SERVICES AGREEMENT

This Call Handling Services Agreement ("Agreement"), made this _____
day of _____, 2000, is by and between _____, having
a   principal   place   of   business   at   _____
("Subcontractor"),  and Compaq Computer Corporation, having a principal place of
business at 40 Old Bolton Road, Stow Massachusetts 01775 ("Compaq"). The parties
agree  that  the  terms  and  conditions  of this  Agreement  and  any  applicable
Purchase  Order(s)  that  may be  issued  hereunder  will  govern  the  purchase of
Services by Compaq from Subcontractor for the purpose of Subcontractor providing
such  Services  on  behalf  of  Compaq  to  a  customer  or  customers  of  Compaq
(hereinafter referred to as "Customer").

This  Agreement  will  become  effective  on the date  specified  above  and will
continue for a period of one (1) year,  unless otherwise  terminated as provided
herein or extended  by the mutual  consent of the  parties.  Any  expiration  of
termination  of this  Agreement  will not alter the rights,  duties,  or obligations
of the  parties  relating  to any  Purchase  Orders  issued  by Compaq  under this
Agreement prior to the date of expiration or termination of this Agreement.

This  Agreement  does not  obligate  Compaq  to purchase  any  Services  from
Subcontractor.  Purchases,  if any, will be as specified on a Purchase  Order(s)
issued by Compaq pursuant to Section 2.

1.   DEFINITIONS

     a) "Acceptance"  means written  notification  from Compaq to  Subcontractor
     that  indicates  that the  Services  have been  evaluated  and  satisfy the
     completion and acceptance criteria set forth or referenced in the Statement
     of Work or Purchase  Order.  Acceptance  may be  partial  or  complete,  as
     specified in such notification.

     b) "Invention(s)" means any designs, techniques,  inventions,  discoveries,
     or  improvements,  whether  patentable  or not,  that are  conceived of or
     reduced to practice by Subcontractor in providing the Services to Compaq or
     Customer under this Agreement.

     c) "Services" means consulting, integration, implementation,  installation,
     maintenance,  support, design, development,  training,  management, and any
     other  work  provided  by  Subcontractor  in  connection  with  meeting
     Subcontractor's responsibilities under this Agreement.

Page 29

00161

8K Mar 00

d) "Statement of Work" means a statement agreed upon by Compaq and Subcontractor that specifies the Services to be provided by Subcontractor, the price, payment schedule, delivery schedule, and acceptance criteria for such Services and, if applicable, detailed technical and administrative requirements for the Services. The Statement of Work may also include additional terms or modifications to this Agreement. A Statement of Work will be created and agreed upon for each Purchase Order issued under this Agreement.

2. PURCHASE ORDER, ORDER OF PRECEDENCE, SERVICES COORDINATORS

a) Subcontractor will furnish the Services to Compaq or Customer as specified in the Statement of Work upon Compaq's issuance of a Purchase Order to Subcontractor.

b) The following order of precedence will control in the event of any conflict in terms and conditions:

1) Statement of Work,
2) Purchase Order, and
3) this Agreement.

The pre-printed terms and conditions on the reverse side of the Purchase Order will not apply to this Agreement or any Purchase Order issued under this Agreement.

c) Each party will appoint a coordinator for the Services to be performed under each Purchase Order and Statement of Work. Subcontractor's coordinator will have the authority to represent Subcontractor. Compaq's coordinator will represent Compaq and be responsible for determining the adequacy and acceptability of the Services provided by Subcontractor.

3. PAYMENT

Unless otherwise set forth in the Statement of Work or Purchase Order, payment for the Services will be due forty-five (45) days from the later of the date of Acceptance or the date Compaq receives a proper invoice from Subcontractor.

4. RECORDS

Subcontractor will maintain account records in accordance with generally accepted accounting practices to substantiate all invoices. Such records will be made available to Compaq during normal business hours and will include payroll records, expense accounts, attendance cards, and job summaries. Subcontractor will maintain such records for three (3) years from the date of final payment for the Services.

5. OWNERSHIP AND LICENSE

a) All Inventions will be the sole and exclusive property of Compaq. Subcontractor hereby assigns to Compaq the ownership of copyright in the Inventions. Compaq will have the right to obtain and hold in its own name copyrights, registrations, and similar protection which may be available in the Inventions. Subcontractor agrees to assist Compaq as may be required to perfect such rights.

b) To the extent that any Subcontractor's pre-existing technology is contained in the Inventions, Subcontractor grants to Compaq an irrevocable, nonexclusive, worldwide, royalty-free license to:

1) use, execute, reproduce, display, perform, and distribute (internally or externally) such pre-existing technology; and

Page 30

8K Mar 00

2) authorize Customer to do any, some, or all of the foregoing.

