## 3. LEON KERKMAN

| PAGE:LINE | PAGE:LINE |
|---|---|
| 6:8-6:9 | 55:12-55:22 |
| 11:7-11:18 | 56:5-56:19 |
| 12:6-13:21 | 60:24-61:3 |
| 14:5-16:8 | |

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re Inacom CORP., et al., ) | Chapter 11 |
| Debtors, ) | Bankruptcy Case No. |
| ) | 00-2426 (PJW) |
| Inacom CORP., et al., ) | |
| Plaintiffs, ) | |
| vs. ) | Civil Action No. |
| ) | 04-CV-148 (GMS) |
| TECH DATA CORPORATION, ) | |
| Defendant, ) | |
| Inacom CORP., et al., ) | |
| Plaintiffs, ) | |
| vs. ) | Civil Action No. |
| ) | 04-CV-582 (GMS) |
| DELL COMPUTER CORP., ) | |
| Defendant, ) | Caption Continued |

* * * * *

DEPOSITION OF LEON KERKMAN, taken before me, Denise J. Lukasiewicz, Court Reporter and General Notary Public within and for the State of Nebraska, commencing at the hour of 9:10 a.m., on the 25th day of March, 2005, at the HILTON HOTEL OMAHA, Prague Room, 1001 Cass Street, Omaha, Nebraska.

* * * * *

COPY

BARNES REPORTING SERVICE, INC.
COURT REPORTERS

POST OFFICE BOX 144                                402-330-7796
BOYSTOWN, NEBRASKA 68010                           FAX 402-330-3227

```
 1  Caption Continued:
    _____
 2                                    )
    Inacom CORP., et al.,             )
 3                                    )
            Plaintiffs,               )
 4                                    )
       vs.                            ) Civil Action No.
 5                                    ) 04-CV-583 (GMS)
    LEXMARK INTERNATIONAL, INC.,      )
 6                                    )
            Defendant,                )
 7  _____)
                                      )
 8  Inacom CORP., et al.,             )
                                      )
 9          Plaintiffs,               )
                                      )
10     vs.                            ) Civil Action No.
                                      ) 04-CV-584 (GMS)
11  RESILIEN, INC.,                   )
                                      )
12          Defendant,                )
    _____)
13                                    )
    Inacom CORP., et al.,             )
14                                    )
            Plaintiffs,               )
15                                    )
       vs.                            ) Civil Action No.
16                                    ) 04-CV-593 (GMS)
    INGRAM ENTERTAINMENT, INC.,       )
17                                    )
            Defendant.                )
18  _____)
19
20
21
22
23
24
25
```

**BARNES REPORTING SERVICE, INC.**
COURT REPORTERS

POST OFFICE BOX 144                          402-330-7796
BOYSTOWN, NEBRASKA 68010                 FAX 402-330-3227

```
 1   APPEARANCES:

 2
     Mr. Jeffrey P. Nolan
 3   Attorney at Law
     PACHULSKI, STANG, ZIEHL,
 4   YOUNG, JONES & WEINTRAUB, P.C.
     10100 Santa Monica Boulevard
 5   11th Floor
     Los Angeles, CA   90067         for Plaintiff
 6                                   Inacom Corp.

 7
     Mr. Earl M. Forte
 8   Attorney at Law
     BLANK, ROME, L.L.P.
 9   One Logan Square
     18th & Cherry Streets
10   Philadelphia, PA   19103-6998   Counsel to
                                     Executive Sounding
11                                   Board Associates,
                                     Inc., Liquidating
12                                   Agent of Inacom
                                     Corp. Committee of
13                                   Unsecured Creditors

14
     Mr. Culver V. Halliday
15   Attorney at Law
     STOLL, KEENON & PARK, L.L.P.
16   2650 Aegon Center
     400 West Market Street
17   Louisville, KY   40202-3377     for Defendant
                                     Lexmark
18                                   International

19
     Mr. G. James Landon
20   Attorney at Law
     HUGHES, LUCE, L.L.P.
21   111 Congress Avenue
     Suite 900
22   Austin, TX   78701              for Defendant
                                     Dell, Inc.
23

24

25
```

```
 1   APPEARANCES, Cont'd.:

 2
     Ms. Cecily A. Dumas
 3      and
     Mr. Brandon C. Chaves
 4   Attorneys at Law
     FRIEDMAN, DUMAS & SPRINGWATER, L.L.P.
 5   One Maritime Plaza
     Suite 2475
 6   San Francisco, CA   94111       for Defendant
                                     Hewlett-Packard
 7                                   a/k/a Compaq
                                     Computer
 8

 9
     Mr. Jonathan P. Hersey
10   Attorney at Law
     BINGHAM, McCUTCHEN, L.L.P.
11   Plaza Tower
     600 Anton Boulevard
12   18th Floor
     Costa Mesa, CA   92626-1924     for Defendant
13                                   Ingram Entertainment,
                                     Inc.
14

15   Mr. Stephen C. Hunt
     Attorney at Law
16   Adorno & Yoss, P.A.
     350 East Las Olas Boulevard
17   Suite 1700
     Fort Lauderdale, FL   33301     for Defendant
18                                   Tech Data
                                     Corporation
19

20

21

22

23

24

25
```

