IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INACOM CORP., *et al.*,<br>Debtors. | Chapter 11<br><br>Bankruptcy Case No. 00-2426 (PJW) |
| INACOM CORP., on behalf of all affiliated debtors,<br><br>Plaintiff,<br><br>vs.<br><br>LEXMARK INTERNATIONAL, INC.,<br><br>Defendant.<br><br>LEXMARK INTERNATIONAL, INC.,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>COMPAQ COMPUTER CORP., ITY CORP., and CUSTOM EDGE, INC.,<br><br>Third-Party Defendants. | Civil Action No. 04-CV-583 (GMS) |

**HEWLETT-PACKARD COMPANY'S DESIGNATION OF DEPOSITION
EXCERPTS IN REBUTTAL TO LEXMARK'S DESIGNATIONS**

Pursuant to the Agreed Scheduling Order submitted to the Court on March 9, 2006, third-party defendant Hewlett-Packard Company ("HP") submits excerpts of the deposition testimony of William Schuette dated February 15, 2005 in rebuttal to deposition testimony designated by third-party plaintiff Lexmark International, Inc.

{00234004.DOC v 1}                                    1

Dated: March 23, 2006
      Wilmington, Delaware      MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/

William H. Sudell, Jr. (No. 463)
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200

- and -

FRIEDMAN DUMAS & SPRINGWATER LLP
Ellen A. Friedman
Cecily A. Dumas
Gail S. Greenwood
Brandon C. Chaves
150 Spear Street, Suite 1600
San Francisco, CA 94105
(415) 834-3800

| **Witness** | **Page/Line Designation** |
|---|---|
| William Schuette (February 15, 2005) | 56:3 - 10<br>58:23 – 59:8 |



```
 1              UNITED STATES DISTRICT COURT
                   DISTRICT OF DELAWARE
 2                 CASE NO. 04-CV-583

 3  ─────────────────────────────────────────────────

            DEPOSITION OF WILLIAM A. SCHUETTE
 4

 5  ─────────────────────────────────────────────────

 6  INACOM CORP. on behalf of all              PLAINTIFF
    affiliated debtors

 7  v.

 8  LEXMARK INTERNATIONAL, INC.                DEFENDANT

 9  LEXMARK INTERNATIONAL, INC.              THIRD-PARTY
                                               PLAINTIFF
10  v.

11  COMPAQ COMPUTER CORP., ITY CORP.,        THIRD-PARTY
    and CUSTOM EDGE, INC.                    DEFENDANTS
12
    ─────────────────────────────────────────────────
13        The deposition of WILLIAM A. SCHUETTE was

14  taken on behalf of the plaintiff, Inacom Corporation,

15  before Ann Hutchison, Registered Professional Reporter

16  and Notary Public in and for the State of Kentucky at

17  Large, at the law office of Stoll, Keenon & Park, 300

18  West Vine Street, Suite 2100, Lexington, Kentucky, on

19  Tuesday, February 8, 2005, beginning at the hour of 1:55

20  p.m.  Said deposition was taken pursuant to Rule 30 of

21  the Federal Rules of Procedure and Rule 7030 of the

22  Federal Bankruptcy Procedure.

23  ─────────────────────────────────────────────────

24                 ACTION COURT REPORTERS
                    184 North Mill Street
25              Lexington, Kentucky 40507
                     (859) 252-4004
```

```
 1                        APPEARANCES
 2
 3   COUNSEL FOR PLAINTIFF INACOM CORPORATION:
 4       Jeffrey P. Nolan
         Pachulski, Stang, Ziehl, Young & Jones
 5       10100 Santa Monica Boulevard, 11th Floor
         Los Angeles, California 90067-4100
 6
 7   COUNSEL FOR THIRD-PARTY DEFENDANT COMPAQ:
 8       Cecily A. Dumas
         Friedman, Dumas & Springwater, LLP
 9       One Maritime Plaza, Suite 2475
         San Francisco, California 94111
10
11   COUNSEL FOR DEFENDANT AND THIRD-PARTY PLAINTIFF
     LEXMARK INTERNATIONAL, INC.:
12
         Culver V. Halliday
13       Stoll, Keenon & Park, LLP
         2650 Aegon Center
14       400 West Market Street
         Louisville, Kentucky 40202-3377
15
16   ALSO PRESENT:
17       Kevin Sarkisian
18
19
20
21
22
23
24
25
```

```
 1  with and what the specific conversations were, I don't
 2  recall.
 3        Q.    Okay.  But you recall -- you do recall the
 4  fact that you continued to try to collect the account
 5  that was owed by Inacom to Lexmark?
 6        A.    Well, yeah.  Yeah.
 7        Q.    That still was a duty?
 8        A.    That still was a duty until the check came
 9  in.  I was on the hook to keep after it to try to get us
10  paid.
11        Q.    Okay.  And what about Mr. Funk?  Was he
12  doing the same thing?
13        A.    I don't -- no.  Huh-uh.  No, I was
14  basically told to get that.  I mean, I would ask him
15  when you're out there, you know, see if you can find out
16  anything.  But in terms of him -- he really didn't have,
17  in my opinion, any good contacts on the finance side of
18  the business, and that seemed to be where all the
19  control was being held at.
20        Q.    Okay.  You mentioned previously that a
21  slow payment was anything over 45 to 60 days?
22        A.    Uh-huh.
23        Q.    Was there any terminology you would use to
24  refer to invoices that were in excess of 60 days in age?
25        A.    I'd say they were aged or old or way past
```

