## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INACOM CORP., et al.,<br><br>          Debtor. | Case No. 00-2426 (PJW) |
| INACOM CORP., on behalf of all affiliated Debtors,<br><br>          Plaintiffs,<br><br>vs.<br><br>LEXMARK INTERNATIONAL, INC.,<br><br>          Defendant. | Adv. No. 02-03500 |
| LEXMARK INTERNATIONAL, INC.,<br><br>          Third Party Plaintiff,<br><br>vs.<br><br>COMPAQ COMPUTER CORPORATION, a Delaware corporation, and CUSTOM EDGE, INC., f/k/a ITY CORPORATION, a Delaware corporation,<br><br>          Third Party Defendants. | |

## THIRD PARTY COMPLAINT

Defendant and Third Party Plaintiff Lexmark International, Inc. ("**Lexmark**"), hereby pleads and alleges as follows:

# I

## JURISDICTION

1.    This Court has jurisdiction over this core adversary proceeding, and the claims raised herein, pursuant to 28 U.S.C. §§157(b)(2)(A); 157(b)(2)(B); 157(b)(2)(O), and 28 U.S.C. §1334.

2.    This Court also has supplemental jurisdiction over the claims stated herein pursuant to 28 U.S.C. §1367.

3.    Venue is properly in this Court pursuant to 28 U.S.C. §§1408 and 1409.

# II

## ALLEGATIONS RE PARTIES

4.    Third Party Plaintiff Lexmark is a Delaware corporation.

5.    Third Party Defendant Compaq Computer Corporation is a Delaware corporation ("**Compaq**").

6.    Third Party Defendant Compaq is a successor in interest to Custom Edge, Inc. f/k/a ITY Corporation which was a Delaware corporation ("**Custom Edge**") and was, prior to its merger with Compaq, a wholly owned subsidiary of Compaq.

7.    Inacom Corp., the Plaintiff in the above adversary proceeding ("**Inacom**") filed a petition under Chapter 11 of the United States Bankruptcy Code on June 16, 2000 (the "**Petition Date**"), and since this date, Inacom has remained in possession and control of the assets of the estate as the debtor and debtor-in-possession.

## III

## GENERAL ALLEGATIONS

8.      Lexmark hereby restates and realleges herein the allegations stated in paragraphs 1 through 7 above.

9.      On or about January 4, 2000, Compaq, Custom Edge and Inacom entered into that certain *Asset Purchase Agreement* (the "**Asset Purchase Agreement**").  A true and correct copy of the Asset Purchase Agreement is attached hereto as Exhibit "A."

10.     Pursuant to the terms of the Asset Purchase Agreement, Custom Edge assumed liability for all of the accounts payable Inacom owed to Lexmark (the "**Payment Obligations**").

11.     Pursuant to the terms of the Asset Purchase Agreement, Compaq guaranteed Custom Edge's payment of certain assumed liabilities, including the Payment Obligations owed to Lexmark.

12.     Custom Edge's liability for the Payment Obligations became effective on or before February 16, 2000.

13.     On or about February 16, 2000, Compaq transmitted a letter to Lexmark (the "**Assumption Letter**") wherein Compaq represented to Lexmark that Custom Edge "assumed the obligation to pay" the Payment Obligations, and further stated that Compaq would provide the funds necessary to pay the Payment Obligations.  A true and correct copy of the Assumption Letter is attached hereto as Exhibit "B."

14.     In reliance upon the representations made in the Assumption Letter and additional oral representations, Lexmark continued to provide goods to Custom Edge, as successor-in-interest to Inacom, and deferred collection action on the Payment Obligations.

SL1 303321v1/04907.003

**Apx. 3**

15.    From and after the date of the Assumption Letter, Custom Edge and Compaq had liability for the Payment Obligations.

16.    On or about February 5, 2001, Compaq transmitted a letter to Lexmark (the **"Guarantee Letter"**) wherein Compaq represented to Lexmark that Compaq "hereby unconditionally guarantees and promises to pay to Lexmark International Inc. on demand, any and all indebtedness from time to time outstanding under or in respect to transactions between Custom Edge, Inc. and Lexmark." A true and correct copy of the Guarantee Letter is attached hereto as Exhibit "C."

17.    Pursuant to the terms of the Guarantee Letter, Compaq further agreed "to pay all reasonable attorneys' fees, the allocated cost of Lexmark's internal counsel, and all other costs and expenses that may be incurred by Lexmark in the enforcement of this Guaranty."

