1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


In re
INACOM CORP., et al.          Bankruptcy Case No. 00-2426 PJW

---

INACOM CORP., on behalf                :
of all affiliated Debtors,             : Civil Action No. 04-148 GMS
                                       : (Original filed in this Action)
            Plaintiff,                 : Adversary Case No. 02-03496 PJW
      v.                               :
                                       :
TECH DATA CORP.,                       :
                                       :
            Defendant.                 :



---

INACOM CORP., on behalf of             :
all affiliated Debtors,                :
                                       :
            Plaintiff,                 : Civil Action No. 04-582 GMS
                                       :
      v.                               : Adversary Case No. 02-03499 PJW
                                       :
DELL COMPUTER CORPORATION,             :
                                       :
            Defendant.                 :

---

INACOM CORP., on behalf of             :
all affiliated Debtors,                :
                                       :
            Plaintiff,                 : Civil Action No. 04-583 GMS
                                       :
      v.                               : Adversary Case No. 02-03500 PJW
                                       :
LEXMARK INTERNATIONAL, INC.,           :
                                       :
            Defendant.                 :

---

DEPOSITION OF RICHARD CHARLES OSHLO, JR.,
March 20, 2005


KATHRYN POWERS- CERTIFIED SHORTHAND REPORTER

| | |
|---|---|
| INACOM CORP., on behalf of all affiliated Debtors, | : |
| | : |
| Plaintiff, | : Civil Action No. 04-584 GMS |
| | : |
| v. | : Adversary Case No. 02-03501 PJW |
| | : |
| RESILIEN, INC., et al., | : |
| | : |
| Defendant. | : |

| | |
|---|---|
| INACOM CORP., on behalf of all affiliated Debtors, | : |
| | : |
| Plaintiff, | : Civil Action No. 04-593-GMS |
| | : |
| v. | : Adversary Case No. 02-03960 PJW |
| | : |
| INGRAM ENTERTAINMENT, INC., Successor in interest to NASHVILLE COMPUTER LIQUIDATORS, | : |
| | : |
| Defendant. | : |

| | |
|---|---|
| INACOM CORP., on behalf of all affiliated Debtors, | : |
| | : Civil Action No. 04-601 GMS |
| Plaintiff, | : Adversary Case No. 02-04441 PJW |
| | : |
| v. | : |
| | : |
| SIGMA DATA, INC, | : |
| | : |
| Defendant. | : |

## DEPOSITION OF RICHARD CHARLES OSHLO, JR.,

taken by the Defendants before Kathryn Powers, Certified Shorthand Reporter of the State of Iowa, at the Renaissance Savery Hotel, Room 210, Des Moines, Iowa, commencing at 9:45 a.m., Sunday, March 20, 2005.

1  APPEARANCES:

2  For InaCom Corp.:          JEFFREY P. NOLAN, ESQ.
                              Pachulski, Stang, Ziehl,
3                              Young, Jones & Weintraub, P.C.
                              10100 Santa Monica Blvd.
4                             Eleventh Floor
                              Los Angeles, California 90067-4100
5
   For Executive Sounding     EARL M. FORTE, ESQ.
6  Board Associates, Inc.,    Blank & Rome, LLP
   Liquidating Agent of       One Logan Square
7  InaCom Corp.:              18th and Cherry Streets
                              Philadelphia, Pennsylvania  19103-6998
8
   For Defendant Dell:        SABRINA L. STREUSAND, ESQ.
9                             G. JAMES LANDON, ESQ.
                              Hughes & Luce, LLP
10                            111 Congress Avenue, Suite 900
                              Austin, Texas  78701
11
   For Defendant Tech         STEPHEN C. HUNT, ESQ.
12 Data:                      Adorno & Yoss
   (by telephone)             350 East Las Olas Blvd.
13                            Seventh Floor
                              Fort Lauderdale, Florida  23301
14
   For Defendant Lexmark:     CULVER V. HALLIDAY, ESQ.
15                            Stoll, Keenon & Park, LLP
                              2650 Aegon Center
16                            400 West Market St.
                              Louisville, Kentucky 40202-3377
17
   For Defendant Ingram:      JONATHAN P. HERSEY, ESQ.
18 (by telephone)             Bingham McCutchen, LLP
                              600 Anton Road, 18th Floor
19                            Costa Mesa, California  92626

20 For Third-Party            GAIL S. GREENWOOD, ESQ.
   Defendant Hewlett          Friedman, Dumas & Springwater, LLP
21 Packard, Successor in      One Maritime Plaza
   Interest to Compaq         Suite 2475
22 Computer:                  San Francisco, California  94111

23
   Also Present:              Jason Fensterstock
24 (by telephone)             Duff & Phelps

25

1                    I  N  D  E  X

2  WITNESS                                          PAGE

3  Richard Charles Oshlo, Jr.

4          Examination  By Ms. Streusand        6

5          Examination by Mr. Halliday          132

6          Examination by Mr. Hunt              168

7          Examination By Mr. Nolan             173

8          Examination by Ms. Greenwood         210

9          Examination by Mr. Nolan             211

10         Examination by Mr. Forte             231

11         Examination by Ms. Streusand         237

12         Examination by Mr. Halliday          242

13         Examination by Mr. Hunt              249

14

15

16

17

18

19

20

21

22

23

24

25

1

E X H I B I T S

2

EXHIBITS                                                        MARKED

3     1 - InaCom Corp. Officer's Certificate              37
      2 - Third Amendment and Waiver                       41
4     3 - 8-K March 2000                                   44
      4 - Borrowing Base/Non-Default Certificate          51
5         February 26, 2000
      5 - Fourth Amendment and Waiver                      56
6     6 - 2/16/00 Memo from Davis Polk                     65
      7 - Borrowing Base/Non-DeFault Certificate          68
7         March 25, 2000
      8 - Borrowing Base Certificate 4/22/00               70
8     9 - Summary of Impact of disposed Assets             72
          and Operations
9    10 - Treasury Released Checks by Date                 78
     11 - Attachment E, Collateral Mang. Report            80
10   12 - (This number was skipped in marking)
     13 - 3/29/00 Ltr. to Bachner                          90
11   14 - 4/4/00 Memo to Tom from Dick                     93
     15 - 3/24/00 Memo to Tom rom Dick                    102
12   16 - Board of Directors Minutes                      104
     17 - Intercreditor Agreement                         104
13   18 - Separation and Sharing Agreement                108
     19 - Fifth Amendment and Waiver                      110
14   20 - Sixth Amendment and Waiver                      112
     21 - Form Notice of Borrowing                        115
15   22 - March 2000 - Wires                              127
     23 - 2/15/00 Ltr. to Oslo from Schuette              161

16

17

18

19

20

21

22

23

24

25

Apx. 95

162

1      A.    "It is my understanding from Leon

2   Kerkman, whom I met with last week, that any

3   invoices that have had checks written against them

4   will be held until the sale is completed between

5   InaCom and Compaq.   The proceeds from the sale

6   will then cover those checks and they will be

7   disbursed over a period of one to ten weeks."

