LEXSEE 130 SO.2D 132

Robin I. BRYANT and C. A. Lounsbury, Appellants, v. FOOD MACHINERY AND CHEMICAL CORPORATION NIAGARA CHEMICAL DIVISION, a Delaware corporation, licensed to do business in Florida, Appellee.

No. 60-183.

District Court of Appeal of Florida, Third District.

130 So. 2d 132; 1961 Fla. App. LEXIS 2748

May 15, 1961; Rehearing Denied June 5, 1961.

**COUNSEL:** [**1]

Hendricks & Hendricks, Miami, for appellants.

Joseph G. Weiss, Miami, for appellee.

**OPINION:**

[*133] PER CURIAM.

The appellee, plaintiff below, sought to recover on an agreement guaranteeing payment of merchandise sold to B & L Farms. The complaint alleged reliance upon the guarantee, remand for payment and refusal by B & L Farms to pay

The appellants answered, admitted the debt, demand for payment and refusal by B & L Farms, and further admitted the execution of the guarantees. However, the appellants alleged that they had entered into the agreements to guarantee through an agent of appellee with the understanding and intention that said agreements would not bind them beyond the farming season of 1953-54. The debt presently sued upon is for the farming seasons subsequent to 1953-54. The agreements in question provided:

"I or we do hereby agree to guarantee and by these presents do guarantee the due payment at respective maturity dates of any and all bills of goods purchased from said Food Machinery and Chemical Corporation through its Niagara Chemical Division by B and L Farms Company (Purchaser).

"It is understood that *this guarantee is to cover payment for merchandise* [**2] *sold to said B and L Farms Company during a period beginning with the date hereof and extending to the date when written notice of the cancellation hereof shall have been received by Food Machinery and Chemical Corporation at the office of its Niagara Chemical Division at Middleport, New York, by registered mail * * *"* [Emphasis supplied.]

The trial court refused to allow testimony of the appellant Bryant concerning a discussion with the appellee's local dealer, and the testimony of the president and general manager of the local dealer, which testimony was intended to show the limitation of the guarantees to the crop year 1953-54.

[*134] The record reveals that the appellants received a request from the appellee before the commencement of the 1957-58 farming season to execute new guarantee agreements and to supply appellee with current financial statements of appellants. The present

debt arose from the credit extended for the 1957-58 season. This credit was extended although the new guarantees were not executed.

Appellants urge a reversal upon two principal grounds, i.e., first, that the trial court erred in rejecting evidence tending to show a conditional delivery [**3] of the guarantees; and second, that the trial court erred in holding, as a matter of law, that the appellants were liable under the guarantees where the appellee had requested execution of new guarantees but without advising the appellants that it (appellee) would rely upon the old guarantees for credit to be extended.

The first question is one of parol evidence. The rule in construing a guaranty as in construing other contracts appears to be that parol evidence is not admissible to enlarge or limit the terms of the instrument, but evidence of the surrounding circumstances is competent in order to arrive at the intentions of the parties, as declared by the words employed, which are to be construed in the light of such circumstances. *Nelsonville Electric & Mfg. Co. v. Marshall*, Ohio App.1957, 146 N.E.2d 643. See Simpson, Suretyship, Hornbook Series, § 21. Courts cannot make contracts for the parties, and where agreements are unambiguous, they must be enforced in accordance with their terms. *Valley Nat. Bank of Phoenix v. Shumway*, 63 Ariz. 490, 163 P.2d 676. See *Industrial Bank & Trust Co. v. Hesselberg*, Mo.1946, 195 S.W.2d 470.

A continuing guaranty covers all transactions, [**4] including those arising in the future, which are within the description or contemplation of the agreement. If a guaranty is not ambiguous and is clearly a continuing one, it will, of course, be construed and treated accordingly. 38 C.J.S. Guaranty § 54(a) and (b). See also 24 Am.Jur., Guaranty, §§ 18, 19.

This rule of construction appears to be the rule in Florida. In *Friedman v. Virginia Metal Products Corp.*, Fla.1952, 56 So.2d 515, 516, 33 A.L.R.2d 956, the Supreme Court, in a guaranty case, said:

"The trial judge was correct in excluding parol testimony to vary or change the terms of a written instrument if the terms of that instrument were clear and unambiguous."

Courts have universally held that a contract of guarantee which provides that it is to run until further notice remains in force until revoked by the guarantor. Annotation *81 A.L.R. 790*; and see *McGhee v. Wynnewood State Bank*, Tex.Civ.App.1956, 297 S.W.2d 876.

