LEXSEE 249 SW.2D 826

**FANNIN v. COMMERCIAL CREDIT CORP**

[NO NUMBER IN ORIGINAL]

Court of Appeals of Kentucky

249 S.W.2d 826; 1952 Ky. LEXIS 887

June 20, 1952

**COUNSEL:** [**1]

Lester Hogge, Morehead, for appellant.

Neil G. Sullivan, Lexington, Thomas R. Burns, Morehead, for appellee.

**OPINIONBY:**

WADDILL

**OPINION:**

[*826]

WADDILL, Commissioner. This appeal is from a judgment in favor of appellee in the sum of $ 1,195 as damages for an alleged breach of contract.

L. D. Fannin, d/b/a Fannin Motor Sales, sold an automobile to J. P. Caudill under a conditional sales contract. This contract was assigned to the Commercial Credit Corporation of Kentucky which thereafter re-assigned same to appellee, Commercial Credit Corporation of Maryland. Caudill defaulted in his payments under the contract and appellee brought this suit against both Caudill and Fannin. Judgment was entered by a default against Caudill for the full amount due under the contract and appellee was further adjudged a lien upon the automobile.

Appellee's suit against Fannin is based on his written endorsement designated a 'Dealer's Representation and Assignment,' the pertinent part of which is:

'* * * Undersigned (Fannin) warrants that said contract is genuine and in all respects that it purports to be; that Undersigned has complied with all laws in respect to sale of said Car; * * * that the [**2] lien represented [*827] by said contract appears on the Certificate of Title or Bill of Sale, as required by State Law, covering said Car as a first lien or encumbrance. Undersigned makes said warranties for the purpose of inducing Commercial Credit Corporation to purchase the said contract; and if any such warranties should be untrue, Undersigned shall buy from Commercial Credit Corporation, upon demand, said contract, and will pay therefor not less than the amount owing thereon, plus any and all costs and expenses paid or incurred by Commercial Credit Corporation in respect thereto * * *.'

In appellee's petition, the provisions of the 'Dealer's Representation and Assignment' were alleged and facts were stated to show that appellant's representations were untrue and that appellant breached his promise to repurchase the conditional sales contract.

Appellant's general demurrer to appellee's petition was overruled with exceptions taken thereto. Appellant

then filed an answer. The case was submitted on the pleadings and judgment was rendered against appellant.

It is contended by the appellant that his demurrer should have been sustained because the appellee in its petition [**3] did not allege any damage. This point appears to be well taken.

Section 90, Civil Code of Practice, provides as follows concerning the requisites of a petition:

'The petition must state facts which constitute a cause of action in favor of the plaintiff against the defendant, and must demand the specific relief to which the plaintiff considers himself entitled; and may contain a general prayer for any other relief to which the plaintiff may appear to be entitled. * * *'

To state a cause of action ex contractu, it is necessary to state the contract, the breach and the facts which show the loss or damage by reason of the breach. *Miles v. Miller,* 12 Bush. 134, 75 Ky. 134; *Ebner v. Official Board of the Methodist Episcopal Church of Pineville,* 214 Ky. 70, 282 S.W. 785; 17 C.J.S., Contracts, § 533. The appellee pleaded the contract and the breach thereof, but nowhere in the petition are any facts stated which show that appellee was damaged by reason of the breach. The appellee alleges that appellant is indebted to it in the sum of $ 1,195. This is but a conclusion of law. *Cooper v. McKee,* 121 Ky. 287, 89 S.W. 203, 28 Ky.Law Rep. 270; *Gordon v. City National Bank,* 140 Ky. 47, 130 [**4] S.W. 818. As such it cannot be relied on as stating a fact which constitutes part of a cause of action. *Bank of Marshall County v. Boyd,* 308 Ky. 742, 215 S.W.2d 850; *Jones v. Carey Construction Co.,* 311 Ky. 704, 225 S.W. 301. Since the appellee failed to allege damages, a necessary element to his cause of action, the demurrer should have been sustained.

Judgment reversed.

LEXSEE 35 FED. APPX. 397

GABRIEL RIDE CONTROL PRODUCTS, INC., Plaintiff-Appellee, v. WOLVERINE AUTO SUPPLY, INC., formerly known as Buckeye Undercar Supply Co., Inc.; TOP VALVE EXHAUST SYSTEMS, INC.; Defendants, BILL HARTSOCK, JR., Defendant-Appellant.

Case No. 00-1298

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

35 Fed. Appx. 397; 2002 U.S. App. LEXIS 9635

May 15, 2002, Filed

**NOTICE:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN. 97-75252. Cook Jr. 03-06-00.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For GABRIEL RIDE CONTROL PRODUCTS, INC., Plaintiff - Appellee: Daniel F. Berry, Mark V. Heusel, Williams, Mullen, Clark & Dobbins, Detroit, MI.

For BILL HARTSOCK, JR., Defendant - Appellant: Sandra User Green, Jonathan A. Green, Green & Green, Farmington Hills, MI.

