LEXSEE 102 SW.3D 252

MATERIAL PARTNERSHIPS, INC., Appellant v. JORGE LOPEZ VENTURA, Appellee

NO. 14-01-01068-CV

COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON

102 S.W.3d 252; 2003 Tex. App. LEXIS 1936

March 6, 2003, Rendered
March 6, 2003, Filed

**SUBSEQUENT HISTORY:** 53.7(F) mot. for extension of time filed by, 05/02/2003 Petition for review denied by *Ventura v. Material P'ships*, 2003 Tex. LEXIS 272 (Tex., Aug. 28, 2003)

**PRIOR HISTORY:** [**1] On Appeal from the 55th District Court. Harris County, Texas. Trial Court Cause No. 99-35432.

**DISPOSITION:** Reversed in Part and Rendered.

**COUNSEL:** William W. Rucker, Jr. of Houston, TX, for appellants.

Alan N. Magenheim of Houston, TX, for appellees.

**JUDGES:** Panel consists of Justices Yates, Anderson, and Frost. (Frost, J., concurring).

**OPINIONBY:** John S. Anderson

**OPINION:** [*255] **MAJORITY OPINION**

Appellant Material Partnerships, Inc. ("MPI") originally sued Sacos Tubulares del Centro, S.A. de C.V. ("Sacos"), a Mexican corporation, claiming Sacos owed MPI over $ 900,000 for materials MPI delivered to Sacos on an open account. MPI subsequently amended its petition to allege that appellee, Jorge Lopez Ventura ("Lopez") was individually liable for the corporate debt under the terms of a personal guaranty. n1 Following a bench trial, the district court rendered a default judgment in the amount of $ 962,139.79, plus interest and attorney's fees, in favor of MPI on its claim against Sacos, and a take-nothing judgment in favor of Lopez on MPI's claim against him. n2 In four issues, MPI challenges the trial court's sole finding of fact and three conclusions of law. Concluding the guaranty on which MPI relies is unambiguous and enforceable, we reverse that portion of the judgment denying recovery to MPI in its suit [**2] against Lopez and render judgment for MPI and against Lopez, as guarantor, in the amount of $ 962,139.79, plus pre-judgment and post-judgment interest. The remainder of the judgment is unaffected by this decision.

   n1 Except in quoted material, we use "guaranty" to refer to the act of promising and to the promise; we use "guarantee" to refer only to the person to whom the promise is made, in this case MPI. See BLACK'S LAW DICTIONARY 705 (6th ed.1990) (defining "guarantee" and "guaranty").

> n2 Before trial, Sacos withdrew its answer and permitted a default judgment to be taken against it.

## FACTUAL AND PROCEDURAL BACKGROUND

Lopez is an international businessman who speaks English as a second language, having first studied it in third or fourth grade. Lopez also speaks German and French. He has been personally involved in business transactions in the United States since 1984 and has made more than 200 trips to the United States. From 1988 or 1989, Lopez was an owner and the general manager [**3] of Sacos, a bag manufacturing company.

Beginning in 1997, Sacos purchased products from MPI. Sacos was slow in making payments to MPI almost from the beginning of the relationship, and did not pay invoices from March through November 1998.

In August 1998, MPI owner Joel Burgower and Ken Gross, owner of MPI's supplier, met with Lopez in Mexico to discuss several matters, including Sacos's payment of the invoices. During the meeting, Lopez told Gross that Sacos had the ability to pay its debts to MPI, and Gross asked Lopez whether he would give a personal guaranty for the outstanding debts. Lopez testified he told Gross he (Lopez) could not give his personal guaranty. Gross, however, testified Lopez said he was willing to provide the personal guaranty and had the assets to back it up. Burgower and Gross testified there was no discussion about Lopez providing a corporate guaranty.

On September 18, 1998, Burgower wrote Lopez requesting "written assurances in regards to the outstanding debts and obligations that you have with us." Burgower specifically asked Lopez to "forward a personal guarantee covering all past and future obligations." The letter was addressed to "Jorge Lopez, SACOS [**4] TUBULARES DEL CENTRO S.A. DE C.V." At the time the letter was drafted, MPI had stopped shipping product to Sacos.

[*256] Lopez did not recall receiving Burgower's letter. Over hearsay and relevance objections, however, Burgower testified that Claudio Carrera, a Sacos employee who dealt with the MPI account, acknowledged in a telephone conversation that both Carrera and Lopez had received the letter. n3 According to Burgower, Carrera asked what Burgower wanted in response to the September 18 letter, and Burgower told Carrera he wanted "Mr Lopez to personally guarantee, on a personal basis, all past and future obligations to MPI."

> n3 During Burgower's testimony, Carrera's first name was transcribed as "Claudia." Given an earlier transcription as "Claudio," and the references to "Mr. Carrera," we use the designation, "Claudio."

In a letter to Burgower dated September 25, 1998, Lopez wrote, "I . . . want to certify you [sic] that I, personally, guaranty all outstandings [sic] and liabilities of Sacos Tubulares with [**5] Material Partnerships as well as future shipments." Lopez drafted the letter himself and signed it over the designation, "JORGE LOPEZ VENTURA, GENERAL MANAGER." After receiving the September 25 letter, MPI resumed shipping product to Sacos, sending additional shipments valued at approximately $ 200,000. MPI subsequently received one payment of approximately $ 60,000 from Sacos. When Sacos did not pay for the additional shipments, MPI stopped shipping to Sacos.

In July 1999, MPI sued Sacos. In November 1999, the Sacos plant closed. In February 2000, MPI amended its petition to include a claim against Lopez on the guaranty.

