LEXSTAT KRS 371.065

KENTUCKY REVISED STATUTES ANNOTATED
Copyright: 2005 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** CURRENT THROUGH THE 2005 REGULAR SESSION ***
*** ANNOTATIONS CURRENT THROUGH OCTOBER 22, 2005 ***

TITLE XXX  Contracts
CHAPTER 371  Formality and Assignability of Contracts - Installment Sales Contracts
General Provisions

**GO TO KENTUCKY STATUTES ARCHIVE DIRECTORY**

KRS § 371.065 (2005)

371.065. Requirements for valid, enforceable guaranty.

(1) No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates. Termination of the guaranty on that date shall not affect the liability of the guarantor with respect to:

(a) Obligations created or incurred prior to the date; or

(b) Extensions or renewals of, interest accruing on, or fees, costs or expenses incurred with respect to, the obligations on or after the date.

(2) Notwithstanding any other provision of this section, a guaranty may, in addition to the maximum aggregate liability of the guarantor specified therein, guarantee payment of interest accruing on the guaranteed indebtedness, and fees, charges and costs of collecting the guaranteed indebtedness, including reasonable attorneys' fees, without specifying the amount of the interest, fees, charges and costs.

**HISTORY:** (Enact. Acts 1986, ch. 485, § 1, effective July 15, 1986; 1990, ch. 38, § 1, effective July 13, 1990.)

## Culver Halliday

**From:** Cecily Dumas [cdumas@friedumspring.com]
**Sent:** Friday, October 28, 2005 1:16 PM
**To:** Culver Halliday
**Cc:** Andrew Caine; anne_kennelly@hp.com; Ellen Friedman; Gail S. Greenwood
**Subject:** RE: InaCom Corp. v. Lexmark International, Inc.

Culver,

Thank you for your e-mail advising that Lexmark and Inacom have settled the preference claim.

Hewlett-Packard Company takes no position on the settlement and expressly reserves all of the claims, defenses, rights and remedies it may hold.

Regards,

Cecily

> -----Original Message-----
> **From:** Culver Halliday [mailto:Culver.Halliday@skp.com]
> **Sent:** Friday, October 28, 2005 7:10 AM
> **To:** Cecily Dumas
> **Cc:** Andrew Caine
> **Subject:** InaCom Corp. v. Lexmark International, Inc.
>
> Cecily:
>
> As scheduled, the trial of the complaint filed by InaCom Corp. ("InaCom") against Lexmark International, Inc. ("Lexmark"), in the United States District Court for the District of Delaware, began on October 17, 2005. On the third day of the trial, October 19, 2005, InaCom and Lexmark reached an agreement ("Settlement Agreement") compromising InaCom's claims against Lexmark.
>
> Pursuant to the Settlement Agreement, InaCom has agreed to release its claims against Lexmark in exchange for payment of $990,000, and a release of the claim that Lexmark would otherwise have as an unsecured creditor of InaCom's bankruptcy estate. As you know, InaCom alleged in its complaint that preference period transfers by InaCom to Lexmark of $2,928,090.91 should be avoided and the entire amount refunded to the InaCom bankruptcy estate with interest.
>
> Lexmark believes that the Settlement Agreement it has reached with InaCom is appropriate under the circumstances. However, because Lexmark is seeking to recover from Hewlett-Packard Company ("HP") the amount it pays to InaCom, in an abundance of caution, Lexmark insisted, and InaCom agreed, that the Settlement Agreement would be contingent upon HP either approving the Settlement Agreement or taking over the defense of InaCom's claims against Lexmark and holding it harmless in the event damages are assessed against it.
>
> Accordingly, please be advised that InaCom and Lexmark have entered into the Settlement Agreement and, unless HP advises us immediately that it does not approve the Settlement Agreement and agrees to take over the defense of the case and hold Lexmark harmless, Lexmark will proceed on the assumption that HP approves of the Settlement Agreement.
>
> Thank you for your attention to this matter.
>
> Culver

**Apx. 569**



# STOLL·KEENON·OGDEN
### PLLC

2650 AEGON Center  
400 West Market Street  
Louisville, KY 40202-3377  
(502) 568-9100  
Fax: (502) 568-5700  
www.skofirm.com

