# EXHIBIT B

1            UNITED STATES DISTRICT COURT
                 DISTRICT OF DELAWARE
2              CASE NO. 04-CV-583

3
4          **DEPOSITION OF ROBERT KENDRICK**

5
INACOM CORP. on behalf of all              PLAINTIFF
6  affiliated debtors

7  v.

8  LEXMARK INTERNATIONAL, INC.            DEFENDANT

9  LEXMARK INTERNATIONAL, INC.         THIRD-PARTY
                                          PLAINTIFF
10 v.

11 COMPAQ COMPUTER CORP., ITY CORP.,      THIRD-PARTY
    and CUSTOM EDGE, INC.                 DEFENDANTS
12

13         The deposition of **ROBERT KENDRICK** was taken on

14 behalf of the plaintiff, Inacom Corporation, before Ann

15 Hutchison, Registered Professional Reporter and Notary

16 Public in and for the State of Kentucky at Large, at the

17 law office of Stoll, Keenon & Park, 300 West Vine

18 Street, Suite 2100, Lexington, Kentucky, on Tuesday,

19 February 8, 2005, beginning at the hour of 9:38 a.m.

20 Said deposition was taken pursuant to Rule 30 of the

21 Federal Rules of Procedure and Rule 7030 of the Federal

22 Bankruptcy Procedure.

23

24            **ACTION COURT REPORTERS**
                **184 North Mill Street**
25          **Lexington, Kentucky 40507**
                 **(859) 252-4004**

**EXHIBIT**

tabbies

ß

1                          **APPEARANCES**

2


3      **COUNSEL FOR PLAINTIFF INACOM CORPORATION:**

4          Jeffrey P. Nolan
           Pachulski, Stang, Ziehl, Young & Jones
5          10100 Santa Monica Boulevard, 11th Floor
           Los Angeles, California 90067-4100
6

7      **COUNSEL FOR THIRD-PARTY DEFENDANT COMPAQ:**

8          Cecily A. Dumas
           Friedman, Dumas & Springwater, LLP
9          One Maritime Plaza, Suite 2475
           San Francisco, California 94111
10

11     **COUNSEL FOR DEFENDANT AND THIRD-PARTY PLAINTIFF**
       **LEXMARK INTERNATIONAL, INC.:**
12
           Culver V. Halliday
13         Stoll, Keenon & Park, LLP
           2650 Aegon Center
14         400 West Market Street
           Louisville, Kentucky 40202-3377
15

16     **ALSO PRESENT:**

17         Kevin Sarkisian

18

19

20

21

22

23

24

25

1

**INDEX**

2

DEPONENT: **ROBERT KENDRICK**                                    **PAGE**

3

EXAMINATION BY:

4
         Mr. Nolan .....................................  4
         Ms. Dumas .....................................  81

5

REPORTER'S CERTIFICATE ......................... 112

6
SIGNATURE PAGE ................................. 113

7

8

9

**EXHIBITS**

NO.        DESCRIPTION                        IDENTIFIED

10

11
   1       chain of e-mails
                                                    83

12
   2       2/15/00 letter to Mr. Oslo from
           Mr. Schuette                             84

13
   3       2/16/00 letter to Ms. Atchison from
           Mr. Francis at Compaq                    84

14

15

16

17

18

19

20

21

22

23

24
   (Above-referenced exhibits accompany original and copy

25
   transcripts.)

1    closed?

2          A.      I believe on February 15th of 2000.

3          Q.      With your counsel's permission, I'll

4    refresh your memory that it was actually February 16,

5    2000.  But you were very close.

6          A.      Yeah.

7          Q.      Having that date fixed in your mind,

8    February 16, 2000, my next question is:  Did you

9    personally have any communication with anybody at the

10   Compaq organization about this acquisition from their

11   perspective?

12         A.      No.

13         Q.      Did you direct Mr. Schuette or anyone else

14   in your organization to contact Compaq directly?

15         A.      No.

16         Q.      Do you know whether anybody in the finance

17   department, Mr. Sarkisian's group, contacted Compaq

18   before the sale?

19         A.      I don't know.

20         Q.      Let's put aside Exhibit 1, and if you

21   would refer to Exhibit 2, which is dated February 15,

22   2000, from William A. Schuette to Mr. Dick Oshlo,

23   Treasurer, Inacom, at an address in Omaha, Nebraska.

24   Earlier -- well, strike that.  Have you ever seen this

25   letter before?

```
 1          A.      Yes.

 2          Q.      Did you receive a copy of this letter --

 3   you're indicated as a cc on the bottom.  Did you receive

 4   a copy of this letter at or shortly after February 15,

 5   2000?

 6          A.      Yes.

 7          Q.      Did you review this letter in draft form

 8   before Mr. Schuette sent it off to Mr. Oshlo?

 9          A.      Yes.

10          Q.      Did you revise it?

11          A.      Yes.

12          Q.      So when you testified this morning that

13   you wanted to see the draft to put your personal spin on

14   it, that's what you were referring to?

15          A.      Yes.

16          Q.      Do you remember what you changed about his

17   original draft?

18          A.      Most of it.

19          Q.      Would you say that as a result of your

20   revisions you primarily wrote this letter?

21          A.      That would be my recollection.

22          Q.      Request that you turn your attention to

23   the second paragraph of the letter, and I'll read it for

24   the record.  "It is my understanding from Leon Kerkman,

25   with whom I met last week, that any invoices that have
```

1    had checks written against them will be held until the

2    sale is completed between Inacom and Compaq.  The

3    proceeds from the sale will then cover those checks and

4    they will be disbursed over a period of 1 to 10 weeks.

5    Additionally, Compaq will assume the liability of

6    Lexmark invoices that have not had not checks written

7    against them."

8              My first question is, it was actually

9    Mr. Schuette who met with Mr. Kerkman; is that correct?

10         A.    True.

11         Q.    Okay.  You didn't meet with Mr. Kerkman?

12         A.    That's true.

13         Q.    So the information in this is what

14   Mr. Schuette relayed to you that Mr. Kerkman had told

15   him?

16         A.    Correct.

17         Q.    In the second sentence it says, "The

18   proceeds from the sale will then cover these checks and

19   they will be disbursed over a period of 1-10 weeks."

20   What's your understanding of exactly what Mr. Kerkman

21   communicated to Mr. Schuette in that regard?

22         A.     I'm not sure because I'm unable to recall

23   other than what I told previous counsel is that my

24   recollection is tied to the fact that there was

25   significant debt that was owed and that we were getting

ACTION COURT REPORTERS