IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> INACOM CORP., et al., <br><br> Debtors. | Chapter 11 <br><br> Bankruptcy Case No. 00-2426 (PJW) |
| INACOM CORP., on behalf of all affiliated debtors, <br><br> Plaintiff, <br><br> vs. <br><br> LEXMARK INTERNATIONAL, INC., <br><br> Defendant. <br><br> LEXMARK INTERNATIONAL, INC., <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> COMPAQ COMPUTER CORP., ITY CORP., and CUSTOM EDGE, INC., <br><br> Third-Party Defendants. | Civil Action No. 04-CV-583 (GMS) |

**HEWLETT-PACKARD COMPANY'S REPLY BRIEF IN SUPPORT OF
<u>MOTION TO STRIKE TESTIMONY OF KEVIN SARKISIAN</u>**

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
William H. Sudell, Jr. (No. 463)
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200

FRIEDMAN DUMAS &
SPRINGWATER LLP
Ellen A. Friedman, Esq.
Cecily A. Dumas, Esq.
Gail S. Greenwood, Esq.
Brandon C. Chaves, Esq.
150 Spear Street, Suite 1600
San Francisco, CA 94105
(415) 834-3800

April 17, 2006

Attorneys for Hewlett-Packard Company

{00203006.DOC v 1}

# TABLE OF CONTENTS

|                                                                                                                                                                                                                   | Page |
| --- | --- |
| TABLE OF CITATIONS | ii |
| SUMMARY OF ARGUMENT | 1 |
| ARGUMENT | |
| A.  Mr. Sarkisian's Purported Interpretation of the Compaq Letter Is Not Based On Any Personal Knowledge of the Inacom Account or the Asset Purchase Transaction. | 1 |
| B.  Mr. Sarkisian's Testimony Is Contradicted By Lexmark's Sales Team Who Communicated With Inacom Regarding The Account And Who Continued To Pursue "Held Checks" From Inacom. | 2 |
| 1.  Held Checks Payable By Inacom Remained Due From Inacom. | 2 |
| 2.  Lexmark Continued to Pursue Held Checks From Inacom. | 3 |
| C.  Exclusion of Liability For Inacom's "Held Checks" Is Consistent With The Compaq Letter And Consistent With Testimony of Lexmark's Sales Team. | 4 |
| D.  Letters Directed To Third Parties Such As Tech Data Corporation Are Inadmissible To Prove Breach of Contract or Estoppel. | 5 |
| CONCLUSION | 5 |

## TABLE OF CITATIONS

No citations to authorities are contained herein.

## SUMMARY OF ARGUMENT

Hewlett-Packard Company ("HP") requests that the Court exclude the trial testimony of Kevin Sarkisian regarding his purported understanding that a letter from Bill Francis of Compaq Computer Corp. ("Compaq") to Lexmark constituted an assumption of all of Inacom's outstanding debts to Lexmark. Mr. Sarkisian lacks personal knowledge regarding the account payable in dispute, and his testimony is contradicted by Lexmark witnesses who handled the Inacom account and were fully aware that "held checks" would be paid by Inacom after the close of the Asset Purchase Agreement.

Lexmark has submitted a lengthy trial brief in response to HP's motion, which only marginally addresses Mr. Sarkisian or the basis for his testimony. Despite Lexmark's emphatic argument that Mr. Sarkisian relied upon the Compaq letter to not impose a shipping hold on Inacom, the record demonstrates that Lexmark's sales team, who communicated with the customer and pursued collection of the account, continued to seek payment of held checks from Inacom and did not rely in any manner for payment on Compaq. Lexmark's Vice President of Sales for North America, who is now retired, specifically testified that he understood that Compaq was not assuming the obligation to pay held checks. Mr. Sarkisian's different understanding of the letter is not based on any personal knowledge and is outweighed by more probative evidence from other witnesses.

