UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| INACOM CORP., et al.<br><br>    Plaintiffs<br><br>v.<br><br>LEXMARK INTERNATIONAL, INC.<br><br>    Defendant and Third-Party Plaintiff<br><br>v.<br><br>COMPAQ COMPUTER CORP., et al.<br><br>    Third-Party Defendants | Civil Action No. 04-CV-583 (GMS) |

## LEXMARK'S RESPONSE TO HP'S OBJECTION TO THREE LETTERS

STEVENS & LEE, P.C.

Thomas G. Whalen Jr. (No. 4034)
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
Tel:  (302) 425-3304
Fax:  (610) 371-8512
E-mail: tgw@stevenslee.com

STOLL KEENON OGDEN PLLC

Culver V. Halliday
Emily L. Pagorski
2650 AEGON Center
400 West Market Street
Louisville, Kentucky 40202-3377
Tel: (502) 568-9100
Fax: (502) 568-5700
E-mail:  culver.halliday@skofirm.com
E-mail:  emily.pagorski@skofirm.com

Dated: April 26, 2006

*Attorneys for Third-Party Plaintiff
Lexmark International, Inc.*

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................................. 2

    (a) *Francis's February 16, 2000 Letter to Tech Data* ........................................ 2

    (b) *Francis's February 17, 2000 Letter to Logicare* .......................................... 3

    (c) *Vitols's February 17, 2000 Letter to Logicare* ............................................. 4

III. ARGUMENT ..................................................................................................................... 6

    (a) *There is Evidence Authenticating Each Letter* ............................................ 6

    (b) *The Letters Rebut a Defense Raised by HP* ................................................ 8

IV. CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Cuffee v. Dover Wipes Co.*, 163 Fed. Appx. 107 (3d Cir. 2006).................................8

*In re Marvel Entertainment Group. Inc.*, 274 B.R. 99 (D. Del. 2002)..........................8

*United States v. McGlory*, 968 F.2d 309 (3d Cir. 1992)..............................8

*United States v. Reilly*, 33 F.3d 1396 (3d Cir. 1994) ...............................................7

**Rules**

Federal Rule of Evidence 901....................................... 6, 7, 8

Hewlett-Packard Company ("HP") objects to three letters relied upon by Third-Party Plaintiff Lexmark International, Inc. ("Lexmark"). This is Lexmark's response to the objection.

## I. INTRODUCTION

A trial of the third-party complaint filed by Lexmark against Third-Party Defendants Compaq Computer Corporation ("Compaq") and Custom Edge, Inc. ("Custom Edge") was held on February 16, 2006. Lexmark and HP, the successor in interest to Compaq and Custom Edge, tendered proposed findings of fact and conclusions of law on March 31, 2006.[1] (Docket Item ("D.I.") 138, 141). Also on March 31, 2006, HP filed a motion to strike testimony of Kevin Sarkisian, a witness called by Lexmark to testify at the trial. (D.I. 140). Lexmark filed a response to the motion to strike on April 10, 2006. (D.I. 142).

HP has now filed an objection ("HP's Objection") to three letters referenced by Lexmark in its proposed findings of fact and conclusions of law and response to the motion to strike testimony of Mr. Sarkisian. (D.I. 144). The grounds for the objection are that the letters have not been authenticated and are not relevant. HP's latest effort to preclude the Court's consideration of obviously probative evidence makes clear its understanding that it has no defense to Lexmark's claims. HP's objection to the three letters — letters sent by Compaq and Custom Edge — is without basis in law or fact and should be overruled.

---

[1] Custom Edge, formerly known as ITY Corp., a wholly owned subsidiary of Compaq, was merged into Compaq, which then merged with HP, with HP the surviving entity. (D.I. 81, Tab 1 ¶ 3).

1

## II. STATEMENT OF FACTS

The three letters objected to by HP are included in the appendix tendered by Lexmark with its proposed findings of fact and conclusions of law. (D.I. 139). For the convenience of the Court, copies of the three letters are attached. Also attached are copies of the deposition transcript pages to which reference is made.

