# ATTACHMENT 4

Inacom vs. Tech Data                        1/26/2005                        MICHAEL ZAVA

Page 1

```
 1            IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF DELAWARE
 2
              CHAPTER 11 CASE NO. 00-2425 (PJW)
 3       Jointly Administered Adv. No. 00-3495 (PJW)
              Dist. Adv. No. 01-579 (BMS)
 4
    In Re:
 5
    INACOM CORP., et al.,                    COPY
 6
                            Debtors,
 7   _____
 8   INACOM CORP., on behalf of all
     affiliated Debtors,
 9                          Plaintiff,
     v.
10
     TECH DATA CORPORATION,
11                          Defendant.
12   _____
     TECH DATA CORPORATION,
13
              Third-Party Plaintiff,
14   v.
15   COMPAQ COMPUTER CORPORATION, et al.,
16            Third-Party Defendant.
17   _____
18
19                      DEPOSITION
20                         OF
21                    MICHAEL ZAVA
22
                 350 East Las Olas Boulevard
23                      Suite 1700
                  Fort Lauderdale, Florida
24
                Wednesday, January 26, 2005
25                9:14 a.m. - 4:14 p.m.
```

DOWNTOWN REPORTING (954) 522-3376

Apx. 571

Inacom vs. Tech Data                 1/26/2005                    MICHAEL ZAVA

Page 2

```
 1
                         APPEARANCES
 2
 3
    For the Plaintiff:
 4
            JEFFREY P. NOLAN, ESQ.
 5          Pachulski, Stang, Ziehl,
            Young & Jones, P.C.
 6          10100 Santa Monica Boulevard
            11th Floor
 7          Los Angeles, California 90067-6910
            (310) 277-6910
 8
 9  For the Defendant:
10          CHARLES M. TATELBAUM, ESQ.
            STEPHEN C. HUNT, ESQ.
11          Adorno & Yoss, P.A.
            350 East Las Olas Boulevard
12          Suite 1700
            Fort Lauderdale, Florida 33301
13          (954) 763-1200
14
    For the Third-Party Defendant Hewlett-Packard:
15
            CECILY A. DUMAS, ESQ.
16          Friedman, Dumas & Springwater, LLP
            One Maritime Plaza
17          Suite 2475
            San Francisco, California 94111
18          (415) 834-3800
19                      - - - - - -
20
                          I N D E X
21
    Witness              Direct      Cross     Redirect
22
    MICHAEL ZAVA            4          72        171
23
24
25
```

Inacom vs. Tech Data                1/26/2005                    MICHAEL ZAVA

Page 3

```
 1              E X H I B I T    I N D E X
 2    Deposition         Description              Page No.
 3       1        Defendant's answer and
                  affirmative defenses               41
 4
         2        Proof of claim re Inacom           59
 5
         3        Person most knowledgeable
 6                notice served by Inacom            64

 7       4        Customer profile                  107

 8       5        Letter Bates 390-391              109

 9       6        Letter from Guenther to Ward
                  2-11-00                           131
10
         7        Letter from Francis to Zava
11                2-16-00                           131

12       8        First amended complaint for
                  avoidance and recovery of
13                preferential transfers            173
```

Inacom vs. Tech Data                    1/26/2005                    MICHAEL ZAVA

Page 6

1  deposition transcript. That certainly is your
2  right, but I also would like to inform you if you
3  make substantive changes to your deposition
4  transcript, either myself or another lawyer involved
5  in the case can comment upon that at time of trial
6  to either reflect your poor recollection or your
7  credibility.
8          Do you understand that?
9      A.  Yes.
10     Q.  Is there any reason I can't get your best
11 testimony today? Are you under any medication,
12 anything that might inhibit your ability to give
13 good testimony?
14     A.  **No, but I would like to break every hour,**
15 **I don't know how long this will go. I do have a hip**
16 **replacement that sort of requires I move around**
17 **every 45 minutes or an hour.**
18     Q.  Okay. That's fine. Any time you want to
19 take a break, just ask me to take a break. We are
20 not in a court so we have no pace that we have to
21 follow here.
22          Can you tell me who you are currently
23 employed with?
24     A.  Tech Data Corporation.
25     Q.  What's your position with Tech Data

DOWNTOWN REPORTING (954) 522-3376

Apx. 574

Inacom vs. Tech Data  1/26/2005  MICHAEL ZAVA

Page 133

```
 1         Do you have any recollection of whether or
 2  not you saw that confirmation from Mr. Guenthner of
 3  Mr. Ward's recitation in his February 9th letter?
 4       A.   No.
 5       Q.   You can put Exhibit 6 aside and Exhibit 5
 6  aside.
 7         This letter from Mr. Francis is dated
 8  February 16, 2000.  Do you recall having received
 9  this letter on or shortly after February 16, 2000?
10       A.   Yes.
11       Q.   At the time you received this letter, did
12  you already know who Mr. Francis was?
13       A.   I did not know Mr. Francis at the time.  I
14  had heard his name.
15       Q.   When had you heard his name?
16       A.   In conversations with Mr. Ward, apparently
17  this was the name that was given as our Compaq
18  contact.
19       O.   Before you got this letter from Mr.
20  Francis, you never communicated with Mr. Francis
21  personally in any other way, right?
22       A.   I do not recall that.  I can't swear to
23  it.  Again, my memory is a little light.
24       Q.   Do you know why he sent you this letter?
25       A.   Obviously we would be concerned about the
```