6. WARRANTY

a) Subcontractor warrants that all Services will (1) be performed in a good and workmanlike manner and in accordance with generally accepted professional standards for such Services, and (2) conform to the requirements specified in the Statement of Work or Purchase Order.

b) Subcontractor warrants that Services will not in any manner limit, impair, disrupt, or jeopardize any existing Year 2000 Compliance of any equipment or software on which Services are performed. "Year 2000 Compliance" for purposes of this provision means the capability to correctly process, calculate, compare, and sequence date data within and between the 20th and 21st centuries, including leap year calculations.

c) In the event of any breach of warranty, Subcontractor, without charge and without delay, will re-perform nonconforming Services.

7. CONFIDENTIAL INFORMATION

Subcontractor will maintain all information or data, whether written or oral, relating to Compaq or Customer which Subcontractor obtains or otherwise has access to in the performance of Services in confidence and will not disclose any such information or data to any third party or to employees, agents, subcontractors, or suppliers of Subcontractor who do not have the need for access to such information or data.

8. PERSONNEL

a) Personnel provided by Subcontractor will not be considered employees of Compaq for any purpose. Subcontractor personnel will make no commitments on behalf of Compaq for any purpose. Subcontractor assumes full responsibility for the actions of its personnel and will be responsible for their supervision, daily direction, and control. Subcontractor will retain full responsibility for payment of salary (including withholding of income taxes and Social Security), worker's compensation, disability benefits, and the like. Nothing in this Agreement grants Subcontractor or any Subcontractor personnel any right under any Compaq employee benefit plan.

b) Subcontractor personnel specified or identified by name in the Statement of Work or Purchase Order will be considered essential to the Services to be performed. No substitution or diversion of such personnel will be made without the prior written consent of Compaq and Customer.

c) Compaq and Customer will retain the right to reject any of Subcontractor's personnel whose qualifications are insufficient in Compaq's or Customer's judgment.

9. CHANGE IN SCOPE

Each Purchase Order and Statement of Work under this Agreement is based upon Compaq's present understanding of Compaq's obligations to Customer. In the event Compaq's understanding changes or Customer requests a change in Compaq's obligations affecting Subcontractor's performance, Compaq will notify Subcontractor of such change request in writing. Within ten (10) days of receipt of such change request, Subcontractor will notify Compaq in writing of any increase or decrease in Subcontractor's charges and/or alteration to delivery schedules occasioned by the change. Upon Compaq's acceptance of Subcontractor's modified charges and delivery schedule, the parties will modify the terms of the applicable Purchase Order and Statement of Work to effect the change. Subcontractor will not implement

Page 31

8K Mar 00

the change without Compaq's written authorization.

10. TERMINATION

a) Compaq may terminate for convenience this Agreement, any Purchase Order, or any portions thereof by written notice to Subcontractor. In any event, the applicable Purchase Order will terminate immediately upon termination, for any reason, of Compaq's agreement with Customer. Upon receipt of such notice, Subcontractor will immediately stop all activities associated with the terminated Purchase Order. Subcontractor will be paid for the Services provided and accepted prior to the date of termination. Such payment will constitute Compaq's entire liability.

b) In the event of a default by Subcontractor, Compaq will provide Subcontractor written notice thereof. If the default is not remedied within ten (10) days or within the time stated in the notice, Compaq may terminate this Agreement, any Purchase Order, or any portions thereof.

c) The rights and obligations of Sections 4, 5, 6, 7, 10, 11, and 12 will continue after expiration or termination of this Agreement and will bind the parties and their legal representatives, successors, heirs, and assigns.

11. INDEMNIFICATIONS

a) Subcontractor will indemnify, defend, and hold Compaq harmless from any and all claims or demands (including all losses, damages, and liabilities resulting from such claims or demands, and all related costs and expenses, including reasonable legal fees) arising from or in connection with (1) Subcontractor's performance of, or failure to perform, any of its obligations under this Agreement or (2) an act or omission of Subcontractor in its relationships with its employees, agents, subcontractors or suppliers.

b) Subcontractor will indemnify, defend, and hold Compaq and Customer harmless from any and all claims or demands (including all losses, damages, and liabilities resulting from such claims or demands, and all related costs and expenses, including reasonable legal fees) which may result by reason of any infringement or claim of infringement of any intellectual property rights associated with the Services or Inventions provided in connection with this Agreement.

12. LIMITATION OF LIABILITY

a) EXCEPT AS PROVIDED BELOW, NEITHER COMPAQ NOR SUBCONTRACTOR WILL BE LIABLE FOR ANY DAMAGES RESULTING FROM LOSS OF DATA, PROFITS, OR USE OF PRODUCTS, OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. Subcontractor will be liable for any damages, including incidental or consequential damages, which Compaq is obligated to pay Customer or other third parties as a result of Subcontractor's failure to perform its obligations in accordance with this Agreement.

b) This limitation of liability does not apply to the liability of either party for any personal injury, including death, or for willful, wanton, or malicious acts of Subcontractor or to obligations of Subcontractor under Section 7, "Confidential Information", or Section 11, "Indemnifications".

13. COMPLIANCE WITH LAWS

Subcontractor, at its own expense, will comply with all laws and regulations of federal, state, and local government authorities relating to its obligations under this Agreement.