# INDEX

**WITNESS:**                                         **EXAMINATION**

LEON KERKMAN

| TYPE | PAGE |
|---|---|
| Direct (Halliday) | 6 |
| Cross (Landon) | 26 |
| Cross (Hunt) | 52 |

**EXHIBITS:**

| | | MARK | IDENTIFY |
|---|---|---|---|
| 1 | Services, Supply and Sales Agreement | 45 | 46 |

**BARNES REPORTING SERVICE, INC.**
COURT REPORTERS

POST OFFICE BOX 144                                   402-330-7796
BOYSTOWN, NEBRASKA 68010                              FAX 402-330-3227

<u>LEON KERKMAN</u>,

Of lawful age, being first duly cautioned and solemnly sworn as hereinafter certified, was examined and testified as follows:

THE WITNESS: I do.

<u>DIRECT EXAMINATION</u>

BY MR. HALLIDAY:

Q. Sir, could you state your name?

A. Leon Kerkman.

Q. K-E-R-K-M-A-N; correct?

A. Correct.

Q. Mr. Kerkman, good morning. My name is Culver Halliday and I'm an attorney. I am here today representing Lexmark International, Inc., which is a defendant to an action brought against it by Inacom Corporation. And I think for your benefit, as well as the record's, I will ask that counsel, beginning to my right, introduce themselves to you.

MR. LANDON: Good morning. I'm James Landon, I represent Dell, Inc.

MR. HERSEY: John Hersey with the law firm of Bingham, McCutchen, and I represent Ingram Entertainment, which is a successor to Nashville Computer Liquidators.

BARNES REPORTING SERVICE, INC.
COURT REPORTERS

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

1   Q.  Did you lead the audit team for that
2   account in 1988?
3   A.  Yes.
4   Q.  Sir, in 1988, did you leave your
5   employment with KPMG for employment elsewhere?
6   A.  Repeat the question.
7   Q.  Yes, sir.  Did you leave your
8   employment with KPMG in order to take employment
9   elsewhere?
10  A.  Yes.
11  Q.  Where did you go?
12  A.  Inacom.
13  Q.  And would you have begun that
14  employment in 1988?
15  A.  Yes.
16  Q.  What position did you hold when you
17  began working with Inacom Corp. in 1988?
18  A.  Corporate controller.
19       MR. NOLAN:  Sorry, what was the
20  response?
21       (Whereupon, the requested portion of
22       the testimony was read back by the
23       Court Reporter.)
24  BY MR. HALLIDAY:
25  Q.  Had someone preceded you in that