1  Georgia. I lived in Alpharetta, Georgia in 19 -- when I
2  worked for IBM, and I did do business with Inacomp, but
3  not Inacom in Alpharetta, Georgia. But I did no
4  business with Inacom in -- well, they had a location in
5  there. But in terms of my going out and making a call
6  there, no. I strictly made calls at headquarters.
7      Q.   In February of 2000 were you aware that
8  after Inacom sold its asset or distribution division --
9  assets and distribution division to Compaq that it
10 continued to operate as Inacom in a service sector
11 business?
12     A.   I don't actually -- I know that they
13 continued to have branch offices for a period of time, I
14 recall that, but from a services standpoint that's
15 probably true, yeah.
16     Q.   So the question back to you again is do
17 you recall whether or not you did any business after the
18 sale of the distribution business of Inacom to Compaq
19 Custom Edge, did you do any business with the Custom --
20 or with the Inacom customer services business which was
21 operated out of Alpharetta, Georgia?
22     A.   No. I don't ever remember doing that.
23     Q.   Do you know or do you recall at the time
24 Inacom filed for bankruptcy whether or not Inacom owed
25 any outstanding sums to Lexmark?

1    A.    I don't think Inacom did.  I mean, we
2  probably had some outstanding invoices with Custom edge,
3  but I thought all the invoices had been paid by Inacom
4  to us when they filed.
5    Q.    Did anybody ever ask you to compile any
6  outstanding invoices as part of a proof of claim in the
7  Inacom bankruptcy?
8    A.    No.
9    Q.    Other than the testimony you've given me
10 with respect to trying to contact Mr. Oshlo, did you
11 ever contact anybody in the Inacom accounting
12 department?
13   A.    I think -- I can't recall the guy's name.
14 But it was after I had the conversations with Mr. Oslo,
15 and it may have been somebody that worked for him, and I
16 think it was around the time frame of when the invoices
17 started being paid.  But I can't remember the guy's
18 name.  I think -- that's all I can recall.
19   Q.    Do you remember his title?
20   A.    No, I really don't.
21   Q.    You do remember he was in the accounting
22 department?
23   A.    He was in the accounting or the finance
24 side, but I don't remember the guy's name.  I met him on
25 a visit with Brad, but I don't remember exactly when.