18.    Compaq succeeded to the liabilities of Custom Edge through merger and has furthermore specifically guaranteed all of Custom Edge's liabilities, including reasonable attorney's fees, and the allocated costs of Lexmark's internal counsel, through the Guarantee Letter.

19.    On or about May 16, 2002, Inacom filed a Complaint initiating the aforementioned adversary proceeding (the "**Complaint**"), and alleged that during the period of March 14, 2000 through May 26, 2000, it paid the Payment Obligations via thirty-nine (39) separate checks, totaling $2,928,090.91.

20.    On the basis of the foregoing allegations, Inacom has alleged that the payments made to satisfy the Payment Obligations are recoverable as preferential transfers pursuant to §547 of the Bankruptcy Code (the "**Preference Claims**").

SL1 303321v1/04907.003

21.    To the extent the Court finds Lexmark is obligated to return the payments it received from Inacom as preferential transfers, Compaq and Custom Edge are liable to Lexmark.

## IV

### FIRST CLAIM FOR RELIEF – AGAINST CUSTOM EDGE

### (Breach of Contract – Third Party Beneficiary)

22.    Lexmark hereby restates and realleges herein the allegations stated in paragraphs 1 through 21 above.

23.    The Payment Obligations were expressly assumed by Custom Edge in the Asset Purchase Agreement.

24.    Custom Edge and Compaq represented in the Asset Purchase Agreement that Custom Edge had assumed the Payment Obligations and that Compaq would provide the funds to pay these obligations.

25.    Lexmark is a third party beneficiary of Custom Edge's assumption of the Payment Obligations under the terms of the Asset Purchase Agreement.

26.    By failing to pay and satisfy the Payment Obligations, Custom Edge has breached its obligations to Lexmark as a third party beneficiary of the Asset Purchase Agreement.

## V

### SECOND CLAIM FOR RELIEF – AGAINST CUSTOM EDGE

### (Breach of Contract – Assumption Letter)

27.    Lexmark hereby restates and realleges herein the allegations stated in paragraphs 1 through 26 above.

28.    The Payment Obligations were expressly assumed by Custom Edge in the Assumption Letter.

SL1 303321v1/04907.003

29.    The Assumption Letter created a valid and binding contractual agreement by and between Lexmark and Custom Edge.

30.    By failing to pay and satisfy the Payment Obligations, Custom Edge breached its obligations to Lexmark under the Assumption Letter.

## VI

### THIRD CLAIM FOR RELIEF – AGAINST COMPAQ

#### (Breach of Contract – Assumption Letter)

31.    Lexmark hereby restates and realleges herein the allegations stated in paragraphs 1 through 30 above.

32.    The Payment Obligations were expressly assumed by Custom Edge in the Asset Purchase Agreement.

33.    In the Asset Purchase Agreement, Compaq guaranteed the payment of certain assumed liabilities, including the Payment Obligations to Lexmark.

34.    Custom Edge and Compaq represented in the Asset Purchase Agreement that Custom Edge had assumed the Payment Obligations and that Compaq would provide the funds to pay these obligations.

35.    Lexmark is a third party beneficiary of Compaq's guarantee of Custom Edge's obligation to pay the Payment Obligations under the terms of the Asset Purchase Agreement.

36.    By failing to pay and satisfy the Payment Obligations pursuant to its guaranty, Compaq has breached its obligations to Lexmark as a third party beneficiary of the Asset purchase Agreement.

SL1 303321v1/04907.003

## VII

## FOURTH CLAIM FOR RELIEF – AGAINST COMPAQ

### (Breach of Contract – Assumption Letter)

37.    Lexmark hereby restates and realleges herein the allegations stated in paragraphs 1 through 36 above.

38.    The Payment Obligations were expressly assumed by Compaq in the Assumption Letter Agreement.

39.    The Assumption Letter created a valid and binding contractual agreement by and between Lexmark and Compaq, upon which Lexmark detrimentally relied.

40.    By failing to pay and satisfy the Payment Obligations, Compaq breached its obligations to Lexmark under the Assumption Letter.

## VIII

## FIFTH CLAIM FOR RELIEF – AGAINST CUSTOM EDGE

### (Indemnity)

41.    Lexmark hereby restates and realleges herein the allegations stated in paragraphs 1 through 40 above.

42.    The Payment Obligations were expressly assumed by Custom Edge in the Asset Purchase Agreement and in the Assumption Letter.