8      Q.    And as I understand your testimony, sir,

9   you have no recollection of any understanding or

10   agreement whereby the proceeds of the sale between

11   InaCom Corporation and Compaq Computer Corporation

12   would be used to pay held checks, correct?

13      A.    Correct.

14      Q.    Do you know Leon Kerkman?

15      A.    Very well.

16      Q.    This letter, sir, is dated February 15,

17   2000.   Where would he have worked in InaCom

18   Corporation at that time if you recall?

19      A.    He was the former controller who was at

20   that time working for Mike Steffen in the group

21   that went over to Compaq, overseeing our

22   integration centers, and I forget what the name of

23   the group was called.

24      Q.    Sir, did you have any involvement in the

25   negotiation of the asset purchase agreement?

1  reference is.

2      Q.   Sir, do you have any recollection today

3  as to any understanding between InaCom Corporation

4  and Compaq Computer Corporation as to the payment

5  of held checks made payable to the order of

6  Lexmark International, Inc.?

7      A.   No, I don't.

8      Q.   As you sit here today, sir, do you have

9  any recollection of any understanding between

10  Compaq Computer Corporation and InaCom Corporation

11  as to the payment of held checks made payable to

12  the order of Tech Data Corporation, Dell Computer

13  Corp., Nashville Entertainment or Logicare?

14      A.   No, I don't.

15      Q.   And Logicare is now called Resilien,

16  Inc., and Nashville Computer is now called Ingram

17  Entertainment.  Would that change your answer,

18  sir?

19      A.   No.

20          MR. HALLIDAY:  Thank you.  Will you

21  indulge me with a five-minute break and I'm

22  hopeful I'm done or just about.

23          (Short recess.)

24          MR. HALLIDAY:  Go back on the record.

25



1    UNITED STATES DISTRICT COURT
     DISTRICT OF DELAWARE
2         CASE NO. 04-CV-583

3    ------------------------------------------------

     **DEPOSITION OF WILLIAM A. SCHUETTE**
4

5    ------------------------------------------------

6    INACOM CORP. on behalf of all            PLAINTIFF
     affiliated debtors

7    v.

8    LEXMARK INTERNATIONAL, INC.              DEFENDANT

9    LEXMARK INTERNATIONAL, INC.          THIRD-PARTY
                                               PLAINTIFF
10   v.

11   COMPAQ COMPUTER CORP., ITY CORP.,    THIRD-PARTY
     and CUSTOM EDGE, INC.                 DEFENDANTS
12
     ------------------------------------------------

13        The deposition of **WILLIAM A. SCHUETTE** was

14   taken on behalf of the plaintiff, Inacom Corporation,

15   before Ann Hutchison, Registered Professional Reporter

16   and Notary Public in and for the State of Kentucky at

17   Large, at the law office of Stoll, Keenon & Park, 300

18   West Vine Street, Suite 2100, Lexington, Kentucky, on

19   Tuesday, February 8, 2005, beginning at the hour of 1:55

20   p.m.  Said deposition was taken pursuant to Rule 30 of

21   the Federal Rules of Procedure and Rule 7030 of the

22   Federal Bankruptcy Procedure.

23   ------------------------------------------------

24        ACTION COURT REPORTERS
           184 North Mill Street
25       Lexington, Kentucky 40507
            (859) 252-4004

1                          APPEARANCES

2

3       COUNSEL FOR PLAINTIFF INACOM CORPORATION:

4           Jeffrey P. Nolan
            Pachulski, Stang, Ziehl, Young & Jones
5           10100 Santa Monica Boulevard, 11th Floor
            Los Angeles, California 90067-4100
6

7       COUNSEL FOR THIRD-PARTY DEFENDANT COMPAQ:

8           Cecily A. Dumas
            Friedman, Dumas & Springwater, LLP
9           One Maritime Plaza, Suite 2475
            San Francisco, California 94111
10

11      COUNSEL FOR DEFENDANT AND THIRD-PARTY PLAINTIFF
        LEXMARK INTERNATIONAL, INC.:
12
            Culver V. Halliday
13          Stoll, Keenon & Park, LLP
            2650 Aegon Center
14          400 West Market Street
            Louisville, Kentucky 40202-3377
15

16      ALSO PRESENT:

17          Kevin Sarkisian

18

19

20

21

22

23

24

25

**Apx. 99**

1                                    INDEX

2

   DEPONENT:  WILLIAM A. SCHUETTE                        PAGE

3
   EXAMINATION BY:
4        Mr. Nolan ................................    4
         Ms. Dumas ................................   65
5        Mr. Nolan ................................   97

6  REPORTER'S CERTIFICATE .........................   99
   SIGNATURE PAGE .................................  100
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Apx. 100

1    conversation you had with Mr. Kendrick following that

2    meeting?

3         A.    I think I told him that the checks were

4    being held and that they were going to be released when

5    the transaction was completed.

6         Q.    And what was Mr. Kendrick's response?

7         A.    Not good enough.  Try to find out a

8    specific time and date.

9         Q.    And did you do that?

10        A.    I believe that's when I began trying to

11   contact Dick Oslo, and I tried to contact him at least

12   for a week.  I had no success getting to him, and so I

13   sent him a letter and overnighted it to him, either

14   overnighted it or registered, I don't know which I did,

15   may have been both, copied Leon and also my boss.