The appellants' remaining argument is directed to the appellee's failure to give notice of its intention to rely upon the original guarantee.

In the absence of evidence to show that the new contract of guaranty was designed to destroy one outstanding, [**5] it is not deemed to have been in renewal thereof, or a substitute therefor, and is regarded as an independent and distinct agreement. *First Nat. Bank of Waterloo v. Story*, 200 N.Y. 346, 93 N.E. 940, 34 L.R.A.,N.S., 154; *Lumiansky v. Tessier*, 213 Mass. 182, 99 N.E. 1051. See *Headley v. Post*, 120 Kan. 504, 243 P. 1042; *Weil v. Free State Oil Co. of Maryland*, 200 Md. 62, 87 A.2d 826; *Bridgeport State Bank v. Union Warehouse & Mill. Co.*, 137 Wash. 190, 242 P. 13. The fact that a creditor desires a more specific assurance is not necessarily controlling. *American Woolen Co. of New York v. Moskowitz*, 159 App.Div., 382, 383, 144 N.Y.S. 532.

Concerning the question of notice, the authorities are fairly uniform that [*135] notice to the guarantor of the transaction as between princi-

130 So. 2d 132, *; 1961 Fla. App. LEXIS 2748, **

pal-debtor and guarantee is purely one of special contract; and that in the absence of a specific provision so requiring, no obligation rests upon the guarantee to advise or notify the guarantor. *Hassell-Hughes Lumber Co. v. Jackson, 1949, 33 Tenn.App. 477, 232 S.W.2d 325;* see *Eastern Shore Brokerage & Commission Co. v. Harrison, 141 Md. 91, 118 A. 192; Weil v. Free State Oil Co. of Maryland, supra.*

In [**6] view of the opinions expressed, it follows that the judgment appealed should be and is hereby affirmed.

Affirmed.

HORTON, C.J., and PEARSON and CARROLL, CHAS., JJ., concur.

LEXSEE 27 SW.3D 775

ADAM DEGENER, APPELLANT v. HALL CONTRACTING CORPORATION, APPELLEE AND MAURICIO SALAZAR, M.D., APPELLANT v. KORP II LIMITED PARTNERSHIP D/B/A DUPONT SURGERY CENTER, APPELLEE

1998-SC-0353-DG, 1998-SC-0506-DG

SUPREME COURT OF KENTUCKY

*27 S.W.3d 775; 2000 Ky. LEXIS 63*

**May 18, 2000, Rendered**

**SUBSEQUENT HISTORY:** [**1] Petition for Rehearing Denied October 26, 2000. Released for Publication October 26, 2000.

**PRIOR HISTORY:**

ON REVIEW FROM COURT OF APPEALS. 96-CA-2347. JEFFERSON CIRCUIT COURT NO. 92-CI-4296.

ON REVIEW FROM COURT OF APPEALS. 97-CA-585. JEFFERSON CIRCUIT COURT NO. 94-CI-4887.

**DISPOSITION:**

Lambert, C.J., Graves, Stumbo and Wintersheimer, JJ., concur. Keller, J., dissents by separate opinion, with Johnstone, J., joining that dissent.

**COUNSEL:** COUNSEL FOR APPELLANT ADAM DEGENER (1998-SC-0353-DG): Lawrence Irwin Young, Louisville, KY.

COUNSEL FOR APPELLEE HALL CONTRACTING CORPORATION (1998-SC-0353-DG): John W. Phillips, Boehl, Stopher & Graves, Louisville, KY; William P. Swain, Phillips, Parker, Orberson & Moore, P.L.C., Louisville, KY.

COUNSEL FOR APPELLANT MAURICIO SALAZAR, M.D. (1998-SC-0506-DG): Alex Talbott, McMurry & Talbott, Louisville, KY.

COUNSEL FOR APPELLEE KORP II LIMITED PARTNERSHIP D/B/A DUPONT SURGERY CENTER (1998-SC-0506-DG): John O. Sheller, Smith & Smith, Louisville, KY.