**JUDGES:** BEFORE: NORRIS, SILER, and BATCHELDER, Circuit Judges.

**OPINIONBY:** ALICE M. BATCHELDER

**OPINION:** [*398]

ALICE M. BATCHELDER, Circuit Judge. Defendant Bill Hartsock, Jr. appeals the district court's order, following a bench trial, awarding judgment to the plaintiff, Gabriel Ride Control Products, Inc., in this breach of contract action. Hartsock assigns as error the district court's conclusions that the guaranty at issue in this case was his personal guaranty of the existing [**2] and future indebtedness of his companies, Top Value Exhaust Systems, Inc., Buckeye Undercar Supply Company, Inc. and Wolverine Auto Supply, Inc.; that a faxed copy of the guaranty was admissible in evidence; and that evidence of a prior personal guaranty Hartsock had signed was admissible in evidence. Before us, Hartsock raises the additional claim that the guaranty was not supported by adequate consideration.

After carefully reviewing the record, the applicable law and the parties' briefs, we are satisfied that the district court's findings [*399] of fact are not clearly erroneous, and that the court's order carefully and correctly sets out the law governing the issues raised before that court and clearly articulates the reasons underlying its decision. The issuance of a full written opinion by this

court would serve no useful purpose, and we will affirm the judgment of the district court for the reasons stated in the district court's opinion. We will, however, make one additional observation with regard to Hartsock's objection to the admission into evidence of the faxed copy of the guaranty, and we will specifically address Hartsock's claim that the guaranty was not supported by adequate [**3] consideration.

Although the district court explicitly ruled on Hartsock's objection to the admission of the faxed copy of the guaranty under *Rule 1004 of the Federal Rules of Evidence*, it did not directly address Hartsock's claim that the faxed copy should have been excluded under *Rule 1003 of the Federal Rules of Evidence* as well. We agree with the implicit conclusion of the district court that this claim is without merit. Although Hartsock clothes his objection to the admission of this evidence in terms of the document's authenticity, the substance of his objection is not that the guaranty is not authentic. Hartsock does not contest that this is the guaranty the plaintiff's agent prepared and asked him to sign. Hartsock's objection is that although he signed this guaranty, someone altered it after he signed it and then faxed the altered instrument to the plaintiff. The district court correctly found that there was no evidence that Gabriel Ride, the proponent of the evidence, lost or destroyed the original guaranty in bad faith. We note that there is in fact no evidence that Gabriel Ride lost or destroyed the original at all; there is considerable evidence, however, that the last [**4] persons to have possession of the guaranty were Hartsock and his agents. We find no error in the district court's conclusion that the faxed copy of the guaranty was admissible.

Hartsock points to nothing in the record to indicate that he raised before the district court his claim that the guaranty was not supported by adequate consideration. The district court's opinion, however, contains the explicit findings that Top Value, Buckeye and Wolverine were in arrears on their payments to Gabriel Ride, that Gabriel Ride had stopped shipping product to the companies, and that after Gabriel Ride received the fax of the guaranty, Gabriel Ride resumed shipments to the companies. Those findings are not clearly erroneous, and indeed, are amply supported by the record. It is likewise clear that this guaranty was supported by adequate consideration. Hartsock's companies owed Gabriel Ride in excess of a half million dollars when Gabriel Ride agreed to accept Hartsock's personal guaranty of that debt and any future extensions of credit. It was only upon receipt of the fax of the guaranty that Gabriel Ride resumed shipments of product to those companies. This is sufficient consideration under Michigan [**5] law. See *United States v. Brown*, 833 F. Supp. 625, 629 (E.D. Mich. 1993); see also *Chris Nelson & Son, Inc. v. Shubow*, 374 Mich. 403, 132 N.W. 2d 122, 124 (Mich. 1965). This assignment of error is without merit.

Accordingly, we AFFIRM the judgment of the district court.

LEXSEE 34 BR 918

In re: ART SHIRT LTD., INC. (Cracker Barrel Dresses, Ltd., Bankruptcy No. 80-03429K, Richard Todd, Inc., Bankruptcy No. 80-03430K), Debtor; Louis W. FRYMAN, Esquire, Trustee of Art Shirt Ltd., Inc., Plaintiff, v. MANUFACTURERS HANOVER TRUST COMPANY, Defendant

Bankruptcy No. 80-03428K, Adversary No. 82-2359K, Chapter 11

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

34 B.R. 918; 1983 Bankr. LEXIS 4994

November 18, 1983

COUNSEL: [**1]

Leon S. Forman, Esq., David L. Braverman, Esq., Philadelphia, Pennsylvania, (Counsel for Defendant/Manufacturers Hanover Trust Co.).

Gary M. Schildhorn, Esq., Philadelphia, Pennsylvania, (Counsel for Plaintiff). Richard B. Schiro, Esq., Dallas Texas. Steven T. Stern, Esq., Philadelphia, Pennsylvania, (Counsel for Richard Schiro, Esq.).

JUDGES:

William A. King, Jr., Bankruptcy Judge.

OPINIONBY:

KING, JR.

OPINION:

[*919] BY: WILLIAM A. KING, JR., BANKRUPTCY JUDGE

We have before us a motion to dismiss a third party complaint filed by the third party defendant, Sidney L. Schiro. Mr. Schiro claims that joinder of him as a third party defendant in this adversary proceeding is improper under Federal Rule of Civil Procedure 14(a). Fed.R.Civ.P. 14. He also challenges the jurisdiction of this Court to hear the subject matter of the third party complaint under Marathon. n1

   n1 Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 73 L. Ed. 2d 598, 102 S. Ct. 2858 (1982).

For the reasons set forth [**2] in this Opinion, we will deny the motion to dismiss the third party complaint.