Before trial, Sacos withdrew its answer and permitted a default judgment to be rendered against it. MPI's claim against Lopez was then tried to the bench. At trial, Lopez testified he drafted the September 25 letter after a conversation with Burgower over his cellular phone. During that phone call, Burgower requested a written statement that money was owed and was going to be paid. A request for a corporate guaranty made sense to Lopez because, as Lopez explained, under typical business practice in Mexico, shipping the product is not a complete guaranty of payment [**6] from the vendor's perspective because many things can occur to make the obligation to pay invalid. Lopez is familiar with the practice of vendors, who routinely seek acknowledgment from a manager or representative with sufficient corporate authority to accept the obligation for the company so the vendor has a strong legal position to claim payment. n4 Lopez did not believe that Burgower intended to withhold additional shipments to Sacos, absent a personal guaranty from Lopez that bound him individually for the corporate debt. Lopez believed Burgower simply wanted a more solid commitment from Sacos that all transactions were accepted by the company, which, as Lopez explained, is common in Mexico when amounts of business are important.

> n4 Lopez possessed authority to give a guaranty on behalf of Sacos.

Lopez testified he intended to sign, and did sign, the September 25 letter in his capacity as general manager of Sacos. He gave MPI a corporate guaranty. Lopez made the promise on the company's behalf. He had no [**7] personal debts to MPI. Lopez further explained the concept of "*aval*," as understood in Mexico, means to make a guaranty besides the obligation of the original debtor. But for the *aval* to qualify as a personal aval, the signator must specify that he is signing in an individual capacity. Lopez gave the September 25 letter to Burgower in Lopez's capacity as "general [*257] manager" of Sacos. Except for giving an *aval* to banks, Lopez had never given an "*aval*," or guaranty, so that his personal assets would be responsible for paying Sacos's debt.

After hearing the evidence, the trial court filed the following finding of fact and conclusions of law:

**FINDINGS [SIC] OF FACT**

1. The Court finds that Defendant Jorge Lopez Ventura did not sign [the September 25, 1998 letter] in an individual or personal capacity.

**CONCLUSIONS OF LAW**

1. The Court concludes that [the September 25, 1998 letter], read as a whole, does not clearly express an intent to bind Jorge Lopez Ventura in an individual or personal capacity.

2. The Court concludes that [the September 25, 1998 letter] is ambiguous.

3. The Court concludes that [the September 25, 1998 letter] lacks terms which [**8] are essential to the creation and enforcement of a personal guaranty, and is not complete in every material detail.

4. The Court concludes that [the September 25, 1998 letter] is not enforceable as a personal guaranty.

The court then rendered judgment ordering MPI recover $ 962,139.79, pre- and post- judgment interest, and attorney's fees in its suit against Sacos. The court further ordered MPI

take nothing by its suit against Lopez.

## DISCUSSION

### Introduction and Standard of Review

MPI presents the following four issues for review: (1) whether the trial court erred in concluding Lopez's September 25 letter is ambiguous and does not express an intent to bind Lopez in an individual or personal capacity; (2) whether the trial court erred in finding Lopez did not sign the September 25 letter in an individual or personal capacity; (3) whether the trial court erred in concluding Lopez's September 25 letter lacked terms essential to the creation and enforcement of a personal guaranty and is not complete in every material detail; and (4) whether the trial court erred in concluding Lopez's September 25 letter is not enforceable as a personal guaranty (interpreted [**9] by MPI as relating to consideration).

We review the trial court's conclusions of law de novo. *Smith v. Smith*, 22 S.W.3d 140, 143-44 (Tex. App.--Houston [14th Dist.] 2000, no pet.). The standard of review for conclusions of law is whether they are correct. *Dickerson v. DeBarbieris*, 964 S.W.2d 680, 683 (Tex. App.--Houston [14th Dist.] 1998, no pet.). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex. App.--Houston [14th Dist.] 1996, no writ). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

We review the trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards we apply in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297, 37 Tex. Sup. Ct. J. 857 (Tex. 1994). When the appellate record contains a reporter's record as it does here, findings of fact are not conclusive on appeal if the contrary is established as a matter of law, or [**10] if there is no evidence to support the findings. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex. App.--Houston [14th Dist.]), writ ref'd n.r.e., 699 S.W.2d 199, 28 Tex. Sup. Ct. J. 607 (Tex. 1985) (per curiam).

### [*258]  Issue one: Whether Lopez's September 25 Letter is Ambiguous

In issue one, MPI challenges the trial court's legal conclusion that Lopez's September 25 letter, in which he stated, "I, personally, guaranty all outstandings and liabilities of Sacos Tubularies," was ambiguous. A guaranty agreement is a contract in which one party agrees to be responsible for the performance of another party even if he does not have direct control. *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 185 (Tex. App.--Fort Worth 1995, no writ). Whether a contract is ambiguous is a question of law. *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 265 (Tex. App.--Houston [14th Dist.] 2002, pet. denied) (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121, 39 Tex. Sup. Ct. J. 537 (Tex. 1996)). If a contract is subject to two or more reasonable interpretations, the contract is ambiguous, thereby creating a fact issue on the parties' intent. *Fein*, 68 S.W.3d at 265 [**11] (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589, 40 Tex. Sup. Ct. J. 42 (Tex. 1996)). In contrast, if the written instrument is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *Fein*, 68 S.W.3d at 265 (citing *Coker v. Coker*,