CULVER V. HALLIDAY  
502-568-5707  
culver.halliday@skofirm.com

March 28, 2006

**By Facsimile**  
**(415) 834-1044**

Cecily A. Dumas, Esq.  
Friedman Dumas & Springwater LLP  
150 Spear Street  
San Francisco, California 94105

**Lexmark International, Inc. v. Compaq Computer Corporation, et al.**  
**Case No. 1:04-cv-00583-GMS (D. Del. filed June 25, 2004)**

Dear Cecily:

  The third-party complaint ("Complaint") filed by Lexmark International, Inc. ("Lexmark") against Compaq Computer Corporation ("Compaq") and Custom Edge, Inc. ("Custom Edge") includes nine separate claims for relief. The first and third claims for relief allege that Lexmark is a third-party beneficiary under the Asset Purchase Agreement ("APA") entered into by Compaq and Custom Edge with InaCom Corp. This letter will confirm that Lexmark is not pursuing and waives its third-party beneficiary claims based on the APA. Lexmark will so advise the Court in its proposed findings of fact and conclusions of law.

  Lexmark indicated it would seek attorney fees as an element of damages under the substantive law that might govern certain of the claims alleged by Lexmark in the action. This letter will confirm that Lexmark is not seeking attorney fees as an element of damages. Lexmark will so advise the Court in its proposed findings of fact and conclusions law. Lexmark will, however, if a judgment is entered in its favor on the Complaint, seek an award of attorney fees, and also nontaxable costs and expenses, by motion under Rule 54(d)(2) of the Federal Rules of Civil Procedure, based on the agreement reflected in Ben K. Wells's February 5, 2001 letter.

Sincerely,

Culver V. Halliday

Case 1:04-cv-00583-GMS    Document 139-28    Filed 03/31/2006    Page 5 of 14

Inacom vs. Tech Data                 1/26/2005                        MICHAEL ZAVA

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

CHAPTER 11 CASE NO. 00-2425 (PJW)
Jointly Administered Adv. No. 00-3495 (PJW)
Dist. Adv. No. 01-579 (BMS)

In Re:

INACOM CORP., et al.,

                     Debtors,
_____

INACOM CORP., on behalf of all
affiliated Debtors,
                    Plaintiff,
v.

TECH DATA CORPORATION,
                    Defendant.
_____

TECH DATA CORPORATION,

      Third-Party Plaintiff,
v.
COMPAQ COMPUTER CORPORATION, et al.,
      Third-Party Defendant.
_____

DEPOSITION
OF
MICHAEL ZAVA

350 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, Florida

Wednesday, January 26, 2005
9:14 a.m. - 4:14 p.m.

Case 1:04-cv-00583-GMS   Document 139-28   Filed 03/31/2006   Page 6 of 14

Inacom vs. Tech Data                         1/26/2005                         MICHAEL ZAVA

Page 2

APPEARANCES

For the Plaintiff:

> JEFFREY P. NOLAN, ESQ.
> Pachulski, Stang, Ziehl,
> Young & Jones, P.C.
> 10100 Santa Monica Boulevard
> 11th Floor
> Los Angeles, California 90067-6910
> (310) 277-6910

For the Defendant:

> CHARLES M. TATELBAUM, ESQ.
> STEPHEN C. HUNT, ESQ.
> Adorno & Yoss, P.A.
> 350 East Las Olas Boulevard
> Suite 1700
> Fort Lauderdale, Florida 33301
> (954) 763-1200

For the Third-Party Defendant Hewlett-Packard:

> CECILY A. DUMAS, ESQ.
> Friedman, Dumas & Springwater, LLP
> One Maritime Plaza
> Suite 2475
> San Francisco, California 94111
> (415) 834-3800

- - - - - -

INDEX

| Witness | Direct | Cross | Redirect |
|---|---|---|---|
| MICHAEL ZAVA | 4 | 72 | 171 |

Case 1:04-cv-00583-GMS   Document 139-28   Filed 03/31/2006   Page 7 of 14

Inacom vs. Tech Data                    1/26/2005                    MICHAEL ZAVA