## ARGUMENT

**A. Mr. Sarkisian's Purported Interpretation of the Compaq Letter Is Not Based On Any Personal Knowledge of the Inacom Account or the Asset Purchase Transaction.**

Lexmark fails to show that Mr. Sarkisian's purported interpretation of the Compaq letter is based on any personal knowledge of the account or of the asset purchase transaction. The fact remains that Lexmark dealt with all of its customers, including Inacom, solely through its sales teams. As described by Mr. Sarkisian, the sales team "owns the customer," is ultimately responsible for collection of past due accounts, and has all contacts with the customer on behalf of Lexmark. Trial Transcript at 29:5-18.

2.

At best, Mr. Sarkisian was involved only to the extent necessary to determine whether he should recommend placing Inacom on shipping hold, which would be subject to disagreement by the sales team and an overriding decision. Sarkisian Depo. at 94:11-95:8 (sales team could escalate issue of shipping hold by going above Mr. Sarkisian in Lexmark's chain of management). When a customer such as Inacom had an outstanding unpaid balance, it was the responsibility of the sales team to collect payment – i.e., Robert Kendrick, William Schuette, and Todd Pinkston. Mr. Sarkisian had no personal knowledge of amounts owed from Inacom to Lexmark, or what was to be assumed by Compaq under the "terms and conditions of such account." He was not a party to any discussions between Inacom and Lexmark relating to which liabilities owed to Lexmark would be assumed by Compaq and which liabilities would remain with Inacom. Trial Testimony at 33:24-34:4. Mr. Sarkisian's subjective interpretation of the Compaq letter is irrelevant to the issues before the court and is contradicted by others with direct knowledge of the account.

**B.     Mr. Sarkisian's Testimony Is Contradicted By Lexmark's Sales Team Who Communicated With Inacom Regarding The Account And Who Continued To Pursue "Held Checks" From Inacom.**

Mr. Sarkisian's testimony that Lexmark relied upon the letter from Bill Francis to mean that Compaq would assume responsibility for all amounts owed to Lexmark, including Inacom's held checks payable to Lexmark, is contradicted by the testimony of Lexmark's sales team who communicated with Inacom regarding the account. Mr. Sarkisian's testimony is further contradicted by the fact that Lexmark continued to pursue held checks from Inacom after February 16, 2000.

**1.  Held Checks Payable By Inacom Remained Due From Inacom.**

It is undisputed that the Inacom account was the responsibility of Robert Kendrick, Lexmark's Vice President of Sales for North America. Trial Testimony at 28:6-15. Both Mr. Kendrick and his district sales manager understood that Inacom would release held checks after the asset sale, and Compaq would pay amounts going forward.

3.

See, e.g., Kendrick Depo. at 70:6-16. Mr. Kendrick candidly testified that the Compaq letter from Bill Francis was not an assumption by Compaq of held check liabilities and was instead a guarantee of payment for future liabilities.

> **Q: Was it your understanding that Compaq would assume the liability for payment of amounts that were reflected by held checks?**
> **A: Not in my mind. Checks in the drawer equals the amount owed coming from Inacom, 16th on by Compaq, in my mind.** Dick Oshlo would do this part and Compaq would do that part, if I make myself clear.
>
> Kendrick Depo at 100: 1-19 (emphasis added).
>
> * * *
>
> Q: When you got [the Compaq letter], was it in your mind – was it your understanding that this letter would cover a situation such as we find ourselves in now, with Inacom having filed bankruptcy and being sued for a preference, that Compaq would promise to, in essence, reimburse Lexmark under this scenario?
> A: **As I stated before, I saw this as a guarantee of payment for future liabilities** . . . .
> Q: In your personal opinion did Compaq perform on its guarantee as you understood it?
> A: **As I recall, yes**.
>
> Kendrick Depo. at 111:2-20 (emphasis added).

Thus, Lexmark's most knowledgeable witness, who was responsible for the Inacom account, testified that Compaq fully performed all of its obligations in the Compaq letter by paying outstanding amounts going forward.

### 2. Lexmark Continued to Pursue Held Checks From Inacom.

Mr. Sarkisian's testimony that Lexmark "relied" on the Compaq letter for payment of all liabilities, including held checks, is further contradicted by the fact that Lexmark continued to pursue collection of held checks from Inacom. Lexmark's district sales manager acknowledged that he continued to seek collection of held checks from Inacom after receiving Compaq's letter dated February 16, 2000.