### (a) Francis's February 16, 2000 Letter to Tech Data

The first letter is from Bill Francis, director of corporate finance for Compaq, to Michael Zava of Tech Data Corp. ("Tech Data"), and dated February 16, 2000.[2] (Copy at 1). The letter is the same as the letter sent by Mr. Francis to Lexmark dated February 16, 2000. (Copy at 2). Both letters say that Custom Edge "assumed the obligation to pay all of the outstanding amount on the referenced account, subject to the terms and conditions of such account."

Mr. Francis testified at his deposition that the first letter bears his signature and was sent to Tech Data:

> Q: And for the benefit of the attorneys on the phone, I'll say that Exhibit 4 is a letter from -- appears to be a letter from Mr. Francis at Compaq to Tech Data Corporation dated February -- is that 17, Mr. Francis?
>
> A: 16.
>
> Q: February 16, 2000.
>
> A: Right.

---

[2] The first letter is referred to at pages 15 and 16 of Lexmark's proposed findings of fact and conclusions of law, and pages 2 and 5 of its response to HP's motion to strike testimony of Mr. Sarkisian. (D.I. 138, 142). Mr. Zava's name is misspelled in the letter as "Zafa."

2

> Q: Can you identify whether that's your signature on the letter, Mr. Francis?
>
> A: Yes, it is.
>
> Q: Does the letter appear to be similar to what was marked as Exhibit 1, the letter dated February 16 from yourself to Lexmark International?
>
> A: Yes.

(Francis Deposition ("Depo."), 39:24-40:13, copies at 3). Mr. Zava testified at his deposition that Tech Data did, indeed, receive the letter:

> Q: This letter from Mr. Francis is dated February 16, 2000. Do you recall having received this letter on or shortly after February 16, 2000?
>
> A: Yes.

(Zava Depo., 133:7-133:10, copy at 4).

### (b) *Francis's February 17, 2000 Letter to Logicare*

The second letter is from Mr. Francis to "Chris and Bill" of Logicare, Inc. ("Logicare"), and dated February 17, 2000.[3] (Copy at 5). The letter is the same as the letters from Mr. Francis to Lexmark and Tech Data. The letter to Logicare, like the letters to Lexmark and Tech Data, says that Custom Edge "assumed the obligation to pay all of the outstanding amount on the referenced account, subject to the terms and conditions of such account."

Mr. Francis testified at his deposition that the letters sent to Lexmark and Tech Data were prepared from the same template, and additional letters from the template were

---

[3] The second letter is referred to at page 17 of Lexmark's proposed findings of fact and conclusions of law, and pages 6, 7, 15 and 16 of its response to HP's motion to strike testimony of Mr. Sarkisian. (D.I. 138, 142).

3

sent to other vendors. (Francis Depo., 18:14-21:1, 26:17-26:22, copies at 3). While Mr. Francis could not be certain that he sent the letter to Logicare because it is unsigned, he did not deny sending it:

> Q: Understood. Do you recall whether you ever signed a comfort letter addressed to Logicare or Resilien?
>
> A: I, I don't recall.
>
> Q: You don't recall one way or the other.
>
> A: That's correct.

(Francis Depo., 52:14-52:19, copy at 3).

### (c) *Vitols's February 17, 2000 Letter to Logicare*

The third letter is from Nondas Vitols, a product manager for Custom Edge, to "Chris and Bill" of Logicare, and dated February 17, 2000.[4] (Copy at 6). At her deposition Ms. Vitols testified that, on or about February 17, 2000, she sent the letter to a number of vendors announcing that certain assets of InaCom Corp. had been purchased by Compaq and would be operated as Custom Edge:

> Q: Is that a -- well, would you please identify it, ma'am? Could you describe that for us, please.
>
> A: It was a letter that was given to us in a template by John Frasca to send out to our vendors.
>
> Q: What is the date on that letter, ma'am?
>
> A: February 17th, 2000.

\* \* \* \* \* \* \*

---

[4] The third letter is referred to at page 17 of Lexmark's proposed findings of fact and conclusions of law, and pages 6, 7, 15 and 16 of its response to HP's motion to strike testimony of Mr. Sarkisian. (D.I. 138, 142).

4

Q:   Who is that addressed to, ma'am?

A:   This one is to Logicare.

Q:   Do you recall, ma'am, if you sent such a letter to Logicare?