Inacom vs. Tech Data                1/26/2005                MICHAEL ZAVA

Page 137

```
 1        Q.    Have you directed Mr. Ward to contact Mr.
 2   Frasca?
 3        A.    Likely.
 4        Q.    Do you have any specific recollection of
 5   asking Mr. Ward to follow up with John Frasca?
 6        A.    I can only speak to what would be normal
 7   behavior and procedure.
 8        Q.    The paragraph number two which seems to be
 9   the meat of the coconut says, "In connection with
10   such purchase, Custom Edge Inc. also assumed the
11   obligation to pay all of the outstanding amount on
12   the referenced account subject to the terms and
13   conditions of such account."
14              When you stated earlier your understanding
15   that Compaq was going to assume the liabilities,
16   were you referring to that statement that I have
17   just read in the letter?
18        A.    Yes.
19        Q.    When he says, "Custom Edge also assumed
20   the obligation to pay all of the outstanding amount
21   on the referenced account", did you take that to
22   mean, everything that was owing to Tech Data at that
23   point in time?
24        A.    Yes.
25        Q.    So when you got this letter, was it your
```

Inacom vs. Tech Data                1/26/2005                    MICHAEL ZAVA

Page 138

1  understanding that as of the point in time Tech
2  Data -- strike that.
3          When you got this letter shortly after
4  February 16, 2000, was it your understanding that
5  everything that was then owing Tech Data by Inacom
6  would henceforth be paid by Compaq?
7     A.   Yes.
8     Q.   Do you have a recollection as you sit here
9  today of how much in accounts receivable Tech Data
10 had on its books for Inacom as of this February 16,
11 2000?
12    A.   I don't know.
13    Q.   When you got this letter, is it correct to
14 state that you considered Inacom to be a regular
15 performing customer, performing according to payment
16 terms?
17    A.   Yes.
18    Q.   I should break it up into two pieces.
19    A.   Sorry.
20    Q.   And this letter was simply advising you
21 that due to this acquisition Compaq through Custom
22 Edge would start to pay the accounts?
23    A.   Yes.
24    Q.   So your understanding in this time frame
25 was -- strike that.

Inacom vs. Tech Data                        1/26/2005                        MICHAEL ZAVA

Page 156

```
 1  assumed liabilities paid?
 2       A.   That's not the picture I see, no.
 3       Q.   That's not the picture you saw at the
 4  time?
 5       A.   Right.
 6       Q.   So if Tech Data's customer profile
 7  revealed otherwise, you would be surprised?
 8       A.   It might indicate calls were made to
 9  someone at Inacom or Custom Edge, whatever.  In our
10  minds we were talking Custom Edge or Compaq.
11       Q.   In your mind or Mr. Ward's mind or Tech
12  Data's mind?
13       A.   Possibly all.
14       Q.   But you can only refer to what was in your
15  mind.
16       A.   Correct.
17       Q.   Had Mr. Francis not delivered the letter
18  that you understood to indicate that Custom Edge was
19  assuming all the payables owing to Tech Data, what
20  would you have done as the credit manager?
21            MR. TATELBAUM:  Objection, if you
22       speculate.  But don't speculate; if you
23       know.
24       A.   We would have reacted differently.  As to
25  what exactly we would have done, I can not say, but
```

DOWNTOWN REPORTING (954) 522-3376

Apx. 579

Inacom vs. Tech Data                        1/26/2005                          MICHAEL ZAVA

Page 157

1  we would have reacted quite differently to the
2  entire situation.
3        Q.   I may have asked you this and if I did, I
4  apologize:  Do you know what the outstanding
5  receivable was from Inacom as of this closing,
6  February 16, 2000?
7        A.   I don't.
8        Q.   Do you know if it was less than a million
9  dollars or more than $10 million?
10       A.   It was several million, I know that much.
11       Q.   Was it less than 10 million?
12       A.   I can't say without going back and
13 looking.
14       Q.   Did whatever the number was, the several
15 million, did everything eventually get paid?
16       A.   No.
17       Q.   Do you recall how much didn't get paid?
18       A.   Eight or 900,000, something of that
19 nature.
20       Q.   So all but eight or 900,000 got paid?
21       A.   Yes.
22       Q.   Have you attempted to collect that eight
23 or 900,000 from H-P?
24       A.   No.
25       Q.   Why not?