Page 32

8K Mar 00

14. GENERAL

a) Except as expressly provided in the Statement of Work or Purchase Order, Subcontractor will be entitled to no further payment, cost reimbursement, or other compensation for the Services provided hereunder.

b) Subcontractor shall carry during the term of this Agreement, and with companies with a Best Rating of not less than A-:VII, insurance policies of the kinds and in the amounts listed below:

1. Worker's Compensation - statutory limits in each state in which Subcontractor is required to provide Worker's Compensation coverage including Other States Endorsement or policy equivalent thereof. Policy shall include a waiver of subrogation in favor of Compaq Computer Corporation, its officers, directors, employees and agents

2. Employer's Liability - not less than $1,000,000

3. Comprehensive General Liability - including Contractual Liability, Independent Contractor's Liability, Products and/or Completed Operations Liability, and Personal Injury/Property Damage Coverage's in a combined single limit of not less than $1,000,000 per occurrence combined single limit and $2,000,000 General Aggregate. Compaq Computer Corporation, its officers, directors, employees and agents shall be named as Additional Insureds.

4. Automobile Liability - for owned, non-owned, and hired vehicles in a combined single limit of not less than $1,000,000.

5. Umbrella Liability - a combined single limit of not less than $2,000,000.

Subcontractor shall furnish Compaq with Certificates of Insurance evidencing the specified insurance policies and stating that such insurance policies may not be changed or terminated so as to not comply with the foregoing insurance requirements without at least thirty (30) days prior written notice to Compaq.

c) Nothing in this Agreement will be construed as prohibiting or restricting Compaq from independently developing, acquiring, and/or marketing services which are similar to and/or competitive with those provided hereunder.

d) Any assignment, transfer, or subcontracting of rights or obligations by Subcontractor under this Agreement in whole or in part without the prior written consent of Compaq will be void and may subject Subcontractor to termination.

e) During the performance by Subcontractor under a particular Purchase Order and Statement of Work Compaq may require Subcontractor to temporarily cease performance of some or all of the Services by issuing Subcontractor a Work Suspension Order ("Order"). The Order will include the effective date of the Order, a specific description of the Services to be suspended, and the anticipated duration of the suspension. Upon receipt of an Order, Subcontractor will take all reasonable measures to protect the Services in progress. Compaq will notify Subcontractor in writing of the date on which the suspended Services are to be resumed.

f) Subcontractor represents that it is not under any obligation or restriction, nor will it assume any, which would interfere or present a conflict of interest with the Services that it provides under this Agreement.

Page 33

8K Mar 00

g) Compaq is free to determine the price charged to Customer for the Services that Subcontractor provides to Customer on behalf Compaq.

h) Subcontractor agrees to comply with security procedures of Compaq and Customer.

i) Subcontractor agrees to be bound by applicable "flow down" provisions of Compaq's agreement with Customer of which it is notified by Compaq.

j) Neither party may bring an action, regardless of form, arising out of this Agreement more than two (2) years after the cause of action arises. Subcontractor may not bring an action for nonpayment more than two (2) years from the date final payment for the Services is due.

k) The laws of the State of Texas will govern this Agreement.

l) This Agreement and the documents referenced herein set forth the entire understanding of the parties with respect to the subject matter described herein and supersede all prior communications, whether oral or written, by either party. Any modification to these terms and conditions must be in writing and signed by authorized representatives of both parties.

Accepted by:                                    Accepted by:

_____                         COMPAQ COMPUTER CORPORATION

BY:                                             BY:

PRINT NAME:                                     PRINT NAME:

TITLE:                                          TITLE:

DATE:                                           DATE:


ATTACHMENT

SERVICE CAPABILITIES

o        Inacom agrees to provide technical support to Compaq customers on designated products. The detailed instructions, policies, and procedures that define designated products and explain how Inacom delivers technical support to Compaq's customers are found in Compaq's Technical Support Work Instructions ("TSWI"). Compaq agrees to provide Inacom with electronic access to a current version of the TSWI and Inacom agrees to comply with all policies incorporated in the TSWI.

o        Inacom agrees to provide both Level 1 and Level 2 Technical Support Engineers ("TSEs") to perform the work. Level 1 TSEs provide the initial contact with customers and attempt to resolve customers' questions or inquiries. These questions or inquires shall be referred to heretofore as Cases. Level 2 TSEs resolve Cases that the Level 1 TSEs cannot resolve from a technical standpoint. Cases that Level 2 cannot resolve for technical reasons are to be escalated to Compaq according to the procedures documented in the Compaq Work Instructions. Inacom is allowed to escalate to Compaq Level 2 no more than one (1) percent of the Cases documented each month.

o        Inacom agrees to provide Customer Relations support to Compaq
                                    Page 34