1  position at Inacom Corp.?
2      A.   No.
3      Q.   Is it your understanding you were the
4  first corporate controller for Inacom Corp.?
5      A.   Yes.
6      Q.   As corporate controller, was there an
7  area of the company, and I don't know the term
8  so I'll just say "department," that you headed?
9      A.   I was responsible for the day-to-day
10 operation -- or the day-to-day financial
11 operations of closing the books and accounts
12 payable.
13     Q.   How long were you employed by Inacom
14 Corp.?
15     A.   January 2000.
16     Q.   Did you hold any other positions at
17 Inacom Corp. besides corporate controller?
18     A.   Yes.
19     Q.   What was the next position that you
20 held, sir?
21     A.   Vice president of operations.
22     Q.   Was that a promotion, sir?
23     A.   Yes.
24     Q.   And when were you promoted to VP of
25 operations?

1   A. 1995.

2   Q. So from 1988 to 1995, approximately,
3   you were company controller?

4   A. Correct.

5   Q. Did you hold another position with
6   Inacom Corporation after VP of operations?

7   A. No.

8   Q. When you left the company, then, in
9   January 2000, you were VP of operations?

10   A. Yes.

11   Q. When you were promoted to VP of
12   operations, did your responsibilities change,
13   sir?

14   A. Yes.

15   Q. What were your responsibilities, sir,
16   in summary, as VP of operations, when you began
17   as VP of operations?

18   A. Responsible for the supply chain
19   of the organization, which would include
20   the procurement organization as well as
21   manufacturing and distribution.

22   Q. Sir, did your responsibilities as
23   vice president of operations change over time?

24   A. No.

25   Q. When you left Inacom Corp. in January

1    2000, your responsibilities as VP of operations
2    were substantially the same then as they had
3    been when you began in that position in 1995?
4        A.   That's correct.
5        Q.   Sir, did you have -- retain any
6    responsibilities that you had had as corporate
7    controller when you became VP of operations?
8        A.   No.
9        Q.   And just to make sure I understand,
10   when you became vice president of operations,
11   did you have any continuing responsibilities for
12   financial operations --
13       A.   No.
14       Q.   -- for accounts payable?
15       A.   No.
16       Q.   Sir, did you resign from employment
17   with Inacom Corporation?
18       A.   I was part of the asset sale to
19   Compaq.
20       Q.   In January of 2000, did you begin
21   employment with a new employer?
22       A.   Yes.
23       Q.   And what was that employer?
24       A.   Compaq Computer Corporation.
25       Q.   Were you ever an employee, sir, of

```
 1   ITY, I-T-Y, Corporation, also referred to as
 2   Custom Edge, Inc.?
 3        A.   Yes.
 4        Q.   When were you employed by that
 5   company, sir?
 6        A.   Starting in 2000 --
 7        Q.   Okay.
 8        A.   -- as a subsidiary of Compaq.
 9        Q.   What was your position, sir, when you
10   first started with -- may I call it Custom
11   Edge, Inc. --
12        A.   That's fine.
13        Q.   -- in January 2000, sir?
14        A.   Director of operations.
15        Q.   Were your responsibilities the same as
16   you had had as vice president of operations at
17   Inacom Corp.?
18        A.   Yes.
19        Q.   For how long were you employed by
20   Custom Edge, Inc.?
21        A.   Until the -- the subsidiary, until it
22   was folded or something, to where it just became
23   Compaq Corporation.
24        Q.   Do you recall a month and a year of
25   that, sir?
```

```
 1        A.  No.
 2        Q.  Sir, did your position with
 3   Custom Edge, Inc. change?
 4        A.  No.
 5        Q.  When you became an employee of
 6   Compaq Computer Corporation, what was your
 7   position?
 8        A.  Director of operations.
 9        Q.  Did you hold any other position with
10   Compaq Computer Corporation?
11        A.  No.
12        Q.  When did you leave Compaq Computer
13   Corporation's employment?
14        A.  With the merger of Compaq and
15   Hewlett-Packard.
16        Q.  Do you recall the month and year of
17   that, sir, approximately?
18        A.  No.
19        Q.  Year?
20        A.  Let's see, it was two years ago, so --
21        Q.  Approximately, 2003?
22        A.  Yes.
23        Q.  Did you then become an employee of
24   Hewlett-Packard, sir?
25        A.  Yes.
```