43.    Accordingly, as the primary obligor for the Payment Obligations, Custom Edge is a guarantor of any payments made on these obligations by Inacom.

44.    The Assumption Letter created a valid and binding contractual agreement by and between Lexmark and Custom Edge, pursuant to which Custom Edge agreed to pay the Payment Obligations.

7

45.    By allowing Inacom to pay the Payment Obligations, Custom Edge placed itself in a suretyship position owing direct indemnity to Lexmark for any failure by Inacom to fully satisfy the Payment Obligations.

46.    Custom Edge is obligated to indemnify Lexmark for any recovery obtained by Inacom on the Preference Claims, and all costs of defense incurred by Lexmark in opposing these claims.

## IX

### SIXTH CLAIM FOR RELIEF – AGAINST COMPAQ

### (Indemnity)

47.    Lexmark hereby restates and realleges herein the allegations stated in paragraphs 1 through 46 above.

48.    The Payment Obligations were expressly guaranteed by Compaq in the Asset Purchase Agreement and the Guarantee Letter, imposing liability upon Compaq for any of these obligations which Custom Edge failed to pay.

49.    Accordingly, Compaq is a guarantor of any payments made on these obligations by Inacom.

50.    The Guarantee Letter created a valid and binding contractual agreement by and between Lexmark and Compaq pursuant to which Compaq agreed to pay the Payment Obligations.

51.    By allowing Inacom to pay the Payment Obligations, Compaq placed itself in a suretyship position owing direct indemnity to Lexmark for any failure by Inacom to fully satisfy the Payment Obligations.

52.    Compaq is obligated to indemnify Lexmark for any recovery obtained by Inacom on the Preference Claims, and all costs of defense incurred by Lexmark in opposing these claims.

X

**SEVENTH CLAIM FOR RELIEF – AGAINST CUSTOM EDGE**

**(Promissory Estoppel)**

53.    Lexmark hereby restates and realleges herein the allegations stated in paragraphs 1 through 52 above.

54.    In the Assumption Letter, Compaq, acting as agent for Custom Edge, represented and promised that Custom Edge was assuming liability for the Payment Obligations.

55.    Custom Edge should have reasonably expected that the Assumption Letter would induce Lexmark to continue to do business with Custom Edge.

56.    Lexmark reasonably relied upon the promises in the Assumption Letter to its detriment by continuing to provide goods to Custom Edge, and by delaying collection efforts with respect to these obligations.

57.    It would be unjust to allow Custom Edge to evade its obligations under the Assumption Letter under these facts and circumstances.

XI

**EIGHTH CLAIM FOR RELIEF – AGAINST COMPAQ**

**(Promissory Estoppel)**

58.    Lexmark hereby restates and realleges herein the allegations contained in paragraphs 1 through 57 above.

SL1 303321v1/04907.003

**Apx. 9**

59.    In the Assumption Letter and the Guarantee Letter, Compaq represented and promised to Lexmark that it would provide the funding necessary to pay the Payment Obligations.

60.    Compaq should have reasonably expected that the Assumption Letter and Guarantee Letter would induce Lexmark to continue to do business with Custom Edge.

61.    Lexmark reasonably relied upon the promises in the Assumption Letter to its detriment by continuing to provide goods to Custom Edge, and by delaying collection efforts with respect to these obligations.

62.    It would be inequitable to allow Compaq to evade its obligations under the Assumption Letter under these facts and circumstances.

## XII

## NINTH CLAIM FOR RELIEF – AGAINST COMPAQ

### (Breach of Guaranty)

63.    Lexmark hereby restates and realleges herein the allegations stated in paragraphs 1 through 62 above.

64.    The Payment Obligations were expressly assumed by Custom Edge in the Assumption Letter Agreement.

65.    Compaq expressly guaranteed Custom Edge's payment of the Payment Obligations in the Guarantee Letter.

66.    The Guarantee Letter created a valid and binding contractual agreement by and between Lexmark and Compaq, upon which Lexmark detrimentally relied.

67.    Custom Edge failed to pay the Payment Obligations to Lexmark.

SL1 303321v1/04907.003

68.     As guarantor, Compaq is required to pay the Payment Obligations Custom Edge failed to pay.

69.     By failing to pay and satisfy the Payment Obligations, Compaq breached its obligations to Lexmark under the Guarantee Letter.