16        Q.    I'm sorry.  Go ahead and finish.

17        A.    No.  And also copied Kendrick on the

18   letter.

19        Q.    And why were you trying to call Dick

20   Oshlo?

21        A.    Because it was my impression from talking

22   to Leon that he was the guy who was disbursing the

23   checks.  He was the man that was responsible for putting

24   stuff out.

25        Q.    Okay.  And what was your purpose of

**Apx. 101**

1    contacting -- I mean, what did you want to tell Mr.

2    Oshlo?

3         A.     I wanted to confirm what I had been told

4    by Leon.

5         Q.     That he was -- that being that Mr. Oshlo

6    was holding checks?

7         A.     That checks had been written and that they

8    were being held until the transaction took place.

9         Q.     And I think you said Mr. Oshlo didn't

10   return phone calls?

11        A.     I called him for at least a week and left

12   voice mails and never got a return call.

13        Q.     Did you call multiple occasions per day?

14        A.     Yes.  I don't know how many per day, but

15   yes.

16        Q.     Did anyone else return Mr. Oshlo's

17   messages?  Did anybody call you back?

18        A.     I don't think anybody ever called me back,

19   but I do believe I talked to his assistant once or twice

20   and left messages to have him call me.

21        Q.     At the time you were calling Mr. Oshlo,

22   did you ever become aware of the fact that Inacom was

23   having liquidity problems?

24        A.     No.

25        Q.     Did you ever become aware that they had

1   Lexmark other than the held checks?

2       A.    Yes.

3       Q.    Who did you have that understanding from?

4       A.    Leon.

5       Q.    Anybody else at Inacom?

6       A.    Well, at that time, no.

7       Q.    I just have to --

8       A.    Right.

9       Q.    I always have to pin down if there's any

10  other source of your information.

11      A.    Right.  No.

12      Q.    And Inacom was going to go ahead and

13  release the checks that it was holding in the treasury

14  department and the held checks would be satisfied,

15  obviously, by Lexmark negotiating those checks.  Right?

16      A.    I don't know what you mean by us

17  negotiating.

18      Q.    Them clearing your bank account?

19      A.    Oh, okay.  Yeah, we would -- once they

20  cleared, then we would consider the stuff paid, right.

21      Q.    Did you have any understanding about

22  whether Compaq was also assuming the liability to make

23  good on the held checks after they had been released and

24  paid?

25      A.    Well, my assumption always was that Compaq

1   would make good the payments, but I don't think at the

2   time I knew whether or not the checks were going to be

3   written from Inacom.  I mean, I don't think I knew the

4   source of the money, who was actually going to be paying

5   for the checks, if it was going to be coming out of an

6   Inacom account or it was going to be coming out of a

7   Compaq account.  I don't think I knew the source of the

8   money, but I felt like Compaq would cover the invoices.

9       Q.      All invoices?

10      A.      All of them, yeah.

11      Q.      So any invoice that was outstanding?

12      A.      Right.

13      Q.      Okay.  Then why does it say here Compaq

14  will assume the liability of Lexmark invoices that have

15  not had checks written against them?  Did you write an

16  incorrect statement in that letter?

17      A.      No.  No.  Maybe I'm not saying it right.

18  I believed that the checks that were being held -- I

19  don't know who was the ultimate source of the funds.  I

20  don't know if it was coming from Inacom or it was coming

21  from Compaq, but I believed that we would be paid

22  that -- those checks and that they would clear and that

23  we would be paid for it.  And anything that was not --

24  had not had a check written on it previously, that

25  Compaq would assume that liability.  That was my

1    A.    Right.

2    Q.    By Inacom.

3    A.    Yes.

4    Q.    Before the sale closing.

5    A.    It was before the transaction went final,

6    correct.

7    Q.    Before they had Compaq's money, they had

8    written checks off their bank account.

9    A.    I don't know what the check looked like,

10   so I don't know how the check was written.  But it was

11   my understanding that the checks had been written, but

12   they had not been released, and they were waiting for

13   funds to hit the account.  That's...

14   Q.    And those funds could be from any source?

15   A.    They could be from any source.

16   Q.    Inacom was waiting for funds to hit its

17   operating account so that it had sufficient money?

18   A.    Let's backtrack one more time here.  I

19   don't know if because of the transaction that was going

20   on that -- I don't know the details of the Inacom/Compaq

21   transaction.  All I know is that I don't believe any

22   invoices were being paid in this interim time period,

23   and I don't know what was causing it.  I don't know if

24   they were waiting on Compaq funds or they were just

25   waiting on the sale to be completed before they paid the

1    funds.  So I'm not sure that I want to go on record as

2    saying that we're waiting on Compaq funds because I

3    don't know if we were waiting on Compaq funds or we were

4    just waiting on the transaction to be completed.  Okay?

5    Because I don't know where -- I mean, for all I know,

6    Inacom could have had the money sitting in the bank but

7    they were waiting on the transaction to close before

8    they paid it.  I don't know.

9        Q.      And Inacom eventually released the checks

10   it was holding.  Right?

11       A.      That's right.

12       Q.      And Lexmark eventually got paid everything

13   that Inacom owed it.  Right?

14       A.      I believe so.  I think we got it all.

15       Q.      Is it your understanding that Compaq paid

16   the accounts payable that it assumed under the

17   transaction?

18       A.      I don't think I have that knowledge as to

19   who actually paid it.  I mean, I would have had to have

20   seen the check or the wire to see who it came from, and

21   I have no idea.

22       Q.      Who would be more knowledgeable than you

23   about that subject?