**JUDGES:** OPINION OF THE COURT BY JUSTICE COOPER. Lambert, C.J.; Graves, Stumbo and Wintersheimer, JJ., concur. Keller, J., dissents by separate opinion, with Johnstone, J., joining that dissent. [**2]

**OPINIONBY:** COOPER

**OPINION:** [*776]

OPINION OF THE COURT BY JUSTICE COOPER

AFFIRMING

We granted discretionary review in each of the captioned cases primarily to address whether claims for common law indemnity have survived the advent of comparative negligence and apportioned liability under *Orr v. Coleman,* Ky., 455 S.W.2d 59 (1970), *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984), *Dix & Assocs. Pipeline Contractors. Inc.* [*777] *v. Key,* Ky., 799 S.W.2d 24 (1990), and *KRS 411.182*. Since the issue is common to both cases, we will address it in a single opinion. We

27 S.W.3d 775, *; 2000 Ky. LEXIS 63, **

will also address whether the indemnity claim asserted in Degener v. Hall Contracting Corp. is barred by limitations and whether the indemnity claim asserted in Salazar v. Korp II Ltd. Partnership. etc., is barred because the original complaint asserted only a cause of action under Kentucky's Civil Rights Act, which creates a right of action only against employers and not against non-employer perpetrators such as Salazar.

I. DEGENER v. HALL CONTRACTING CORP.

Adam Degener and Eagle Tye allegedly constructed a homemade bomb using dynamite stolen from Hall Contracting Corporation. On November 17, 1991, three [**3] police officers, Dawn Smith, Michael Johnson and Deborah Marasa, were injured when the bomb exploded while they were attempting to disarm it. On July 2, 1992, the officers filed suit against Hall Contracting in the Jefferson Circuit Court, alleging that Hall had "negligently, carelessly and recklessly stored dynamite in a container which failed to meet industry standards in that the container storing said dynamite was not theft proof." On February 25, 1994, Hall was granted a summary judgment premised upon the so-called "firefighter's rule." *Sallee v. GTE South, Inc.*, Ky., 839 S.W.2d 277 (1992); *Hawkins v. Sunmark Indus., Inc.*, Ky., 727 S.W.2d 397 (1986). The Court of Appeals reversed and remanded in an unpublished opinion which became final on December 14, 1995. On March 20, 1996, Hall Contracting filed a third-party complaint against Degener and Tye for indemnity for any amounts which it might be required to pay to the three injured officers. Tye was never served with process. Degener's subsequent motion to dismiss the third-party complaint was granted on the bases that: (1) the claim for indemnity was barred by the one-year statute of limitations [**4] applicable to personal injury actions, *KRS* 413.140(1)(a); and (2) the advent of comparative negligence and apportionment of fault has eliminated claims for common law indemnity except in a case of vicarious liability or where one party has contracted to be liable for the torts of another, citing *Kevin Tucker & Assocs., Inc. v. Scott & Ritter, Inc.*, Ky. App., 842 S.W.2d 873 (1992). The Court of Appeals reversed as to both issues and remanded for a decision on the merits of Hall's indemnity claim. Hall has settled the claims filed against it by the three officers, so the only remaining issue is its indemnity claim against Degener.

II. SALAZAR v. KORP II LIMITED PARTNERSHIP, ETC.

Korp II Limited Partnership owns and operates an outpatient surgery clinic in Louisville, Kentucky. Appellant Mauricio Salazar is a licensed physician with staff privileges to perform surgeries at the clinic. Jill E. Townsend was employed by Korp II as a scrub technician and was assigned to assist Salazar in the performance of his surgeries. Townsend filed suit against Korp II in the Jefferson Circuit Court alleging a violation of the Kentucky Civil Rights Act and seeking damages for "hostile [**5] work environment" harassment alleged to have been perpetrated against her by Salazar. n1 *KRS* 344.040(1); *KRS* 344.450; *Meyers v. Chapman Printing Co., Inc.*, supra. n.1, 840 S.W.2d 814 at 820-23. In her discovery deposition, Townsend described occasions when Salazar pulled her down on his lap, placed his hands on her breasts, placed his arm around her, touched her buttocks, rubbed his hand [*778] against her abdomen, and held her hand behind her back in such a fashion that she could not pull away from him.

n1 In her deposition, Townsend described sundry other alleged discriminatory acts perpetrated

against her by other staff physicians and employees of Korp II. However, she testified that her claim for compensation in this action was based solely on the actions of Salazar. She did not assert a claim of gender-based discharge. *Meyers v. Chapman Printing Co., Inc.,* Ky., 840 S.W.2d 814, 820, 823-24 (1992).