Art Shirt, Ltd., Inc. is the debtor in this Chapter 11 case, having filed a voluntary petition for relief on December 24, 1980. n2 A Trustee was appointed on January 27, 1981.

   n2 This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

The Trustee filed the above-captioned adversary complaint against Manufacturers Hanover Trust Company ("defendant") on September 29, 1982,

Case 1:04-cv-00583-GMS    Document 139-16    Filed 03/31/2006    Page 6 of 17

Page 2

34 B.R. 918, *; 1983 Bankr. LEXIS 4994, **

seeking to avoid a preferential transfer. The complaint alleges that the debtor's repayment of a loan to the defendant within the ninety (90) day period prior to the Chapter 11 filing constitutes a preference under *Section 547 of the Bankruptcy Code* ("Code").

The exact date that the alleged preference took place has not been determined, although the defendant's answer to the complaint states that:

> "payment of approximately $650,000.00 by Art Shirt Ltd., Inc., to defendant on or about [**3] October 14, 1980 was made with funds contemporaneously provided by another creditor."

Counsel for the defendant filed a Motion for Leave to File a Third Party Complaint against Sidney L. Schiro on December 29, 1982, pursuant to *Federal Rule of Civil Procedure 14(a)*. n3 The motion alleged that Mr. [*920] Schiro was guarantor of the obligations of Art Shirt to the defendant, and that to the extent Art Shirt's payment may be a voidable preference, the defendant is entitled to look to Mr. Schiro, as guarantor, for full satisfaction of the underlying debt.

> n3 Bankruptcy Rule 7014, formerly Rule 714 of the Rules of Bankruptcy Procedure, makes *Rule 14 of the Federal Rules of Civil Procedure* applicable to adversary proceedings. *Fed. R. Civ. P. 14(a)* states in relevant part:
>
>> "The third-party plaintiff need not obtain leave to make the service if he files the third-party complaint not later than 10 days after he serves his original answer. Otherwise he must obtain leave on motion upon notice to all parties to the action."

[**4]

On January 11, 1983, this Court entered an Order granting the defendant leave to file the third party complaint against Mr. Schiro. On January 21, 1982, Mr. Schiro moved for reconsideration of the January 11th Order and for an extension of time within which to respond to the defendant's motion to file the third party complaint.

After a hearing on the issue on March 15th, we denied Mr. Schiro's motion for reconsideration and for an extension of time. The defendant's third party complaint against Mr. Schiro was subsequently filed on April 7, 1983. The issue of the propriety of the joinder of Mr. Schiro as a third party defendant has been raised by way of Mr. Schiro's motion to dismiss the third party complaint, which was filed on May 9, 1983.

We begin with the third party defendant's assertion that joinder is unwarranted here because there is no relationship between the underlying suit by the Trustee and the state law suretyship issue. The memorandum of law submitted by the third party defendant states:

> "There is nothing *inherent* in the nature of these two disparate proceedings, which requires a third party action. The principal action is a bankruptcy trustee's effort [**5] to prove a voidable preference. This is not a matter which concerns the same circumstances incident to the payee's claim against the Third Party De-

Case 1:04-cv-00583-GMS    Document 139-16    Filed 03/31/2006    Page 7 of 17

Page 3

34 B.R. 918, *; 1983 Bankr. LEXIS 4994, **

fendant: i.e., to be reimbursed for any loss which may be sustained by reason of a guarantee." (emphasis added)

We find this argument unpersuasive for two (2) reasons. First, there is no requirement in *Rule 14(a) of the Federal Rules of Civil Procedure* that there be an inherent relationship between the two (2) causes of action:

> ". . . . such a relationship is not essential to the maintenance of a Third-Party claim under Rule 14. The rule has been liberally interpreted to allow Third-Party claims to be asserted even though they do not allege the same cause of action or the same theory of liability as the original Complaint."

*Wanta v. Powers*, 478 F. Supp. 990, 993 (M.D. Pa. 1979). The appropriate circumstances for joinder of a third party are provided in Rule 14(a):

> "At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a party to the action who is or may be liable to him for all or part of the plaintiff's claim [**6] against him."

These circumstances are met here. Furthermore, joinder of Mr. Schiro is consistent with the policy aim of Rule 14. The general purpose of Rule 14 is to avoid two (2) actions which should be tried together to save the time and cost of reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him, and a judgment in his favor against the third party defendant. *Jones v. Waterman S.S. Corporation*, 155 F.2d 992, 997 (3d Cir. 1946).

The second reason why we believe that these two (2) causes of action should be heard simultaneously is that, contrary to Mr. Schiro's assertion, there is something *inherent* in the nature of these two (2) proceedings, which we will explain by examining applicable bankruptcy law on preferences.

In *In re Herman Cantor Corporation*, 15 B.R. 747 (E.D. Va. 1981), the bankruptcy court faced a similar question of joinder of a third party defendant who had pledged certain investment certificates to secure loans made by a third party to the debtor corporation. The underlying suit was the debtor's complaint [**7] to avoid a preferential transfer of money against Central Fidelity Bank, N.A. ("CFB"). CFB in turn filed a [*921] third party complaint against Dena Cantor, the pledgor of the certificates.

The Court found that joinder of Dena Cantor as a third party defendant was proper, stating:

> "Although a surety usually is discharged by payment of a debt, he continues to be liable if the payment constitutes a preference under bankruptcy law. A preferential payment is deemed by law to be no payment at all. *Horner v. First National Bank*, 149 Va. 854, 141 S.E. 767, 770 (1928)."