650 S.W.2d 391, 393, 26 Tex. Sup. Ct. J. 368 (Tex. 1983)).

The fact the parties provide conflicting interpretations does not create an ambiguity. *Fein*, 68 S.W.3d at 265 (citing *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589). For an ambiguity to exist, both interpretations must be reasonable. *Lake Charles Harbor & Terminal Dist. v. Bd. of Trustees of the Galveston Wharves*, 62 S.W.3d 237, 243 (Tex. App.--Houston [14th Dist.] 2001, pet. denied) (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520, 38 Tex. Sup. Ct. J. 332, 39 Tex. Sup. Ct. J. 7 (Tex. 1995)). Only after a court first determines a contract is ambiguous may the court consider the parties' interpretations and admit extraneous evidence to determine the true meaning of the instrument. *Lake Charles Harbor*, 62 S.W.3d at 243 [**12] (citing *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520). It is improper to use a party's testimony to create an ambiguity when a contract is otherwise unambiguous. *Columbia Gas Transmission Corp.*, 940 S.W.2d at 592 n.2. n5

n5 In *National Union Fire Insurance Co. v. CBI Industries, Inc.*, the supreme court explained:

An ambiguity in a contract may be said to be "patent" or "latent." A patent ambiguity is evident on the face of the contract. A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. If a latent ambiguity arises from this application, parol evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement.

907 S.W.2d 517, 520, 38 Tex. Sup. Ct. J. 332, 39 Tex. Sup. Ct. J. 7 (Tex. 1995) (citations and footnote omitted). The court provided the following example of a latent ambiguity: "If a contract called for goods to be delivered to 'the green house on Pecan Street,' and there were in fact two green houses on the street, it would be latently ambiguous." *Id.* at 520 n.4. Lopez is not claiming a latent ambiguity in the present case.

[**13]

In arguing the September 25 letter is ambiguous, Lopez invokes the rule of *strictissimi juris*, which entitles a guarantor to have his agreement strictly construed and not extended by construction or implication beyond the precise terms of his contract. See *McKnight v. Va. Mirror Company*, 463 S.W.2d 428, 430, 14 Tex. Sup. Ct. J. 234 (Tex. 1971). This rule, however, applies after the terms of the guaranty have been ascertained. See *id.*

In the September 25 letter, Lopez wrote, "I . . . want to certify you [sic] that I, personally, guaranty all outstandings [sic] and liabilities of Sacos Tubulares with [*259] Material Partnerships as well as future shipments." Lopez nevertheless argues the "mere mention" of "guaranty" or "guarantor" is not sufficient to create individual liability without other material terms. In support, he cites *Tenneco Oil Co. v. Gulsby Engineering, Inc.*, 846 S.W.2d 599, 605 (Tex. App.--Houston [14th Dist.] 1993, writ denied), and *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 657 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.). In each case, the court emphasized the absence of any guaranty language in the body of the document. [**14]

*Tenneco* involved the conveyance of a deed of trust as collateral to secure certain indemnity obligations. *846 S.W.2d at 605*. The defendants had signed the deed on lines bearing their names "Individually and d.b.a. Gulsby Enterprises" and also on signature lines bearing their names as "Guarantor for Gulsby Engineering, Inc." *Id. at 605*. This court held, "Absent any guaranty language in the body of the deed, we refuse to find that adding a signature line with the word 'guarantor' can transform a deed of trust into a guaranty of obligations additional to the conveyance of property described in the deed." *Id.* Unlike *Tenneco*, the *body* of Lopez's letter contains unambiguous guaranty language: "I, personally, guaranty."

In *Gulf & Basco Co. v. Buchanan*, the First Court of Appeals also acknowledged that a signature alone will not create an ambiguity in otherwise clear guaranty language in the body of an instrument:

There is no clear mode of signature that will absolutely fix or avoid personal liability. A signature followed by corporate office will result in personal liability where the individual is clearly designated within the instrument [**15] as personal surety for the principal. In such case, the corporate office may be construed a *descriptio personae* of the signator rather than indication of the capacity in which he signs.

*707 S.W.2d at 657*.

Lopez contends *Gulf & Basco Co. v. Buchanan* is on point, arguing the fact he used company letterhead and signed the letter in his capacity as general manager of Sacos, rather than individually, renders the language in the body of the letter ambiguous. The document at issue in *Gulf & Basco* contained the following signature lines:

Alan Buchanan Builders, Inc. [hand written]

NAME (Printed) [pre-printed]

6301 Ranchester, Houston

HOME ADDRESS

Alan B. Buchanan (hand written)

SIGNATURE

*Id. at 658*.

The First Court of Appeals concluded, "in the absence of a clear intent within the instrument to bind Buchanan in his individual capacity, the manner of execution is susceptible of two different and reasonable interpretations," *i.e.*, as binding either a corporation or an individual. *Id.* But, as discussed above, when clear language within the instrument designates the individual as personal surety for the principal, [**16] the corporate office following the signature does not vitiate the guaranty. *Id. at 657*.

Unlike the document in *Gulf & Basco*, the letter in the present case does express a clear intent to bind Lopez "personally." Accordingly, Lopez's signature over his corporate office does not render the document ambiguous. *Gulf & Basco* is inapposite.

On the issue of ambiguity, we conclude the document in the present case more closely resembles that in a recent case from the San Antonio court of appeals: *Taylor-Made Hose, Inc. v. Wilkerson, 21 S.W.3d 484* [*260] (Tex. App.--San Antonio 2000, pet. denied). In *Taylor-Made Hose*, the court considered language at the end of a single-page credit application by North American Transit, Inc. *See id. at 486*. The application had been signed by Lynne Wilkerson under lines containing her hand printed name and a hand printed designation of her title of vice president. *See id.* The court concluded:

As stated in the credit application . . ., Lynne Wilkerson "personally agreed to pay all invoices and cost of collection ... on any amount remaining

unpaid after 90 days" on North American Transit's open account [**17] with Taylor-Made Hose. *This agreement is not in any respect ambiguous.* By agreeing to "personally . . . pay" North American Transit's delinquent account, Wilkerson made herself personally liable for the corporation's debt.