Page 3

```
 1                  E X H I B I T    I N D E X
 2       Deposition           Description           Page No.
 3           1        Defendant's answer and
                      affirmative defenses              41
 4
             2        Proof of claim re Inacom          59
 5
             3        Person most knowledgeable
 6                    notice served by Inacom           64

 7           4        Customer profile                 107

 8           5        Letter Bates 390-391             109

 9           6        Letter from Guenther to Ward
                      2-11-00
10                                                     131

11           7        Letter from Francis to Zava
                      2-16-00                          131
12           8        First amended complaint for
                      avoidance and recovery of
13                    preferential transfers           173
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 1:04-cv-00583-GMS    Document 139-28    Filed 03/31/2006    Page 8 of 14

Inacom vs. Tech Data                    1/26/2005                    MICHAEL ZAVA

Page 6

1  deposition transcript. That certainly is your
2  right, but I also would like to inform you if you
3  make substantive changes to your deposition
4  transcript, either myself or another lawyer involved
5  in the case can comment upon that at time of trial
6  to either reflect your poor recollection or your
7  credibility.
8          Do you understand that?
9     A.   Yes.
10    Q.   Is there any reason I can't get your best
11 testimony today? Are you under any medication,
12 anything that might inhibit your ability to give
13 good testimony?
14    A.   **No, but I would like to break every hour,
15 I don't know how long this will go. I do have a hip
16 replacement that sort of requires I move around
17 every 45 minutes or an hour.**
18    Q.   Okay. That's fine. Any time you want to
19 take a break, just ask me to take a break. We are
20 not in a court so we have no pace that we have to
21 follow here.
22         <u>Can you tell me who you are currently
23 employed with?</u>
24    A.   <u>**Tech Data Corporation**.</u>
25    Q.   What's your position with Tech Data

Case 1:04-cv-00583-GMS    Document 139-28    Filed 03/31/2006    Page 9 of 14

Inacom vs. Tech Data                    1/26/2005                          MICHAEL ZAVA

Page 7

```
 1  Corporation?
 2       A.    I am vice president of credit and customer
 3  services for the Americas.
 4       Q.    How long have you held that position?
 5       A.    Ten years.
 6       Q.    You said vice president of credit and
 7  customer relations?
 8       A.    Customer services.
 9       Q.    Customer services of the Americas.
10             What location is your office that you are
11  currently, you have your desk located in?
12       A.    5350 Tech Data Drive, Clearwater, Florida.
13       Q.    Is there a zip?
14       A.    I was trying to remember that.  It's on my
15  business card.  33760.
16       Q.    Which reminds me, one admonition I didn't
17  give you.  I interrupted you which I shouldn't have
18  done.  To the extent you can, let me finish my
19  questions even though I am sure you are going to
20  anticipate what the questions will be and I will
21  give you the same courtesy.
22       A.    Okay.
23       Q.    Can you give me kind of a brief synopsis
24  what your duties and responsibilities are as vice
25  president of customer services?
```

Case 1:04-cv-00583-GMS    Document 139-28    Filed 03/31/2006    Page 10 of 14

Inacom vs. Tech Data                    1/26/2005                    MICHAEL ZAVA

Page 133