> Q: Okay. But do you recall the fact that you continued to try to collect the account that was owed by Inacom to Lexmark?
> A: Well, yeah. Yeah.
> Q: That still was a duty?
> A: That still was a duty until the check came in. I was on the hook to keep after it to try to get us paid.

Schuette Depo: at 56:3-10.

Lexmark sought collection of outstanding held check amounts from Inacom and did not pursue held check amounts from Compaq. Lexmark eventually received and cashed all of the held checks that were pending in a treasury drawer of Inacom. Kendrick Depo. at 101:2-5. These facts and testimony demonstrate that Lexmark did not rely on any purported agreement by Compaq to assume liability for Inacom's held checks.

### C. Exclusion of Liability For Inacom's "Held Checks" Is Consistent With The Compaq Letter And Consistent With Testimony of Lexmark's Sales Team.

Lexmark argues that Compaq unambiguously assumed all liabilities owed to Lexmark, including held check amounts, based on the following sentence from Mr. Francis' letter: "In connection with such purchase, Compaq Edge, Inc. also assumed the obligation to pay all of the outstanding amount on the referenced account, subject to the terms and conditions of such account." In fact, the plain terms of the Compaq letter exclude liability for held checks.

The referenced account in the Compaq letter is "Account Payable #117403 of Inacom Corporation." It is a fundamental principle of accounting that once a check is issued for an invoice, the invoice is no longer listed as an account payable. See, e.g., Samuelson Trial Testimony at 94:15-95:8 ("[O]nce a check is issued the invoice is then removed from the open accounts payable report, since it has been – a check has been issued against it."), Pinkston Depo. at 31:2-23 (Q: "Whether or not an accounts payable report has been updated, the event pursuant to which an open payable becomes closed is the cutting of a check. Correct? A: Yes.") (Lexmark's account representative). Lexmark was fully aware that Inacom's treasurer was holding checks that were payable to Lexmark in a drawer to be released after Inacom completed its sale of assets. The held checks were not part of the outstanding amount on the referenced Account Payable #117403. Exclusion of any liability by Compaq for held checks is consistent with both

the terms of the letter and Mr. Kendrick's testimony that Compaq only promised to pay future liabilities.

    **D.**    **Letters Directed To Third Parties Such As Tech Data Corporation Are Inadmissible To Prove Breach of Contract or Estoppel.**

Lexmark also argues liability against HP/Compaq based on letters that were directed to third parties, including Tech Data Corporation and Logicare, Inc. Lexmark's claims against HP/Compaq are for breach of contract and estoppel. Lexmark did not, and could not, rely on any statements by Compaq in letters directed to third-parties. For reasons set forth in the accompanying objection, evidence of such letters is entirely inadmissible (and was promptly withdrawn upon objection at trial).

## CONCLUSION

Mr. Sarkisian has no personal knowledge of the terms at issue in the Compaq letter dated February 16, 2000 letter from Bill Francis to Misty Atchison. Mr. Sarkisian's interpretation of the letter is contrary to that of Lexmark's sales team, who were aware that held checks would be paid by Inacom after the close of the asset purchase transaction and who continued to pursue collection of held checks from Inacom after February 16, 2000. For the foregoing reasons, HP requests that the Court strike all trial testimony of Mr. Sarkisian regarding the Compaq letter.

Dated: April 17, 2006
       Wilmington, Delaware       MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                               /s/
                                    William H. Sudell, Jr. (No. 463)
                                    Derek C. Abbott (No. 3376)
                                    Daniel B. Butz (No. 4227)
                                    1201 N. Market Street
                                    Wilmington, DE 19899-1347
                                    (302) 658-9200

                                    - and -

6.

        FRIEDMAN DUMAS & SPRINGWATER LLP
        Ellen A. Friedman, Esq.
        Cecily A. Dumas, Esq.
        Gail S. Greenwood, Esq.
        Brandon C. Chaves, Esq.
        150 Spear Street, Suite 1600
        San Francisco, CA 94105
        (415) 834-3800

        Attorneys for Hewlett-Packard Company

516281