A:   Well, it looks like I did.

Q:   I ask, ma'am, simply 'cause it hadn't been signed and I just wondered if you recalled.

A:   They were sent to me e-mail, so there were no signatures on e-mail.

\* \* \* \* \* \* \*

Q:   Ma'am, if you recall, did you send a letter produced from the template, which is Exhibit 1, to each of your vendors?

A:   The vendors that I had at that time, yes.

Q:   How many -- you've already told me, I think, 10 to 12 vendors?

A:   Yes.

Q:   Do you recall if Lexmark International, Inc. was one of your vendors?

A:   No, it was not.

\* \* \* \* \* \* \*

Q:   What about Logicare?

A:   Yes.

(Vitols Depo., 8:2-8:10, 9:22-10:5; 13:24-14:9; 14:17-14:18, copies at 7).

SL1 630437v1/004907.00003

### III. ARGUMENT

HP objects to the three letters on the grounds that they have not been authenticated and are not relevant.[5] Each of these grounds is addressed below.

### *(a) There is Evidence Authenticating Each Letter*

Rule 901(a) of the Federal Rule of Evidence ("Fed. R. Evid.") states that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." There can be no reasonable objection to the sufficiency of the authentication of the first letter from Mr. Francis to Tech Data. (Copy at 1). Mr. Francis of Compaq testified at his deposition that he signed the letter, and Mr. Zava of Tech Data testified at his deposition that Tech Data received the letter. Likewise, there also can be no reasonable objection to the sufficiency of the authentication of the third letter from Ms. Vitols to Logicare. (Copy at 6). Ms. Vitols testified at her deposition that she sent such a letter to each of her vendors and Logicare was one of them.

The second letter was obviously created from the same template used to create the letters sent by Mr. Francis to Lexmark, Tech Data and others, and has a place for Mr. Francis's signature. (Copy at 5). Nevertheless, Mr. Francis refused to admit he sent the letter because it does not reflect his signature. (Francis Depo., 52:14-52:19, copy at 3). A witness's equivocation or evasion, however, does not prevent a document being

---

[5] HP may also argue that the one or more of the letters are inadmissible because when Lexmark attempted to introduce them at trial through the testimony of Mr. Sarkisian, HP objected that Mr. Sarkisian could not authenticate the letter or letters and Lexmark abandoned the effort. (HP's Objection, 1, 2). Of course, Lexmark did not pursue its effort to introduce one or more of the letters at trial through Mr. Sarkisian because there was no need. As is discussed herein, the deposition testimony of Mr. Francis, Mr. Zava and Ms. Vitols establishes the authenticity of the letters.

6

authenticated. A document may be authenticated based on the totality of the evidence, even where the author has a lapse of memory.

In *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994), the Third Circuit discussed authentication under Fed. R. Evid. 901(a):

> *Fed. R. Evid. 901(b)* provides examples of appropriate methods of authentication. These examples include "testimony that a matter is what it is claimed to be," Rule 901(b)(1), and "appearance, contents, substance, internal patterns, or other distinctive characteristics taken in conjunction with circumstances," Rule 901(b)(4). Thus, "it is clear that the connection between a message (either oral or written) and its source may be established by circumstantial evidence." *United States v. Addonizio, 451 F.2d 49, 71 (3d Cir. 1971)*, cert. denied, *405 U.S. 936, 92 S. Ct. 949, 30 L. Ed. 2d 812 (1972)*. Moreover, "any combination of items of evidence illustrated by Rule 901(b) . . . will suffice so long as Rule 901(a) is satisfied." 5 Weinstein's Evidence P 901(b)(1) at 901-32. Finally, "the burden of proof for authentication is slight." *Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 927 (3d Cir. 1986)* (quoting *McQueeney v. Wilmington Trust Co., 779 F2d 916, 928 (3d Cir. 1985)*).

*Id.* at 1404. Applying the principles set out in *United States v. Reilly* here, it seems clear that the evidence is sufficient for the authentication of the second letter.