8K Mar 00

customers. Customer Relations support is non-technical customer satisfaction or administrative assistance. Occasionally, there are customers who wish to complain about Compaq offerings or policies. Compaq expects Inacom to resolve Customer Relations Cases, but Customer Relations Cases that Inacom cannot resolve to the customer's satisfaction shall be escalated to Compaq according to the process and time frames documented in the TSWI. Inacom is allowed to escalate to Compaq Customer Relations no more than one (1) percent of the Cases documented each month.

o    Inacom will establish connectivity to the Compaq's Intranet to gain access to Compaq electronic support resources, and Inacom agrees to provide Compaq with a documented plan that reasonably ensures that this information is protected from any form of unauthorized access.

o    Inacom personnel will identify themselves to Compaq customers as Compaq at all times, without exception. Inacom may indicate, when pressed by a Compaq customer, that they are the "Compaq location in (City Name)."

o    Inacom will not disclose or distribute any information related to Compaq customers or Case activity to any outside party. Inacom agrees to provide Compaq with a documented plan that ensures any electronic access to Compaq is secured and limited to Inacom personnel who have a business need to access to this information.

o    Inacom shall document Cases in the call tracking system of Compaq's choice.

o    Inacom shall provide Compaq customers technical support without interruption, twenty-four hours per day, seven days per week, every day of the year. Inacom agrees to implement a documented disaster recovery plan that ensures uninterrupted service in the event of a power outage, internal systems outage, or internal telecommunications system outage.

o    Compaq will provide Inacom with a call volume forecast quarterly. Inacom will staff enough TSEs to meet Compaq service levels at call volumes up to 110% of the forecasted call volume. Compaq will pay Inacom for actual calls, not forecasted calls. Compaq agrees to pay the minimum minutes as specified in the Call Handling Services Agreement.

o    Compaq reserves the right to change the quarterly call volume forecast at any time. Inacom shall have a thirty-day grace period to adjust TSE staffing required to meet service levels in the event that Compaq increases the call volume forecast by more than ten (10) percent.

o    Inacom agrees to maintain a point of contact for communications with Compaq at all times. This individual shall be capable of responding to a telephone call or page from Compaq within thirty minutes. In addition, Inacom agrees to inform Compaq immediately in the event of any system interruptions or performance degradations that could potentially affect customer service.

o    Inacom agrees to accommodate a Compaq employee at Inacom's facility for any length of time. In addition, Inacom agrees to provide Compaq employees unrestricted access to the areas in the Inacom facility in which Compaq technical support services are conducted. Inacom shall under no conditions prevent Compaq employees from interviewing or conversing with any Inacom employee

Page 35

00167

8K Mar 00

assigned to Compaq technical support.

o       Inacom agrees to provide Compaq with telephone statistics related
to technical support activity as defined by Compaq in the TSWI. At
minimum, Inacom shall report daily call center statistics to
Compaq. These statistics are due to Compaq by 7:00 a.m. every
business day.

o       Inacom agrees to conduct business reviews with Compaq management
on a quarterly basis, conducted at mutually agreed to locations.

o       Inacom agrees to provide Compaq with feedback on customer comments
and issues in formats and time frames documented in the TSWI.

Equipment and Facilities

o       Compaq agrees to loan Inacom one or more of each Compaq product
model that Inacom supports. The purpose of these loaners is to
enhance TSE product knowledge and facilitate problem resolution.
Loaner models will be provided to Inacom as they become available,
and Inacom agrees to return all Compaq loaner units at such time
as the requirement to provide technical support for a specific
product ceases.

o       Inacom agrees to provide a file server with adequate capacity to
support the operation of the Compaq call tracking system and
intranet data bases on each TSE's workstation. In addition the TSE
workstations must meet the minimum configuration recommended by
Compaq, which may change over time due to advances in technology.

o       Inacom agrees to provide, at Inacom's expense, the following
telecommunications equipment and capabilities to support this
service:

   o   Compaq approved telephone switch
   o   T-1 dedicated access to MCI for voice (Installation cost only)
   o   T-1 access to MCI's Hyperstream PVC network for data and
       electronic messaging. This connection is limited to Inacom
       access to Compaq (Installation cost only)
   o   PBX with ACD statistical reporting capability
   o   PBX with ISDN capability on T-1's
   o   Ability to transfer calls to multiple Compaq telephone numbers
       if the MCI ECR fails
   o   Dedicated primary rate ISDN T1 access to MCI
   o   Redundant routes to MCI via the local carrier
   o   Ability to accept inband signaling to carry a customer ID
       number via DTMF signals
   o   Ability to outpulse DTMF signals to indicate readiness to
       accept numbers
   o   Ability to conference callers to a credit card approval IVR
       over an 800 number (Installation cost only)

o       Compaq agrees to pay the monthly T1 charges and telephone line
usage charges, with associated inbound/outbound call charges, for
all Compaq customer technical support calls received by Inacom.

o       Inacom agrees to provide Compaq technical support within a
dedicated Inacom facility. Compaq agrees to consider exceptions to
this requirement, but Compaq approval must be secured prior to
Inacom's performance of any non-Compaq related work in same
facility.

o       Inacom agrees to provide, at no expense to Compaq, a training
Page 36

8K Mar 00

facility that includes the Compaq hardware and software products recommended by Compaq's Training Manager to support the hands-on training of Inacom TSEs.