1  solely concerned with the hardware side of the
2  business of Inacom?
3      A.  That's correct.
4      Q.  At the time that you left Inacom, did
5  you have any stock options or other monies that
6  were owed to you by Inacom?
7      A.  Yes.
8      Q.  At the time of the bankruptcy case in
9  June of 2000, were you similarly still owed
10 stock options or other monies?
11     A.  No.
12     Q.  With the new Custom Edge company at
13 the time that you started, was there any value
14 to Custom Edge for maintaining existing supply
15 lines from Inacom's vendors?
16     A.  Yes.
17     Q.  After the implementation of the asset
18 purchase in February of -- mid-February of 2000,
19 did Custom Edge start doing business with any
20 significant new vendors in terms of volume?
21     A.  Not significantly new, no, I do not
22 believe so.
23     Q.  Were you consulted with prior to the
24 implementation of the asset purchase agreement
25 regarding methods by which existing supply lines

```
 1   could be maintained from old Inacom vendors
 2   over to the new Inacom -- the new Custom Edge
 3   division?
 4        A.   No.
 5        Q.   Did you have an understanding
 6   regarding any provisions that would be made by
 7   Custom Edge for maintaining existing supply
 8   lines from old Inacom vendors to the new
 9   company?
10        A.   I -- yes.
11        Q.   Could you identify or explain to me
12   what that understanding was?
13        A.   Some -- obviously, the -- a number of
14   the vendors that we were doing business with we
15   wanted to continue to do business with after the
16   asset purchase or sale, whichever side you were
17   on, and we just wanted to continue to maintain
18   those relationships with those vendors, and
19   continue to procure product from them.
20        Q.   Did you have any understanding as to
21   whether Custom Edge sought to maintain the same
22   old accounts, if you will, from certain of its
23   vendors?
24        A.   No, we did not want to maintain the
25   same old accounts.
```

```
 1        A.   I have knowledge of that, yes.
 2        Q.   Were you interviewed by any parties
 3   with respect to that SEC litigation?
 4        A.   No, I was not.
 5        Q.   Did you acquire any of the knowledge
 6   regarding that litigation subject matter
 7   firsthand, or just collaterally from people
 8   you talked to?
 9        A.   Collaterally, from people and
10   newspapers.
11        Q.   During the time that you were with
12   Inacom, did you ever review SEC public filings
13   after they were filed?
14        A.   Can -- what's the time frame?
15        Q.   Say your last two years with the
16   company.
17        A.   No.
18        Q.   How about after you left the company?
19        A.   No.
20        Q.   Would it pretty much have been
21   restricted to the time that you were in the
22   finance arm of Inacom?
23        A.   That's correct.
24        Q.   As a person responsible for
25   procurement at Custom Edge, was it important
```

```
 1   to your mission to maintain an uninterrupted
 2   supply of product to Custom Edge?
 3        A.   Yes.
 4        Q.   Do your responsibilities extend to the
 5   fabrication of product by Custom Edge at the
 6   time that you were working for Custom Edge?
 7        A.   Fabrication, what --
 8        Q.   Assembly of any product.
 9        A.   We would build -- we would buy things
10   from people and manufacture them, yes.
11        Q.   Have you ever heard the term
12   "aggregator" used in connection with Inacom?
13        A.   Yes.
14        Q.   Would you be able to explain what that
15   term means in connection with Inacom?
16        A.   Probably a number of different
17   definitions.  My definition of an aggregator is
18   you're purchasing parts or systems from a number
19   of different people, aggregating them together
20   and then sending them to a customer.
21        Q.   While at Custom Edge, did you have
22   any further need for services that might have
23   been provided by Inacom for Custom Edge?
24        A.   No.
25        Q.   Did you have any knowledge regarding a
```