70.     Pursuant to the terms of the Guarantee Letter, Lexmark is entitled to recover from Compaq its damages from breach of the Guarantee Letter, plus costs and all reasonable attorneys' fees, including the allocated costs of Lexmark's internal counsel.

### PRAYERS FOR RELIEF

WHEREFORE, Lexmark respectfully requests that the Court enter a judgment in favor of Lexmark as follows:

1.     Against Compaq as successor in interest to Custom Edge in the amount of any award granted to Inacom on the Preference Claims plus costs and reasonable attorneys' fees;

2.     Against Compaq in the amount of any award granted to Inacom on the Preference Claims plus costs and reasonable attorneys' fees, including the allocated cost of Lexmark's internal counsel; and

SL1 303321v1/04907.003

**Apx. 11**

3.    For an award of all costs and reasonable attorneys' fees incurred in the defense of the Preference Claims and in the pursuit of the relief sought herein, and such further relief as the Court deems just and proper.

DATED: December 12, 2002                     Respectfully submitted,


                              */s/ Thomas G. Whalen, Jr.*
                              Joseph Grey (No. 2358)
                              Thomas G. Whalen, Jr. (No. 4034)
                              **STEVENS & LEE, P.C.**
                              300 Delaware Avenue, Suite 800
                              Wilmington, DE  19801
                              (302) 654-5180
                              (302) 654-5181 (fax)


                              and

                              Laura Day DelCotto, Esq.
                              Heather G. Pennington, Esq.
                              **STOLL, KEENON & PARK, LLP**
                              300 West Vine Street, Suite 2100
                              Lexington, KY  40507-1801
                              (859) 231-3000
                              (859) 253-1093 (fax)


                              *COUNSEL FOR LEXMARK*
                              *INTERNATIONAL, INC.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INACOM CORP., et al., | Bankruptcy Case No. 00-2426 (PJW) |
| Debtors. | |
| INACOM CORP., et al., | Civil Action No. 04-CV-148 (GMS) |
| Plaintiff, | |
| v. | |
| TECH DATA CORPORATION, | |
| Defendant. | |
| INACOM CORP., et al., | Civil Action No. 04-CV-582 (GMS) |
| Plaintiff, | |
| v. | |
| DELL COMPUTER CORPORATION, | |
| Defendant. | |
| INACOM CORP., et al., | Civil Action No. 04-CV-583 (GMS) |
| Plaintiff, | |
| v. | |
| LEXMARK INTERNATIONAL, INC., | |
| Defendant. | |
| INACOM CORP., et al., | Civil Action No. 04-CV-593 (GMS) |
| Plaintiff, | |
| v. | |
| INGRAM ENTERTAINMENT, INC., | |
| Defendant. | |

472949
{00196013.DOC v 2}

**Apx. 13**

**HEWLETT-PACKARD COMPANY'S OPENING BRIEF IN SUPPORT OF ITS**
**MOTION FOR A SEPARATE TRIAL OF THE THIRD-PARTY CLAIMS**

MORRIS, NICHOLS, ARSHT & TUNNELL
William H. Sudell, Jr. (No. 463)
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 N. Market Street
Wilmington, DE  19899-1347
(302) 658-9200

- and -

FRIEDMAN DUMAS & SPRINGWATER LLP
Ellen A. Friedman
Cecily A. Dumas
Gail S. Greenwood
Brandon C. Chaves
One Maritime Plaza, Suite 2475
San Francisco, CA  94111
(415) 834-3800

Attorneys for Third-Party Defendant
Hewlett-Packard Company

July 6, 2005

472949
{00196013.DOC v 2}

i.

## TABLE OF CONTENTS

TABLE OF CITATIONS                                                              ii

INTRODUCTION                                                                     1

NATURE AND STAGE OF PROCEEDING                                                   1

SUMMARY OF ARGUMENT                                                              2

STATEMENT OF FACTS                                                               3

LEGAL ARGUMENT                                                                   5

    I.    THE COURT HAS BROAD DISCRETION TO ORDER A
SEPARATE TRIAL OF THIRD-PARTY CLAIMS
UNDER FED. R. CIV. PROC. 42(B).                                                  5

    II.    A SEPARATE TRIAL WILL PROMOTE
CONVENIENCE AND ECONOMY BY RESOLVING
THE PRINCIPAL PREFERENCE ACTIONS BEFORE
THE CONTINGENT THIRD-PARTY ACTIONS.                                              6

    III.    A SEPARATE TRIAL WILL MORE QUICKLY
RESOLVE THE PREFERENCE ACTIONS BY
ALLOWING THE PARTIES TO EFFICIENTLY
PACKAGE AND PRESENT THE DISTINCT ISSUES OF
FACT AND LAW.                                                                    7

    IV.    TRYING THE ACTIONS TOGETHER WOULD CAUSE
HP TO INCUR UNNECESSARY COSTS.                                                   9

CONCLUSION                                                                       11

472949
{00196013.DOC v 2}

**Apx. 15**

ii.