24       A.      Kevin Sarkisian.

25       Q.      I think maybe -- I'm trying to understand

1    UNITED STATES DISTRICT COURT
          DISTRICT OF DELAWARE
2

In re INACOM CORP., et al., )  Chapter 11
3                              )  Bankruptcy Case No.
          Debtors,            )  00-2426  (PJW)
4    ─────────────────────────)
                               )
5    INACOM CORP., et al.,     )
                               )
6          Plaintiffs,         )
                               )
7      vs.                     )  Civil Action No.
                               )  04-CV-148  (GMS)
8    TECH DATA CORPORATION,    )
                               )
9          Defendant,          )
     ─────────────────────────)
10                             )
     INACOM CORP., et al.,     )
11                             )
           Plaintiffs,         )
12                             )
       vs.                     )  Civil Action No.
13                             )  04-CV-582  (GMS)
     DELL COMPUTER CORP.,      )
14                             )
           Defendant,          )
15   ─────────────────────────)
                Cont'd

16   DEPOSITION TAKEN IN BEHALF OF

17   DEFENDANTS AND THIRD-PARTY PLAINTIFF

18            *   *   *   *   *

19   DEPOSITION OF NONDAS L. VITOLS, taken before

20   me, Gary A. Barnes, Court Reporter and General

21   Notary Public within and for the State of

22   Nebraska, commencing at the hour of 2:30 p.m., on

23   the 23rd day of March, 2005, at the HILTON HOTEL

24   OMAHA, Prague Room, 1001 Cass Street, Omaha,

25   Nebraska.

```
 1   Cont'd

 2   _____
                                )
 3   INACOM CORP., et al.,      )
                                )
 4          Plaintiffs,         )
                                )
 5      vs.                     ) Civil Action No.
                                ) 04-CV-583  (GMS)
 6   LEXMARK INTERNATIONAL, INC.,)
                                )
 7          Defendant,          )
                                )
 8   _____)
                                )
 9   INACOM CORP., et al.,      )
                                )
10          Plaintiffs,         )
                                )
11      vs.                     ) Civil Action No.
                                ) 04-CV-584  (GMS)
12   RESILIEN, INC.,            )
                                )
13          Defendant,          )
                                )
14   _____)
                                )
15   INACOM CORP., et al.,      )
                                )
16          Plaintiffs,         )
                                )
17      vs.                     ) Civil Action No.
                                ) 04-CV-593  (GMS)
18   INGRAM ENTERTAINMENT, INC.,)
                                )
19          Defendant.          )
                                )
20   _____)

21

22

23

24

25                                        Apx. 108
```

**BARNES REPORTING SERVICE, INC.**
**COURT REPORTERS**

POST OFFICE BOX 144                                    402-330-7796
BOYSTOWN, NEBRASKA 68010                               FAX 402-330-3227

```
 1    APPEARANCES:

 2

 3    Mr. Jeffrey P. Nolan
      Attorney at Law
      PACHULSKI, STANG, ZIEHL,
 4    YOUNG, JONES & WEINTRAUB, P.C.
      10100 Santa Monica Boulevard
 5    11th Floor
      Los Angeles, CA  90067          for Plaintiff,
 6                                     InaCom Corp.

 7

 8    Mr. Earl M. Forte
      Attorney at Law
 9    BLANK, ROME, L.L.P.
      One Logan Square
10    18th & Cherry Streets
      Philadelphia, PA  19103-6998    Counsel to
11                                     Executive Sounding
                                       Board Associates,
12                                     Inc., Liquidating
                                       Agent of InaCom
13                                     Corp. Committee of
                                       Unsecured Creditors
14

15

16    Mr. Culver V. Halliday
      Attorney at Law
17    STOLL, KEENON & PARK, L.L.P.
      2650 Aegon Center
      400 West Market Street
18    Louisville, KY  40202-3377      for Defendant,
                                       Lexmark
19                                     International

20

21    Mr. G. James Landon
      Attorney at Law
22    HUGHES, LUCE, L.L.P.
      111 Congress Avenue
23    Suite 900
      Austin, TX  78701               for Defendant,
24                                     Dell, Inc.

25
```

**BARNES REPORTING SERVICE, INC.**
COURT REPORTERS

```
1    Cont'd

2    APPEARANCES:

3
     Mr. Brandon C. Chaves
4    Attorney at Law
     FRIEDMAN, DUMAS & SPRINGWATER, L.L.P.
5    One Maritime Plaza
     Suite 3475
6    San Francisco, CA   94111     for Defendant,
                                    Hewlett-Packard
7                                   a/k/a Compaq
                                    Computer
8

9

10

11

12   VIA TELEPHONE:

13
     Mr. Stephen C. Hunt
14   Attorney at Law
     ADORNO & YOSS, P.A.
15   350 East Las Olas Boulevard
     Suite 1700
16   Fort Lauderdale, FL   33301     for Defendant,
                                      Tech Data
17                                    Corporation

18

19

20

21

22

23

24

25
```

**BARNES REPORTING SERVICE, INC.**
COURT REPORTERS

POST OFFICE BOX 144                                    402-330-7796
BOYSTOWN, NEBRASKA 68010                               FAX 402-330-3227

5

DIRECT - Vida

1    I N D E X

2    WITNESS:                          EXAMINATION

3

4                                      TYPE        PAGE

5    NONDAS L. VITOLS
                                       Direct        6
                                       (Halliway)
6
                                       Direct       19
7                                      (Landon)

8

9

10

11
     EXHIBITS:                         MARK      IDENTIFY
12

13      1    Letter, February 17, 2000      7         8

14
        2    Letter, February 17, 2000     17        17
15

16

17

18

19

20

21

22

23

24

25

**BARNES REPORTING SERVICE, INC.**
COURT REPORTERS

POST OFFICE BOX 144                           402-330-7796
BOYSTOWN, NEBRASKA 68010                       FAX 402-330-3227

VITOLS - DIRECT (Halliday)

1      A.   Yes.

2      Q.   Is that a -- well, would you please

3   identify it, ma'am?  Could you describe that for

4   us, please.

5      A.   It was a letter that was given to us in

6   a template by John Frasca to send out to our

7   vendors.

8      Q.   What is the date on that letter, ma'am?

9      A.   February 17th, 2000.

10     Q.   Ma'am, on that date were you an

11  employee of Custom Edge, Inc.?

12     A.   Yes.

13     Q.   Immediately prior to your being an

14  employee of Custom Edge, Inc., by whom were you

15  employed?