Korp II filed a third-party complaint for indemnity against Salazar. The trial judge dismissed [**6] the third-party complaint on grounds that KRS 344.450 creates a cause of action only against an employer and does not provide a civil remedy against an individual perpetrator who is not the plaintiffs employer. In a 2-1 decision, the Court of Appeals reversed and remanded, holding that while a claim for contribution has essentially been abolished by KRS 411.182, Korp II has a viable claim for common law indemnity against Salazar for any damages it might have to pay to Townsend. Like Hall Contracting, Korp II has settled the claim filed against it by Townsend, so the only remaining issue is Korp II's indemnity claim against Salazar.

While it is common practice for tort defendants to file third-party complaints seeking "indemnity and/or contribution," these two concepts represent separate and distinct remedies which have different historical origins and are applicable to completely different fact situations.

III.   CONTRIBUTION   AND APPORTIONMENT.

The right to contribution arises when two or more joint tortfeasors are guilty of concurrent negligence of substantially the same character which converges to cause the plaintiffs damages. In that scenario, the tortfeasors are said to be "in [**7] pari delicto." *Lexington Country Club v. Stevenson,* Ky., 390 S.W.2d 137, 143 (1965). The common law rule was that each joint tortfeasor was entirely responsible for the plaintiffs single indivisible injury "because it was thought that the injury could not be divided into parts to determine the responsibility of each negligent actor." *Dix & Assocs. Pipeline Contractors. Inc. v. Key, supra,* at 27. If the plaintiff sued all of the joint tortfeasors and each was found to be at fault and in pari delicto with the others, the plaintiff could recover the entire judgment against all or any one of them. 18 Am.Jur.2d Contribution § 40 (1985). If one defendant satisfied the entire judgment, he had no common law right to contribution from another jointly liable defendant. Id. Most jurisdictions, including Kentucky, have abrogated this unjust principle by statute. Kentucky has three statutes applicable to claims against or between joint tortfeasors, viz: KRS 454.040, KRS 412.030, and KRS 411.182.

KRS 454.040 provides:

> In actions of trespass the jury may assess joint or several damages against the defendants. When the jury finds several damages, [**8] the judgment shall be in favor of the plaintiff against each defendant for the several damages, without regard to the amount of damages claimed in the petition, and shall include a joint judgment for the costs.

This provision was first enacted in 1839. n2 In *Ferguson v. Terry,* 40 Ky. 96 (1840), the statute was held to "authorize[] several verdicts to be found, and several judgments to be entered against each of several joint trespassers in a joint action." Id. (emphasis in original). In *Central Passenger Ry. Co. v. Kuhn,* 86 Ky. 578,

6 S.W. 441 (1888), the statute was recognized as a modification of the common law and was held to apply to all types of trespasses, including negligence actions. "This statute affords a remedy against all joint trespassers, with the right on the part of the jury to punish the wrong-doer to the extent of his participation in the wrongful act, and, if one is the more guilty than the other, to punish him the more severely." *Id., 6 S.W.* at 447. However, the statute only affected the plaintiffs right of recovery and did not purport to create a right of contribution between or among [**9] the joint tortfeasors.

n2 1839 Ky. Acts ch. 1214 § 2.

[*779]

In 1926, the General Assembly enacted what is now *KRS 412.030*, n3 which permits contribution among wrongdoers "where the wrong is a mere act of negligence and involves no moral turpitude." The enactment of this statute permitted one who had satisfied a negligence claim to assert a claim for contribution in a separate action against a joint tortfeasor. *Consolidated Coach Corp. v. Burge, 245 Ky. 631, 54 S.W.2d 16 (1932)*. The subsequent adoption of the Kentucky Rules of Civil Procedure allowed the claim to be presented in the same action by way of either a cross-claim, CR 13.07, or a third-party complaint, CR 14.01. *Jackson & Church Div., York-Shipley, Inc. v. Miller, Ky., 414 S.W.2d 893 (1967); Elpers v. Kimbel, Ky., 366 S.W.2d 157, 161 (1963)*. The measure of contribution for a joint judgment was pro rata, or one-half of the amount of the judgment (or out-of-court settlement) in the case of two joint tortfeasors. [**10] *Consolidated Coach Corp. v. Burge, supra, 54 S.W.2d at 18-19*. Finally, a joint tortfeasor could not recover contribution from one against whom the person injured by the tort had no cause of action *Id., 54 S.W.2d at 17*.

N3 1926 Ky. Acts ch. 190 p. 877.