Case 1:04-cv-00583-GMS    Document 139-16    Filed 03/31/2006    Page 8 of 17

Page 4

34 B.R. 918, *; 1983 Bankr. LEXIS 4994, **

*In re Herman Cantor Corp.*, supra at 750.

The Court also found that the debtor's repayment of the loan to CFB within ninety (90) days prior to the Chapter 11 filing, resulted in an indirect preference to the pledgor, Dena Cantor. *Id.* at 749. The reasoning employed by the Court was that the debtor's repayment of the loan benefited the pledgor because it discharged the contingent debt. *Id.* See *Fenold v. Green*, 175 F.2d 247, 249 (2d Cir. 1949). If CFB's loan had not been repaid by the debtor, CFB would have been entitled to the investment certificates pledged by Dena Cantor and she would [**8] have been able to sue the debtor to recover her loss as a surety. The debtor, however, paid CFB the value of its loan and relinquished the certificates to Dena Cantor. By this action, Dena Cantor may have received more than she would have been entitled to receive if this case were under Chapter 7, with the end result being a preference over other creditors of the estate. 11 U.S.C. § 547(b)(5).

Other cases have similarly held that a guarantor or surety is a creditor n4 of the estate who may be preferred within the meaning of section 547 of the Code. *See, e.g., In re Church Buildings and Interiors, Inc.*, 14 B.R. 128 (W.D. Okla. 1981); *In re Duccilli Formal Wear, Inc.*, 24 Bankr. 699, 8 B.C.D. 1180, 1183 (S.D. Ohio 1982); *Paper v. Stern*, 198 F. 642, 644 (8th Cir. 1912).

Collier has stated that:

> "A guarantor or surety for the debtor, or an endorser of his notes or checks, will be a creditor under the Code because he will hold a contingent claim against the debtor that becomes fixed when he pays the creditor whose claim he has guaranteed or insured. Consequently, any transfer of property made by a debtor to or for the benefit of an endorser, guarantor or surety, [**9] may constitute a preference. Accordingly, any payment made by the debtor-maker to the holder of his notes may be a preference to the endorser, even though the endorser himself is solvent and did not procure the payment . . . ."

4 Collier on Bankruptcy para. 547.18 at 547.62 (15th ed. 1982).

> n4 Pre-code cases recognized that a guarantor was a "creditor" under § 60 of the Bankruptcy Act. The Code does not alter this rule, as one who holds a contingent right to payment is a "creditor" as defined by Code § 101(9).

In conclusion, there is ample authority for allowing Mr. Schiro to be joined as a third party defendant in this matter. Mr. Schiro's liability may be established by reference to applicable bankruptcy law principles as well as state law principles on suretyship.

It is not clear at this juncture whether there is a factual dispute concerning Mr. Schiro's guarantee of the debtor's obligations to Manufacturers Hanover Trust Company. n5 However, should this Court determine that a state law issue [**10] is involved, over which this Court does not have jurisdiction, we will submit proposed findings, conclusions and a proposed judgment to the United States District Court in accordance with paragraph (d)(3)(A) of the Interim Rule for the

Case 1:04-cv-00583-GMS   Document 139-16   Filed 03/31/2006   Page 9 of 17

Page 5
34 B.R. 918, *; 1983 Bankr. LEXIS 4994, **

Administration of the Bankruptcy System. n6

n5 Mr. Schiro has not filed an answer to the third party complaint.

n6 See Order executed by the United States District Court for the Eastern District of Pennsylvania adopting rule for the Administration of the Bankruptcy System (December 21, 1982; amended December 29, 1982), upheld in *Coastal Steel Corporation v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 200 (3d Cir. 1983).

We note that the term "related proceedings" under the Interim Rule expressly does [*922] not include proceedings, such as the instant adversary matter, to set aside preferences.

Therefore, we will enter an appropriate Order denying the motion to dismiss the third party complaint.

WILLIAM A. KING, JR., BANKRUPTCY JUDGE

Dated at Philadelphia, PA, [**11] this 18th day of November, 1983.

ORDER

AND NOW, this 18th day of November, 1983, upon consideration of the Motion of Third Party Defendant Sidney L. Schiro to Dismiss the Third Party Complaint of Manufacturers Hanover Trust Company, and the memoranda submitted by both counsel in support of and in opposition to said motion, it is

ORDERED that the Motion to Dismiss the Third Party Complaint in this matter is hereby DENIED.

WILLIAM A. KING, JR., BANKRUPTCY JUDGE

LEXSEE 15 BR 747

In re HERMAN CANTOR CORPORATION, Debtor; HERMAN CANTOR CORPORATION, Plaintiff, v. CENTRAL FIDELITY BANK, N.A., Defendant, and Dena K. Cantor, Third Party Defendant

Bankruptcy No. 81-00640-R, Adv. No. 81-0137-R

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION

15 B.R. 747; 1981 Bankr. LEXIS 2516; 8 Bankr. Ct. Dec. 516

November 25, 1981

COUNSEL: [**1]

Allan S. Buffenstein, Richmond, Virginia, for Plaintiff.

James J. Burns, Richmond, Virginia, for Defendant.

Robert E. Eicher, Richmond, Virginia, for Third Party Defendant.

JUDGES:

Blackwell N. Shelley, Bankruptcy Judge.

OPINIONBY:

SHELLEY

OPINION:

[*748] BLACKWELL N. SHELLEY, Bankruptcy Judge.