*Id.* at 488 (emphasis added).

Lopez nevertheless argues we should distinguish language found in credit applications because a credit application "is by definition" a guaranty. n6 Even if this is the case, it does not answer the question of whether the guaranty language and the signature show clear intent that the individual be bound. As in *Taylor-Made Hose*, the guaranty language unambiguously indicates Lopez's personal guaranty.

> n6 In support, Lopez cites *Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 323 (Tex. App.--El Paso 1995, writ denied). Referring to the multi-purpose form used for credit applications in the case before it, the El Paso court of appeals wrote:
>
> The fact that the agreement was for extension of credit to FISI does not create a conflict between the guaranty paragraph and the rest of the application. The application is by definition a guarantee agreement whereby a third person undertakes to answer for the debt of another. FISI stood as the primary obligor with Vanden Berghe as guaranty in the event that FISI failed to pay.
>
> *Id.*

[**18]

Finally, Lopez directs this court's attention to *Texas Business and Commerce Code section 3.402(b)(1)*, which provides:

(b) If a representative signs the name of the representative to an instrument and the signature is an authorized signature of the represented person, the following rules apply:

(1) If the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument.

TEX. BUS. & COM. CODE ANN. § 3.402(b)(1) (Vernon 2002).

Section 3.402(b)(1), however, deals with negotiable instruments. *See* TEX. BUS. & COM. CODE ANN. § 3.102(a) (Vernon 2002) (stating chapter applies to negotiable instruments). *See also* TEX. BUS. & COM. CODE ANN. § 3.104(b) (Vernon 2002) (providing, "'Instrument' means a negotiable instrument"). A guaranty agreement is not a negotiable instrument, and is not governed by the provisions of the Texas UCC. *Vaughn v. DAP Fin. Svcs.*, 982 S.W.2d 1, 6 (Tex. App.--Houston [1st Dist.] 1997, no pet. [**19] ); *Dann v. Team Bank*, 788 S.W.2d 182, 186 (Tex. App.--Dallas 1990, no writ); *Cortez v. Nat'l Bank of Commerce*, 578 S.W.2d 476, 478 (Tex. Civ. App.--Corpus Christi 1979, writ ref'd n.r.e.).

Furthermore, even were we to assume *Texas Business and Commerce Code section 3.402(b)(1)* somehow informs our analysis of the letter at issue, the section does not answer the question of whether Lopez's signature unambiguously shows he signed on behalf of Sacos, particularly given the language of personal guaranty in the body of the letter. The example of an [*261] unambiguous signature given in the comment, "'Principal by Agent, Treasurer,'" differs significantly from Lopez's signature. *See* TEX. BUS. & COM. CODE ANN. § 3.402(b)(1) cmt. 2 (Vernon 2002). Here, we have neither

the designation "Sacos by Lopez" nor the designation "Lopez for Sacos." *Cf. Block v. Aube,* 718 S.W.2d 914, 915 (Tex. App.--Beaumont 1986, no writ) (concluding appellant did not personally guaranty employment contract when he never used any personal pronouns in employment contract and the signature block contained company name [**20] followed by appellant's signature and "By its Owner and President," employer).

We hold Lopez's September 25 letter is not ambiguous, and therefore sustain MPI's issue one. Because of our disposition of issue one, we need not address MPI's issue two, which challenges the sufficiency of the evidence to support the trial court's finding Lopez did not sign the September 25 letter in an individual or personal capacity.

***Issue Three: Whether the September 25 Letter Contained All the Essential Terms Necessary to Creation and Enforcement of a Personal Guaranty.***

*Texas Business and Commerce Code section 26.01* provides in relevant part:

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

*TEX. BUS. & COM. CODE ANN.* § 26.01(a) (Vernon 2002). Subsection (b) applies to "a promise by one person to answer for the debt, default, or miscarriage of another person." *Id.* § 26.01(b)(2). [**21] n7 This provision requires "a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Cohen v. McCutchin,* 565 S.W.2d 230, 232, 21 Tex. Sup. Ct. J. 340 (Tex. 1978). The essential terms of a guaranty agreement are (1) the parties involved, (2) a manifestation of intent to guaranty the obligation, and (3) a description of the obligation being guaranteed. *Park Creek Assocs., Ltd. v. Walker,* 754 S.W.2d 426, 429 (Tex. App.--Dallas 1988, writ denied).

n7 The parties agree the guaranty agreement in this case is within the statute of frauds. As discussed in issue four, below, the consideration for the guaranty flowed to Sacos, rather than to Lopez. This aspect of the guaranty brings it within the statute of frauds. *See Cooper Petroleum Co. v. La Gloria Oil & Gas Co.,* 436 S.W.2d 889, 896, 12 Tex. Sup. Ct. J. 206 (Tex. 1969) (holding when only benefit guarantor received from continued credit sales was as one of stockholders, benefit was too remote and indirect to be enforceable as an original undertaking and promised guaranty was within statute of frauds).