```
 1           Do you have any recollection of whether or
 2   not you saw that confirmation from Mr. Guenthner of
 3   Mr. Ward's recitation in his February 9th letter?
 4       A.   No.
 5       Q.   You can put Exhibit 6 aside and Exhibit 5
 6   aside.
 7           This letter from Mr. Francis is dated
 8   February 16, 2000.  Do you recall having received
 9   this letter on or shortly after February 16, 2000?
10       A.   Yes.
11       Q.   At the time you received this letter, did
12   you already know who Mr. Francis was?
13       A.   I did not know Mr. Francis at the time.  I
14   had heard his name.
15       Q.   When had you heard his name?
16       A.   In conversations with Mr. Ward, apparently
17   this was the name that was given as our Compaq
18   contact.
19       O.   Before you got this letter from Mr.
20   Francis, you never communicated with Mr. Francis
21   personally in any other way, right?
22       A.   I do not recall that.  I can't swear to
23   it.  Again, my memory is a little light.
24       Q.   Do you know why he sent you this letter?
25       A.   Obviously we would be concerned about the
```

Case 1:04-cv-00583-GMS   Document 139-28   Filed 03/31/2006   Page 11 of 14

Inacom vs. Tech Data                    1/26/2005                    MICHAEL ZAVA

Page 137

 1     Q.    Have you directed Mr. Ward to contact Mr.
 2  Frasca?
 3     A.    Likely.
 4     Q.    Do you have any specific recollection of
 5  asking Mr. Ward to follow up with John Frasca?
 6     A.    **I can only speak to what would be normal**
 7  **behavior and procedure.**
 8     Q.    The paragraph number two which seems to be
 9  the meat of the coconut says, "In connection with
10  such purchase, Custom Edge Inc. also assumed the
11  obligation to pay all of the outstanding amount on
12  the referenced account subject to the terms and
13  conditions of such account."
14           When you stated earlier your understanding
15  that Compaq was going to assume the liabilities,
16  were you referring to that statement that I have
17  just read in the letter?
18     A.    Yes.
19     Q.    When he says, "Custom Edge also assumed
20  the obligation to pay all of the outstanding amount
21  on the referenced account", did you take that to
22  mean, everything that was owing to Tech Data at that
23  point in time?
24     A.    Yes.
25     Q.    So when you got this letter, was it your

Case 1:04-cv-00583-GMS    Document 139-28    Filed 03/31/2006    Page 12 of 14

Inacom vs. Tech Data             1/26/2005                MICHAEL ZAVA

Page 138

1  understanding that as of the point in time Tech
2  Data -- strike that.
3           When you got this letter shortly after
4  February 16, 2000, was it your understanding that
5  everything that was then owing Tech Data by Inacom
6  would henceforth be paid by Compaq?
7       A.   Yes.
8       Q.   Do you have a recollection as you sit here
9  today of how much in accounts receivable Tech Data
10 had on its books for Inacom as of this February 16,
11 2000?
12      A.   I don't know.
13      Q.   When you got this letter, is it correct to
14 state that you considered Inacom to be a regular
15 performing customer, performing according to payment
16 terms?
17      A.   Yes.
18      Q.   I should break it up into two pieces.
19      A.   Sorry.
20      Q.   And this letter was simply advising you
21 that due to this acquisition Compaq through Custom
22 Edge would start to pay the accounts?
23      A.   Yes.
24      Q.   So your understanding in this time frame
25 was -- strike that.

Case 1:04-cv-00583-GMS    Document 139-28    Filed 03/31/2006    Page 13 of 14

Inacom vs. Tech Data                1/26/2005                MICHAEL ZAVA

Page 156

```
 1  assumed liabilities paid?
 2      A.    That's not the picture I see, no.
 3      Q.    That's not the picture you saw at the
 4  time?
 5      A.    Right.
 6      Q.    So if Tech Data's customer profile
 7  revealed otherwise, you would be surprised?
 8      A.    It might indicate calls were made to
 9  someone at Inacom or Custom Edge, whatever.  In our
10  minds we were talking Custom Edge or Compaq.
11      Q.    In your mind or Mr. Ward's mind or Tech
12  Data's mind?
13      A.    Possibly all.
14      Q.    But you can only refer to what was in your
15  mind.
16      A.    Correct.
17      Q.    Had Mr. Francis not delivered the letter
18  that you understood to indicate that Custom Edge was
19  assuming all the payables owing to Tech Data, what
20  would you have done as the credit manager?
21            MR. TATELBAUM:  Objection, if you
22       speculate.  But don't speculate; if you
23       know.
24      A.    We would have reacted differently.  As to
25  what exactly we would have done, I can not say, but
```

Case 1:04-cv-00583-GMS    Document 139-28    Filed 03/31/2006    Page 14 of 14

Inacom vs. Tech Data                    1/26/2005                    MICHAEL ZAVA

Page 157

```
 1  we would have reacted quite differently to the
 2  entire situation.
 3      Q.   I may have asked you this and if I did, I
 4  apologize:  Do you know what the outstanding
 5  receivable was from Inacom as of this closing,
 6  February 16, 2000?
 7      A.   I don't.
 8      Q.   Do you know if it was less than a million
 9  dollars or more than $10 million?
10      A.   It was several million, I know that much.
11      Q.   Was it less than 10 million?
12      A.   I can't say without going back and
13  looking.
14      Q.   Did whatever the number was, the several
15  million, did everything eventually get paid?
16      A.   No.
17      Q.   Do you recall how much didn't get paid?
18      A.   Eight or 900,000, something of that
19  nature.
20      Q.   So all but eight or 900,000 got paid?
21      A.   Yes.
22      Q.   Have you attempted to collect that eight
23  or 900,000 from H-P?
24      A.   No.
25      Q.   Why not?
```