Mr. Francis testified that the letters he sent to Lexmark and Tech Data were among a number of such letters sent, all created from the same template. (Francis Depo., 18:14-21:1, 26:17-26:22, copies at 3). Significantly, Mr. Francis testified that he does not recall sending — not that he did not send — the letter to Logicare.[6] (Francis Depo., 52:14-52:19, copy at 3). A failure to recall an event is hardly the same as denying it took place. Considering that the burden of proof for authentication is slight, and considering also that the burden of proof may be satisfied by circumstantial evidence, there is more than sufficient evidence for the Court to conclude that the letter is what it purports to be.

---

[6] HP states that the "purported author specifically disclaimed the letter." (HP's Objection, 3). As the transcript of his deposition reflects, while he could have done so, Mr. Francis did not disclaim the letter.

7

*See, e.g., United States v. McGlory*, 968 F.2d 309, 328-329 (3d Cir. 1992) (handwritten notes authenticated under Fed. R. Evid. 901, even though a handwriting expert could not definitively determine that the notes were in the defendant's writing, where circumstantial evidence linked the notes to the defendant).

### (b) *The Letters Rebut a Defense Raised by HP*

HP contends that the three letters are not relevant to Lexmark's claims. (HP's Objection, 2). However, Lexmark does not offer the three letters as evidence to support its claims. The letters are offered by Lexmark to rebut a defense raised by HP to Lexmark's claims. Without cavil, evidence that relates to a defense is relevant evidence. *Cuffee v. Dover Wipes Co.*, 163 Fed. Appx. 107, 109 (3d Cir. 2006). (Copy at 8).

HP argues that Lexmark misinterpreted Mr. Francis's February 15, 2000 letter by not reading into it an exception for held checks. Because the letter is not ambiguous, Lexmark believes that HP's effort to rewrite the Francis Letter with parole evidence should be rejected. *See In re Marvel Entertainment Group. Inc.*, 274 B.R. 99, 107 (D. Del. 2002) ("When an agreement is complete and unambiguous, evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.") (internal quotations omitted). However, if parole evidence is to be considered in interpreting the letter, then the three letters are highly relevant.

Mr. Zava testified at his deposition that he understood Mr. Francis's letter to Tech Data, the same letter sent to Lexmark and Logicare, to mean that Compaq would be liable for everything that was owing to Tech Data by InaCom Corp. (Zava Depo., 138:3-138:7,

137:8-137:24, copies at 4). Mr. Zava testified that, if Tech Data had not received the letter, then "we would have reacted quite differently to the entire situation." (Zava Depo., 156:17-156:20, 156:24-157:2, copies at 4). Because it received the letter from Mr. Francis, Tech Data, like Lexmark, continued to ship products on credit. The letter sent by Mr. Francis to Tech Data, and the testimony of Mr. Zava regarding the letter, are evidence that Lexmark acted reasonably in relying on the promises contained in Mr. Francis's letter.

In contrast to the letters sent by Mr. Francis, Ms. Vitols states in her letter that "Compaq is assuming the open accounts payable but NOT the held checks." (Emphasis in original). (Copy at 6). The relevance of the letter is obvious. Neither Lexmark nor Tech Data received the Vitols Letter. If Mr. Francis's letter was meant to be read as excluding "held checks" from the accounts payable liability that was assumed, there was no logical reason for Ms. Vitols to send a letter to other vendors specifically advising that "Compaq is assuming the open accounts payable but NOT the held checks."

## IV. CONCLUSION

HP has objected to three letters on the grounds that the letters are not authenticated and irrelevant. As discussed, the evidence establishes the authenticity of each of the letters. As also discussed, the letters are relevant to a defense raised by HP. The objection should be overruled.

Dated: April 26, 2006

Respectfully submitted,

Culver V. Halliday
Emily L. Pagorski
Stoll Keenon Ogden PLLC
2650 AEGON Center
400 West Market Street
Louisville, Kentucky 40202-3377
Tel: (502) 568-9100
Fax: (502) 568-5700
E-mail: culver.halliday@skofirm.com
E-mail: emily.pagorski@skofirm.com

-and-

Thomas G. Whalen Jr. (No. 4034)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
Tel: (302) 425-3304
Fax: (610) 371-8512
E-mail: tgw@stevenslee.com

*Attorneys for Third-Party Plaintiff
Lexmark International, Inc.*

10

SL1 630437v1/004907.00003