Training and Quality Assurance

o    Compaq agrees to provide Inacom with a Compaq product training curriculum for both new hire TSEs and new product training for experienced TSEs. Inacom agrees to provide a sufficient number of instructors to conduct training classes for its TSEs. Inacom agrees to document training activity, including dates, attendees, topics, Compaq products covered for Compaq's review.

o    Compaq agrees to provide adequate training to Inacom instructors on Compaq products, policies, and procedures. Both parties shall mutually determine when and where this "Train the Trainer" activity will take place.

o    Compaq reserves the right to audit the Inacom facilities dedicated to Compaq, telephone switch data related to Compaq customer support, and training events related to Compaq support without prior notice in order to verify compliance with the requirements stated in the Call Handling Services Agreement.

o    Inacom agrees to provide Compaq the necessary access to facilitate remote monitoring of Compaq technical support calls taken by Inacom TSEs. Compaq agrees to share the results of these audits with Inacom.

o    Inacom agrees to prepare and establish a procedure for employees to obtain A+ certification, at the option of the employee. Inacom training staff will be A+ certified.

o    Inacom agrees to provide Compaq with TSE staffing reports to both the designated Compaq representative and the Compaq Training Manager on a weekly basis. These reports include, but are not limited to, all TSE additions and deletions from the Compaq assignment.

o    Inacom agrees to notify Compaq Consumer Customer Service and Support's ISO Coordinator or Manager of Training and Quality of any changes regarding Inacom's Quality System. "Quality System" refers to ISO 9000 certification, COPC certification, Malcolm Baldridge, or any other certification that requires Inacom to acquire and maintain a Quality System certification.

<PAGE>

EXHIBIT 3

MASTER AGREEMENT FOR PROFESSIONAL SERVICES

This Master Agreement for Professional Services ("Agreement"), made this _____ day of _____, 2000, is by and between _____, having a principal place of business at _____ ("Subcontractor"), and Compaq Computer Corporation, having a principal place of business at 40 Old Bolton Road, Stow Massachusetts 01775 ("Compaq"). The parties agree that the terms and conditions of this Agreement and any applicable Purchase Order(s) that may be issued

Page 37

8K Mar 00

hereunder will govern the purchase of Services by Compaq from Subcontractor for the purpose of Subcontractor providing such Services on behalf of Compaq to a customer or customers of Compaq (hereinafter referred to as "Customer").

This Agreement will become effective on the date specified above and will continue for a period of one (1) year, unless otherwise terminated as provided herein or extended by the mutual consent of the parties. Any expiration or termination of this Agreement will not alter the rights, duties, or obligations of the parties relating to any Purchase Orders issued by Compaq under this Agreement prior to the date of expiration or termination of this Agreement.

This Agreement does not obligate Compaq to purchase any Services from Subcontractor. Purchases, if any, will be as specified on a Purchase Order(s) issued by Compaq pursuant to Section 2.

1.  DEFINITIONS

    a) "Acceptance" means written notification from Compaq to Subcontractor that indicates that the Services have been evaluated and satisfy the completion and acceptance criteria set forth or referenced in the Statement of Work or Purchase Order. Acceptance may be partial or complete, as specified in such notification.

    b) "Invention(s)" means any designs, techniques, inventions, discoveries, or improvements, whether patentable or not, that are conceived of or reduced to practice by Subcontractor in providing the Services to Compaq or Customer under this Agreement.

    c) "Services" means consulting, integration, implementation, installation, maintenance, support, design, development, training, management, and any other work provided by Subcontractor in connection with meeting Subcontractor's responsibilities under this Agreement.

    d) "Statement of Work" means a statement agreed upon by Compaq and Subcontractor that specifies the Services to be provided by Subcontractor, the price, payment schedule, delivery schedule, and acceptance criteria for such Services and, if applicable, detailed technical and administrative requirements for the Services. The Statement of Work may also include additional terms or modifications to this Agreement. A Statement of Work will be created and agreed upon for each Purchase Order issued under this Agreement.

2.  PURCHASE ORDER, ORDER OF PRECEDENCE, SERVICES COORDINATORS

    a) Subcontractor will furnish the Services to Compaq or Customer as specified in the Statement of Work upon Compaq's issuance of a Purchase Order to Subcontractor.

    b) The following order of precedence will control in the event of any conflict in terms and conditions:

        1) Statement of Work,
        2) Purchase Order, and
        3) this Agreement.

    The pre-printed terms and conditions on the reverse side of the Purchase Order will not apply to this Agreement or any Purchase Order issued under this Agreement.

    c) Each party will appoint a coordinator for the Services to be performed under each Purchase Order and Statement of Work. Subcontractor's coordinator will have the authority to represent Subcontractor. Compaq's coordinator will represent Compaq and be responsible for determining the

Page 38

00170

8K Mar 00

adequacy and acceptability of the Services provided by Subcontractor.