## TABLE OF CITATIONS

Cases

*Akzona, Inc. v. E. I. Du Pont De Nemours & Co.,*
    607 F. Supp. 227 (D. Del. 1984)              9

*Barr Labs, Inc. v. Abbott Labs,*
    978 F.2d 98 (3rd Cir. 1992)         6, 7

*Corrigan v. Methodist Hospital,*
    160 F.R.D. 55 (E.D. Pa. 1995)        6

*Gottlieb v. Tropicana Hotel and Casino,*
    2000 WL 806993 (E.D. Pa. June 8, 2000)    6

*Idzojtic v. Pennsylvania R.R. Co.,*
    456 F.2d 1228 (3d Cir. 1972)    5

*In re Kaiser Steel Corp.,*
    110 B.R. 20 (D. Colo. 1990)    6, 7

*In re Revere Copper & Brass, Inc.,*
    32 B.R. 577 (Bankr. S.D.N.Y. 1983)    5

Statutes

11 U.S.C. § 547    1

Fed. R. Civ. Pro. 42    1, 2, 5, 9

Other Authorities

9 Wright & Miller, *Federal Practice and Procedure:*
    *Civil 2d,* § 2388 (1995)    6

472949
{00196013.DOC v 2}

1.

## INTRODUCTION

Third-Party Defendant Hewlett-Packard Company ("HP") submits this brief in support of its motion, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. Proc."), for an order for a separate trial of the third-party claims brought by Lexmark International, Inc. ("Lexmark") and Tech Data Corporation ("Tech Data").

## NATURE AND STAGE OF PROCEEDING

The estate of Inacom Corp. ("Inacom") has brought the above-captioned actions against Dell Computer Corp. ("Dell"), Ingram Entertainment, Inc. ("Ingram"), Tech Data, and Lexmark (collectively referred to as "Defendants") to recover alleged preferential transfers under 11 U.S.C. § 547 (the "Preference Actions"). Lexmark and Tech Data have filed third-party complaints against HP, as successor in interest to Compaq Computer Corporation ("Compaq"), claiming breach of contract and indemnity (the "Third-Party Actions," and together with the Preference Actions, the "Actions").

The Court previously consolidated the Actions for pretrial proceedings. The Court entered a scheduling order on October 4, 2004, which was later amended in order to accommodate the Defendants' request for extensions of the discovery periods. Fact discovery closed on March 31, 2005. Expert discovery closes on June 10, 2005. The Court has scheduled trials of these matters beginning on October 17, 2005.

Lexmark has filed a motion for a jury trial, which the parties have briefed but which has not been set for hearing as of the date hereof. Tech Data has filed an

472949
{00196013.DOC v 2}

2.

untimely[1] motion to amend its third-party complaint against Compaq to add new claims in excess of $900,000, which motion has also been briefed, but has not been set for hearing as of the date hereof.

The Defendants have collectively moved the Court to consolidate all of the Actions for trial, including the Third-Party Actions filed by only two of the four Defendants. HP has opposed the motion on the grounds that the Third-Party Actions involve completely different questions of law and fact than the Preference Actions, HP's liability is contingent on the outcome of the Preference Actions, consolidation would delay the resolution of the principal Preference Actions, and HP would be forced to incur unnecessary costs by attending proceedings that do not involve and have no relation to HP. HP's opposition requested that the Court order a separate trial of the Third-Party Actions if the Court grants the Defendants' motion to consolidate. No date has been set for hearing on the Defendants' motion to consolidate as of the date hereof.

HP now moves the Court to order separate trials of the Third-Party Actions and files this brief in support of its motion.

## SUMMARY OF ARGUMENT

1.    A separate trial of the Third-Party Actions will promote judicial economy pursuant to Fed. R. Civ. Proc. 42(b) by allowing the principal Preference Actions to be resolved before the contingent Third-Party Actions. The Third-Party Actions will not require a trial if the Defendants are successful in the Preference Actions.