16     A.   InaCom.

17     Q.   You went directly from InaCom

18  Corporation to Custom Edge, Inc.?

19     A.   Yes.

20     Q.   And did you begin your employment with

21  Custom Edge, Inc. in February of 2000, ma'am?

22     A.   Yes.

23     Q.   Can you please identify for me, ma'am,

24  John Frasca?

25     A.   John Frasca was my direct supervisor.

**BARNES REPORTING SERVICE, INC.**
**COURT REPORTERS**

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

Apx. 112

VITOLS - DIRECT (Halliday)

1  Q.   What was the last position you had with
2  InaCom Corporation?
3      A.   As a buyer.
4      Q.   A buyer?
5      A.   A buyer.
6      Q.   In what area or department of the
7  company, ma'am?
8      A.   Purchasing.
9      Q.   Was Mr. Frasca in purchasing with
10  InaCom Corporation?
11     A.   Yes.
12     Q.   Did he go to Custom Edge, Inc., at or
13  about the same time that you did?
14     A.   Yes.
15     Q.   Do you know that Mr. Frasca is the
16  author or the draftsman of the template that has
17  been marked as Exhibit 1?
18     A.   No, I don't.
19     Q.   But he's the gentleman who sent this to
20  you, ma'am?
21     A.   Yes.
22     Q.   Who is that addressed to, ma'am?
23     A.   This one is to Logicare.
24     Q.   Do you recall, ma'am, if you sent such
25  a letter to Logicare?

**BARNES REPORTING SERVICE, INC.**
**COURT REPORTERS**
POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010
402-330-7796
FAX 402-330-3227

**Apx. 113**

VITOLS - DIRECT (Halliday)

1     A.  Well, it looks like I did.

2     Q.  I ask, ma'am, simply 'cause it hadn't

3  been signed and I just wondered if you recalled.

4     A.  They were sent to me e-mail, so there

5  were no signatures on e-mail.

6     Q.  Would you have sent it to Logicare, if

7  it was sent?

8     A.  Yes.

9     Q.  Do you recall, ma'am, sending it to

10  others?

11     A.  Yes.

12     Q.  Was Logicare a vendor of Custom Edge,

13  Inc.?

14     A.  Yes.

15     Q.  Had it been a vendor to InaCom

16  Corporation?

17     A.  Yes.

18     Q.  Do you know if anyone else besides you

19  at Custom Edge, Inc. sent letters based on the

20  same template that was used for Exhibit 1?

21     A.  It was given to all of the buyers to

22  send out to their vendors.

23     Q.  And these were vendors that the buyers

24  had had when they were at InaCom Corporation?

25     A.  Yes.

**BARNES REPORTING SERVICE, INC.**
**COURT REPORTERS**

POST OFFICE BOX 144
BOYSTOWN, NEBRASKA 68010

402-330-7796
FAX 402-330-3227

**Apx. 114**

Case 1:04-cv-00583-GMS    Document 139-5    Filed 03/31/2006    Page 25 of 45
Inacom vs. Tech Data                    3/4/2005
MIKE WARD

Page 1

```
 1              United States District Court
                    District of Delaware
 2

 3

 4   In re: Inacom Corp. et al.,
                                         Chapter 11
 5              Debtors                   Bankruptcy Case
                                         No. 00-2426(PJW)
 6

 7   Inacom Corp., et al,

 8              Plaintiffs

 9       -vs-                            Civil Action
                                        No.:  04-CV-148(GMS)
10   Tech Data Corporation,

11              Defendant

12

13   Inacom Corp., et al.,
                Plaintiffs
14       -vs-                            Civil Action
                                        No. 04-CV-582(GMS)
15   Dell Computer Corp.,

16              Defendant

17

18   Inacom Corp., et al.,
                Plaintiffs
19
         -vs-                            Civil Action
20                                       No. 04-CV-583(GMS)

21   Lexmark International, Inc.,
                Defendant
22

23

24

25
```

Inacom vs. Tech Data                    3/4/2005                              MIKE WARD

Page 2

```
 1   Inacom Corp., et al.,

 2                  Plaintiffs

 3         -vs-                      Civil Action
                                    No. 04-CV-584(GMS)
 4   Resilien, Inc.,

 5                  Defendant

 6

 7   Inacom Corp., et al.,

 8                  Plaintiffs

 9         -vs-                      Civil Action
                                    No. 04-CV-593(GMS)
10   Ingram Entertainment, Inc.,
                   Defendant
11

12

13

14                               March 4, 2005
                                 9:20 a.m.
15

16

17          The deposition of Mike Ward, taken on

18       behalf of the Defendant Compaq, pursuant to

19       Notice of Taking Deposition, at the offices of

20       Downtown Reporting, 37 North Orange Avenue,

21       Suite 400, Orlando, Florida, before Lois H.

22       Simonds, Registered Professional Reporter and

23       Notary Public, in and for the State of Florida

24       at Large.

25
```

Apx. 116

Inacom vs. Tech Data                    3/4/2005                          MIKE WARD

Page 3

```
 1         APPEARANCES:

 2

 3              Andrew W. Caine, Esquire
                Pachulski, Stang, Ziehl, Young,
 4              Jones & Weintraub, P.C.
                10100 Santa Monica Boulevard
 5              11th Floor
                Los Angeles, California 90067
 6
                     Representing Inacom Corp.
 7

 8
                Stephen C. Hunt, Esquire
 9              Charles M. Tatelbaum, Esquire
                Adorno & Yoss
10              350 East Las Olas Boulevard
                Suite 1700
11              Fort Lauderdale, Florida  33301

12                   Representing Tech Data Corporation.

13

14              Cecily Dumas, Esquire
                Friedman Dumas & Springwater, LLP
15              One Maritime Plaza, Suite 2475
                San Francisco, California  94111
16
                     Representing Compaq Computer
17              Corporation.

18                          *    *    *

19

20

21

22

23

24

25
```

Apx. 117

TABLE OF CONTENTS

Michael Ward
March 4, 2005

Appearances                                          2

TESTIMONY OF Michael Ward

        DIRECT EXAMINATION by Ms. Dumas             5

        AFTERNOON SESSION                          84

        CROSS EXAMINATION by Mr. Caine            118

        REDIRECT EXAMINATION by Ms. Dumas         124

SUBSCRIPTION OF DEPONENT                           129

CERTIFICATE OF REPORTER                            130

                        EXHIBITS

Ward Exhibits
For Identification:

No. 1    telephone log                            85

                 S T I P U L A T I O N S
        It is hereby stipulated and agreed by
and between counsel present for the
respective parties and the deponent that the
reading and signing of the deposition is
expressly reserved. (end of stipulation)
                    *   *   *
Reporter's Key To Punctuation:
--  At end of question or answer references
    an interruption.
... References a trail-off by the speaker.
    No testimony omitted.