The first Kentucky case requiring apportionment of causation between or among joint tortfeasors was *Orr v. Coleman, supra*. There, the plaintiff settled with one joint tortfeasor for $ 19,000 and went to trial against the other. The jury returned a verdict for $ 22,000, but did not indicate whether the verdict represented the plaintiffs total damages against which the $ 19,000 would be credited pursuant to, e.g., *McCallum v. Harris, Ky., 379 S.W.2d 438, 442, 444 (1964)*, or whether it represented the non-settling tortfeasor's share of a $ 41,000 verdict pursuant to *KRS 454.040*. On appeal, it was held that the jury should have been instructed to determine the total amount of damages to be awarded [**11] to the plaintiff and to fix the percentages of causation attributable to each joint tortfeasor. Under this procedure, the plaintiff received the benefit of her bargain with the settling tortfeasor and the non-settling tortfeasor was liable for a portion of the total damages no greater (nor less) than that which correlated with the percentage of causation attributable to her negligence. The Court also noted that this procedure obviated any question of or necessity for a claim for contribution. *Orr v. Coleman, supra, at 61*.

When *Hilen v. Hays, supra*, held that a contributorily negligent plaintiff could recover that portion of his/her total damages which correlated with the percentage of causation attributable to the defendant(s), i.e., comparative negligence, the stage was set for the series of decisions which culminated in *Dix & Assocs. Pipeline*

Contractors. Inc. v. Key, supra. As summarized in Dix liability among joint tortfeasors in negligence cases is no longer joint and several, but is several only; and because the liability is several as to each joint tortfeasor, it is necessary to apportion a specific share of the total liability [**12] to each of them, whether joined in the original complaint or by third-party complaint, and the several liability of each joint tortfeasor with respect to the judgment is limited by the extent of his/her fault. *Id., 799 S.W.2d at 27-28*. With some additional adjustments, KRS 411.182 is simply a codification of this common law evolution of the procedure for determining the respective liabilities of joint tortfeasors. Although as first noted in *Orr v. Coleman, supra*, the apportionment of causation and the requirement of several liability obviates any claim for contribution among joint tortfeasors whose respective liabilities are determined in the original action, we do not address here the viability of a claim for contribution against other joint tortfeasors who were not parties to that action. See KRS 411.182(4) and *Copass v. Monroe County Medical Found., Inc., Ky. App., 900 S.W.2d 617 (1995)*.

[*780] IV. INDEMNITY.

Unlike the right to contribution, the right to indemnity is of common law origin and is available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari delicto.

> "The cases [**13] in which recovery over is permitted in favor of one who has been compelled to respond to the party injured are exceptions to the general rule, and are based upon principles of equity. Such exceptions obtain in two classes of cases: (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury."

*Louisville Ry. Co. v. Louisville Taxicab & Transfer Co., 256 Ky. 827, 77 S.W.2d 36, 39 (1934)* (quoting *Trustees of Village of Geneva v. Brush Elec. Co., 50 Hun 581, 3 N.Y.S. 595, 596 (N.Y. Sup. Ct. 1889)*). The primary Kentucky precedent on this issue remains *Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165 (1949)*, in which the hotel company, which had been held liable for injuries sustained by a pedestrian who was injured in an encounter with an [**14] unsecured manhole lid on the hotel's property, n4 was held entitled to indemnity against the fuel company, whose employee had left the lid unsecured after unloading a delivery of coal into the manhole. The entitlement to indemnity was held to have been unaffected by the enactment of the statute authorizing contribution between or among joint tortfeasors in pari delicto.

> An Act of 1926, now Kentucky Revised Statutes 412.030... made no change in the exception which allows the right of indemnity where the person seeking it and the person from whom it is sought are not in pari delicto, as where the party who was com-

pelled to pay the damages was less culpable than the other wrongdoer, although both were equally liable to the person injured. ... Where one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is, nevertheless, thereby exposed to liability to the person injured, or was only technically or constructively at fault, as from the failure to perform some legal duty of inspection and remedying the hazard, the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained. [**15]

Id., 224 S.W.2d at 166-67 (gathering cases); see also *Lexington Country Club v. Stevenson, supra,* at 143 ["a right to total indemnity may exist if the joint tort feasors (sic) are not in pari delicto and the party secondarily negligent asserts a claim against the one primarily negligent" (emphasis in original)]; *Restatement (First) of Restitution* § 97. As with a claim for contribution, a claim for indemnity need not await payment of the liability on which indemnity is sought but may be asserted in the original tort action. *Robert F. Simmons Constr. Co., Inc. v. American States Ins. Co.,* Ky., 426 S.W.2d 441, 443-44 (1968).

n4 *Brown Hotel Co. v. Sizemore,* 303 Ky. 431, 197 S.W.2d 911 (1946).