MEMORANDUM OPINION AND ORDER

This matter comes on upon the filing of a Complaint by Herman Cantor Corporation (Cantor), the Debtor herein, against Central Fidelity Bank, N.A. (CFB) to avoid a preferential transfer of property by Cantor pursuant to 11 U.S.C. § 547. CFB made a Motion to dismiss Cantor's Complaint for failure to state a claim upon which relief can be granted. CFB also filed a third party Complaint against Dena K. Cantor. Dena K. Cantor filed a Motion to dismiss the third party complaint. Upon the submission of briefs this Court makes the following determination.

For the purpose of ruling on the Motion to dismiss, the allegations of the Complaint have been construed in the light most favorable to the Plaintiff and its allegations have been taken as true. Wright and Miller, *Federal Practice and Procedure: Civil*, § 1357. Cantor, a Virginia corporation, filed its petition [**2] under Chapter 11 of the Bankruptcy Code on April 17, 1981.

A defendant admits facts alleged in a complaint when he files a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to *F.R.C.P.* § 12(b). The defendant simply challenges the plaintiff's right to relief under those facts and a court should not dismiss a complaint unless it is certain that the plaintiff can produce no set of facts which would entitle him to relief. *American Technical Machinery Corporation v. Masterpiece Enterprises, Inc.*, 235 F. Supp. 917, 918 (M.D.Pa.1964). Cantor's Complaint sufficiently alleges that CFB was the re-

15 B.R. 747, \*; 1981 Bankr. LEXIS 2516, \*\*;
8 Bankr. Ct. Dec. 516

cipient of a preference pursuant to § 547(b). This Court finds Cantor's allegation that "the effect of the aforesaid payment by the debtor to the bank resulted in the bank receiving more than it would have received from a distribution of the debtor's assets if this were a case under 11 U.S.C. Chapter 7" is in itself a sufficient allegation under § 547(b)(5).

CFB alleges the following facts in its third party complaint against Dena Cantor. CFB extended a loan to Cantor in the amount of $ 60,000.00 on October 20, 1980 for a period of 180 days. [\*\*3] On November 1, 1980, CFB loaned Cantor $ 40,000.00 also for a period of 180 days. Both loans were evidenced by commercial loan notes. These loans were secured by non-negotiable investment certificates pledged by Dena K. Cantor at the time of the advance. The $ 60,000.00 extended on October 20, 1980 was secured by an investment certificate in [\*749] the principal amount of $ 60,000.00. The November 1, 1980 loan in the amount of $ 40,000.00 was secured by an investment certificate in the principal amount of $ 45,000.00.

Cantor paid CFB $ 103,151.12 on January 19, 1981 in full for CFB's loan to Cantor. This payment was made within ninety days of Cantor filing its Chapter 11 proceeding on April 17, 1981.

Cantor, now the debtor-in-possession, seeks to recover the $ 103,151.12 payment made by Cantor to CFB plus interest from January 19, 1981 as a preference. A debtor-in-possession enjoys the trustee's right to avoid a preferential transfer of the debtor's property. *In re Sapolin Paints, Inc.*, 11 B.R. 930, 933, n.4 (Bkrtcy.E.D.N.Y. 1981).

In *Smith v. Tostevin*, 247 F. 102 (2d Cir. 1917) the Second Circuit faced a factual situation similar to that faced in the instant [\*\*4] case. Tostevin borrowed $ 3,600.00 from a bank and pledged as security thirteen shares of his wife's corporate stock. Tostevin repaid the loan several days before a petition in bankruptcy was filed against him. The court found that Tostevin's payment to the bank was in fact a preference to his wife which was voidable under § 60(b) of the Bankruptcy Act. The court held that a pledgor has all the rights and liabilities of a surety when there is a preference. *Smith* at 103.

It is well settled that guarantors, sureties and endorsers become creditors of the debtor when they make payment on a debt which they have guaranteed or endorsed. See *Patrick v. White*, 212 N.W. 469, 203 Iowa 239 (1927); *Sutherland v. Honaker*, 196 S.E. 492, 119 W.Va. 672 (1938). Payment to the creditor by the debtor of the debtor's obligation is subject to being avoided by the Trustee because the transfer may benefit an endorser, guarantor, or surety since it discharges his contingent debt. *Fenold v. Green*, 175 F.2d 247, 249 (2d Cir. 1949).

This Court must treat pledgors just like it would treat guarantors, sureties or endorsers when determining whether there has been an indirect preference. [\*\*5] *Smith* at 103. In the instant case Dena Cantor pledged savings certificates valued at $ 105,000.00 in order that Cantor could obtain a loan from CFB. If Cantor had filed bankruptcy before paying back its loan to CFB, CFB as a fully secured creditor would have lost nothing. Dena Cantor as a pledgor of property upon the debt of another would have been entitled to sue Cantor to recover her loss as a surety. *Id.* Cantor, however, paid CFB the value of its loan and CFB relinquished the investment certificates to Dena Cantor. Cantor had no right to prefer Dena Cantor over his other creditors. *Id.* at 104. By this action Cantor may have enabled Dena Cantor to receive more than she would have received if

Case 1:04-cv-00583-GMS   Document 139-16   Filed 03/31/2006   Page 12 of 17

Page 3

15 B.R. 747, *; 1981 Bankr. LEXIS 2516, **;
8 Bankr. Ct. Dec. 516

this case were a case under Chapter 7 and the transfer had not been made. 11 U.S.C. § 547(b)(5).