[**22]

Lopez's September 25 letter set forth the parties involved: Lopez and MPI. The letter contained a manifestation of intent to guaranty the obligation: "I, personally, guaranty." Finally, the letter contained a description of the obligation being guaranteed: "all outstandings and liabilities of Sacos Tubulares with Material Partnerships as well as future shipments." Although Lopez lists other potential terms not included in the letter, such as when Lopez is to pay, whether MPI must make demand on Sacos

before making demand on Lopez, whether Lopez and Sacos are jointly liable, Lopez provides no case law to support a claim these are essential terms.

[*262] Lopez instead relies on *Dunn v. Growers Seed Ass'n*, 620 S.W.2d 233 (Tex. App.--Amarillo 1981, no writ). In *Dunn*, the Amarillo court of appeals concluded the following two documents did not contain essential terms of a guaranty agreement:

1. A telegram from the corporation's executive vice president, stating,

I WISH TO CONFIRM OUR VERBAL UNDERSTANDING REGARDING SEED REQUESTS, THE COMPANY WILL BE PLEASED TO EXECUTE NOTES WE WILL GUARANTEE PAYMENT AS PROMISED. REGARDING THIS CROP NEEDS. SUNFLOWER SEEDS FOR 3,000 ACRES. [**23] MILO SEEDS FOR 3,000 . . . .

2. A mailgram from the corporation's officer and 80 percent owner, stating,

WE HAVE SALE ON LARGE PERCENT OF HAITIAN PLANTATION TO HAITIAN DEAL IS SUPPOSE TO CLOSE JUNE 23 YOUR ACCOUNT IN LINE TO BE PAID IN FULL AT CLOSING

SINCERELY

LONNIE DUNN

*Id.* at 235-36, 238. The Amarillo court observed the mailgram was not a promise by Dunn to pay the account, but simply a statement the account was "in line to be paid" by an unspecified entity. *Id.* at 238. The court also observed the telegram did not state what was to be paid, who was to pay it, or the terms of the "payment as promised." *Id.* In contrast, as discussed above, Lopez's September 25 letter states he (Lopez) promises to pay Saco's liabilities to MIP. *Dunn* is distinguishable.

Because the September 25 letter set forth the essential terms to establish an enforceable guaranty, we sustain issue three.

***Issue Four: Whether there was Consideration for the Guaranty Agreement***

Like any contract, a guaranty agreement must be supported by consideration. *Hargis v. Radio Corp. of Amer., Elec. Components*, 539 S.W.2d 230, 232 (Tex. [**24] Civ. App.--Austin 1976, no writ). Consideration "consists of either a benefit to the promisor or a detriment to the promisee. The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496, 34 Tex. Sup. Ct. J. 727 (Tex. 1991) (citations omitted). Consideration for a guaranty agreement is usually either the sufferance of a detriment by the creditor or a benefit conferred on the primary debtor. *Hargis*, 539 S.W.2d at 232.

When, as in the present case, the parties enter into the guaranty independent of the transaction that initially caused an obligation, consideration independent of the obligation must support the guaranty. *Gooch*, 902 S.W.2d at 185. The consideration need not pass to the guarantor; consideration is sufficient if the primary debtor receives some benefit. *Beltran v. Groos Bank, N.A.*, 755 S.W.2d 944, 948 (Tex. App.--San Antonio 1988, no writ); see *Smith v. Christley*, 755 S.W.2d 525, 532 (Tex. App.--Houston [14th Dist.] 1988, writ denied), *disapproved on other grounds by Van Allen v. Blackledge*, 35 S.W.3d 61, 65 n.3 [**25] (Tex. App.--Houston [14th Dist.] 2000, pet. denied). An agreement to continue doing business with a party confers a benefit on that party. *Gooch*, 902 S.W.2d at 185.

In the present case, MPI had stopped shipping product to Sacos when MPI's owner wrote Lopez requesting Lopez's personal guaranty. After receiv-

ing Lopez's September 25 letter, MPI resumed shipping product to Sacos, sending additional shipments valued at approximately [*263] $ 200,000. Lopez's guaranty was supported by consideration. See Gooch, 902 S.W.2d at 185.

We sustain issue four.

## CONCLUSION

We conclude Lopez's September 25 letter is an unambiguous and enforceable personal guaranty of Saco's debt to MPI. We therefore sustain MPI's issues one, three, and four. Accordingly, we reverse that portion of the judgment denying recovery to MPI in its suit against Lopez and render judgment for MPI and against Lopez, as guarantor, in the amount of $ 962,139.79, plus pre-judgment and post-judgment interest. The remainder of the judgment is not before the court and is unaffected by this decision.

/s/ John S. Anderson

Justice

CONCURBY: Kem Thompson Frost

CONCUR:

## CONCURRING OPINION [**26]

I respectfully concur in the court's disposition of the case. I write separately to address the first and third issues raised by appellant Material Partnerships, Inc. ("MPI") challenging the judgment in favor of appellee Jorge Lopez Ventura ("Lopez").

The court correctly finds, as to MPI's first issue, that the language of the September 25th letter is unambiguous and creates personal liability for Lopez as guarantor of the debt of his employer, Sacos Tubalares del Centro, S.A. de C. V. ("Sacos"). The reason this finding is correct is that any other interpretation or construction would render the agreement meaningless.

MPI claims the September 25th letter from Lopez creates an individual obligation for Lopez to pay Sacos's debt because he "personally guaranteed" it. Lopez characterizes the letter as a "corporate guaranty" n1 and claims it is ambiguous because he signed it in his representative capacity -- as "General Manager" of Sacos.

---

n1 Lopez's characterization of the September 25th letter as a "corporate guaranty" of Sacos is a non sequitur in this factual context. The only way there could be a corporate guaranty of the Sacos debt is if another corporation had guaranteed the debt.