3. PAYMENT

Unless otherwise set forth in the Statement of Work or Purchase Order, payment for the Services will be due forty-five (45) days from the later of the date of Acceptance or the date Compaq receives a proper invoice from Subcontractor.

4. RECORDS

Subcontractor will maintain account records in accordance with generally accepted accounting practices to substantiate all invoices. Such records will be made available to Compaq during normal business hours and will include payroll records, expense accounts, attendance cards, and job summaries. Subcontractor will maintain such records for three (3) years from the date of final payment for the Services.

5. OWNERSHIP AND LICENSE

a) All Inventions will be the sole and exclusive property of Compaq. Subcontractor hereby assigns to Compaq the ownership of copyright in the Inventions. Compaq will have the right to obtain and hold in its own name copyrights, registrations, and similar protection which may be available in the Inventions. Subcontractor agrees to assist Compaq as may be required to perfect such rights.

b) To the extent that any Subcontractor's pre-existing technology is contained in the Inventions, Subcontractor grants to Compaq an irrevocable, nonexclusive, worldwide, royalty-free license to:

1) use, execute, reproduce, display, perform, and distribute (internally or externally) such pre-existing technology; and

2) authorize Customer to do any, some, or all of the foregoing.

6. WARRANTY

a) Subcontractor warrants that all Services will (1) be performed in a good and workmanlike manner and in accordance with generally accepted professional standards for such Services, and (2) conform to the requirements specified in the Statement of Work or Purchase Order.

b) Subcontractor warrants that Services will not in any manner limit, impair, disrupt, or jeopardize any existing Year 2000 Compliance of any equipment or software on which Services are performed. "Year 2000 Compliance" for purposes of this provision means the capability to correctly process, calculate, compare, and sequence date data within and between the 20th and 21st centuries, including leap year calculations.

c) In the event of any breach of warranty, Subcontractor, without charge and without delay, will re-perform nonconforming Services.

7. CONFIDENTIAL INFORMATION

Subcontractor will maintain all information or data, whether written or oral, relating to Compaq or Customer which Subcontractor obtains or otherwise has access to in the performance of Services in confidence and will not disclose any such information or data to any third party or to employees, agents, subcontractors, or suppliers of Subcontractor who do not have the need for access to such information or data.

8. PERSONNEL

Page 39

8K Mar 00

a) Personnel provided by Subcontractor will not be considered employees of Compaq for any purpose. Subcontractor personnel will make no commitments on behalf of Compaq for any purpose. Subcontractor assumes full responsibility for the actions of its personnel and will be responsible for their supervision, daily direction, and control. Subcontractor will retain full responsibility for payment of salary (including withholding of income taxes and Social Security), worker's compensation, disability benefits, and the like. Nothing in this Agreement grants Subcontractor or any Subcontractor personnel any right under any Compaq employee benefit plan.

b) Subcontractor personnel specified or identified by name in the Statement of Work or Purchase Order will be considered essential to the Services to be performed. No substitution or diversion of such personnel will be made without the prior written consent of Compaq and Customer.

c) Compaq and Customer will retain the right to reject any of Subcontractor's personnel whose qualifications are insufficient in Compaq's or Customer's judgment.

9.  CHANGE IN SCOPE

Each Purchase Order and Statement of Work under this Agreement is based upon Compaq's present understanding of Compaq's obligations to Customer. In the event Compaq's understanding changes or Customer requests a change in Compaq's obligations affecting Subcontractor's performance, Compaq will notify Subcontractor of such change request in writing. Within ten (10) days of receipt of such change request, Subcontractor will notify Compaq in writing of any increase or decrease in Subcontractor's charges and/or alteration to delivery schedules occasioned by the change. Upon Compaq's acceptance of Subcontractor's modified charges and delivery schedule, the parties will modify the terms of the applicable Purchase Order and Statement of Work to effect the change. Subcontractor will not implement the change without Compaq's written authorization.

10. TERMINATION

a) Compaq may terminate for convenience this Agreement, any Purchase Order, or any portions thereof by written notice to Subcontractor. In any event, the applicable Purchase Order will terminate immediately upon termination, for any reason, of Compaq's agreement with Customer. Upon receipt of such notice, Subcontractor will immediately stop all activities associated with the terminated Purchase Order. Subcontractor will be paid for the Services provided and accepted prior to the date of termination. Such payment will constitute Compaq's entire liability.

b) In the event of a default by Subcontractor, Compaq will provide Subcontractor written notice thereof. If the default is not remedied within ten (10) days or within the time stated in the notice, Compaq may terminate this Agreement, any Purchase Order, or any portions thereof.

c) The rights and obligations of Sections 4, 5, 6, 7, 10, 11, and 12 will continue after expiration or termination of this Agreement and will bind the parties and their legal representatives, successors, heirs, and assigns.