---

[1]    Under the court's Scheduling Order dated October 4, 2004, the deadline for amending the pleadings was November 18, 2004. Tech Data filed its motion on April 8, 2005.

472949
{00196013.DOC v 2}

3.

2.     The resolution of the Preference Actions will be expedited by holding separate trials because it will eliminate the need for evidence to be presented which is unrelated to the Preference Actions.  The evidence in the Preference Actions will consist of detailed expert testimony regarding the solvency of Inacom during the preference period and testimony regarding the course of conduct between Inacom and its vendors regarding payment.  None of this evidence has any relevance to HP's alleged liability to Lexmark or Tech Data in the Third-Party Actions.  Nor are the legal issues common.  The Third-Party Actions involve the interpretation of New York law, which governs the APA (as defined below) and Lexmark's and Tech Data's claims as third-party beneficiaries thereof, and the interpretation of the laws of Florida, Kentucky, and Delaware with respect to common counts asserted by Lexmark and Tech Data.  None of the claims asserted in the Third-Party Actions involve federal bankruptcy law.

3.     If the Third-Party Actions were tried at the same time as the Preference Actions, the result would be a longer and more complicated trial with an increased risk of confusion by the trier of fact.  HP would be also forced to incur unnecessary costs by attending preference action proceedings that are irrelevant to HP.

### STATEMENT OF FACTS

On June 16, 2000, Inacom and its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  Prior to the bankruptcy filing, Inacom had been engaged in the business of supplying computer hardware and related services to wholesale and retail customers.  Dell, Tech Data, Lexmark and Ingram were vendors to Inacom, selling it

472949
{00196013.DOC v 2}

4.

various computer components, peripherals and supplies. Each of the Defendants, along with other suppliers to Inacom, received payments from Inacom within 90 days prior to the bankruptcy filing, some of which were in payment of Defendants' receivables months after such debts were due. The representatives of the Inacom estate brought actions against numerous suppliers, including Defendants, to recover any such payments that constituted preferential payments under the Bankruptcy Code. The Preference Actions will involve the presentation of evidence relating to payments by Inacom to Defendants in the aggregate amount of over $16 million.

Five months before the bankruptcy filing, on January 4, 2000, Compaq and Inacom entered into an Asset Purchase Agreement ("APA") whereby Compaq agreed to purchase certain assets related to Inacom's hardware distribution division and to assume certain accounts payable associated with the purchased assets. The APA is solely between Inacom and its affiliates, and Compaq and its subsidiary, and expressly provides that no other party is an intended beneficiary of the APA.

At closing, and pursuant to the terms of the APA, Inacom delivered to Compaq its list of accounts payable to be assumed by Compaq under the APA. Compaq duly paid all of the payables that it assumed.

Inacom also paid all of the liabilities that it had retained under the APA. Inacom, however, delayed releasing some of its payments to the vendors for months after the closing of the APA. Unbeknownst to Compaq, but fully disclosed to the vendors (including Tech Data and Lexmark), Inacom had written checks before the closing of the APA to pay vendors for certain of its payables that it would retain under the APA, but

472949
{00196013.DOC v 2}

5.

delayed mailing the checks for weeks or months after the closing. As a result, some of Inacom's payments fell within the preference period, and Inacom is now seeking to recover them for the benefit of all creditors.

Consistent with their knowledge at the time of the closing, neither Tech Data nor Lexmark ever attempted to collect any of these receivables from Compaq or its affiliates. Tech Data and Lexmark knew perfectly well that Inacom was holding checks for certain of the payables it had retained under the APA, and knew that they would receive payment from Compaq for certain of their receivables, and receive payment from Inacom for others. Nonetheless, after the Preference Actions were filed, Tech Data and Lexmark fabricated a litigation "theory" that Compaq must somehow be held responsible to make them whole if Inacom's payments for the payables it retained under the APA are recovered as preferences. This theory, embodied in the contingent Third-Party Actions, should be tried separately after the trial of the Preference Actions.