"Uh-huh" references an affirmative sound.
"Unh-unh" references a negative sound.

Inacom vs. Tech Data                    3/4/2005                    MIKE WARD

Page 35

1  U.S. Credit Services and Donna Platt, Tech Data

2  Territory Sales Manager were also present on this

3  call."  Did I read anything wrong?

4      A.    No, that's a good reading.

5          Mr. Hunt:  Actually, I'm just going to

6      object to the form because the letter says what

7      it says.  I can't read it.  I don't have a

8      copy.

9          Ms. Dumas:  Do you want to take a break so

10     we can make you a copy?

11         Mr. Hunt:  I think the letter says what it

12     says.  I don't -- I mean, if it all --

13         Ms. Dumas:  Steve, I'm just trying to find

14     out if I read the names right because I'm

15     reading a typewritten copy.

16         Mr. Hunt:  Okay.

17  By Ms. Dumas:

18     Q.    Did I read the names right, Mr. Ward?

19     A.    Yes, I believe you pronounced the names

20  correctly.

21     Q.    Thank you.  Was there a conference call

22  the day before this letter, which is dated February

23  9, 2000?

24     A.    From the letter, yes, that would be

25  correct.  That would stand.

Inacom vs. Tech Data                3/4/2005                                MIKE WARD

Page 36

```
 1      Q.   And do you recall having participated in
 2   the conference call as you sit here today?
 3      A.   Yes, I do.
 4      Q.   How long did the call last?
 5      A.   I would have to say less than an hour.
 6      Q.   More than a half hour?
 7      A.   Maybe, maybe a little bit more closer to
 8   half an hour.
 9      Q.   Who is Mr. Kirkman?
10      A.   I have to say that I really don't know.  I
11   never personally met him other than he was sitting
12   in the back room on a call.
13      Q.   And Mr. Frasca?
14      A.   Mr. Frasca was an individual that I
15   communicated with from time to time during this time
16   period.
17      Q.   Had you communicated with Mr. Frasca prior
18   to this time period?
19      A.   I don't recall.
20      Q.   What was his -- what was your
21   understanding of his position at Inacom?
22      A.   At that time my understanding was that he
23   was in some sort of management capacity for
24   purchasing for Inacom.
25      Q.   And how about Mr. Oshlo?
```

Apx. 120

Inacom vs. Tech Data                3/4/2005                MIKE WARD

Page 39

```
 1        A.    Yes.

 2        Q.    Did you write this letter?

 3        A.    I wrote the letter that's in the, in the

 4   printed text.

 5        Q.    Without the handwritten interlineations;

 6   is that correct?

 7        A.    No handwritten lineations, I believe you

 8   said, was my signature on the bottom.

 9        Q.    What was your purpose in writing this

10   letter?

11        A.    David had provided us quite a bit of

12   information within what I think was about a half an

13   hour time period.  And the only sole purpose of that

14   was to make sure that we understood his

15   communication to us correctly.

16        Q.    Do you believe that this letter accurately

17   summarized his communication to you in that call?

18        A.    Based on all the changes he made to it I

19   assume that I did not make all the right

20   understandings as I thought I had.

21        Q.    Okay.  Take a look at the page 391 which

22   is the second version of this.  Do you know whose

23   handwriting is opposite your signature on the

24   right-hand side of the bottom of the page?

25        A.    I have to understand that is Dave
```

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

In Re:  INACOM CORP, et al.          Chapter 11
    Debtors                          Bankruptcy Case No.
                                     00-2426 (PJW)
_____

INACOM CORP., et al.
        Plaintiffs
    v.
TECH DATA CORPORATION                Civil Action No.
        Defendant                    04-CV-148 (GMS)
_____

INACOM CORP., et al.
        Plaintiffs
    v.
DELL COMPUTER CORP.                  Civil Action No.
        Defendant                    04-CV-582 (GMS)
_____

INACOM CORP., et al.
        Plaintiffs
    v.
LEXMARK INTERNATIONAL, INC.          Civil Action No.
        Defendant                    04-CV-583 (GMS)
_____

INACOM CORP., et al.
        Plaintiffs
    v.
RESILIEN, INC.                       Civil Action No.
        Defendant                    04-CV-584 (GMS)
_____

INACOM CORP., et al.
        Plaintiffs
    v.                               Civil Action No.
INGRAM ENTERTAINMENT INC.            04-CV-593 (GMS)
        Defendant