To summarize, apportionment of liability arose from statutory provisions permitting contribution and several liability among joint tortfeasors in pari delicto. It has no application to the common law right of a constructively or secondarily [**16] liable party to total indemnity from the primarily liable party with whom he/she is not in pari delicto. Appellants' reliance on *Dix & Assocs. Pipeline Contractors, Inc. v. Key, supra, Prudential Life Ins. Co. v. Moody,* Ky., 696 S.W.2d 503 (1985), *Roman Catholic Diocese of Covington v. Secter,* Ky. [*781] App., 966 S.W.2d 286 (1998), *Continental Marine, Inc. v. Bayliner Marine Corp.,* Ky. App., 929 S.W.2d 206 (1996), and *Kevin Tucker & Assocs., Inc. v. Scott & Ritter, Inc., supra,* for the proposition that the advent of apportioned liability has eliminated the common law right to indemnity is misplaced. Although there are references in some of those opinions to claims for "contribution and/or indemnity," none of those cases involved claims for indemnity. More importantly, none of those cases specifically hold that the advent of apportioned liability between joint tortfeasors in pari delicto has eliminated the common law right to indemnity vested in one who is only constructively or secondarily liable to a plaintiff. Any language in Continental Marine, Inc. v. Bayliner Marine Corp. or Kevin Tucker & Assocs. [**17], Inc. v. Scott & Ritter, Inc., both supra, which might imply such a holding is expressly disapproved.

V. RIGHT TO INDEMNITY IN THESE CASES.

The facts of the cases sub judice fall squarely within the parameters of the common law right to indemnity. If the allegations in Degener v. Hall Contracting Corp. are true, Degener and Tye were the active wrongdoers and Hall Contracting's liability is premised solely upon its failure to prevent them from making the bomb which injured the three officers. If the allegations in Salazar v. Korp II Ltd. Partnership, etc. are true, Salazar was the active wrongdoer and Korp II's

liability is premised solely upon its failure to prevent him from sexually assaulting and harassing Townsend. Both cases are factually similar to *Crime Fighters Patrol v. Hiles*, Ky., 740 S.W.2d 936 (1987) in which a customer of a fast food restaurant sued the restaurant for damages sustained when he was assaulted by another customer. The restaurant filed third-party complaints for indemnity against both its security service provider and the perpetrator of the assault; and the security service filed a cross-claim for indemnity against the assailant. [**18] The gravamen of the claim against the restaurant was that it knew of the assailant's violent nature and was negligent in failing to prevent the assault. We held that even if the restaurant and the security service were liable for the customer's damages, they were not in pari delicto with the perpetrator of the assault, thus were entitled to complete indemnity against him. n5 Likewise, even if Hall Contracting is liable for damages incurred by the three injured police officers, Hall was not in pari delicto with Degener and Tye, thus would be entitled to complete indemnity against them; and even if Korp II is liable for damages incurred by Townsend, Korp II was not in pari delicto with Salazar, thus would be entitled to complete indemnity against him.

n5 In fact, the customer had settled with his assailant and had executed a release containing a "hold harmless" clause in the assailant's favor. Since the restaurant and the security service were entitled to indemnity against the assailant for any amounts they were required to pay to the customer, and the assailant was entitled to indemnity from the customer for any amounts he was required to pay to the restaurant and/or the security service, the upshot was that the customer was contractually precluded from pursuing his claim against the restaurant and the security service.

[**19]

VI. LIMITATIONS.

Hall Contracting's third-party complaint for indemnity was filed fifty-two months after the explosion which injured the three police officers and forty-four months after the filing of the original complaint. Degener asserts and the trial court held that the one-year period of limitations set forth in *KRS 413.140(1)(a)* for "an action for an injury to the person of the plaintiff' bars Hall's third-party complaint for indemnity. However, a claim for indemnity is not a claim in which the claimant seeks damages for his/her own personal injuries, but is one in which the claimant seeks restitution for damages he/she was required to pay for injuries sustained by another and which were entirely [*782] or primarily caused by the party against whom indemnity is sought. *Crime Fighters Patrol v. Hiles*, 740 S.W.2d at 939-40. The five-year period of limitations set forth in *KRS 413.120(7)* for "an action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated" is the applicable period within which to commence an action for common law indemnity. *City of Louisville v. O'Donaghue*, 157 Ky. 243, 162 S.W. 1110 (1914). [**20] Thus, Hall Contracting's claim for indemnity against Degener and Tye is not barred by limitations.