Cantor's transfer of property to CFB and the resulting indirect preference to Dena Cantor depleted Cantor's estate and may be voidable. *Bachner v. Robinson*, 107 F.2d 513, 514 (2d Cir. 1939). Although CFB held a fully secured claim, it appears that CFB enjoyed a preference because payment to the secured creditor was not "accompanied by the release of an equivalent value to [**6] the estate." *In re Zuni*, 6 B.R. 449, 452 (Bkrtcy.N.M.1980).

Bankruptcy Rule 714 adopts *Rule 14 of the Federal Rules of Civil Procedure* which allows a defendant to bring in a third party "who is or may be liable to him for all or part of the plaintiff's claim against him." F.R.C.P. 14(a). A defendant may file a third party complaint in a case in which the third party defendant is or may be liable both to the original plaintiff and to the original defendant. *National Mutual Insurance Company of the District of Columbia v. Liberty Mutual Insurance Company*, 90 U.S. App. D.C. 362, 196 F.2d 597, 598 (D.C.Cir.1952) cert. denied, 344 U.S. 819, 73 S. Ct. 15, 97 L. Ed. 638 (1952).

Dena Cantor argues she could not be liable to CFB under the allegations CFB set forth in its third party complaint and therefore CFB has no cause of action against [*750] her. She cites *In re Monsour Medical Center*, 5 B.R. 715 (Bkrtcy.W.D.Pa.1980) in which the court by dicta suggested individual creditors may not bring suits on their own behalf to avoid preferences to other creditors. *Monsour* at 718-719. It is clear, however, that under CFB's allegations, Dena Cantor may be liable to [**7] CFB as a surety.

Although a surety usually is discharged by payment of the debt, he continues to be liable if the payment constitutes a preference under bankruptcy law. A preferential payment is deemed by law to be no payment at all. *Horner v. First National Bank*, 149 Va. 854, 141 S.E. 767, 770 (1928). In *Horner* the Virginia high court described the plight banks would face if preferential payments could discharge sureties.

"They would in fear and trembling receive payment from harassed debtors striving to maintain their credit. When to take and when to refuse would be beyond the wisdom of man, for not all who are financially embarrassed fail, and not all who fail do so within the magic period of four months. Must a bank say to a customer, 'You seem to be in trouble, and I cannot permit you to pay me; I might perchance have to refund to some trustee in bankruptcy and so lose the security of your indorsers'." *Horner*, 141 S.E. at 770.

The courts agree that payment from a debtor which later is set aside as a preference does not discharge a surety. *See*, Annot., 56 A.L.R. 1363 (1928). Dena Cantor may be liable to CFB as surety for CFB's loan to Cantor, therefore [**8] it is

ORDERED, ADJUDGED and DECREED that the Motion filed by Central Fidelity Bank, N.A. to dismiss the Complaint filed by Herman Cantor Corporation to avoid a preferential transfer of property be, and is hereby DISMISSED, and it is further

ORDERED, ADJUDGED and DECREED that the Motion filed by Dena K. Cantor to dismiss Central Fidelity Bank's third party complaint be, and is hereby DISMISSED.

LEXSEE 89 SW.3D 422

INTERCARGO INSURANCE COMPANY, APPELLANT v. B. W. FARRELL,
INC.; L. B. HAMMET; LOIS N. HAMMET; PATRICK D. HAMMET; SHARA
SIGHTS HAMMET; and THE HAMMET COMPANY, INC., APPELLEES

NO. 2000-CA-002821-MR

COURT OF APPEALS OF KENTUCKY

89 S.W.3d 422; 2002 Ky. App. LEXIS 2221

October 25, 2002, Rendered

**SUBSEQUENT HISTORY:** [**1] Released for Publication December 6, 2002..

**PRIOR HISTORY:** APPEAL FROM McCRACKEN CIRCUIT COURT. HONORABLE R. JEFFREY HINES, JUDGE. ACTION NO. 00-CI-00851.

**DISPOSITION:** Vacated and remanded.

**COUNSEL:** BRIEF AND ORAL ARGUMENT FOR APPELLANT: Deborah B. Simon, Paducah, Kentucky.

BRIEF AND ORAL ARGUMENT FOR APPELLEE: David C. Booth, Paducah, Kentucky.

**JUDGES:** BEFORE: COMBS, GUDGEL, and HUDDLESTON, Judges. ALL CONCUR.

**OPINIONBY:** COMBS

**OPINION:** [*424]

VACATING AND REMANDING

BEFORE: COMBS, GUDGEL, and HUDDLESTON, Judges.

COMBS, Judge: Intercargo Insurance Company (Intercargo) appeals the judgment of the McCracken Circuit Court dismissing its complaint with respect to all of the appellees for failure to state a claim. As to appellees B. W. Farrell, Inc., Patrick Hammet, and Shara Hammet, it dismissed for the additional reason of lack of personal jurisdiction. After a review of the record and the applicable authorities, we vacate and remand for additional proceedings on the merits of Intercargo's complaint seeking to enforce an indemnity agreement.