---

[**27]

In construing agreements, courts must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none of the provisions will be rendered meaningless. Coker v. Coker, 650 S.W.2d 391, 393, 26 Tex. Sup. Ct. J. 368 (Tex. 1983). If this court adopted Lopez's construction of the September 25th letter, the agreement would be meaningless. It simply makes no sense for Sacos to be both the account debtor and the "corporate guarantor" because a guarantor is one who stands for the debt of another. MPI would have no reason to request or obtain a guaranty from Sacos for Sacos's own debt. Thus, if we were to hold that the September 25th letter did not create an individual obligation for Lopez, then we would have to hold that it did not create an obligation at all. See, e.g., American Petrofina Co. of Tex. v. Bryan, 519 S.W.2d 484, 486-87 (Tex. Civ. App.--El Paso 1975, no writ) (holding that letter -- signed by officers with their corporate office

shown under signature -- clearly intended guaranty of corporate debt and if court were to hold that letter was not personal guaranty by the officers in their individual [**28] capacities, then court would have to hold that letter created no obligation, contrary to intent of language in letter). We must avoid any construction that would render the agreement meaningless or negate the purpose of the guaranty. *See Coker*, 650 S.W.2d at 393. Holding that Lopez signed in his individual capacity [*264] is the only construction that gives the September 25th letter meaning. *See Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 322-23 (Tex. App.--El Paso 1995, no writ); *Eubank v. First Nat. Bank of Bellville*, 814 S.W.2d 130, 133 (Tex. App.--Corpus Christi 1991, no writ); *Dann v. Team Bank*, 788 S.W.2d 182, 183-84 (Tex. App.--Dallas 1990, no writ); *American Petrofina Co. of Tex.*, 519 S.W.2d at 486-87; *see also Roy v. Davidson Equip., Inc.*, 423 So. 2d 496, 497 (Fla. Dist. Ct. App. 1982).

Though Lopez claims the letter was intended to serve only as an acknowledgment that Sacos accepted the transactions and obligation to pay, the words he chose did not convey that meaning. In both legal terminology and common usage, the verb "guaranty" means to answer for the payment [**29] of a debt of another. *See Southwest Sav. Ass'n v. Dunagan*, 392 S.W.2d 761, 766 (Tex. Civ. App.--Corpus Christi 1965, writ ref'd n.r.e.) (stating that a guaranty is a promise of one person to perform an act of the same kind as another person is contractually bound to the promisee to perform, or a promise to pay compensation for the other's nonperformance, the promise being conditioned on the latter's nonfulfillment of his duty); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1007 (1993 ed.) (defining the verb guaranty as "to . . . undertake to answer for the debt, default, or miscarriage of [another]: become responsible for the fulfillment of [the agreement of another]"). By adding the modifier "personally" to that verb, Lopez took that obligation on himself. He effectively removed his hat as "General Manager" of Sacos and individually undertook to answer for the debt of the corporation. The words "personally guaranty," when used in combination and in reference to outstanding debt, are not susceptible of any other meaning. n2 *See Austin Hardwoods, Inc.*, 917 S.W.2d at 322-23; *Eubank*, 814 S.W.2d at 133; *Dann*, 788 S.W.2d at 183-84; [**30] *American Petrofina Co. of Tex.*, 519 S.W.2d at 486-87. Therefore, the September 25th letter is not ambiguous, and this court correctly construes it as a personal guaranty by Lopez as a matter of law. *See Coker*, 650 S.W.2d at 393.

   n2 While the majority is correct in noting that *section 3.402 of the Texas Business and Commerce Code* applies only to negotiable instruments and thus does not apply to the September 25th letter, the common law principles on which that statute is based are applicable to guaranty agreements. *See Lassiter v. Rotogravure Committee, Inc.*, 727 S.W.2d 8, 9-10 (Tex. App.--Dallas 1986, writ ref'd n.r.e.) (stating section 3.403 [predecessor statute to current *section 3.402*] of the *Texas Business and Commerce Code* reflects common law principles of agency); *Byrd v. Southwest Multi-Copy Inc.*, 693 S.W.2d 704, 706 (Tex. App.--Houston [14th Dist.] 1985, no writ) (noting "the general scheme of Sec. 3.403 [predecessor statute to current section 3.402] follows the common law as applied to negotiable and non-negotiable instruments"). Under these principles, however, the letter, as worded, is unambigu-

ously a personal guaranty by Lopez.

[**31]

In response to MPI's third issue, Lopez claims the guaranty is unenforceable because it is missing "essential terms," such as the time of payment, the necessity of first making demand on Sacos, and whether there is joint and several liability. The majority observes that Lopez provides no case law to support his claim that these terms are essential to the formation of a guaranty agreement. The failure of the parties to explicitly address these issues in the September 25th letter does not render the guaranty unenforceable because the common law fills in the gaps when parties fail to address these issues in a guaranty agreement. *See Ford v. Darwin*, 767 S.W.2d 851, 854-55 (Tex. App.--Dallas 1989, writ denied); *Houston Furniture Distribs., Inc. v. Bank of Woodlake, N.A.*, 562 S.W.2d 880, 884 (Tex. Civ. App.--Houston [*265] [1st Dist.] 1978, no writ). The right of recovery against an absolute guarantor depends upon the condition that the principal obligor has defaulted in the performance of his duty. A guarantor's liability on a debt is measured by the principal's liability unless a more extensive or more limited liability is expressly set forth in the guaranty [**32] agreement. *Houston Furniture Distrib., Inc.*, 562 S.W.2d at 884.