11. INDEMNIFICATIONS

a) Subcontractor will indemnify, defend, and hold Compaq harmless from any and all claims or demands (including all losses, damages, and liabilities resulting from such claims or demands, and all related costs and expenses, including reasonable legal fees) arising from or in connection with (1) Subcontractor's performance of, or failure to perform, any of its

Page 40

8K Mar 00

obligations under this Agreement or (2) an act or omission of Subcontractor in its relationships with its employees, agents, subcontractors or suppliers.

b) Subcontractor will indemnify, defend, and hold Compaq and Customer harmless from any and all claims or demands (including all losses, damages, and liabilities resulting from such claims or demands, and all related costs and expenses, including reasonable legal fees) which may result by reason of any infringement or claim of infringement of any intellectual property rights associated with the Services or Inventions provided in connection with this Agreement.

## 12. LIMITATION OF LIABILITY

a) EXCEPT AS PROVIDED BELOW, NEITHER COMPAQ NOR SUBCONTRACTOR WILL BE LIABLE FOR ANY DAMAGES RESULTING FROM LOSS OF DATA, PROFITS, OR USE OF PRODUCTS, OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. Subcontractor will be liable for any damages, including incidental or consequential damages, which Compaq is obligated to pay Customer or other third parties as a result of Subcontractor's failure to perform its obligations in accordance with this Agreement.

b) This limitation of liability does not apply to the liability of either party for any personal injury, including death, or for willful, wanton, or malicious acts of Subcontractor or to obligations of Subcontractor under Section 7, "Confidential Information", or Section 11, "Indemnifications".

## 13. COMPLIANCE WITH LAWS

Subcontractor, at its own expense, will comply with all laws and regulations of federal, state, and local government authorities relating to its obligations under this Agreement.

## 14. GENERAL

a) Except as expressly provided in the Statement of Work or Purchase Order, Subcontractor will be entitled to no further payment, cost reimbursement, or other compensation for the Services provided hereunder.

b) Subcontractor shall carry during the term of this Agreement, and with companies with a Best Rating of not less than A-:VII, insurance policies of the kinds and in the amounts listed below:

1. Worker's Compensation - statutory limits in each state in which Subcontractor is required to provide Worker's Compensation coverage including Other States Endorsement or policy equivalent thereof. Policy shall include a waiver of subrogation in favor of Compaq Computer Corporation, its officers, directors, employees and agents

2. Employer's Liability - not less than $1,000,000

3. Comprehensive General Liability - including Contractual Liability, Independent Contractor's Liability, Products and/or Completed Operations Liability, and Personal Injury/Property Damage Coverage's in a combined single limit of not less than $1,000,000 per occurrence combined single limit and $2,000,000 General Aggregate. Compaq Computer Corporation, its officers, directors, employees and agents shall be named as Additional Insureds.

4. Automobile Liability - for owned, non-owned, and hired vehicles in a combined single limit of not less than $1,000,000.

Page 41

00173

8K Mar 00

5. Umbrella Liability - a combined single limit of not less than $2,000,000.

Subcontractor shall furnish Compaq with Certificates of Insurance evidencing the specified insurance policies and stating that such insurance policies may not be changed or terminated so as to not comply with the foregoing insurance requirements without at least thirty (30) days prior written notice to Compaq.

c) Nothing in this Agreement will be construed as prohibiting or restricting Compaq from independently developing, acquiring, and/or marketing services which are similar to and/or competitive with those provided hereunder.

d) Any assignment, transfer, or subcontracting of rights or obligations by Subcontractor under this Agreement in whole or in part without the prior written consent of Compaq will be void and may subject Subcontractor to termination.

e) During the performance by Subcontractor under a particular Purchase Order and Statement of Work Compaq may require Subcontractor to temporarily cease performance of some or all of the Services by issuing Subcontractor a Work Suspension Order ("Order"). The Order will include the effective date of the Order, a specific description of the Services to be suspended, and the anticipated duration of the suspension. Upon receipt of an Order, Subcontractor will take all reasonable measures to protect the Services in progress. Compaq will notify Subcontractor in writing of the date on which the suspended Services are to be resumed.

f) Subcontractor represents that it is not under any obligation or restriction, nor will it assume any, which would interfere or present a conflict of interest with the Services that it provides under this Agreement.

g) Compaq is free to determine the price charged to Customer for the Services that Subcontractor provides to Customer on behalf Compaq.

h) Subcontractor agrees to comply with security procedures of Compaq and Customer.

i) Subcontractor agrees to be bound by applicable "flow down" provisions of Compaq's agreement with Customer of which it is notified by Compaq.

j) Neither party may bring an action, regardless of form, arising out of this Agreement more than two (2) years after the cause of action arises. Subcontractor may not bring an action for nonpayment more than two (2) years from the date final payment for the Services is due.

k) The laws of the State of Texas will govern this Agreement.

l) This Agreement and the documents referenced herein set forth the entire understanding of the parties with respect to the subject matter described herein and supersede all prior communications, whether oral or written, by either party. Any modification to these terms and conditions must be in writing and signed by authorized representatives of both parties.