## LEGAL ARGUMENT

I.    **THE COURT HAS BROAD DISCRETION TO ORDER A SEPARATE TRIAL OF THIRD-PARTY CLAIMS UNDER FED. R. CIV. PROC. 42(b).**

Fed. R. Civ. Pro. 42(b) allows a court to order a separate trial of a third-party claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." *Idzojtic v. Pennsylvania R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972) (decision to bifurcate is a matter within the broad discretion of the trial judge and to be decided on case-by-case basis); *see also In re Revere Copper & Brass, Inc.*, 32 B.R. 577, 581 (Bankr. S.D.N.Y. 1983) (additional

472949
{00196013.DOC v 2}

6.

reasons for separate trials include avoidance of confusion resulting from similarity or dissimilarity of claims, avoidance of prejudice, unusual difficulty in proving a particular issue, and the inherent power of the court to regulate the order of proof at trial).

## II.    A SEPARATE TRIAL WILL PROMOTE CONVENIENCE AND ECONOMY BY RESOLVING THE PRINCIPAL PREFERENCE ACTIONS BEFORE THE CONTINGENT THIRD-PARTY ACTIONS.

Bifurcation is particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case. 9 Wright & Miller, *Federal Practice and Procedure: Civil 2d*, § 2388, p. 476 (1995); *Corrigan v. Methodist Hospital*, 160 F.R.D. 55, 57 (E.D. Pa. 1995) (typically, separate or bifurcated trials are held for counterclaims or third-party claims, for claims that are logical prerequisites of each other, or to determine affirmative defenses); *Barr Labs, Inc. v. Abbott Labs*, 978 F.2d 98, 115 (3rd Cir. 1992) (bifurcation of separate issues was appropriate when subsequent evidence would have been rendered irrelevant upon the determination of the initial issue of the relevant product market in an antitrust case); *Gottlieb v. Tropicana Hotel and Casino*, 2000 WL 806993 *1 (E.D. Pa. June 8, 2000) (district court bifurcated trial of third-party claim against insurer because it was contingent on the outcome of the principal action and involved different issues of law); *In re Kaiser Steel Corp.*, 110 B.R. 20, 25 (D. Colo. 1990) (bankruptcy court severed a debtor's fraudulent conveyance claims from the defendant's indemnification counterclaims based on the fact that (1) the counterclaims were contingent on the outcome of the principal claims, and (2) the counterclaims involved different areas of law than the principal claims).

472949
{00196013.DOC v 2}

7.

Here, the Third-Party Actions are claims for indemnity of any amount that Lexmark or Tech Data may be found liable to Inacom. Accordingly, a trial must be held and judgment entered against Lexmark and Tech Data before knowing whether a trial of the third-party claims will be necessary. Trying the Actions together would require the trier of fact to consider evidence related to the Preference Actions at the same time as evidence related to the state law claims – evidence that is irrelevant to the Preference Actions and that will be unnecessary if the Defendants are successful. In such circumstances, bifurcation is a more convenient and a more efficient use of judicial resources.

### III.   A SEPARATE TRIAL WILL MORE QUICKLY RESOLVE THE PREFERENCE ACTIONS BY ALLOWING THE PARTIES TO EFFICIENTLY PACKAGE AND PRESENT THE DISTINCT ISSUES OF FACT AND LAW.

Separate trials are appropriate when different claims require the presentation of evidence concerning factual circumstances not relevant to other claims and when bifurcation will result in a quicker resolution of the primary claim. *In re Kaiser Steel Corp.*, 110 B.R. at 25 (approving separate trials of plaintiff's fraudulent conveyance claims and defendants' contingent counterclaims because bifurcation was a more efficient use of the court's resources and would result in the quicker resolution of the primary actions); *see also Barr Labs, Inc.*, 978 F.2d at 115 (upholding bifurcation because it enhanced juror comprehension of the complex issues presented and excluded the presentation of lengthy evidence which may have been irrelevant upon the determination of the principal issue).

472949
{00196013.DOC v 2}

8.

Here, the Preference Actions involve distinct issues of fact and bankruptcy law, including whether Inacom was solvent when the transfers were made and whether the transfers were made in the ordinary course of business. The Defendants state that they intend to present expert testimony regarding Inacom's financial condition at the time of the transfers and testimony regarding the ordinary course of business between Inacom and the Defendants and in Inacom's industry. These issues have nothing to do with Compaq or HP, do not affect the Third-Party Actions, and do not require any of the same evidence.

The Third-Party Actions, on the other hand, involve issues of state law. Lexmark and Tech Data have brought breach of contract claims under the APA based on their alleged status as third-party beneficiaries to that agreement. The plain language of the APA expressly denies the parties' intent to give rights to third-parties such as Lexmark and Tech Data to bring any claims based on the APA. The APA contains a choice of law provision stating that it is governed by New York law. Therefore, whether Lexmark or Tech Data have standing as third-party beneficiaries and can bring a claim to enforce the APA will be a question of New York contract law – an issue that has nothing to do with the Preference Actions.