**********************************************************

ORAL DEPOSITION OF

BEN K. WELLS

MARCH 30, 2005

**********************************************************

ORAL DEPOSITION OF BEN K. WELLS, produced as a witness at the instance of the Defendants, and duly sworn, was taken in the above-styled and numbered cause on the 30th day of March, 2005, from 12:35 p.m. to 2:59 p.m., before Debbie Leonard, CSR, RMR, CRR, a Certified Shorthand Reporter in and for the State of Texas, reported by machine shorthand, at the offices of Hewlett-Packard, 20555 State Highway 249, Building CC-A6, Conference Room 6801, Houston, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

```
 1              A P P E A R A N C E S

 2   FOR THE PLAINTIFF:
          Mr. Andrew W. Caine
 3        (via telephone)
          PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB
 4        10100 Santa Monica Boulevard
          11th Floor
 5        Los Angeles, California 90067
          FAX:  (310) 201-0760
 6        PHONE:  (310) 277-6910

 7   FOR THE DEFENDANT, TECH DATA CORPORATION:
          Mr. Stephen C. Hunt
 8        ADORNO & YOSS
          350 East Las Olas Boulevard
 9        Suite 1700
          Fort Lauderdale, Florida 33301
10        FAX:  (954) 766-7800
          PHONE:  (954) 763-1200
11
     FOR THE DEFENDANT, DELL COMPUTER CORP.:
12        Mr. G. James Landon
          HUGHES LUCE, LLP
13        111 Congress Avenue
          Suite 900
14        Austin, Texas 78701
          FAX:  (512) 482-6859
15        PHONE:  (512) 482-6880

16   FOR THE DEFENDANT, LEXMARK INTERNATIONAL, INC.:
          Mr. Culver V. Halliday
17        STOLL, KEENON & PARK, LLP
          2650 Aegon Center
18        400 West Market Street
          Louisville, Kentucky 40202-3377
19        FAX:  (502) 568-5700
          PHONE:  (502) 568-9100
20
     FOR THE DEFENDANT, INGRAM ENTERTAINMENT:
21        Mr. Jonathan P. Hersey
          (via telephone)
22        BINGHAM McCUTCHEN, LLP
          600 Anton Boulevard
23        18th Floor
          Costa Mesa, California 92626
24        FAX:  (714) 830-0719
          PHONE:  (714) 830-0619
25
```

```
 1              A P P E A R A N C E S
                   (Continued)
 2

    FOR EXECUTIVE SOUNDING BOARD, INC., LIQUIDATING AGENTS
 3  OF DEBTOR, INACOM CORP.:

 4      Mr. Earl M. Forte
        BLANK ROME, LLP
 5      One Logan Square
        18th & Cherry Streets
 6      Philadelphia, Pennsylvania 19103
        FAX:  (215) 832-5618
 7      PHONE:  (215) 569-5618

 8  FOR THE WITNESS AND THIRD-PARTY DEFENDANT, COMPAQ
    COMPUTER CORPORATION:
 9
        Ms. Cecily A. Dumas
10      FRIEDMAN, DUMAS & SPRINGWATER, LLP
        One Maritime Plaza
11      Suite 2475
        San Francisco, California 94111
12      FAX:  (415) 834-1044
        PHONE:  (415) 834-3800
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          I N D E X

 2                                                      PAGE

 3  Appearances...................................     2

 4
    BEN K. WELLS
 5

 6       Examination by Mr. Hunt...................     7

 7       Examination by Mr. Landon................    58

 8       Examination by Mr. Hersey................    71

 9       Examination by Mr. Caine.................    77

10       Further Examination by Mr. Hunt..........    76

11

12
    Changes and Signature........................    79
13
    Reporter's Certificate.......................    81
14

15

16

17

18

19

20

21

22

23

24

25
```

6

|  | E X H I B I T S | |
|---|---|---|
| NUMBER | DESCRIPTION | PAGE |
| Wells-1 | Defendant's First notice of Deposition of Ben Wells | 18 |
| Wells-2 | notice of Rule 30(b)(6) Deposition | 31 |
| Wells-3 | Forwarding E-mail From: Ward, Michael Sent: February 03, 2000 To: Zava Mike et al. | 47 |
| Wells-4 | Fax Transmittal To: Mr. Mike Zafa From: Bill Francis Dated: 02/16/00 | 51 |
| Wells-5 | Letter to Ms. Misty Atchinson from Bill Francis, dated February 16, 2000 | 51 |
| Wells-6 | Letter to Logicare, Inc. from Bill Francis, dated February 17, 2000 | 51 |
| Wells-7 | Letter to The Board of Directors of Inacom Corporation and Compaq Computer Corporation from Houlihan Lokey Howard & Zukin, dated February 16, 2000 | 55 |
| Wells-8 | Services, Supply and Sales Agreement | 59 |
| Wells-9 | Document titled: 8K Mar 00 Bates stamped 00134 -00204 | 64 |
| Wells-10 | Letter to Inacom Corp from Ben K. Wells, dated February 15, 2000 | 67 |

**Apx. 127**

```
 1  treasurer?

 2      A.   I was the assistant treasurer.

 3      Q.   At the time of the sale of the hardware

 4  assets by Inacom to Compaq, what was your position with

 5  Compaq?

 6      A.   I was acting chief financial officer and vice

 7  president, corporate treasurer.

 8      Q.   Whom did you succeed as CFO, even in the

 9  acting capacity?

10      A.   Earl Mason.

11      Q.   And at what time did you commence serving as

12  acting CFO?

13      A.   Beginning of April 1999.

14              MR. HALLIDAY:  I'm sorry.  Did you

15  say '89?

16              THE WITNESS:  '99.

17              MR. HALLIDAY:  Thank you.

18      Q.   (By Mr. Hunt)  Sir, I presume at some point

19  you ceased acting as acting CFO.  When would that have

20  been?

21      A.   April of 2000.

22      Q.   Was the position as acting CFO in addition to

23  your other responsibilities as corporate treasurer?

24      A.   Yes.

25      Q.   And as of April of 2000, did you resume your
```

12:41 — line 5
12:42 — line 10
12:42 — line 15
12:42 — line 20
12:43 — line 25

```
 1      Q.    Was that in relation to the Inacom asset

 2   purchase?

 3      A.    Yes.

 4      Q.    Is the letter that you're testifying that you

 5   saw before one that was actually addressed to a party

 6   or one that was just a blank form letter?

 7      A.    No.  I believe it was probably addressed to a

 8   party.

 9      Q.    Can you recall which party it would have

10   been, sir?

11      A.    I'm sorry.  I can't.

12      Q.    Okay.  At your level of the negotiation of

13   the asset purchase, were you aware that this type of

14   letter was being sent to certain vendors?

15      A.    Yes.

16      Q.    Had that been authorized by yourself?

17      A.    Yes.

18      Q.    I would like to show you what's been marked

19   as Exhibit 5, sir.

20      A.    The same letter to Lexmark?

21      Q.    Yes, sir.

22      A.    Okay.

23      Q.    And before you lose your glasses, Exhibit 6.

24      A.    Okay.  Same letter to Logicare, I believe.

25   Yes.  Same letter.
```

14:07 5
14:07 10
14:07 15
14:08 20
14:08 25

Q.   Sir, do you recall from whence the idea came
to issue these letters to certain vendors?

A.   No, I don't.  No.

Q.   Are you able to recall the extent to which
this type of letter was to be sent to Inacom's
pre-transaction vendors?  And by that I mean, was this
to be a widely distributed type of letter or one more
narrowly focused?

A.   My understanding was, is it was only supposed
to go to those entities in which were going to provide
componentry to the assets that were purchased by Compaq
that were focused on Compaq product going through the
door on the other end.