VII. INDEMNITY IN CIVIL RIGHTS ACTIONS.

It is of no consequence that *KRS 344.040* and *KRS 344.450* create a right of action only against employers and, thus, that Townsend could not have brought a civil rights action against Salazar personally. The holding in *Consolidated Coach Corp. v. Burge*, 54

S.W.2d at 17 that a joint tortfeasor cannot enforce contribution against one who could not have been sued by the injured person applies only to a claim for contribution, which arises only when joint tortfeasors are in pari delicto with respect to the plaintiffs injuries. It has no application to a claim for common law indemnity, which arises only when the tortfeasors are not in pari delicto and when one party has been exposed to liability because of the wrongful act of another. See, e.g., *Kentucky Utils. Co. v. Jackson County Rural Elec. Coop. Corp.*, Ky., 438 S.W.2d 788 (1968) and *Union Carbide Corp. v. Sweco. Inc.*, Ky. App., 610 S.W.2d 932 (1980), in both of which the party sued by the injured plaintiff was permitted to assert a claim for indemnity [**21] against the plaintiffs employer, even though the employer could not have been sued by the plaintiff because of the exclusive remedy provision of the Workers' Compensation Act, KRS 342.690(1).

As noted by the trial judge, a different result obtains in actions brought in federal court under Title VII of the Civil Rights Act of 1964. However, that is not because Title VII creates a different type of cause of action than does KRS Chapter 344. *KRS 344.020; Mountain Clay. Inc. v. Commonwealth. Comm'n on Human Rights*, Ky. App., 830 S.W.2d 395, 396 (1992). Rather, the different result obtains because there is no common law right to either indemnity or contribution under federal law, and the federal courts have held that those state law remedies cannot be applied to causes of action created by federal statutes. *Northwest Airlines. Inc. v. Transport Workers Union of America*, 451 U.S. 77, 101 S. Ct. 1571, 67 L. Ed. 2d 750 (1981); *Anderson v. Local Union No. 3, International Bhd. of Elec. Workers*, 751 F.2d 546 (2d. Cir. 1984); *Gilmore v. List & Clark Constr. Co.*, 866 F. Supp. 1310 (D. Kan. 1994); compare *Biggs v. Surrey Broad, Co.*, 811 P.2d 111 (Okla. Ct. App. 1991) [**22] (an employer was entitled to indemnity under state law against its employee for amounts paid in settlement of a civil rights claim for sexual harassment and discrimination perpetrated by the employee).

VIII. CONCLUSION.

Accordingly, the opinions of the Court of Appeals rendered in the captioned cases are affirmed, and each case is remanded to its respective trial court for resolution of the merits of the Appellees' claims for indemnity.

Lambert, C.J.; Graves, Stumbo and Wintersheimer, JJ., concur.

Keller, J., dissents by separate opinion, with Johnstone, J., joining that dissent.

**DISSENTBY:** KELLER

**DISSENT:**

DISSENTING OPINION BY JUSTICE KELLER

Today's majority opinion effectively overrules *Hilen v. Hayes* and its progeny and repeals Kentucky's comparative fault statute, *KRS 411.182*. I dissent because I believe that the General Assembly deliberately abrogated the common law doctrine of equitable implied indemnity between [*783] joint tortfeasors when it adopted *KRS 411.182*. Accordingly, I believe the trial court in each of these cases properly dismissed the third party complaint. In addition, I believe the trial judge in *Salazar v. Korp II Ltd. Partnership*, etc., properly held that Korp II [**23] could not maintain an indemnity action against Salazar because an individual perpetrator of sexual harassment who is not the plaintiffs employer has not breached any duty created by *KRS 344.450*.

INDEMNITY AND COMPARATIVE FAULT

The general rule at common law provided "that a joint tortfeasor who is compelled to pay damages for the negligent or tortious act of another is not entitled to indemnity from the latter," n1 but an exception to this general rule allowed a tortfeasor whose responsibility for a plaintiffs damages was less than that of a joint tortfeasor (or, in the parlance of the common law, who was not *"in pari delicto--equal fault"* with the joint tortfeasor) to obtain complete indemnity from the other party. In Brown Hotel Co. v. Pittsburgh Fuel Co., n2 the predecessor to this Court recognized that *KRS 412.030*, which authorized contribution among joint tortfeasors in pari delicto, n3 "abrogated the so called general rule but made no change in the exception which allows a right to indemnity where the person seeking it and the person from whom it is sought are not in pari delicto." n4 The remaining right to indemnity, known generally after the opinion as "Brown Hotel [**24] indemnity" existed:

> Where one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is, nevertheless, thereby exposed to liability to the person injured, or was only technically or constructively at fault, as from the failure to perform some legal duty of inspection and remedying the hazard, the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained. n5

This exception "allows the right of indemnity where the person seeking it and the person from whom it is sought are not in pari delicto, as where the party who was compelled to pay the damages was less culpable than the other wrongdoer, although both were equally liable to the person injured." n6 Indemnity among joint tortfeasors did not derive from a statute, "but stands entirely on principles of equity," n7 and is "based upon or spring[s] from the idea of equalization of burden." n8

N1 *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 311 Ky. 396, 224 S.W.2d 165, 166 (1949).

n2 Id.

n3 Id.

[**25]

n4 Brown Hotel, supra note 1 at 166-67.

n5 *224 S.W.2d at 167*.

n6 Id., at 166.

n7 Id., at 168.

n8 Brown Hotel Co., supra note 1 at 168.

In Hilen v. Hays, n9 this Court again departed from the common law of this state by discarding contributory negligence in favor of comparative negligence and justified the departure by stating:

> In broad outline, stare decisis directs us to "stand by" our previous decisions unless there are sound legal reasons to the contrary. Every case must be decided with a respect for precedent. But the doctrine of stare decisis does not com-

mit us to the sanctification of ancient fallacy. In *Goetzman v. Wichern*, 327 N.W.2d 742 (Iowa 1983), the Supreme Court of Iowa observed:

> 'Stare decisis does not preclude the change. That principle does not require blind imitation of the past or adherence to a rule ... We must reform common law doctrines that are [*784] unsound and unsuited to present conditions.' *Id.* at 753.

The common law is not a stagnant pool, but a moving stream. *City of Louisville v. Chapman*, Ky., 413 S.W.2d 74, 77 (1967). [**26] It seeks to purify itself as it flows through time. The common law is our responsibility; the child of the courts. We are responsible for its direction. In *International News Service v. Associated Press*, 248 U.S. 215, 39 S. Ct. 68, 63 L. Ed. 211 (1918), Mr. Justice Brandeis wrote:

> 'The unwritten law possesses capacity for growth; and has often satisfied new demands for justice by invoking analogies or by expanding a rule or principle.' 248 U.S. at 262, 39 S. Ct. at 81.

Mr. Justice Sutherland wrote in *Funk v. United States*, 290 U.S. 371, 54 S. Ct. 212, 78 L. Ed. 369 (1933):

> 'To say that the courts of this country are forever bound to perpetuate such of its rules as, by every reasonable test, are found to be neither wise nor just, because we have once adopted them as suited to our situation and institutions at a particular time, is to deny to the common law in the place of its adoption a 'flexibility and capacity for growth and adaptation' which was 'the peculiar boast and excellence' of the system in the place of its origin.' 290 U.S. at 383, 54 S. Ct. at 216.

The adoption of comparative negligence [**27] in Hilen v. Hays "was premised upon the principle of fundamental fairness, that liability should be assessed in relation to fault and that the extent of liability should be determined by the extent of the fault." n10 As a result, "when there are joint tort-feasors the liability of either of them is limited by the extent of his fault." n11 This includes original

defendants and third-party defendants. n12 "The extent of the liability of each is a several liability and is limited to the degree of fault apportioned to each." n13 "Thus, a defendant's liability is limited to its degree of fault, no more and no less." n14

> n9 Ky., 673 S.W.2d 713 (1984).
>
> n10 *Dix & Associates v. Key*, Ky., 799 S.W.2d 24 at 27 (1990).
>
> n11 *Floyd v. Carlisle Const. Co., Inc.*, Ky., 758 S.W.2d 430, 432 (1988).
>
> n12 *Stratton v. Parker*, Ky., 793 S.W.2d 817 (1990); *Dix & Associates v. Key*, supra.
>
> n13 *Stratton v. Parker*, Ky., 793 S.W.2d at 820.
>
> n14 *Continental Marine v. Bayliner Marine*, Ky. App., 929 S.W.2d 206, 208 (1996).

[**28]

The General Assembly codified the holding of Hilen v. Hayes and its progeny in *KRS 411.182*:

> (1) In all tort actions, including products liability actions, involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:
>
> (a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and (b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.
>
> (2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal connection between the conduct and the damages claimed.
>
> (3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection [**29] (4) of this [*785] section, and shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.
>
> (4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so