The appellee, B. W. Farrell, Inc. (Farrell), is a corporation formed under the laws of the State of Louisiana. [**2] It performs construction projects primarily for the United States Corps of Engineers in Louisiana and elsewhere in the South -- but not in Kentucky. Farrell is a wholly owned subsidiary of The Hammet Company, Inc. (Hammet Company), a Florida corporation which is authorized to do business in Kentucky and which has an office in Paducah, Kentucky. The Hammet Company is owned by the appellee, L. B. Hammet, who with his wife, the appellee, Lois Hammet, resides in Kentucky. n1

---

n1 After this appeal was filed by Intercargo, L. B. Hammet and Lois Hammet filed for protection from their creditors, including Intercargo, in U.S. Bankruptcy Court in Louisiana. We have not yet been provided with the orders of the court discharging their debts, but counsel has informed

the court that they were discharged on June 6, 2002.

Intercargo Insurance Company acted as surety issuing performance bonds for B.W. Farrell, Inc., and The Hammet Company. On July 19, 1996, a General Agreement of Indemnity was executed on behalf of Intercargo [**3] by: B.W. Farrell, Inc.; the Hammet Company, Inc.; L.B. Hammet; and Lois N. Hammet. A second, supplemental General Agreement of Indemnity was executed on July 1, 1997, and was signed by: L.B. Hammet, individually and in his capacity as president of both the Hammet Company and Farrell; his son, Patrick Hammet, individually and in his capacity as vice-president and/or secretary of both corporate entities; Lois Hammet, wife of L.B. Hammet; and Shara Hammet, wife of Patrick Hammet. That second indemnity agreement promised to hold Intercargo harmless from claims arising from surety bonds on which either the Hammet Company, Inc., or B.W. Farrell, Inc., was a principal, providing specifically as follows:

[to] indemnify and hold [Intercargo] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence of, the execution by [Intercargo] of any bond on behalf of [Farrell][.]

The second indemnity agreement was signed after Farrell sought a performance bond from Intercargo in June of 1997 to [*425] secure its work on a contract awarded by the United States Corps of [**4] Engineers to perform construction on a project in Louisiana. In 1998, in connection with that project, Intercargo paid a claim against Farrell's performance bond in the sum of $ 30,000 to a Louisiana subcontractor, Dolese Brothers Company. The appellees refused to reimburse the claim, and Intercargo filed suit to enforce the indemnity agreement.

The appellees moved to dismiss the complaint pursuant to CR n2 12.02. They argued that the indemnity agreements failed to comply with KRS n3 371.065; that they were unenforceable as a matter of law; and that Farrell, a foreign corporation, and Patrick and Shara Hammett, residents of Indiana, did not have sufficient contacts with Kentucky to allow the court to exercise personal jurisdiction over them.

n2 Kentucky Rules of Civil Procedure.

n3 Kentucky Revised Statutes.

On September 27, 2000, the McCracken Circuit Court entered an order dismissing the complaint with prejudice for failure to state a claim upon which relief could be granted. With respect to Farrell, [**5] Patrick Hammet and Shara Hammet, it dismissed for lack of personal jurisdiction. Intercargo's timely motion pursuant to CR 59.05 to set aside or amend the order of dismissal was denied on November 3, 2000. This appeal followed.

Intercargo argues that KRS 371.065 does not apply to its indemnity agreement with the appellees. That statute provides in relevant part as follows:

(1) No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates.

If this statute governs, the agreement must fail as it contains no limit on

the appellees' maximum liability nor an ending date for their exposure to liability.

Intercargo counters by contending that the performance bond which it executed on behalf of Farrell is not an "instrument" as contemplated by the statute. Intercargo also argues that an indemnity agreement is wholly distinct from a guaranty agreement [**6] and that it was not the intention of the Legislature to include indemnity agreements within the scope of KRS 371.065.

In granting the appellees' motion to dismiss for failure to state a claim, the trial court made no independent analysis of the statute and instead accepted the appellees' argument that the statute applied to all types of guaranty agreements. The appellees argue that the term *guaranty* as used in KRS 371.065 -- if given its common meaning -- encompasses the very type of indemnity agreement that Intercargo attempts to enforce:

Here, we have a statute which sets out requirements for a valid, enforceable guaranty which include a statement of the amount of the maximum liability and a termination date. Giving the words of the statute their literal meaning in the present case is neither absurd nor unreasonable. To the contrary, to interpret the statute as the lower court has done carries out the intent of the legislature by protecting third party guarantors, indemnitors, sureties from overreaching contracts. (Appellee's brief, pp. 8-9.)

The appellees essentially contend that *guaranty* and *indemnity* are [**7] synonymous and interchangeable.

[*426] Intercargo correctly points out that the statute is unique to Kentucky. As originally enacted in 1986, the statute applied only to guaranties of commercial paper. *APL, Inc. v. Ohio Valley Aluminum, Inc.,* Ky.App., 839 S.W.2d 571 (1992). In 1990, the General Assembly amended the title of the act to "AN ACT relating to guaranties." This Court previously reasoned that that amendment of its title evinced an intent to give the statute a "broader applicability." *Id.* at 575.

We agree that the legislature intended to expand the statute to apply to more than just those guaranties of instruments which qualify as commercial paper. However, we agree with Intercargo that the legislature did not intend to include within its scope the type of indemnity agreements at issue in this case. A contract of indemnity is an obligation or duty requiring a promisor (here, the appellees) to make good any loss or damage which another has incurred while acting at the request or for the benefit of the promisor. See *41 Am. Jur. 2d Indemnity* § 1 (1995). Performance bonds in the construction industry are a prime example where a surety posts [**8] a bond on behalf of a principal to guarantee performance by a subcontractor, and the principal agrees to indemnify its surety for any loss arising as a result of non-performance. A guaranty agreement is one in which the promisor protects his promisee from liability for a debt resulting from the failure of a third party to honor an obligation to that promisee -- thus creating a secondary liability. In contrast, an indemnity contract creates a direct, primary liability between the promisor and promisee that is original and independent of any other obligation. See *38 Am. Jur. 2d Guaranty* § 14 (1999).