Our jurisprudence has long recognized a distinction between a "guaranty of payment" and a "guaranty of collection." *See Ford*, 767 S.W.2d at 854. The former is the equivalent of the term "absolute guaranty" in reference to the payment of a debt and the guarantor can be sued without joining the principal debtor. *See id.* A "guaranty of collection" is an undertaking by the guarantor to pay the promisee if the debt cannot be collected by the use of reasonable diligence to collect the debt from the principal obligor. *See id.* Unless the guaranty agreement specifies otherwise, a guaranty is deemed a guaranty of payment, which means the guarantor is jointly and severally liable on the debt and may be sued under the same terms as the principal obligor. *See Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex. App.--Houston [14th Dist.] 1997, no pet.); *Ford*, 767 S.W.2d at 854-55; *Houston Furniture Distribs., Inc.*, 562 S.W.2d at 884-85; see also TEX. BUS. & COM. CODE § 3.419. Even though the September [**33] 25th letter is silent on the issue, under common-law principles, it constitutes a guaranty of payment by Lopez. *See Cox*, 949 S.W.2d at 530; *Ford*, 767 S.W.2d at 854-55; *Houston Furniture Distribs., Inc.*, 562 S.W.2d at 884-85. Therefore, the trial court should have held Lopez jointly and severally liable as a guarantor of payment for Sacos's debt to MPI. Because the trial court failed to do so, its judgment in favor of Lopez must be reversed and judgment rendered in favor of MPI.

/s/ Kem Thompson Frost

Justice

LEXSEE 796 S.W.2D 10

Sheila A. McCARTHY, Individually and as Administratrix of
the Estate of Ronald McCARTHY, Appellant v. LOUISVILLE
CARTAGE COMPANY, INC.; and, Deward Hack, Appellees

No. 89-CA-1736-MR

Court of Appeals of Kentucky

796 S.W.2d 10; 1990 Ky. App. LEXIS 74

June 1, 1990, Rendered

**PRIOR HISTORY:** [**1] Appeal from Jefferson Circuit Court; Hon. Michael J. O'Connell, Judge, Civil Action No. 88-CI-944.

**DISPOSITION:**

REVERSING AND REMANDING

**COUNSEL:**

Attorney for Appellant: Peter F. Ervin, Alagia, Day, Marshall, Mintmire & Chauvin, Louisville, Kentucky.

Attorney for Appellees: James Dean Liebman, Liebman & Liebman, Frankfort, Kentucky.

**JUDGES:**

West, Judge. Howard, Judge, concurs. Dyche, Judge, concurs in result only.

**OPINIONBY:**

WEST

**OPINION:**

[*10] Sheila McCarthy, wife and executrix of the deceased employee of the appellee, Louisville Cartage Company, Inc., appeals from the trial court's grant of directed verdict in her action to recover the value of a life insurance policy allegedly promised as part of her husband's employment compensation and then cancelled without notice. The trial court, in essence, ruled that since the life insurance policy premiums were paid solely by the employer and the employer was under no legal duty to provide such coverage, its cancellation did not give rise to a cause of action. The appellant contends that even though the life insurance plan was voluntary on the part of the employer, once undertaken [**2] and relied on by the employees, the employer was thereafter estopped to cancel the coverage [*11] without notice to the employee. We agree and reverse.

The decedent, Ronald McCarthy, was employed by Louisville Cartage as a tractor-trailer truck driver. At the time of McCarthy's employment, Louisville Cartage agreed to pay wages and employee benefits including health and life insurance coverage. At that time, the coverage in effect was provided by General American Life Insurance Company. Employees could voluntarily participate by authorizing a fifteen dollar ($ 15.00) weekly deduction from their wages which Mr. McCarthy elected to do.

In December of 1985, Louisville Cartage terminated its insurance coverage with General American. Although the testimony was contradictory, ap-

pellant presented evidence that the employer purchased new life insurance coverage from Mutual Benefit Life Insurance Company. This policy provided employees with twenty thousand dollars ($ 20,000.00) in death benefits plus an additional twenty thousand dollars ($ 20,000.00) in the event of accidental death. Sheila McCarthy stated that her husband received a Mutual Benefit certificate or policy and brought it home with [**3] him; however, she was now unable to locate the papers. Another former employee produced a policy that he received from Mutual Benefit issued through Louisville Cartage. The testimony of the coemployee as well as Mrs. McCarthy's testimony clearly established reliance upon the existence of this insurance.

The evidence also established that in April of 1986, Louisville Cartage received notices of premiums due for the replacement life insurance coverage. This notice further informed the employer that the coverage was about to lapse and advised Louisville Cartage to instruct their employees of the lapse of coverage if the premium was not paid. Coverage did indeed lapse and appellant presented evidence that the employees were not informed of the cancellation until well after Ronald McCarthy's death.

At the close of the plaintiff's case, the employer moved for a directed verdict arguing that the coverage was part of a noncontributory group plan and that Louisville Cartage had no "legal duty" to give notice of lapse of coverage to its employees. n1 The court below apparently agreed that there was no legal duty and therefore that appellant could not establish an action based upon promissory [**4] estoppel. We disagree and reverse the cause for a new trial.

n1 There was contradictory evidence as to whether the fifteen dollar ($ 15.00) weekly deduction was applied toward the health insurance only or whether it was also to be applied toward payment of the life insurance premium. For our purposes, we will assume the life insurance coverage was noncontributory.