Accepted by:

_____

BY:

PRINT NAME:

Accepted by:

COMPAQ COMPUTER CORPORATION

BY:

PRINT NAME:

Page 42

8K Mar 00

TITLE:                                              TITLE:

DATE:                                               DATE:

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-2.4
<SEQUENCE>5
<DESCRIPTION>REVOLVING CREDIT FACILITY COMMITMENT LETTER
<TEXT>

                                          February 15, 2000

Inacom Corp.
10810 Forman, Suite 200
Omaha, Nebraska 68154
Attention: Chief Financial Officer

        Re: Revolving Credit Facility Commitment Letter

Ladies and Gentlemen:

        Compaq Computer Corporation ("Compaq" or the "Lender") understands that
Inacom Corp. ("Inacom" or the "Company") is proposing to sell (the "Asset Sale")
to ITY Corp., a wholly-owned subsidiary of Compaq (the "Buyer"), certain assets
pursuant to an Asset Purchase Agreement dated as of January 4, 2000 among
Inacom, Compaq and the Buyer, as amended by the First Amendment to Asset
Purchase Agreement dated as of the date hereof (as so amended, the "Asset
Purchase Agreement"). You have asked Compaq to commit to provide up to $55.5
million of financing to Inacom following the consummation of the Asset Sale
pursuant to the secured credit facility (the "Facility") described below.

        Compaq is willing to provide the Facility upon the terms and conditions
specified herein. Compaq's commitment hereunder shall become effective when the
Company signs copies of this Commitment Letter and returns it to Compaq.

Full Disclosure

        You represent, warrant and covenant that (i) the pro forma financial
statements of the Company and its subsidiaries furnished by you did not contain,
as of the time they were furnished, any material misstatement of fact or omit,
as of such time, to state any material fact necessary to make the statements
therein taken as a whole not misleading, in the light of the circumstances under
which they were made; and (ii) the projections regarding the future performance
of the Company and its subsidiaries furnished by you have been prepared in good
faith based on assumptions believed to be reasonable at the time of preparation
thereof.

<PAGE>

Certain Conditions

        Certain of the terms of the Facility are set forth in the Summary of
Terms and Conditions attached hereto (the "Term Sheet"). The Term Sheet is
intended as an outline only but does summarize all of the material terms,
                        Page 43

8K Mar 00

conditions, covenants, representations, warranties and other provisions which will be contained in definitive financing agreements for the Facility. Compaq's commitment is subject to the satisfaction of the conditions set forth in the Term Sheet and (i) the negotiation, execution and delivery of a credit agreement (the "Credit Agreement") and other definitive financing agreements, prepared by Davis Polk & Wardwell, special counsel to Compaq, containing terms and conditions consistent with the Term Sheet and otherwise reasonably satisfactory to Compaq, by not later than May 1, 2000 and (ii) the consummation of the Asset Sale in accordance with the Asset Purchase Agreement.

Costs and Expenses

By your acceptance of this Commitment Letter, you agree that all costs and expenses (including the reasonable fees and expenses of Davis Polk & Wardwell, counsel for Compaq) incurred by Compaq in connection with the collection or enforcement of this Commitment Letter and the definitive financing agreements or any default under, or amendment or waiver of, the definitive financing agreements shall be for your account.

Indemnification

By your acceptance of this Commitment Letter, the Company agrees to indemnify and hold harmless Compaq and each of its affiliates (including, without limitation, any controlling person) and the directors, officers, employees and agents of each of the foregoing parties (each, an "Indemnified Person") in accordance with the provisions of Schedule 1 hereto, which is incorporated herein and made a part of this Commitment Letter.

Miscellaneous

This Commitment Letter is intended to be solely for the benefit of the parties hereto and is not intended to confer, and shall not be deemed to confer, any benefits upon, or create any rights in or in favor of, any Person other than the parties hereto, except as provided above with respect to Indemnified Persons.

The offer by Compaq set forth in this Commitment Letter will terminate at 5:00 p.m., New York time, on the closing date of the Asset Sale (the "Asset Sale Closing Date"), unless on or before that date and time it has received a copy of this Commitment Letter signed by you. The provisions set forth above under "Costs and Expenses" and "Indemnification" shall survive any such termination of the offer under this Commitment Letter, and shall be binding regardless of whether a Credit Agreement or other definitive documentation is signed.

<PAGE>

This Commitment Letter shall be governed by and construed in accordance with the laws of the State of New York. Each of you and Compaq hereby submits to the jurisdiction of the United States District Court for the Southern District of New York and of any New York State court sitting in New York City for purposes of all legal proceedings arising out of or relating to this Commitment Letter or the transactions contemplated hereby. Each of you and Compaq hereby irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum and to the right to have a trial by jury. All payments under this Commitment Letter shall be paid in U.S. Dollars to the relevant payee in New York City, without set-off or counterclaim and free and clear of any withholding or other taxes.

Very truly yours,
Page 44