Lexmark and Tech Data also claim that a letter sent by Compaq to certain vendors of Inacom constituted an independent contractual obligation to assume or guarantee all of Inacom's payment obligations to them. They have asserted common counts of breach of contract, indemnity, promissory estoppel, and breach of guaranty. The merits of these claims will be determined by Florida law in Tech Data's case, and Kentucky law in Lexmark's case – not bankruptcy law. Adjudication of these third-party

472949
{00196013.DOC v 2}

**Apx. 24**

9.

claims, therefore, requires consideration of wholly different evidence and different law than that required to adjudicate Inacom's Preference Actions against the Defendants.

A separate trial of the Third-Party Actions will allow the litigants to present these two different groups of law and evidence separately. This will allow the Preference Actions to be resolved more quickly since the trier of fact will not have to consider evidence of the preference claims and defenses together with evidence about the asset purchase transaction between Compaq and Inacom and the subsequent actions of Lexmark and Tech Data.

### IV.    TRYING THE ACTIONS TOGETHER WOULD CAUSE HP TO INCUR UNNECESSARY COSTS.

Fed. R. Civ. Proc. 42(b) allows a court to sever those issues, which, if tried with the main issues, would lead to additional expense. *Akzona, Inc. v. E. I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 232 (D. Del. 1984) (separate trials on patent infringement issues and antitrust issues would prevent unnecessary expenses by resolving dispositive claims first).

Here, trying the Actions together would be essentially conducting two separate trials – the Preference Actions and the Third-Party Actions – lumped into one proceeding. This would require HP's counsel to attend the Preference Action trials of Lexmark and Tech Data which do not involve HP or Compaq, causing HP to incur significant and unnecessary costs. Inacom's counsel would also be forced to sit through Lexmark and Tech Data's state law claims against HP, incurring additional expenses to the bankruptcy estate even though the Third-Party Actions will have no effect on Inacom. Furthermore, if the Defendants are successful in the Preference Actions, there will be no

472949
{00196013.DOC v 2}

10.

trial of the Third-Party Actions and HP's counsel will have sat silently through unrelated

trials for nothing.  The unnecessary delay and expense that would be caused is precisely

what Rule 42(b) serves to avoid.

472949
{00196013.DOC v 2}

11.

## CONCLUSION

A separate trial of the Third-Party Actions will promote judicial economy, allow for a faster resolution of the Preference Actions, prevent HP from incurring unnecessary costs, and cause no harm to any of the Defendants. Accordingly, HP requests that the Court order a separate trial of the Third-Party Actions.

Dated:  July 6, 2005
        Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL

William H. Sudell, Jr. (No. 463)
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 N. Market Street
Wilmington, DE  19899-1347
(302) 658-9200

- and -

FRIEDMAN DUMAS & SPRINGWATER LLP
Ellen A. Friedman
Cecily A. Dumas
Gail S. Greenwood
Brandon C. Chaves
One Maritime Plaza, Suite 2475
San Francisco, CA  94111
(415) 834-3800

472949
{00196013.DOC v 2}

## CERTIFICATE OF SERVICE

I, Daniel B. Butz, certify that I am not less than 18 years of age, and that service of the foregoing **Hewlett-Packard Company's Brief In Support Of Its Motion For A Separate Trial Of The Third-Party Claims** was caused to be made on July 6, 2005, in the manner indicated upon the parties identified below:

Date: July 6, 2005

_____
Daniel B. Butz (No. 4227)

**HAND DELIVERY/**
**BY FIRST CLASS U.S. MAIL**

Laura Davis Jones, Esq.
Sandra McLamb, Esq.
Kathleen Marshall DePhillips, Esq.
Pachulski Stang Ziehl Young & Jones
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE  19899-8705

Andrew W. Caine, Esq.
Jeffrey P. Nolan, Esq.
Pachulski Stang Ziehl Young & Jones
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, CA  90067

Joseph Grey, Esq.
Thomas Gerard Whalen, Jr., Esq.
Stevens & Lee
300 Delaware Avenue
Suite 800
Wilmington, DE  19801

Culver V. Halliday, Esq.
Adam T. Goebel, Esq.
Stoll Keenon & Park, LLP
2650 Ageon Center
400 West Market Street
Louisville, KY  40202

473014