The -- broadly speaking, the concern here
was that there was some confusion.  My recollection is
a little vague, but my recollection of the announcement
is, is that Compaq Computer Corporation had bought --
and we used the phrase "specific" in one release --
assets.

There were some suppliers that wondered
if there was going to be a configuration and where
their business was going.  And to clarify that
uncertainty such that the Compaq business -- we were
really focusing on customer satisfaction.  Out of the
field -- and this came out of the field, that it was

1   prudent for us to focus on that grouping inasmuch as it

2   affected Compaq equipment.

3        Q.   Thank you, sir.

4        A.   Going through the configuration center.

14:10   5        Q.   I can represent that other witnesses have

6   indicated there was a transition team or multiple

7   transition teams for bringing Custom Edge within the

8   Compaq fold, so to speak.

9              My question to you is, were there

14:11   10  transition teams set up on the Compaq, Inacom, and

11  Custom Edge sides to fold the purchased assets into

12  Compaq?

13       A.   I believe there was, yes.

14       Q.   Do you know if Mr. Francis was one of the

14:11   15  members of the Compaq transition team?

16       A.   As I stated before, I believe his involvement

17  would have been covering the accounts payable, although

18  I am not sure how far into the transition team he went.

19  He was really acting more in the context of a Compaq

14:11   20  Computer Corporation person with a very narrow --

21       Q.   Mr. Francis -- to your mind, did Mr. Francis

22  send out the letters that are marked as Exhibit 4 and 5

23  on his own, or did he obtain approval from someone else

24  before he sent them?

14:12   25       A.   No, I -- I'm absolutely positive he didn't.

1  I actually authorized, I believe -- let's see.  Let

2  me -- Mr. Baker to authorize -- and I'm sure Mr. Baker

3  went to his direct report, who then went to Mr. Francis

4  and said it's okay to do this.

14:12  5      Q.   Would you have seen the form of this letter

6  before it was sent out, sir?

7      A.   I'm sure I would have, but I don't recall.

8      Q.   In looking at Exhibit 4, for example, sir,

9  would you please tell me --

14:13  10      A.   Okay.  This one is the one to Tech Data.

11      Q.   Yes, sir.

12      A.   Okay.

13      Q.   What did that letter mean to you, or what did

14  you mean by that letter being sent out?

14:13  15      A.   Well, the context in which it was supposed to

16  have meant is, again, as I stated earlier, that if they

17  were supplying componentry to the configuration

18  centers, then Compaq -- that was being used in the

19  configuration of Compaq computers, then we would assume

14:14  20  that liability and pay them.

21           MR. HUNT:  Madam Reporter, would you

22  mark that as Exhibit 7, please?  It's the same exhibit

23  from the Frasca deposition, Frasca-7.  It's the

24  Houlihan Lokey solvency opinion.

14:14  25           (Exhibit Wells-7 marked for

1    A.    I do not.

2    Q.    Do you know whether they would have been sent

3 to any vendor whose parts would have been used in the

4 configuration of a Compaq product?

5            MR. FORTE:  Objection to form.  Earl

6 Forte.

7            MS. DUMAS:  Same objection.

8            THE WITNESS:  I can't recall.

9    Q.    (By Mr. Hersey)  You testified earlier that

10 you authorized the sending of this letter; is that

11 correct?

12    A.    Yes.

13    Q.    And by, "this letter," I mean the letter in

14 the form of Exhibits 4, 5, and 6.

15    A.    That's correct.

16    Q.    Who at Compaq made the decision as to which

17 vendors would be receiving that letter?

18    A.    I wouldn't know.

19    Q.    Would it have been someone -- if you'll

20 excuse my colloquialism -- lower in the food chain than

21 you?

22            MR. FORTE:  Objection to form.  Earl

23 Forte.

24            MS. DUMAS:  Don't speculate.

25            THE WITNESS:  I don't know.

1     Q.   (By Mr. Hersey)  So your testimony is that

2  you approved the form of the letter, but you don't know

3  who the letters were sent to?

4     A.   Correct.

14:56  5     Q.  And the reason for the letter was to ensure

6  the continued flow of products from these vendors that

7  would be necessary to configure Compaq products at

8  Custom Edge?

9     A.   That's correct.

14:57  10      MR. HERSEY:  Okay, Mr. Wells.  Those are

11  all the questions I have.  I appreciate your time.

12       THE WITNESS:  Okay.  Thank you.

13            **FURTHER EXAMINATION**

14  **BY MR. HUNT:**

14:57  15     Q.  One follow-up question, Mr. Wells.  With

16  respect to the letters that are Exhibits 4, 5, and 6,

17  on the financial side for Compaq, did the buck stop

18  with you as to whether those letters would get sent out

19  or not?

14:57  20     A.  Yes.  Ultimately, delegation of authority for

21  this type of thing -- well, there were -- I believe

22  delegation authority were two people, and I were one.

23  And so it couldn't have gone out unless either I or the

24  other authorized by the delegation authority had said

14:57  25  okay.

1     Q.   I apologize.  That answer invites a further

2  question.  Who was the other party?

3     A.   Michael Capellas.

4          MR. HUNT:  Thank you, Mr. Wells.  No

14:58  5  further questions.

6          MS. DUMAS:  Andy or Earl?

7          MR. FORTE:  This is Earl Forte.  I have

8  no questions for the witness.

9          MR. CAINE:  This is Andy Caine.  I have

14:58  10  a couple.

11                      **EXAMINATION**

12  **BY MR. CAINE:**

13     Q.   Mr. Wells, I represent Inacom.  Is it your

14  understanding that the Asset Purchase Agreement

14:58  15  included schedules that identified certain invoices

16  that would be assumed by Compaq?

17          MR. HUNT:  Objection.  Misstates the

18  prior testimony.

19          MS. DUMAS:  Same objection.

14:58  20          THE WITNESS:  I'm not sure I understood

21  the question, so --

22     Q.   (By Mr. Caine)  Is it your understanding that

23  there were schedules in connection with the Asset

24  Purchase Agreement that identified the specific

14:59  25  invoices to be assumed by Compaq?

**Apx. 135**