The essential distinction between an indemnity contract and a contract of guaranty is that the promisor in any indemnity contract undertakes to protect his promise (sic) against loss or damage through a liability on the part of the latter to a third person, while the undertaking of a guarantor or surety is to protect the promisee against loss or damage through the

89 S.W.3d 422, *; 2002 Ky. App. LEXIS 2221, **

failure of a third person to carry out his obligations to the promisee.

We agree with Intercargo that this distinction is critical to the issue of the whether the Legislature intended to include indemnity agreements [**9] within the ambit of KRS 371.065. As we read the statute, we believe that the Legislature intended to protect those individuals (guarantors) who promise to be liable when a third party defaults on an underlying obligation to its guarantee (promisee). However, we find no such legislative intent to protect those (indemnitors, appellees) who have promised to hold harmless and provide reimbursement to an entity (Intercargo) who stood in the shoes of the indemnitor(s) and made payment on an obligation incurred by and owed by the indemnitor(s) to a third party (Dolese Brothers Company).

We are further convinced that the term *instrument* as used in KRS 371.065(1) was intended to apply to instruments extending credit rather than to performance bonds. A guaranty is in the nature of commercial paper or of a negotiable instrument while an indemnity agreement is more akin to an insurance contract. Under the terms of the performance bond, Intercargo was obligated to assume Farrell's duties under the construction contract in the event of Farrell's default. The bond secures performance rather than a specific amount of money. Damages are unliquidated [**10] and uncertain as they are in case of a breach of contract. The statute's requirement that a maximum monetary amount be stated in the guaranty [*427] agreement is more in keeping with the requirement that a negotiable instrument state on its face "a fixed amount." KRS 355.3-104(1).

The legislature crafted the statute in order to protect persons or entities who guarantee the extension of credit to third parties in those situations where the instrument of credit (the guaranty) may not be a negotiable instrument *per se* but shares features in common with commercial paper. However, the appellees argue that the legislature also intended to protect sophisticated businessmen and corporate executives from their own promises when they pledge their individual assets to secure performance bonds for their corporate ventures -- essentially granting them *carte blanche* to renege on their contractual obligations. We do not agree that the legislative intent was to supplant the power, rights, or obligations of parties to a contract. We hold that the trial court erred in dismissing the complaint for failure to state a claim.

We also find error in the court's determination [**11] that it lacked personal jurisdiction over Farrell, Patrick Hammet, and Shara Hammet. Farrell is incorporated under the laws of the State of Louisiana. However, Farrell is the wholly owned subsidiary of the Hammet Company, which has an office in Paducah, Kentucky, and which is authorized to do business in Kentucky. While that fact alone would not provide an adequate basis to bring Farrell within the jurisdiction of Kentucky courts, the record reveals sufficient contacts by Farrell to Kentucky to bring it under our long-arm provisions. See KRS 454.210. Indeed, with the exception of Shara Hammet, the indemnity agreement which Intercargo is attempting to enforce was executed by all the appellees, including the corporate officers, individually and on behalf of the corporation, including Patrick Hammet, in McCracken County, Kentucky. Ironically, the appellees relied on the fact that the contract had been formed and executed in Kentucky in order to argue for the application of Kentucky law in their attempt to escape the enforcement of the contractual provisions. See *Breeding v. Massachusetts Indemnity*

and *Life Insurance Co.*, Ky., 633 S.W.2d 717 (1982). [**12]

In addition to the fact that the agreement was signed by the officers of the corporation in Kentucky, the record reveals that the Board of Directors of the corporation met in Kentucky when it issued the resolution to authorize the execution of the indemnity agreement by the corporation. The corporation held itself out to Intercargo as amenable to suit in Kentucky by using a corporate letterhead listing its only address as "Paducah, Kentucky." We believe that the execution of the contract in Kentucky and the enactment of the corporate resolution authorizing the agreement with Intercargo constitute sufficient minimum contacts of the corporation and of Patrick Hammet with Kentucky "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 342-343, 85 L. Ed. 278 (1940); see also, *Friction Materials Co. v. Stinson*, Ky.App., 833 S.W.2d 388, 390, 39:7 Ky. L. Summary 13 (1992).

Finally, the record reveals that Shara Hammet executed the agreement [**13] in a foreign state, Louisiana. Nevertheless, we agree with Intercargo that Shara Hammet should have been on notice that she could be subject to litigation in Kentucky. In *National Can Corporation v. K Beverage Company*, 674 F.2d 1134 (1982), the court found that jurisdiction was proper in the forum state (Kentucky) in nearly identical circumstances involving the wife of a corporate officer who had signed a guaranty [*428] in another state. The court held that the wife's economic interest in the corporation furnished the minimum contacts needed to satisfy constitutional due process concerns. See also, *Perry v. Central Bank & Trust Co.*, Ky.App., 812 S.W.2d 166 (1991).

For the foregoing reasons, the judgment of the McCracken Circuit Court is vacated, and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.