In *Meade Const. Co. v. Mansfield Commercial Elec.*, Ky., 579 S.W.2d 105, 106 (1979), Our Supreme Court referred to the doctrine of promissory estoppel as set forth in the Restatement (Second) of Contracts § 90 (1965), noting that:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

The Court went on to state that it did not decide "whether the doctrine of promissory estoppel applies in this state," but held that a claim was stated and that the appellant [**5] was entitled to damages under "any conception of fairness and equity." *Id.* at 106.

In a subsequent opinion, the Court referred to *Meade, supra*, noting that:

[D]espite their disclaimer of promissory estoppel, this court, in Meade, utilized the word "reliance," an element of estoppel, to reach its conclusion. *Finney Co., Inc. v. Monarch Const. Co., Inc.*, Ky., 670 S.W.2d 857 (1984).

After having reviewed the case law on this issue, we are of the opinion that the doctrine of promissory estoppel, if it can be established, is "alive and well" in this Commonwealth. See, *Lake Bluff Orphanage v. Magill's Ex'rs.*, 305 Ky. 391, 204 S.W.2d 224 (1947); *Floyd v. Christian Church Widows and Orphans Home*, 296 Ky. 196, [*12] 176 S.W.2d 125 (1943); *Gray v.*

*Jackson Purchase Prod. Credit,* Ky. App., 691 S.W.2d 904 (1985). Furthermore, we believe appellant herein did present sufficient evidence of the elements of estoppel to allow the case to go to a jury.

Contrary to appellees' assertions, the theory upon which appellant seeks recovery is not founded upon a legal duty and a breach thereof; but rather, it is based upon a mere promise and reliance on that promise. Appellant stated a cause [**6] of action herein which sounds in contract but is founded in equity. See, Restatement of the Law, Second, Contracts 2d, § 90, comment a (1981). The whole theory of a promissory estoppel action is that detrimental reliance becomes a substitute for consideration under the facts of a given case. Calamari and Perillo, The Law of Contracts, Hornbook Series § 105 (1970). Numerous oral and gratuitous promises have been enforced on this basis. Id. at Chapter 6, § 99-105. Promises by employers to provide certain fringe benefits are generally found to be supported by consideration but will, at least, give rise to the elements of a promissory estoppel. *Weesner v. Elec. Power Bd. of Chattanooga,* 48 Tenn. App. 178, 344 S.W.2d 766 (1961); The Law of Contracts, supra, at § 109. The employer can reasonably foresee that continuation in employment has been induced and injustice can be avoided only by giving effect to the promise.

Equitable estoppel is adopted on the opposite ground of legal estoppel, to promote equity and justice of the individual case by preventing a party from asserting a right or defense under a technical rule of law. 31 C.J.S. § 62, Estoppel at 390 [**7] (1964).

Whether or not Louisville Cartage had a legal duty to advise its employees that the life insurance coverage had been terminated is not the question. We do note that different jurisdictions have reached different results on that issue. 36 ALR 3d 541 (1971); 22 ALR 4th 321 (1983); 68 ALR 2d 249 (Later Case Service, 1984); *Metropolitan Life Ins. Co. v. Korneghy,* 37 Ala. App. 497, 71 So. 2d 292 (1954); *Larson v. Wycoff Company,* Utah, 624 P.2d 1151 (1981); *Freeman v. Bonnes Trucking, Inc.,* Iowa, 337 N.W.2d 871 (1983). However, the issue before this Court is whether the appellant set forth a prima facie case of estoppel sufficient to preclude the directed verdict rendered below.

In *Gray v. Jackson Purchase Prod. Credit,* Ky. App., 691 S.W.2d 904, 906 (1985), this Court set forth the elements of an estoppel as follows:

1. Conduct, including acts, language and silence, amounting to a representation or concealment of material facts;
2. The estopped party is aware of these facts;
3. These facts are unknown to the other party;
4. The estopped party must act with the intention or expectation his conduct will be acted upon; and
5. The other party in fact relied on this [**8] conduct to his detriment.

Examining each of these elements in conjunction with the evidence presented and viewing that evidence in a light most favorable to the appellant, we believe a prima facie case has been established. *NCAA v. Hornung,* Ky., 754 S.W.2d 855 (1988).

Appellant presented evidence that Ron McCarthy was promised and was given a life insurance policy as part of his employment benefits. There was evidence that this promised coverage was terminated and evidence that the employer knew of the termination but did not reveal that fact to Mr. McCarthy. We believe it could be reasonably expected that the McCarthys would rely on the supposed existence of the coverage and there was proof to that effect before the jury. That re-

liance by its employees should have been foreseen by Louisville Cartage and presents, in our view, a jury question as to whether enforcement of the promised coverage is the only means of avoiding injustice. See, *Southside, Inc. v. Clark*, Miss., 460 So. 2d 113 (1984).

This is not to say that every promise to procure insurance will give rise to such a cause of action. Often the promise can only be construed as a promise to use reasonable [*13] efforts to procure [**9] the insurance and reliance by the promisee would be unjustified even if it could be proven. [See, e.g., Restatement (Second) on Contracts, § 90, comment e and cases cited therein.]

In *Lynch v. Dawson*, Ky., 485 S.W.2d 494 (1972), the former Court of Appeals upheld a judgment denying recovery based upon a similar estoppel argument. However, in that case, there was no evidence of a promise nor any evidence of reliance that could be expected or even justified under the facts. *Id.* at 496.

In the case at bar, we do not pass judgment on the merit of the appellant's claim. We simply hold that there was sufficient evidence presented for a jury determination of the issues herein and that appellees' motion for a directed verdict should have been overruled. *Grant v. Wrona*, Ky. App., 662 S.W.2d 227 (1983).

The judgment is therefore reversed and the cause remanded for a new trial.